**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X

JOHN DOE,                                           Case No.: 1:20-cv-01343 (GHW)

                Plaintiff,            ECF case electronically filed

     vs.                                           **ORAL ARGUMENT REQUESTED**

NEW YORK UNIVERSITY,

                Defendant.

-------------------------------------------------------- X

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

---

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Jeffrey P. Metzler
31 West 52nd Street
New York, New York 10019
Telephone: (212) 858-1000
jeffrey.metzler@pillsburylaw.com

*Attorneys for Defendant*

Dated: New York, New York
       May 11, 2020

# <u>TABLE OF CONTENTS</u>

**Page(s)**

Preliminary Statement ............................................................................................1

Statement of Facts ..................................................................................................3

    A.  Background .............................................................................................. 3

    B.  Investigation Summary Report ("ISR") ................................................. 5

    C.  Sexual Misconduct Hearing ................................................................... 7

    D.  Hearing Decision and Appeal ................................................................ 8

Materials To Be Considered .................................................................................9

Pleading Standard .................................................................................................11

Argument ..............................................................................................................12

I.   Plaintiff's Title IX Claim Should Be Dismissed ..........................................12

    A.  Plaintiff Fails to Plead Specific Facts that Support A Minimal Plausible Inference of Gender Bias ..................................................... 13

    B.  Plaintiff's Selective Enforcement Claim Fails Because Jane Roe is Not A "Similarly Situated Female Student" ................................................. 16

    C.  Plaintiff's Erroneous Outcome Claim Fails Because He Fails to Cast Articulable Doubt on The Accuracy of The Outcome of The Disciplinary Proceeding .......................................................................... 17

II.  Plaintiff's State Law Claims Should be Dismissed .......................................21

    A.  The Court Should Decline to Exercise Supplemental Jurisdiction .................................. 21

    B.  Plaintiff's Promissory Estoppel Claim Should be Dismissed ........................................... 22

    C.  Plaintiff's NYCHRL Claim Fails for the Same Reasons as his Title IX Claims .......................................................................................... 24

Conclusion ............................................................................................................25

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

<u>Ashcroft v. Iqbal</u>,
    556 U.S. 662 (2009)........................................................................................2, 11

<u>B.B. v. The New Sch.</u>,
    No. 17 Civ. 8347 (AT), 2018 WL 2316342 (S.D.N.Y. Apr. 30, 2018)............................10, 11

<u>Doe v. Columbia Coll. Chicago</u>,
    933 F.3d 849 (7th Cir. 2019) ...........................................................................15, 16

<u>Doe v. Columbia Univ.</u>,
    831 F.3d 46 (2d Cir. 2016).................................................................... *passim*

<u>Doe v. Haas</u>,
    No. 19-CV-0014 (DRH)(AKT), 2019 WL 6699910 (E.D.N.Y. Dec. 9, 2019) .....................12

<u>Doe v. New York Univ.</u>,
    No. 1:19-cv-00744 (ALC), 2020 WL 564264 (S.D.N.Y. Feb. 5, 2020)..........................13, 16

<u>Doe v. Princeton Univ.</u>,
    No. 17-cv-1614 (PGS), 2018 WL 2396685 (D.N.J. May 24, 2018).......................................16

<u>Doe v. Syracuse Univ.</u>,
    No. 5:19-cv-00190 (BKS/ATB), 2020 WL 871250 (N.D.N.Y. Feb. 21, 2020) .....................10

<u>Doe v. Trs. of Princeton Univ.</u>,
    No. 3:19-cv-07853-BRM-TJB, 2020 WL 967860 (D.N.J. Feb 28, 2020).......................14, 16

<u>Doe v. Univ. of Denver</u>,
    952 F.3d 1182 (10th Cir. 2020) ...........................................................................14

<u>Feibleman v. Columbia Univ.</u>,
    No. 19-CV-4327 (VEC), 2020 WL 882429 (S.D.N.Y. Feb. 24, 2020) ................................22

<u>Gonzalez v. City of New York</u>,
    377 F. Supp. 3d 273 (S.D.N.Y. 2019).............................................................................24, 25

<u>Klein & Co. Futures, Inc. v. Bd. Of Trade of City of N.Y.</u>,
    464 F.3d 255 (2d Cir. 2006)..............................................................................................22

<u>Kramer v. Time Warner Inc.</u>,
    937 F.2d 767 (2d Cir. 1991)..............................................................................................10

Lombroso v. JPMorgan Chase & Co.,
    40 A.D.3d 289 (1st Dep't 2007) ...........................................................23

Nungesser v. Columbia Univ.,
    244 F. Supp. 3d 345 (S.D.N.Y. 2017)...................................................11

PHL Variable Ins. Co. v. Mahler,
    321 F. Supp. 3d 392 (E.D.N.Y. 2018) ..................................................23

Prasad v. Cornell Univ.,
    No. 5:15-cv-322, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016)...........16

Reitman v. Ronell,
    Index No. 157658/2018 (Sup. Ct. N.Y. Cty. Aug. 16, 2018) ................14

Rolph v. Hobart & William Smith Colls.,
    271 F. Supp. 3d 386 (W.D.N.Y. 2017) ............................................22, 24

Routh v. Univ. of Rochester,
    981 F. Supp. 2d 184 (W.D.N.Y. 2013) .............................................10, 16

Russell v. New York Univ.,
    No. 1:15-cv-2185-GHW, 2017 WL 3049534 (S.D.N.Y. July 17, 2017), aff'd,
    739 F. App'x 28 (2d Cir. 2018) ...............................................14, 16, 21

Saravanan v. Drexel Univ.,
    No. CV 17-3409, 2017 WL 5659821 (E.D. Pa. Nov. 24, 2017)...............17

Soloviev v. Goldstein,
    104 F. Supp. 3d 232 (E.D.N.Y. 2015) ...................................................24

Tafuto v. N.J. Inst. of Tech.,
    Civ. A. No. 10-4521 (PGS), 2011 WL 3163240 (D.N.J. July 26, 2011)................16

National Retirement Fund v. Intercontinental Hotels Grp. Res., LLC,
    No. 1:19-cv-8018-GHW, 2020 WL 1922755 (S.D.N.Y. Apr. 21, 2020) ...........9, 11

Verdu v. Trs. of Princeton Univ.,
    Civ. A. No. 19-12484 (FLW), 2020 WL 1502849 (D.N.J. Mar. 30, 2020)...........17

Yusuf v. Vassar Coll.,
    35 F.3d 709 (2d Cir. 1994)................................................... passim

Z.J. v. Vanderbilt Univ.,
    355 F. Supp. 3d 646 (M.D. Tenn. 2018), appeal dismissed, No. 19-5061, 2019
    WL 3202209 (6th Cir. Apr. 26, 2019) ..............................................10, 11

Statutes and Codes

United States Code
 Title 28 Section 1367(c)(3)..........................................................................................21

Other Authorities

13D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
 Section 3567.3 (3rd ed. 2019)...............................................................................21, 22

https://www.nyu.edu/about/policies-guidelines-compliance/policies-and-
 guidelines/test-reporting--investigating--and-resolving-sexual-misconduct--
 rela.html (last visited on May 7, 2020) ..................................................................10

## PRELIMINARY STATEMENT

Plaintiff, John Doe, was expelled by Defendant, New York University ("NYU"), in December 2018 for sexual harassment, exploitation, stalking, and violating a no-contact directive. The evidence on which NYU based its decision included hundreds of pages of threatening and harassing text messages (e.g., "YOU ABSOLUTE BITCH[.]  I will call you Until you talk to me… I'm going to find your doorbalell[.] In five seconds I will tell [Person 1] [e]very fucking thing…. Press charges against me[;] I don't give a fuck[.]"),[1] audio and video recordings of Plaintiff, and witness testimony.  The evidence also included Plaintiff's own testimony that, among other things, he intended some of his messages to be perceived as threats and that even after NYU issued a no-contact directive, he repeatedly contacted Jane through text messages, voicemail, and in person. As Plaintiff admitted at his hearing, "I'm not going to try to deny it; I violated the no-contact directive."[2]

Nonetheless, Plaintiff filed this Complaint against NYU for violation of Title IX under "selective enforcement" and "erroneous outcome" theories.  But Plaintiff fails to allege facts that raise a plausible inference that NYU's investigation and determination were motivated by gender bias rather than the overwhelming evidence – including Plaintiff's own admissions – that he violated NYU's Sexual Misconduct, Relationship Violence, and Stalking Policy (the "Policy"). See Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994) ("We do not believe that Congress meant Title IX to impair the independence of universities in disciplining students against whom the evidence of an offense, after a fair hearing, is overwhelming.").

_____

[1] See Ex. B at 152 (emphasis and typos in original).
[2] See Ex. C, Part 4 at 1:21:50-1:22:14.

1

The three facts Plaintiff alleges to show gender bias – a single social media post that received comments, OCR investigations from more than four years ago that generated no adverse publicity, and a male graduate student's complaint against a tenured female faculty member – are a transparent attempt to find something, anything, that resembles the allegations that were deemed to raise "a minimal plausible inference of [gender] discrimination," in <u>Doe v. Columbia Univ.</u>, 831 F.3d 46, 56 (2d Cir. 2016).  But the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and Plaintiff's threadbare allegations do not "nudge[] his claims … across the line from conceivable to plausible." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 680 (2009) (internal quotation marks and citations omitted).

In addition, Plaintiff's "selective enforcement" claim fails because Plaintiff does not allege that a similarly situated female student at NYU was treated differently.  The Complaint's reliance on his alleged attempt to file a Title IX complaint against Jane Roe is misplaced, not only because Plaintiff's allegations against Jane are materially different from her allegations against him, but because Plaintiff does not allege that he attempted to file a complaint until after NYU was already investigating Jane's complaint.  For this reason alone, Jane is not similarly situated to Plaintiff in all material respects and the Complaint does not allege that NYU has permitted a female respondent to file a Title IX complaint against a male complainant under circumstances similar to Plaintiff's.

Plaintiff's "erroneous outcome" claim also fails for the independent reason that the alleged "procedural flaws" cited in the Complaint were not errors by NYU, but rather represent Plaintiff's misunderstanding of the Policy and procedures.  Moreover, assuming *arguendo* that the alleged "procedural flaws," were errors, they are so minimal that they would not create articulable doubt

about the outcome of a disciplinary hearing that included overwhelming evidence, including Plaintiff's own admissions (both in writing and at the hearing), that Plaintiff violated the Policy.

With respect to Plaintiff's state law claims, the Court should decline to exercise supplemental jurisdiction if it dismisses his Title IX claim. Furthermore, Plaintiff's promissory estoppel claim should be dismissed because he cannot demonstrate reasonable reliance with respect to an alleged promise by a student facilitator that was inconsistent with NYU's written Policy and procedures. Plaintiff's reliance on general statements in NYU's policy fails as a matter of law, and he cannot demonstrate injury by his reliance on an alleged promise that he would be permitted to file a Title IX complaint against Jane after her complaint against him was resolved. Finally, Plaintiff's NYCHRL claim fails for the same reasons as his Title IX claims.

## STATEMENT OF FACTS[3]

### A.    Background

Plaintiff entered into a consensual relationship with Jane Roe in 2015, when both students were seniors in high school. Comp. ¶¶ 18, 20-21. Jane's parents did not approve of the relationship. Id. ¶ 26. As a result, the couple created aliases on social media to communicate. Id. ¶ 29.

In 2016, Plaintiff enrolled as a freshman at a university in Connecticut while Jane matriculated at NYU. Id. ¶ 32-34. Plaintiff alleges that in October 2016, Jane told him that she had been raped by four NYU students. Id. ¶ 38. He claims that he visited her 4-5 times at NYU

---

[3] Unless otherwise indicated, the allegations in the Complaint are assumed to be true for purposes of this motion to dismiss. NYU reserves the right to contest any and all of the allegations in the Complaint if the motion to dismiss is denied.

during the 2016-17 academic year to provide emotional support.  Id. ¶ 45.  Plaintiff describes his

relationship with Jane during this period as "consensual [and] intimate."  Id. ¶ 67.

In 2017, Plaintiff applied to NYU and was admitted as a transfer student.  Id. ¶ 72.  In

spring 2018, Jane began to tell Plaintiff's friends to stay away from him and accused him of "doing

bad things to Jane."  Id. ¶¶ 84-85.  Jane's behavior made Plaintiff "confused and angry" and he

sent her messages that he wanted to talk with her.  Id. ¶¶ 86, 90.

On April 22, 2018, NYU issued a no-contact directive between Plaintiff and Jane based on

"a report [detailing] an incident [that] occurred on April 22, 2018 through electronic means of

communication," during which Plaintiff allegedly "initiated multiple communications which have

made the other person uncomfortable."  Id. ¶¶ 96-98; see Ex. B at 249.  The directive stated

> While this matter is being resolved … you are not to initiate or
> facilitate any form of communication or interaction with [Jane Roe],
> including those made through virtual means (text messages, e-mail,
> Facebook, Twitter, other social networking websites, etc.) or by 3rd
> parties on your behalf. Any such attempts to do so may be construed
> as harassment and will subject you to disciplinary action.

Ex. B at 249.

In May 2018, NYU notified Plaintiff that Jane had filed four allegations of sexual

harassment against him.  Comp. ¶ 104.  NYU offered Plaintiff a facilitator, which he accepted, and

Allen McFarlane was assigned to Plaintiff's case.  Id. ¶ 108.  Plaintiff alleges that in June 2018,

McFarlane told Plaintiff, "Under no circumstances will you be expelled."  Id. ¶ 109.

In July 2018, Plaintiff met with NYU's Title IX investigator, Samuel Hodge, to discuss

Jane's allegations and Plaintiff's response.  Id. ¶ 111.  Plaintiff was provided the opportunity to

submit his own evidence to the investigator.  Id. ¶¶ 116-117.

Plaintiff went to Australia in August 2018 to study abroad for the Fall semester.  Id. ¶ 118.

"On October 23, 2018, John received NYU's draft investigation summary report, which outlined

4

the charges, interviews conducted, and evidence gathered." <u>Id.</u> ¶ 119.  Plaintiff alleges he was
"shocked by the sheer volume of cherry-picked text messages and WhatsApp messages provided
by Jane." <u>Id.</u>  The investigation summary report ("ISR") included "nine separate allegations
against John for sexual harassment, sexual assault, sexual exploitation, stalking and violation of a
no-contact directive" and "hundreds of pages" of evidence.  <u>Id.</u> ¶ 122-23.  Plaintiff submitted a
written response to the allegations and evidence in the ISR on October 22, 2018.  Ex. B at 324-
339.

### B.    Investigation Summary Report

The evidence in the ISR consisted of witness interviews, text messages, audio and video
recordings, including the following messages from Plaintiff to Jane:

- **March 23, 2018:** "I'm sorry I said I didn't assault you[.] I did[.] I hurt you[.] I bullied you[.] And I assaulted you[.] And I'm sorry[.]" <u>Id.</u> at 140.

- **March 31:** "I'm sorry for hurting you time and time again. Lying to you assaulting you. Making you cry threatening you bullying you and everything. You're right I'm not a good person and I self pity myself for things that don't matter." <u>Id.</u> at 145.

- **April 2:** "You bloody FUCKINF Bitch[.] I FUCKING HATE TOU[.] I WALKED HERE AND YOU WALKED BACK[.] NOGEY THE FUCK UP OR I WILL TEXT YOU THE NORMAL WAY YOU BITCH[,] YOU ABSOLUTE BITCH[.] I will call you Until you talk to me… I'm going to find your doorbalell[.] In five seconds I will tell [Person 1] [e]very fucking thing [i]f you don wake up [a]nd talk to me [i]n 10 minutes… I'm giving you 5 minutes [a]nd [Person 1] will kno everything[; y]our parents will know everything[.] Press charges against me[;] I don't give a fuck[.]" <u>Id.</u> at 152 (emphasis and typos in original).

Even after Plaintiff knew that Jane no longer wanted to be friends, <u>see</u> <u>id.</u> at 12; Ex. C, Part
4 at 50:05-50:53, he repeatedly insisted that she speak with him, alternately using threats and pleas.
<u>See e.g.,</u> Ex. B at 165-184 (hundreds of text messages sent between April 9 and April 21); <u>id.</u> at
160-61 & Att. B at April 8 Voicemail ("[I]f this is how it's going to go down, and you're not going
to talk to me, then be warned I'm not going to be an easy person to deal with."); <u>id.,</u> Att. B at April
8th Video A ("I'm not leaving you alone unless you promise to let me finish it.  You have to

choose; you're either going to talk to me or …."); id. at 209 ("[I]f you thought what I did earlier on would cause problems[, y]ou're in for a real hell of a ride[.] I'll give you till 1[.] After that [i]t'll go bad[.]").

In one video taken by Plaintiff on April 21, he records Jane crying on the floor as Plaintiff says into the camera "she laughed when you guys were there and I was hurt and now she's crying… where's the laughter?  This is a high stress situation … why isn't she laughing?  … she won't laugh now, she'll just cry."  Id., Att. B at April 21 Video at 00:55-01:27.

The following day, Plaintiff called Jane repeatedly and sent her dozens of text messages apologizing for his conduct the night before.  Id. at 213-221.  However, when Jane told him to "[s]top trying to fix things … [a]nd don't talk to me," Plaintiff responded that he was "trying to remain calm yaar but if you act like this nothing will be solved … [I]f you procede to end off just like that don't you see how that can lead to anger?"  Id. at 216.

On the evening of April 22, Jane filed a complaint with NYU, which issued a no-contact directive instructing Plaintiff and Jane

> not to initiate or facilitate any form of communication or interaction with [each other], including those made through virtual means (text messages, e-mail, Facebook, Twitter, other social networking websites, etc.) or by 3rd parties on your behalf. Any such attempts to do so may be construed as harassment and will subject you to disciplinary action.

 Id. at 249; Comp. ¶¶ 96-98.

Undeterred, Plaintiff violated the no-contact directive and contacted Jane immediately and repeatedly over the next several days.  See Ex. B at 234 (posts by Plaintiff to Jane's Facebook account on April 22 and April 27); id., Att. B at April 29 Voicemail A ("I know I'm not supposed to contact you right now and I hope you won't use this against me, but I just had to apologize. … I shouldn't have ever done that to you."); id., Att. B at April 29 Voicemail B (telling Jane she

6

needs to contact him because he "made a big mistake" but declining to elaborate "because I don't know if you're going to use this message against me or not."); id. at 295-301 (NYU Public Safety report of Plaintiff approaching Jane in NYU residence hall); id. at 235-238 (photographs taken by Jane of Plaintiff allegedly following her in Washington Square Park); see also id. at 230 (text message to Jane's mother that Jane "may be under the influence of drugs or alcohol" and that she has "had some self harmful tendencies.").

In his written response to the draft ISR, Plaintiff does not dispute the majority of Jane's allegations against him or the evidence presented.  Ex. B at 324-326.  Indeed, with respect to his violation of the no-contact directive on April 29, Plaintiff admits that he sent a message "before I made contact in person.  I believed I could fix things with her as I had known her for so long. Emotions betrayed logic and I contacted her."  Id. at 325.

## C.     Sexual Misconduct Hearing

On December 10, 2018, NYU conducted a nine-hour hearing before a single Adjudicator. Id. ¶ 144.

During the hearing the Adjudicator heard testimony from the Investigator, Jane, Plaintiff, and two witnesses.  See Ex. C.  In accordance with NYU's procedures for sexual misconduct hearings, both Jane and Plaintiff were permitted to propose questions for the Adjudicator to ask. Id.; Ex. A. at 9.

As with his written response to the allegations in the ISR, Plaintiff does not dispute the majority of the claims or evidence presented at the hearing and explicitly admits, among other things, that:

- He understood by April 2, 2018, that Jane did not want to be friends with him anymore. Ex. C, Part 4 at 50:05-50:53;

- He was so upset on April 21, 2018, that he could not control himself and was threatening to expose his past relationship with Jane to her parents.  Id., Part 4 at 1:02:45-1:04:37;

- He received the no-contact directive on April 22, 2018, and sent Jane a Facebook message less than 30 minutes later.  Id., Part 4 at 1:15:20-1:17:14;

- He left Jane five voicemail messages after receiving the no-contact directive.  Id., Part 4 at 1:17:27-1:17:42;

- He contacted Jane's parents after receiving the no-contact directive.  Id., Part 4 at 1:20:57-1:21:47;

- He "lost it" on April 29, when he encountered Jane in a residence hall lounge, "I'm not going to try to deny it; I violated the no-contact directive."  Id., Part 4 at 1:21:50-1:22:14.

At the conclusion of his testimony, Plaintiff praised the Adjudicator for "ask[ing] all of the right questions" and "guid[ing] [Plaintiff] into giving what I believe the be the best story; the best perspective of his[self] as to what occurred."  Id., Part 5 at 19:12-19:24.  During his closing statement, Plaintiff similarly thanked the Office of Student Conduct for making accommodations for the time difference to Australia and "making this a fair … hearing."  Id., Part 5 at 1:04:38-1:05:02.

### D.    Hearing Decision and Appeal

In December 2018, the Adjudicator found

> overwhelming evidence that the Respondent has engaged in an extended pattern of conduct that would cause a reasonable person in the position of the Complainant to experience fear for their safety, substantial emotional distress, significant mental suffering, and anguish. This behavior has included sexual harassment, sexual exploitation and stalking as defined under the [Policy].

Comp. ¶¶ 148-149; Ex. D at 6.

Based on "the threatening and excessive nature of the Respondent's conduct, the repeated and blatant disregard of the University's no-contact directive, and most notably, the unsettling and egregious pattern of stalking behaviors, which alone merit the sanctions described below," the

8

Adjudicator expelled Plaintiff from NYU and ordered that a notation be placed on his transcript. Ex. D at 7.

Plaintiff appealed the Hearing Decision on the basis of new evidence, procedural error, and disproportionate punishment.  Comp. ¶ 206.  On March 8, 2019, NYU's Appeal Panel affirmed the Adjudicator's decision.  Id. ¶ 207.

## MATERIALS TO BE CONSIDERED

As this Court recently explained,

> In determining the adequacy of a claim under Rule 12(b)(6), a court is generally limited to facts stated on the face of the complaint.  However, extrinsic documents may be considered as part of the pleadings if they either are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint.  To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents. For a document to be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint.

National Retirement Fund v. Intercontinental Hotels Grp. Res., LLC, No. 1:19-cv-8018-GHW, 2020 WL 1922755, at *3–4 (S.D.N.Y. Apr. 21, 2020) (citations omitted).

NYU's Motion to Dismiss includes four exhibits that are incorporated by reference and integral to the Complaint: (A) NYU's procedures for "Reporting, Investigating, And Resolving Sexual Misconduct, Relationship Violence, and Stalking – Complaints Against Students" (the "Procedures") (see Ex. A); (B) the ISR (see Ex. B); (C) the audio recording of Plaintiff's hearing (the "Hearing Audio") (see Ex. C); and (D) the Hearing Decision (see Ex. D) (collectively, the "Exhibits").

The Complaint refers to the Exhibits repeatedly and substantially.  See Comp. ¶¶ 159, 167, 255, 256, 275, 284 285 (referring to Procedures); id. ¶¶ 119, 122-125, 128, 166, 261 (referring to ISR and/or evidence contained therein); id. ¶¶ 130, 144-48, 161, 166, 177, 194, 195, 261 (referring

to Hearing Audio and/or evidence contained therein); id. ¶¶ 149, 158-59, 167, 181, 183, 189, 207, 261 (referring to Hearing Decision).   In addition, Plaintiff had notice of the Exhibits as the Procedures are publicly available on NYU's website,[4] the ISR was provided to Plaintiff prior to the hearing, see Miller Decl. at ¶ 4, Plaintiff was present in real-time for the Hearing Audio, and received a copy of the Hearing Decision, Comp. ¶¶ 144-48.

Moreover, the Exhibits are integral to the Complaint because they represent the very procedures, evidence, and outcome that Plaintiff is challenging in his erroneous outcome claim, the essence of which is that "[n]umerous evidentiary and procedural errors throughout NYU's investigation, hearing and appeal process resulted in an erroneous outcome based on a distorted conception of the facts."  Comp. ¶ 261.  As the Second Circuit held in Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991), exhibits that "are the very documents that are alleged to contain the various misrepresentations or omissions" are integral to the Complaint:

> [A] plaintiff whose complaint alleges that such documents are legally deficient can hardly show prejudice resulting from a court's studying of the documents. Were courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure.

Id.

Not surprisingly, Federal courts routinely consider documents exactly like the Exhibits when evaluating motions to dismiss Title IX claims arising out of disciplinary proceedings.  See e.g., Doe v. Syracuse Univ., No. 5:19-cv-00190 (BKS/ATB), 2020 WL 871250, at *10 (N.D.N.Y. Feb. 21, 2020); B.B. v. The New Sch., No. 17 Civ. 8347 (AT), 2018 WL 2316342, at *2 (S.D.N.Y. Apr. 30, 2018); Routh v. Univ. of Rochester, 981 F. Supp. 2d 184, 191 (W.D.N.Y. 2013); Z.J. v.

---

[4] See https://www.nyu.edu/about/policies-guidelines-compliance/policies-and-guidelines/test-reporting--investigating--and-resolving-sexual-misconduct--rela.html (last visited on May 7, 2020).

Vanderbilt Univ., 355 F. Supp. 3d 646, 660 n.2 (M.D. Tenn. 2018), appeal dismissed, No. 19-5061, 2019 WL 3202209 (6th Cir. Apr. 26, 2019).

## PLEADING STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

While "[t]he plausibility standard is not akin to a 'probability requirement,' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Determining whether a complaint states a plausible claim is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Nungesser v. Columbia Univ., 244 F. Supp. 3d 345, 361 (S.D.N.Y. 2017) (quoting Iqbal, 556 U.S. at 679).

In evaluating a 12(b)(6) motion, a court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Id. at 361. However, "when any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true." National Retirement Fund, 2020 WL 1922755, at *3–4. Where a plaintiff does not "cast doubt on the authenticity or veracity" of such materials, and cannot explain a "conflict between his allegations and the exhibits," the "contradicted allegations are implausible" and "will not defeat a motion to dismiss." B.B., 2018 WL 2316342, at *6.

11

## ARGUMENT

## I.   PLAINTIFF'S TITLE IX CLAIM SHOULD BE DISMISSED

Title IX "bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." Yusuf, 35 F.3d at 715.

> Plaintiffs attacking a university disciplinary proceeding on grounds of gender bias can be expected to fall generally within two categories. In the first category, the claim is that the plaintiff was innocent and wrongly found to have committed an offense. In the second category, the plaintiff alleges selective enforcement. Such a claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.

Id.

"Most importantly, under either theory '[a] plaintiff must … allege particular circumstances suggesting that gender bias was a motivating factor… .'" Doe v. Haas, No. 19-CV-0014 (DRH)(AKT), 2019 WL 6699910, at *13 (E.D.N.Y. Dec. 9, 2019) (quoting Yusuf, 35 F.3d at 715). [I]n the case of university disciplinary cases…[s]uch allegations might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." Yusuf, 35 F.3d at 715.

"[A] complaint under Title IX, alleging that the plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent … if it pleads specific facts that support a minimal plausible inference of such discrimination." Columbia, 831 F.3d at 56.[5]

---

[5] Given that NYU has already given its "justification for the adverse action," in the form of the Hearing Decision, Plaintiff is arguably required under the McDonnell Douglas framework to plead facts that would "demonstrate that the proffered reason was not the true reason (or in any event not the sole reason) for the … decision." See Columbia, 831 F.3d at 54 (quoting Littlejohn v. City of New York, 795 F.3d 297 (2d Cir. 2015)).

A.      **Plaintiff Fails to Plead Specific Facts that Support A Minimal Plausible Inference of Gender Bias**

The Complaint makes three allegations that purport to demonstrate NYU's "[g]ender [b]ias [a]gainst [m]ales."  Comp. ¶¶ 228-238.  However, none include "specific facts that support a minimal plausible inference of [gender] discrimination."  <u>Columbia</u>, 831 F.3d at 56.

First, Plaintiff alleges that "NYU was under pressure to exercise more vigilance against male respondents" because in August 2018, a female NYU student "issued a series of social media posts claiming that NYU had failed to sanction two male students for engaging in nonconsensual sex with her."  Comp. ¶¶ 228, 229.  However, in dismissing a recent Title IX claim against NYU, this Court held that *the exact same social media post* was "insufficient to support even a minimal plausible inference of gender bias because Plaintiff does not allege that these posts were circulated to the press or that the Defendants' were aware these posts existed."  <u>Doe v. New York Univ.</u>, No. 1:19-cv-00744 (ALC), 2020 WL 564264, at *10 (S.D.N.Y. Feb. 5, 2020).[6]

Second, Plaintiff alleges that the United States Department of Education's Office for Civil Rights ("OCR") has "opened several investigations related to Title IX violations committed by NYU," citing two investigations that are more than four years old.  Comp. ¶¶ 236-238.  Unlike in <u>Columbia</u>, 831 F. 3d at 57, however, Plaintiff does not allege that the investigations resulted in any criticism of NYU, let alone "substantial criticism … both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging

---

[6] Plaintiff's response to NYU's pre-motion conference letter asserts that NYU was aware of the social media post by January 27, 2019, because it was cited in another lawsuit filed on January 25.  Pl.'s Pre-Motion Conf. Letter at 2 n.2 (Dkt. #17).  However, the mere reference to the social media post in a lawsuit filed by another male Respondent (which was ultimately dismissed) hardly gives rise to a plausible inference of gender bias by NYU against male Respondents.  Moreover, NYU's investigation, hearing and decision were completed in December 2018 and the Complaint makes no factual allegations pertaining to gender bias in NYU's appeal process.

sexual assault by male students," that could raise a plausible inference of gender bias three years later.

Moreover, courts have repeatedly held that an allegation that the school faced "external pressure … to conform with [OCR] guidance … is insufficient in itself to support any inference that the school's actions in a particular case were motivated at least in part by gender bias." Doe v. Univ. of Denver, 952 F.3d 1182, 1192 (10th Cir. 2020) (collecting cases); see, e.g. Doe v. Trs. of Princeton Univ., No. 3:19-cv-07853-BRM-TJB, 2020 WL 967860, at *3 (D.N.J. Feb 28, 2020) ("[P]ressure to comply with Title IX does not equate with a failure to comply with Title IX." (citations omitted)).

Third, the Complaint alleges that "similarly situated female respondents facing allegations of sexual harassment have received more lenient sanctions than male respondents," citing NYU's decision to suspend a female professor, Avital Ronell, for one academic year after finding her responsible for sexual harassment. Comp. ¶¶ 232-235. The Ronell matter involved allegations by a graduate student that a tenured faculty member abused her position as his academic advisor to force him into unwanted sexual interactions. See Complaint, Reitman v. Ronell, Index No. 157658/2018 (Sup. Ct. N.Y. Cty. Aug. 16, 2018). As a tenured faculty member, Ronell was not "similarly situated" to Plaintiff and her conduct was investigated and adjudicated by NYU under different procedures. See Russell v. New York Univ., No. 1:15-cv-2185-GHW, 2017 WL 3049534, at *32 (S.D.N.Y. July 17, 2017), aff'd, 739 F. App'x 28 (2d Cir. 2018) ("A plaintiff … must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.").

In sum, Plaintiff's allegations fall short of the claims that gave rise to a "minimal plausible inference of [gender bias]" in Columbia, 831 F.3d 46. The allegations in Columbia were that (a)

"both the investigator and the panel declined to seek out potential witnesses Plaintiff had identified as sources of information favorable to him"; (b) "the investigator and the panel failed to act in accordance with University procedures designed to protect accused students"; (c) "the investigator, the panel, and the reviewing Dean, furthermore, reached conclusions that were incorrect and contrary to the weight of the evidence"; (d) "during the period preceding the disciplinary hearing, there was substantial criticism of the University, both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students"; (e) "that the University's administration was cognizant of, and sensitive to, these criticisms, to the point that the President called a University-wide open meeting with the Dean to discuss the issue"; and (f) Columbia was "severely criticized in the student body and in the public press" and that investigator "had suffered personal criticism in the student body for her role in prior cases in which the University was seen as not taking seriously the complaints of female students." Id. at 56-58.

By contrast, Plaintiff does not allege that NYU declined to seek out potential witnesses; does not allege substantial or severe criticism of NYU in the student body or public media accusing NYU of not taking seriously complaint of female students (a single social-media post notwithstanding); does not allege that NYU's administration was cognizant of, or sensitive to any criticism, let alone to the point where action was taken from which one could plausibly infer pressure to favor female complainants over male respondents; and does not make any allegations with respect to the Investigator or Adjudicator from which one could plausibly infer gender bias. See Doe v. Columbia Coll. Chicago, 933 F.3d 849, 855-56 (7th Cir. 2019) (where plaintiff alleged heightened national attention on sexual misconduct but was "provided with the opportunity to review the investigative materials; was given multiple opportunities to submit evidence; presented

affidavits signed by witnesses; and submitted questions to be asked of Roe on cross-examination"
he failed to allege the "particularized 'something more,' that is required to survive a motion to
dismiss."); see also Princeton, 2020 WL 967860, at *3 ("Absent from Doe's complaint is mention
of any statements or conduct by administrators involved in Doe's discipline specifically suggesting
any gender bias.") (citation omitted).

### B.   Plaintiff's Selective Enforcement Claim Fails Because Jane Roe is Not A "Similarly Situated Female Student"

To state a "selective enforcement" claim, a plaintiff "must show: 1) similarly situated
female students at NYU were treated differently during investigations and disciplinary proceedings
concerning sexual assault; and 2) the Defendant[] had the requisite discriminatory intent." New
York Univ., 2020 WL 564264, at *6; see Doe v. Princeton Univ., No. 17-cv-1614 (PGS), 2018
WL 2396685, at *5 (D.N.J. May 24, 2018); Prasad v. Cornell Univ., No. 5:15-cv-322, 2016 WL
3212079, at *18 (N.D.N.Y. Feb. 24, 2016); see also Russell, 2017 WL 3049534, at *32.

Plaintiff's citation to Jane Roe as a "similarly situated … female student" is inapposite
because he does not allege that he attempted to file a Title IX complaint against Jane until after
she had filed a complaint against him.  Comp. ¶¶ 220-222, 247.  See Routh, 981 F. Supp. 2d at
211-12 (holding that female complainant was not similarly situated to male respondent who
attempted to file cross-complaint against her); Tafuto v. N.J. Inst. of Tech., Civ. A. No. 10-4521
(PGS), 2011 WL 3163240 at *3 (D.N.J. July 26, 2011) (holding that plaintiff's allegation that
university failed to investigate his allegations of sexual harassment against his female accuser was
insufficient to support "selective enforcement" claim because "unlike Plaintiff, the female student
was not already under investigation by" the university).

In addition, the substance of Plaintiff's allegations against Jane are materially different
from Jane's allegations against Plaintiff.  Plaintiff alleges that "Jane bullied John by spreading

false statements about him to his friends," Comp. ¶ 215, "physically assaulted John by punching him," id. ¶ 216, "threatened John with further physical violence," id. ¶ 217, and "destroyed John's property by deleting messages from John's various social media accounts," id. ¶ 218.  Regardless of the veracity or seriousness of these allegations, they are materially different from the allegations Jane made against Plaintiff, as summarized in the ISR.  See Verdu v. Trs. of Princeton Univ., Civ. A. No. 19-12484 (FLW), 2020 WL 1502849, at *6 (D.N.J. Mar. 30, 2020) ("There is no suggestion that Im engaged in sexual harassment, sounding the death knell for Plaintiff's claim that Im is an appropriate comparator."); Saravanan v. Drexel Univ., No. CV 17-3409, 2017 WL 5659821, at *6 (E.D. Pa. Nov. 24, 2017) (holding that female student disciplined for sexual harassment was not a similarly situated comparator to male student disciplined for sexual harassment and stalking). Moreover, Plaintiff's allegations against Jane are only relevant to the issue of gender bias by NYU to the extent Plaintiff made his allegations known to NYU.  In this respect, the differences between Plaintiff and Jane are readily apparent from the ISR and the Hearing Audio, which include hundreds of pages of evidence, voicemail recordings, and videos that demonstrate Plaintiff's violations of the Policy and little to no evidence pertaining to his allegations against Jane.

C.   **Plaintiff's Erroneous Outcome Claim Fails Because He Fails to Cast Articulable Doubt on The Accuracy of The Outcome of The Disciplinary Proceeding**

"Plaintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding. If no such doubt exists based on the record before the disciplinary tribunal, the claim must fail."  Yusuf, 35 F.3d at 715.  A complaint satisfies its burden in this regard, where it "allege[s] particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason

17

to doubt the veracity of the charge.  A complaint may also allege particular procedural flaws affecting the proof."  Id.  However, "absent a claim of selective enforcement," Title IX does not "impair the independence of universities in disciplining students against whom the evidence of an offense, after a fair hearing, is overwhelming."  Id.

Here, Plaintiff's erroneous outcome claim is predicated on six alleged "procedural flaws in NYU's Title IX process."  See Plaintiff's Pre-Motion Conference letter at 2 (Dkt. #17).  The first is that NYU allegedly failed to advise him of all the allegations and evidence Jane had submitted to the Investigator prior to sending him the draft ISR.  See Complaint ¶¶ 119-123.  Even if this allegation were true, it would not be inconsistent with NYU's Title IX Procedures which state

> At the *conclusion of the Investigation*, the Investigator will prepare an Investigation report that summarizes the information gathered. Both the Complainant and the Respondent will be given the opportunity to review the draft Investigation report, submit any additional comment or information to the Investigator, and identify any additional information or witnesses.

Ex. A at 6 (emphasis added).

The Procedures do *not* require the Investigator to present all the allegations and evidence to the parties prior to the conclusion of the investigation (which would be impossible because the investigation, by definition, is ongoing).  In accordance with the Procedures, id. at 8, Plaintiff received all of the allegations and evidence collected during the Investigation prior to his hearing. Comp. ¶ 119; Miller Decl. at ¶ 4.

Second, Plaintiff alleges he was "surprised to see interview statements from Jane's witnesses attesting to John's character."  Comp. ¶ 128.  NYU's Procedures state that "[w]itnesses cannot participate *solely* to speak about an individual's character; they must have information deemed relevant to the Investigation by the Investigator."  Ex. A at 5 (emphasis added).  Both witnesses interviewed by the Investigator were eyewitnesses to Plaintiff's violation of the no-

contact directive on April 29 and therefore had information highly relevant to the Investigation. They did not speak solely (or even mostly) about Plaintiff's character.  Ex. C, Part 5 at 29:12-30:46; 39:12-44:22.  Furthermore, Plaintiff does not, and would have no basis to, allege that the witnesses' statements about Plaintiff's character played any role in the outcome of his adjudication.

Third, Plaintiff alleges that NYU misapplied the Policy because "[t]here was nothing 'sexual' about John's messages to Jane."  Comp. ¶ 157.  The Policy defines Sexual Harassment to include "unwanted conduct of a sexual nature," that "has the purpose or effect of unreasonably interfering with an individual's learning, working, or living environment."  Ex. B, Att. A at 6-7.  By his own account, Plaintiff and Jane had been in an intimate relationship and "Jane continued to visit John in his room every night until late March/early April 2018."  Comp. ¶¶ 67, 152.  The Adjudicator did not misconstrue the Policy in concluding that the "the repeated unwelcome contact from the Respondent about their prior dating relationship," constituted Sexual Harassment.  Ex. D at 4.[7]

The fourth alleged "procedural flaw" cited in the Complaint is "NYU's Lack of Jurisdiction & Misapplication of Sexual Exploitation Policy."  Comp. ¶¶ 160-167.  Plaintiff's claim is that the Adjudicator erred in finding Plaintiff was responsible for sexual exploitation because he only admitted to taking pictures of Jane's cleavage while she was sleeping in 2016, prior to his enrollment at NYU.  This is not a procedural error because (a) the Policy applies to conduct that "occurs outside the context of an NYU employment or education program or activity, but … has continuing adverse effects on … any NYU … educational program or activity," Ex. B, Att. A at

---

[7] In addition, the Policy "and its related procedures may also, at NYU's discretion, apply to alleged violations by the Respondent of other NYU policies if, in NYU's judgment, those other allegations are directly related to the reported Prohibited Conduct."  Ex. B, Att. A at 2.

2; (b) NYU "reserves the right to take action against a Covered Person who commits an act of Prohibited Conduct outside the scope of this policy," id., Att. A at 3; and (c) Plaintiff admitted during the hearing to taking pictures of Jane while she was sleeping on *two occasions*, once before he had enrolled at NYU and once after,  Ex. C, Part 4 at 27:05 – 28:30.

Fifth, Plaintiff claims that NYU failed to apply the "Reasonableness" standard in the Policy's definition of "[s]talking." Comp. ¶¶ 168-181.  The basis for this claim, however, appears to be simply Plaintiff's disagreement with the Adjudicator's conclusion that the hundreds of messages and voicemails he left for Jane – including his threats that she was "in for a real hell of a ride" and he was "not going to be an easy person to deal with" – would cause a "reasonable person to fear bodily injury or experience substantial emotion distress."  Ex. B at 209, id., Att. B at April 8 Voicemail; Comp. ¶ 168.  Indeed, upon close reading, the Complaint does not actually even allege that Jane's fear and emotional distress were unreasonable, but rather it attempts to rationalize Plaintiff's conduct by alleging that "[a] reasonable person would have objected to Jane making false statements."  Comp. ¶ 176.

The final "procedural error" alleged in the Complaint is "NYU's Failure to Enforce its Sanction Policy," Comp. ¶¶ 182-89, because Plaintiff's was expelled before his appeal had concluded.  This was not a procedural error because neither the Policy nor the Procedures require that imposition of a sanction be stayed pending appeal.  In addition, even the Complaint's own misstatement of the Policy alleges that "*unless otherwise indicated by the Adjudicator*, the sanction will not be imposed until after the appeal process has concluded."  Id. ¶ 182 (emphasis added). While the Adjudicator's decision, which was issued in December 2018, initially held the sanction in abeyance to allow Plaintiff to complete the Fall 2018 semester, NYU declined to extend the stay and allow Plaintiff to begin Spring classes after Plaintiff requested and was given an extension of

time to submit his appeal.  Id. ¶¶ 183-186.  Plaintiff does not, and cannot, point to any policy that prohibits the Adjudicator from exercising such discretion.

Regardless, the Complaint fails to cast articulable doubt on the accuracy of the outcome of the disciplinary proceeding against Plaintiff because there was overwhelming and undisputed evidence that Plaintiff violated the Policy, including hundreds of text messages, voicemails, video recordings, testimony from Jane and two witnesses, *and Plaintiff's own admissions at the hearing*. See Yusuf, 35 F.3d at 715 ("We do not believe that Congress meant Title IX to impair the independence of universities in disciplining students against whom the evidence of an offense, after a fair hearing, is overwhelming.").  Indeed, it is difficult even to conceive how Plaintiff could cast doubt on the accuracy of NYU's finding that he violated the April 22 no-contact directive given his own admissions, in writing and at the hearing, that he did so repeatedly.

## II.   PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED

Plaintiff's Third and Fourth Causes of Action, for Promissory Estoppel and Gender Discrimination under the New York City Human Rights Law ("NYCHRL") respectively, should also be dismissed for two reasons. First, if the Court dismisses Plaintiff's Title IX claims, it should decline to exercise supplemental jurisdiction over the pendent claims. Second, Plaintiff's pendent claims lack merit, and should be dismissed because they fail to state a claim.

### A.   The Court Should Decline to Exercise Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C.A. § 1367(c)(3)).  Courts have broad discretion when deciding whether to exercise such jurisdiction but are generally discouraged from doing so in the name of comity, respect for state tribunals, and to avoid needless decisions of state law.  See e.g., Russell, 2017 WL 3049534, at *39–40; see also

21

13D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3567.3 (3rd ed. 2019).  Declining to exercise supplemental jurisdiction is even more appropriate where the claims over which the Court had original jurisdiction are dismissed early in the proceedings.  See e.g., Klein & Co. Futures, Inc. v. Bd. Of Trade of City of N.Y., 464 F.3d 255, 262 (2d Cir. 2006).

### B.    Plaintiff's Promissory Estoppel Claim Should be Dismissed

To establish a claim for promissory estoppel, a plaintiff must establish "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of the reliance."  Rolph v. Hobart & William Smith Colls., 271 F. Supp. 3d 386, 408 (W.D.N.Y. 2017); see also Feibleman v. Columbia Univ., No. 19-CV-4327 (VEC), 2020 WL 882429, at *17 (S.D.N.Y. Feb. 24, 2020). Plaintiff's Promissory Estoppel claim is predicated on three alleged promises: (i) the alleged statement by Allen McFarlane, a student support facilitator, that Plaintiff would not be expelled, Comp. ¶¶ 109, 287-296; (ii) certain elements the Policy, id. ¶¶ 284-86; and (iii) an alleged promise by NYU's Title IX coordinator that Plaintiff could file a Title IX complaint against Jane once Jane's Title IX complaint against him was resolved, id. ¶ 297.  See Plaintiff's Pre-Motion Conference letter at 2 (Dkt. #17).

Plaintiff alleges that he "prepared his defense based upon Advisor McFarlane's promise that he would not be expelled under any circumstances," and "John's reliance on Advisor McFarlane's promise led to the preparation of an inadequate defense to the charges levied against him."  Comp. ¶¶ 293-94.  Even assuming, *arguendo*, that McFarlane did tell Plaintiff he would not be expelled, Plaintiff's failure to prepare an adequate defense does not constitute *reasonable* reliance.

First, the Policy expressly states that "A student or Employee determined by NYU to have committed an act of Prohibited Conduct in violation of this policy is subject to disciplinary action, up to and including separation from NYU," and that "[v]iolating the terms of a protective measure, including but not limited to no contact … directives, is a violation of this policy and will subject the person who violates the protective measure to additional charges and sanctions under this policy." Ex. B, Att. A at 3-4.  In addition, the Procedures state that "The potential sanctions for a violation of the Policy … include: Warning, Censure, Disciplinary Probation, Restitution, Suspension of Privilege, Suspension from NYU, No Contact Directive, Dismissal from NYU, and Transcript Notation." Ex. A at 10.  Reliance upon oral representations that are inconsistent with written terms is unreasonable as a matter of law.  See e.g., PHL Variable Ins. Co. v. Mahler, 321 F. Supp. 3d 392, 403 (E.D.N.Y. 2018); Lombroso v. JPMorgan Chase & Co., 40 A.D.3d 289, 289–90 (1st Dep't 2007) (holding that plaintiff's claim that he reasonably relied upon the representation of defendant's human resources officer even though applicable terms of the contract included contrary provisions was not tenable).

Moreover, Plaintiff does not allege that NYU promised he would not be subject to any of the other possible sanctions listed in the Policy and procedures.  Given the significant implications that even a lesser sanction, such as suspension from NYU, would have had, Plaintiff's "preparation of an inadequate defense to the charges levied against him," Comp. ¶ 293, was unreasonable.  In addition, McFarlane allegedly made the promise in June 2018, before NYU had investigated Jane's allegations.  Reliance on an alleged reassurance from a facilitator who could not have known at the time what evidence would be collected against Plaintiff in the investigation, is not objectively reasonable.

Second, Plaintiff's citation to NYU's policies and procedures as the basis for his promissory estoppel claim fails as a matter of law. In <u>Rolph</u>, 271 F. Supp. 3d at 408, the court rejected an almost identical claim on the grounds that a university's policies form an implied contract, and "[w]here an enforceable contract exists, the doctrine of promissory estoppel is inapplicable and a plaintiff cannot recover under this theory."

Third, assuming *arguendo*, that NYU had promised Plaintiff that he could file a Title IX complaint against Jane after the resolution of her Title IX complaint against him was resolved, Plaintiff cannot show that he sustained "an injury … by reason of [his] reliance." <u>Id.</u> The allegation that he was "denied the ability to meaningfully present evidence that would have exonerated him of the charges levied against him," Comp. ¶ 303, is a conclusory statement that is not supported by any specific factual allegations suggesting *how* the alleged promise denied Plaintiff the ability to present evidence. In fact, the Complaint concedes that Plaintiff could and did submit his own evidence to the Investigator, Comp. ¶¶ 116-117. Moreover, following his testimony at the hearing Plaintiff praised the Adjudicator for "ask[ing] all of the right questions" and "guid[ing] me into giving what I believe the be the best story; the best perspective of [my side] as to what occurred." Ex. C, Part 5 at 19:12-19:24.

## C. Plaintiff's NYCHRL Claim Fails for the Same Reasons as his Title IX Claims

To survive a motion to dismiss under the NYCHRL, a party must "allege facts on the basis of which a court can find differential treatment—*i.e.,* the plaintiff was 'treated less well–because of a discriminatory intent." <u>Soloviev v. Goldstein,</u> 104 F. Supp. 3d 232, 250 (E.D.N.Y. 2015). "The plaintiff still bears the burden of showing that the conduct is *caused by* a discriminatory motive." <u>Id.</u>; <u>see also</u> <u>Gonzalez v. City of New York</u>, 377 F. Supp. 3d 273, 300 (S.D.N.Y. 2019) (dismissing disability discrimination claim under the NYCHRL because the plaintiff "fail[ed] to

allege facts that lead to the inference that his disability was a motivating factor for the allegedly discriminatory conduct").  Here, Plaintiff's NYCHRL claim fails for the same reasons as his Title IX claims: he fails to include "specific facts that support a minimal plausible inference of [gender] discrimination."  <u>Columbia</u>, 831 F.3d at 56.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice in its entirety.

May 11, 2020                     **PILLSBURY WINTHROP SHAW PITTMAN LLP**

   _/s/_____

                                 Jeffrey P. Metzler
                                 31 West 52nd Street
                                 New York, New York 10019
                                 jeffrey.metzler@pillsburylaw.com