# Exhibit D

# New York University
# Sexual Misconduct Hearing
# Summary and Decision

**Date of Hearing**
December 10, 2018 – 4:00 pm to 11:00 pm
726 Broadway, Room 723

**Parties**
Jane Roe, Complainant
John Doe, Respondent (via Skype)

**Adjudicator**
Craig Jolley, Director, NYU Office of Student Conduct

**Also Present**
Samuel Hodge, Title IX Investigator, NYU Office of Equal Opportunity
Christine Janick, Adviser to the Complainant
Lauren Stahl, Adviser to the Respondent (via Skype)
Allen McFarlane, Adviser to the Respondent (via Skype)
Colleen Maeder, Assistant Director, NYU Office of Student Conduct
William Miller, Esq., NYU Office of General Council, Adviser to the Adjudicator

**Hearing Overview**

This hearing was commenced to determine whether John Doe ("the Respondent") engaged in prohibited conduct in violation of the New York University ("NYU") Sexual Misconduct, Relationship Violence and Stalking policy. Specifically, Jane Roe ("Complainant") has alleged that the Respondent has engaged in a pattern of harassing and threatening behavior, including non-consensual sexual touching, sexual harassment, sexual exploitation, and stalking, that has caused her emotional distress. The Complainant further alleged the Respondent repeatedly violated a no-contact directive issued by the University on April 22, 2018. A full summary of the matter can be found in the investigation report prepared by the NYU Office of Equal Opportunity.

The hearing began at 4:31 pm with introductions and an overview of the process. Thereafter, Samuel Hodge, Title IX Investigator, from the NYU Office of Equal Opportunity, provided a summary of the investigation conducted by his office. After the overview, the Adjudicator and all parties were afforded an opportunity to ask questions to Mr. Hodge about the investigative process. After the investigation overview, the Adjudicator heard the Complainant's perspective of the matter and asked questions about the information contained in the investigation report. The Respondent was then afforded the opportunity to pose questions to the Complainant by submitting them in writing to the Adjudicator. After this, the Adjudicator then heard the Respondent's perspective and asked questions about the information contained in the investigation report. The Complainant was given the opportunity to pose questions to the Respondent by submitting them to the Adjudicator. The Adjudicator then heard from two witnesses, Witness 1 and Witness 2, and the parties were afforded the opportunity to propose questions by submitting them in writing to the Adjudicator. After both parties provided their final thoughts and a closing statement, the hearing was adjourned at 11:06 pm.

**Standard of Review**

In order to provide context regarding the parties' relationship, the investigation report includes information and allegations of conduct which occurred prior to the Respondent's enrollment at NYU. For the purposes of this analysis, only conduct that is alleged to have occurred while the Respondent was enrolled at NYU will be considered in relevance to the NYU policy in effect at that time.

The allegations against the Respondent include a series of incidents spanning from September 2017 to May 2018. When the Respondent first enrolled at NYU, the Policy in effect was dated August 25, 2017. This policy was in effect for the majority of the time period during which the allegations have been raised. The policy was updated on April 19, 2018. While the two policies do not substantially differ, this review will made by considering the policy in effect at the time of the alleged incident of misconduct.

The NYU Sexual Misconduct, Relationship Violence, and Stalking Policy as in effect on August 25, 2017, defines **sexual assault (non-consensual sexual contact)** as:

> Non-Consensual Sexual Contact is having or attempting to have sexual contact with another individual (i) by force, threat of force, or coercive conduct; (ii) without affirmative consent; or (iii) where that individual is incapacitated. Sexual contact includes touching, fondling or other intentional contact with the breasts, buttocks, groin, or genitals (over or under an individual's clothing) for purposes of sexual gratification or when such private body parts are otherwise touched in a sexual manner.

The policy defines **sexual harassment** as

> Sexual or Gender-Based Harassment: Sexual Harassment is any unwelcome sexual advance, request for sexual favors, or other unwanted conduct of a sexual nature, whether verbal, non-verbal, graphic, physical, or otherwise, when one or more of the following conditions are present:
>
>> (iii) Such conduct has the purpose or effect of unreasonably interfering with an individual's learning, working, or living environment; in other words, it is sufficiently severe, pervasive, or persistent as to create an intimidating, hostile or offensive learning, working, or living environment under both an objective - a reasonable person's view - and subjective - the Complainant's view - standard (hostile environment).

The policy defines **sexual exploitation** as

> Sexual Exploitation refers to specific forms of Sexual Misconduct that involve non-consensual use of another individual's nudity or sexuality, excluding behavior that constitutes one of the other Sexual Misconduct offenses. Examples of Sexual Exploitation include but are not limited to:
>
>> Voyeurism (such as watching or taking pictures, videos, or audio recordings of another person engaging in a sexual act, in a state of undress, or in a place and time where such person has a reasonable expectation of privacy, such as a changing room, toilet, bathroom, or shower, each without the affirmative consent of all parties);

The policy defines **stalking** as

> Stalking occurs when a person engages in a course of conduct toward another person under circumstances that would cause a reasonable person to fear bodily injury or experience substantial emotional distress.
>
> Course of conduct means two or more acts including but not limited to unwelcome acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property.  Substantial emotional distress means significant mental suffering or anguish.
>
> Stalking includes the concept of cyber-stalking, a particular form of stalking in which electronic media such as the internet, social networks, blogs, cell phones, texts, or other similar devices or forms of contact are used.

The NYU Sexual Misconduct, Relationship Violence, and Stalking Policy ("Policy") requires that an Adjudicator make a decision, based on a "preponderance of evidence" (more likely than not) standard, as to whether a violation of this policy has occurred.

**Decision**

As summarized below, I find by a preponderance of the evidence that the Respondent has engaged in a course of conduct which violates the University's Sexual Misconduct, Relationship Violence, and Stalking Policy.

The parties began a friendship in 2016 that evolved into a dating relationship.  During the 2016-17 academic year, the Complainant was a student at NYU while the Respondent attended the University of Connecticut.  During that year, the Respondent visited the Complainant in New York on multiple occasions.

In August 2017, the Respondent transferred to NYU and was assigned to live in the Lafayette residence hall.  Through the established room change process, the Respondent switched his assignment to University Hall where the Complainant lived.

The Complainant has alleged that, during the time of his enrollment at NYU, the Respondent has engaged in a pattern of harassing and threatening behavior that has caused her emotional distress.

*Allegations of Non-Consensual Sexual Contact*

The Complainant has alleged that, on multiple occasions over the course of the academic year, she awoke to find the Respondent touching her bare breasts. The Respondent denied doing this and stated that any touching between them was consensual.  As the dates and times of these allegations are unclear and, based on the testimony of both parties, seem to have occurred within the context of an ongoing relationship that included other consensual intimate activity, I do not find that there is sufficient evidence to support a finding of sexual assault.

*Allegations of Sexual Exploitation*

The Complainant stated that she viewed photographs of herself with her breasts exposed on the Respondent's phone, which were taken while she was asleep.  In response, the Respondent acknowledged that he did take photos of the Complainant while she slept but that they did not display her exposed breasts.  He stated that some of the photos may have shown "cleavage." I find that these photos, even if the Complainant's breasts were only partially exposed, were *"content of a sexual nature without the person's affirmative consent."*  The

evidence, including the Respondent's own statements, supports that he took photographs of the Complainant in a state of undress and at a place and time when she had a reasonable expectation of privacy.

Accordingly, I find it more likely than not that the Respondent engaged in sexual exploitation as defined under the NYU Sexual Misconduct, Relationship Violence, and Stalking Policy.

*Allegations of Sexual Harassment, Stalking, and Violation of the No-Contact Directive*

As noted above and in the investigation report, the Complainant stated that she attempted to dissolve her relationship with the Respondent in or around February of 2018. She alleges that after that, the Respondent engaged in a pattern of unwanted and pervasive behavior that caused her substantial emotional distress.

The most prevalent means by which the Complainant received alleged unwelcomed contact was by voicemail and messaging though text and Facebook. The attachments in the investigation report provide hundreds of messages that the Respondent sent to the Complainant expressing his desire to remain in contact. Despite the Complainant repeatedly communicating her desire to end the relationship, he persisted. I find that the repeated unwelcome contact from the Respondent about their prior dating relationship, thus constituting "unwelcome conduct of a sexual nature," unreasonably interfered with, and was sufficiently severe, pervasive, and persistent as to create an intimidating, hostile or offensive learning and living environment (hostile environment) for the Complainant. This behavior constitutes sexual harassment as defined under University Policy.

In regards to the allegations of stalking, when considering the totality of evidence as a whole, I find that the Respondent intentionally attempted to create circumstances where he could control and manipulate the Complainant's life. When the Complainant was unresponsive to his messages, the Respondent sent messages demanding that she respond right away, oftentimes within ten minutes. Despite having a tense history with the Complainant's parents, the Respondent would nonetheless send them unsolicited text and voicemail messages saying that he was concerned about her substance use and mental health. Other efforts centered on the Respondent's desire for the Complainant to cease all communication with their common friends. During the hearing, the Respondent repeatedly mentioned that he was upset with the Complainant because she did not appreciate the nice things he did for her, such as buying presents or taking her out to expensive shows and dinners. He stated that he was also upset that he had done nice things for her birthday and that she had never done anything for his birthday.

On March 10, 2018, the parties were with a group of friends at University Hall. The Complainant alleged that at one point, she laughed at a joke about the Respondent and he became very angry. Later, after others had left, the Respondent sent her several messages on WhatsApp asking to talk with her. The Respondent returned to the Complainant's room and, according to the Complainant, began banging on the door and shaking the door handle to get her to open the door. The Complainant said that she did not answer out of fear. Instead, she called a friend who came over to leave the building with her. The Complainant stated that the Respondent went with the two of them to Rubin Hall. In response, the Respondent denied that he had pounded on the door but acknowledged that he was angry at how the Complainant had treated him in front of their friends. He also stated that he was upset that the Complainant initially did not want to talk with him, but that she was then willing to leave with another person to go to Rubin. Therefore, he went with them because he "wanted to see how it played out."

On or about April 2, 2018, the Complainant received messages from the Respondent expressing a desire to talk. The Complainant was at Rubin Hall but, in an effort to avoid the Respondent, left before he arrived. In a series of messages that followed, the Respondent stated to the Complainant "I fucking hate you. I walked here and you

walked back"; "You bitch, you absolute bitch, I will call you until you talk to me"; "I'm going to find you doorbalell (sp) in five seconds. I will tell[Person3] (the Complainant's roommate) every fucking thing. If you don't wake up and talk to me in 10 minutes. I swear I will. I'm so fucking pissed off". The messages continued to state "I'm giving you five minutes and nidhi will kno (sp) everything; your parents will know everything; press charges against me. I don't give a fuck." When asked for a response at the hearing, the Respondent stated that, at this point, he realized that the Complainant did not wish to continue the relationship with him.

The Complainant provided a video of an encounter between herself and the Respondent recorded on April 8, 2018 at Lipton Hall. In the video, the Respondent asks if the Complainant will talk to him again while she cries no. The Respondent then states "then I'm not going to leave you alone unless you promise to talk to me and let me finish it." He also seems to present an apparent ultimatum, stating "You have to choose. You're either going to talk to me or you're going to…" before the Complainant interrupts with further crying. When asked about the video at the hearing, the Respondent expressed unhappiness that the Complainant had recorded him without his knowledge or consent.

On April 21, 2018, the Respondent sent several messages and voicemails to the Complainant demanding that she contact him. The messages included statements such as "I think if you thought what I did earlier on would cause problems – You're in for a hell of a ride", "I'll give you till 1, after that, it'll go bad". He also sent multiple pictures taken during their relationship of which the Complainant understood to be a threat that he would send them to her parents. The Complainant eventually agreed to come meet the Respondent at University Hall. During this encounter, the Respondent recorded himself speaking into his phone about the Complainant, while panning back to show her sitting on the floor upset. The video was submitted as evidence by the Complainant. In reviewing this video, I believe that an objective viewer would find the words and actions of the Respondent and the Complainant's state of distress to be unsettling and disturbing.

On April 22, 2018, the Complainant reported the Respondent's conduct to the NYU Department of Public Safety. A no-contact directive was sent to the Respondent at 10:26 pm by email. At the hearing, the Respondent acknowledged that he received the directive at that time and understood its meaning. Notwithstanding, twenty three minutes later at 10:55 pm, he sent the Complainant a Facebook message stating "Well there goes the RA position." The messaging continued over the following days, including a message that stated "This could be catastrophic for you because of a mistake I made, I don't care what's in place you need to be aware."

On April 29, 2018, the Respondent left the Complainant multiple voicemail messages apologizing for his conduct. On that same day, he also sent messages to the Complainant's mother stating that the Complainant may be "under the influence of drugs or alcohol." Also on that day, the Respondent approached the Complainant at Universality Hall and attempted to engage her in a conversation. During the investigation and at the hearing, the Respondent acknowledged approaching the Complainant and stated that his emotions "got the best of (him)."

The Complainant alleged that on May 2, 2018, the Respondent followed her from a distance as she traveled through the NYU area. As evidence of this behavior, the Complainant submitted eleven photos that she took of the Respondent in three different locations as he followed her throughout afternoon, including at Washington Square Park, on McDougal Street, and in the Lipton Dining Hall. The Respondent denied that he was following the Complainant and suggested that he believed it was the Complainant who was following him. I do not find the Respondent's explanation to be credible and believe that his conduct was a continuance of a pattern of behavior that would cause a reasonable person in the position of the Complainant to fear for their safety and experience substantial emotional and mental distress. This conduct constitutes stalking as defined under NYU

Policy.

*Conclusion*

When considering the totality of the matter, I find that there is overwhelming evidence that the Respondent has engaged in an extended pattern of conduct that would cause a reasonable person in the position of the Complainant to experience fear for their safety, substantial emotional distress, significant mental suffering, and anguish.  This behavior has included sexual harassment, sexual exploitation and stalking as defined under the NYU Sexual Misconduct, Relationship Violence, and Stalking Policy.

**Sanctions**

In reviewing the totality of circumstances, the threatening and excessive nature of the Respondent's conduct, the repeated and blatant disregard of the University's no-contact directive, and most notably, the unsettling and egregious pattern of stalking behaviors, which alone merit the sanctions described below, the following sanctions shall be imposed:

- The Respondent is expelled from New York University and shall be permanently ineligible to return to NYU in any capacity, including NYU Shanghai, NYU Abu Dhabi, and all study away sites and programs.  The Respondent shall be Persona Non Grata (PNG), prohibiting access or entry to all NYU facilities.  The Respondent is also permanently prohibited from participating in any University sponsored event or activity, whether occurring on or off campus.  The effect of this sanction shall be held in abeyance through the completion of any appeal proceedings, if applicable.

- A notation shall be placed on the Respondent's academic transcript stating that the student was "expelled after the finding of responsibility for a code of conduct violation".  The notation shall remain on the transcript permanently.

Respectfully submitted,

Craig Jolley, J.D., M.A.
Director, Office of Student Conduct and Community Standards
Division of Student Affairs, New York University