# Exhibit A

**REPORTING, INVESTIGATING, AND RESOLVING SEXUAL MISCONDUCT, RELATIONSHIP VIOLENCE, AND STALKING - COMPLAINTS AGAINST STUDENTS**

**INTRODUCTION**

In an effort to maintain a safe learning, living, and working environment, NYU prohibits Sexual Misconduct, Relationship Violence, Stalking, and Retaliation ("Prohibited Conduct"), as set forth in the Sexual Misconduct, Relationship Violence, and Stalking Policy (the "Policy").  This document sets forth NYU's procedures for reporting, investigating, and resolving violations of the Policy where an incident involving a Student as a Respondent has been or will be reported to NYU ("Procedures").  These Procedures should be read in the context of the Policy and capitalized terms used in these Procedures are defined in the Policy.

Covered Persons who wish to make a report of Prohibited Conduct against a Student are encouraged to contact the NYU Title IX Coordinator, the NYU Office of Equal Opportunity ("OEO"), the NYU Department of Public Safety, the NYU Office of Student Conduct and Community Standards ("OSC"), or the other reporting options discussed in the Guides for Students and Employees cited below.  At the same time, NYU seeks to be sensitive to those Complainants who seek access to Confidential Resources, but may not wish to report Prohibited Conduct.  The following resources can assist Complainants in identifying Confidential Resources and University reporting options:

- Students may refer to the Sexual Misconduct, Relationship Violence, and Stalking Resource Guide for Students;
- Employees may refer to the Sexual Misconduct, Relationship Violence, and Stalking Resource Guide for Employees; and
- Third Parties may contact NYU's Title IX Coordinator.

These Procedures apply when a report has been made to one of the NYU offices above or to a Responsible Employee at NYU.

**I.  INITIAL RESPONSE AND TITLE IX ASSESSMENT:**

When a Complainant or Covered Person reports an incident of Prohibited Conduct, NYU will take immediate and appropriate steps to investigate or otherwise determine what happened and work to resolve the matter promptly and equitably.

**A. Assessment:** Upon receipt of a report, the Title IX Coordinator will conduct an initial assessment. As part of the initial assessment, the Title IX Coordinator will:

1. Assess the nature and circumstances of the report.

2. Address immediate physical safety and emotional well-being needs.

3. Discuss the Complainant's expressed preference for the manner of resolution and any barriers to proceeding.

4. Notify the Complainant of the right to contact law enforcement in order to file criminal charges, decline to contact law enforcement, or seek an order of protection.

5. Notify the Complainant of the right to seek medical treatment, including the importance of

Effective: August 25, 2017

NYU0000001

    preserving evidence.

6. Assess for pattern evidence or other similar conduct by Respondent.

7. Assess the reported conduct for any Clery Act obligations, including entry in the crime log or issuance of a timely warning.

8. Provide the Complainant with written information about on-campus and off-campus resources and the range of appropriate and available protective measures based on the status of the Complainant.

9. Advise that NYU's policy prohibits Retaliation.

**B. Requests to Maintain Privacy or Not Seek Disciplinary Action:** If a Complainant who has reported an incident of Prohibited Conduct requests that his/her name or other identifying information not be shared with a Respondent, that no investigation into a particular incident be conducted, and/or that no disciplinary action be taken against the Respondent, NYU will balance this request against NYU's commitment to a safe, non-discriminatory learning, living, and working environment for all community members, including for the Complainant. In particular, NYU will take into account the extent to which a failure to investigate may not adequately mitigate a potential risk of harm to the Complainant or other members of the NYU community. The request may occur at any point after the report is made.

The request will be evaluated by the Title IX Coordinator in consultation with senior NYU administrators. When considering whether to honor a Complainant's request for privacy or that no Investigation or disciplinary action be pursued, NYU will consider a range of factors, including:

- the risk that the Respondent may commit additional acts of Prohibited Conduct or other violence, taking into consideration, among other matters, any known history of arrests, violence, or other complaints of Prohibited Conduct involving the Respondent, any threats of future violence made by the Respondent, and whether multiple Respondents were involved in the reported incident;
- whether the act of Prohibited Conduct was perpetrated with a weapon, was otherwise unusually violent, or whether other aggravating circumstances exist;
- whether the report reveals a pattern of Prohibited Conduct or represents an escalation in unlawful or Prohibited Conduct by the Respondent from previously noted behavior;
- whether the Complainant is or at the time of the incident was a minor; and
- whether NYU is able as a practical matter to pursue the investigation without the participation of the Complainant (e.g., whether there is other relevant evidence of the Prohibited Conduct such as security cameras, other witnesses, or physical evidence).

Where possible based on the facts and circumstances, NYU will seek action consistent with the Complainant's request to maintain his/her privacy and/or not conduct further Investigation. However, NYU will be limited in its ability to respond to the matter in other than potentially general ways such as providing targeted training or prevention programs or offering reasonably available protective measures or accommodations to the Complainant. Where NYU agrees to the Complainant's request to maintain his/her privacy and/or not conduct further investigation, the matter will be considered resolved with NYU taking, as appropriate, such general steps and such protective measures or accommodations. NYU recognizes that a Complainant may initially be hesitant to move forward, but later seek an Investigation. Where a report was closed because NYU

agreed to the Complainant's request to maintain his/her privacy and/or not conduct further Investigation, the matter may later be reopened at the discretion of the Title IX Coordinator.

Where the balance of factors requires that further investigation be conducted, that disciplinary action be taken, or that the identity of the Complainant be disclosed, NYU will inform the Complainant of its intent to investigate prior to commencing the investigation and/or of its intent to disclose the identity of the Complainant and will take reasonable and appropriate measures to protect and assist the Complainant.  In such cases, NYU will also make reasonable efforts to protect the privacy of the Complainant consistent with the needs of the Investigation and resolution of the matter; however, an investigation normally involves speaking with the Respondent and others who may have relevant information about the incident and disclosing the identity of the Complainant as necessary in those conversations.

A Complainant may receive support and safety services regardless of their level of participation or engagement with these Procedures.

C. **Determination after Assessment:** After the initial assessment, the Title IX Coordinator will determine whether the circumstances warrant proceeding to an investigation.  The Title IX Coordinator may consult with senior NYU administrators during the assessment.  The determination as to how to proceed will be communicated to the Complainant in writing. Depending on the circumstances and requested resolution, the Respondent may or may not be notified of the report or resolution. A Respondent will be notified when NYU takes action that would impact a Respondent, such as protective measures that restrict the Respondent's movement on campus, the initiation of an Investigation, or the decision to seek to involve the Respondent in informal resolution.

Following this assessment, during an Investigation, or at any point in the Disciplinary Process, NYU may seek an Administrative Resolution that, as appropriate, endeavors to prevent future Prohibited Conduct and address its effects without conducting or concluding, as applicable, a formal Disciplinary Process against a Respondent.  Alternatively, if appropriate, NYU may pursue an Investigation and Disciplinary Process.

D. **Protective Measures and Accommodations:**

During or subsequent to the assessment phase, NYU may take and/or make one or more of the following protective measures and accommodations, which may be temporary or permanent, for Student Complainants or Respondents, where reasonable and appropriate under the circumstances:

- Providing access to counseling services and assistance in setting up an initial appointment;
- Imposing an on-campus "no contact" directive;
- Rescheduling of exams and assignments;
- Providing alternative course completion options;
- Making changes in class schedule, including the ability to transfer course sections or withdrawal from a class without penalty;
- Making changes to a Student's University-sponsored or controlled housing, including assistance from staff in completing relocation;
- Limiting an individual's or organization's access to certain University facilities or activities pending resolution of the matter;
- Voluntary leave of absence;
- Providing an escort to ensure safe movement between classes and activities;

Effective: August 25, 2017

- Providing medical services;
- Providing academic support services, such as tutoring;
- Imposing administrative leave or separation; and/or
- Imposing an interim suspension.

NYU will maintain the privacy of any accommodations or protective measures provided under the Policy to the extent practicable.

Both the Complainant and the Respondent may request review of the need for and/or modification of the terms of any interim measure, accommodation, or directive and can submit evidence in support of any such request. Requests for review/modification should be made to the NYU Office of Equal Opportunity. Requests will be handled within five business days, unless circumstances warrant extending that timeframe.

**Restricted/No Contact Requests:**

A Complainant who makes a report of Sexual Misconduct, Relationship Violence, and/or Stalking may request assistance in creating a safe distance between him/herself and the Respondent. A Respondent may also request the same assistance with respect to a Complainant. There are different forms of restricted contact directives that may be sought and/or imposed.

   a. **Institutional No-Contact Directive:** Upon request by the Complainant or Respondent, NYU will issue a directive to both students involved in an allegation of Sexual Misconduct, Relationship Violence, and/or Stalking to refrain from engaging in any form of contact with one another. NYU may also issue such a directive on its own initiative. The purpose of such a directive is to prevent one student from harassing another in person, in writing, by phone, by email, by texts or other electronic messaging, through social media, or through a third party. The secondary benefit of a No-Contact Directive is to help prevent "flare-ups" that can occur when two students engaged in an inter-personal dispute encounter one another. Unless otherwise modified in accordance with the procedure discussed above, under No-Contact Directives, if the Respondent and Complainant observe each other in a public place, it is the responsibility of the Respondent to leave the area immediately without directly contacting the Complainant.

   b. **Persona Non Grata Directive (PNG)**: NYU may issue a directive to one or both students involved in an allegation of Sexual Misconduct, Relationship Violence, and/or Stalking, that prevents that student from entering a designated University building or participating in a program, or activity. The purpose of such a directive is to provide each student with a degree of "safe space" and to prevent encounters that may give rise to conflicts or feelings of being unsafe.

   c. **Interim Suspension:** Where appropriate, including but not limited to when a Student Respondent is determined to present a threat to the health or safety of the NYU community, NYU may issue an interim suspension against the Student Respondent pending the outcome of the judicial process.

**II. ADMINISTRATIVE RESOLUTION:**

NYU may seek a form of Administrative Resolution (which for purposes of these Procedures may include the possibility of Mediation) in place of an Investigation or Disciplinary Process.

Administrative Resolution is not appropriate for all cases of Prohibited Conduct, and NYU retains the discretion to determine which cases may be appropriate for Administrative Resolution and the type of Administrative Resolution process that may be appropriate in a specific case. Mediation (which is one form of Administrative Resolution), even where voluntary, may not be used in cases involving Sexual Assault.

Participation in Administrative Resolution (including the specific form of Administrative Resolution, such as Mediation) is voluntary.  NYU will not compel a Complainant or Respondent to engage in Administrative Resolution, will not compel a Complainant to directly confront the Respondent, and will allow a Complainant or Respondent to withdraw from participation in Administrative Resolution at any time.  NYU also reserves the right in its discretion to terminate an Administrative Resolution process at any time.  In addition, the Complainant, Respondent, and NYU must each agree before a case will be resolved through Administrative Resolution.

Administrative Resolution may involve individual and/or community remedies that are designed to address a report of Prohibited Conduct.  Interventions can include, among others: remedies designed to maximize the Complainant's access to educational, extracurricular, and/or employment activities; providing increased monitoring, supervision, and/or security at locations or activities where the misconduct occurred or is likely to reoccur; facilitating a voluntary meeting with the Complainant and the Respondent (in cases that do not involve Sexual Assault); conducting targeted or broad-based educational programming or training for relevant individuals or groups; requiring counseling; providing housing accommodations for Student Complainants; making academic accommodations for Student Complainants or providing workplace accommodations for Employee Complainants; imposing sanctions as set forth in the [University Student Conduct Procedures](#), which include Warning, Censure, Disciplinary Probation, Restitution, Suspension of Privilege, Suspension from NYU, No Contact Directive, Dismissal from NYU, and Transcript Notation; and/or any other remedy that can be tailored to the involved individuals to achieve the goals of the Policy.

If an agreement acceptable to each of NYU, the Complainant, and the Respondent is reached through Administrative Resolution, the matter is considered to be resolved and the terms are implemented.  If an agreement is not reached, the matter will be referred for an Investigation or Hearing if appropriate.

The Title IX Coordinator will maintain records of all reports and conduct referred for Administrative Resolution, which typically will be completed within thirty days of the initial report.

## III. INVESTIGATION

Upon a determination by the Title IX Coordinator that a matter is to be investigated, the Investigation will proceed as follows:

A. As a first step, the Title IX Coordinator will designate an investigator(s) from the Office of Equal Opportunity or an external agency ("Investigator") to conduct a prompt, thorough, and impartial Investigation of the report in the manner the Investigator deems appropriate.

B. During the Investigation, the Complainant and Respondent will have an equal opportunity to be heard, to submit information and corroborating evidence, and to identify witnesses who may have relevant information. The Investigator will notify and seek to meet with all involved parties separately (e.g., the Complainant, the Respondent, and identified witnesses) and also will gather other evidence and information relevant to the determination as to whether or not a Policy violation has occurred. Witnesses cannot participate solely to speak about an individual's character; they must have information deemed relevant to the Investigation by the Investigator.

Effective: August 25, 2017

**NYU0000005**

C. A Complainant's or Respondent's prior sexual history with persons other than the other party involved in the investigation will not be considered as evidence during an Investigation or Hearing. However, where there is a current or ongoing relationship between the Complainant and the Respondent, and the Respondent alleges consent, the prior sexual history between the parties may be relevant to assess the manner and nature of communications between the parties. As noted in the Policy, however, the mere fact of a current or previous dating or sexual relationship, by itself, is not sufficient to constitute consent.

D. The Investigator has the discretion to determine the relevance of any proffered evidence and may determine that certain types of evidence should be included or excluded in the determination of responsibility.

E. Where reasonable under the circumstances, the Complainant and Respondent will be given written notice (which may be by electronic mail) in advance of any meeting that he/she is required or eligible to attend.

F. Throughout the process, each of the Complainant and Respondent has the right to be accompanied by an advisor of his/her choice.  The advisor may be present at any meeting related to resolution of a report under the Policy, and may be anyone of the individual's choosing who is not otherwise a party or witness involved in the Investigation.  While the advisor may be present, the advisor may not speak or otherwise participate in the meetings and must comport him/herself in a manner that is not disruptive to the meetings.

G. At the conclusion of the Investigation, the Investigator will prepare an Investigation report that summarizes the information gathered.  Both the Complainant and the Respondent will be given the opportunity to review the draft Investigation report, submit any additional comment or information to the Investigator, and identify any additional information or witnesses. The Investigator will designate a reasonable time for review and response.   The purpose of the draft report review period is to enable the Complainant and Respondent an opportunity to review the evidence gathered, to clarify and/or expand upon information contained in the report, and to provide additional evidence. Responses to the draft report must be submitted by the Complainant or Respondent (not by an advisor).  In the absence of good cause, information discoverable through the exercise of due diligence that is not provided to the Investigator at this juncture will not be considered by the Adjudicator.

H. Upon receipt of any additional comments or information, the Investigator will issue a determination as to whether a reasonable fact-finder (i.e., the person serving as the Adjudicator at the hearing) could determine that there is sufficient evidence to support a finding that a violation of the Policy occurred.  In reaching this determination, the Investigator may consult with senior NYU administrators, including the designated member of the Provost's Office.

 1. If the Investigator determines that there is sufficient evidence for a reasonable fact-finder to find that a violation of the Policy occurred, the report will be submitted to OSC for further action as outlined in Section IV below.

 2. If the Investigator determines that there is insufficient evidence for a reasonable fact-finder to find that a violation of the Policy occurred, no further action will be taken except a copy of the report will be provided to OSC, the Complainant, and the Respondent.  The Complainant may request Administrative Review of the Investigator's determination that no further action is warranted by submitting a written statement setting forth the basis for the request within

Effective: August 25, 2017

NYU0000006

    five business days of the Investigator's determination. Administrative Review will be conducted by a panel selected by the Senior Vice President for Student Life or his/her designee ("Review Panel"). The Review Panel may consult with the Investigator, the Complainant, the Respondent, or any other individual. The Respondent also may submit a written statement of his or her position to the Review Panel within five (5) business days of being notified of the request for review. The Review Panel may agree with the investigative finding, request additional investigative follow-up, or direct that the report be forwarded to OSC for further action. The Review Panel will render a decision in writing to both the Complainant and Respondent within fifteen business days of the request for review.

I.  The Investigation typically will be completed within thirty-five days from the date of the initiation of the Investigation. This timeframe may be extended for Administrative Resolution and also may be extended for good cause as necessary to ensure the integrity and completeness of the Investigation, to comply with a request by external law enforcement, to accommodate the availability of witnesses, to account for NYU breaks or vacations, to account for complexities of a case, including the number of witnesses and volume of information provided by the parties, or for other legitimate reasons. Any extension of the timeframes, other than for Administrative Resolution, and the reason for the extension, will be shared with the parties in writing.

J.  At the request of law enforcement, NYU may agree to defer its Title IX Investigation until after the initial stages of a criminal investigation. NYU will nevertheless communicate with the Complainant regarding the availability of protective measures and accommodations and available courses of action under the Policy and these Procedures. NYU will promptly resume its Title IX Investigation as soon as it is notified by law enforcement that there is no longer a need to delay. Such delays will not last long longer than ten days, unless law enforcement requests and justifies a longer delay.

K.  The Investigator may consult with senior NYU administrators during the Investigation.

## IV. HEARING AND APPEAL

The Hearing and Appeal process consists of: (A) Pre-Hearing Steps; (B) a Hearing; (C) a Determination of Violation and Sanctions; and (D) the Right to Appeal.

  **A. Pre-Hearing Steps**:

    1. **OSC Review of Investigation report:** OSC will receive and review the Investigation report. The OSC Administrator may accept the report as rendered or may request that an Investigator conduct additional interviews or seek out other evidence as deemed to be appropriate. Any additional Investigation, and a supplemental report, should be completed promptly.

    2. **Selection of Adjudicator:** The hearing will be adjudicated by an administrator designated by the University, typically the Director of the Office of Student Conduct and Community Standards or his/her designee. At the discretion of the OSC Administrator, the matter may also be referred to an external adjudicator with expertise in adjudicating cases of Prohibited Conduct (the designated administrator and external adjudicator are both referred to as the "Adjudicator"). Reasons for referring a hearing to an external adjudicator include but are not limited to the presence of a conflict of interest, when the Complainant is not a member of the NYU community, or when a matter presents complex evidentiary issues. All persons serving as an Adjudicator must have trauma-informed training or experience with respect to the adjudication of Prohibited Conduct and must also be impartial and free from bias or conflict of

      interest.

3. **Notice of Hearing:** The Complainant and Respondent will be notified in writing of the date, time, and location of the hearing; the charges to be reviewed by the Adjudicator, including the date, time, location and factual allegations concerning the violation; the provisions of the Policy alleged to have been violated; and the sanctions that may be imposed. In general, the Respondent and Complainant will be provided the Notice of Hearing at least ten days prior to the date of the hearing. The time frame in which the hearing is conducted may be extended for good cause at the discretion of the OSC Administrator. Good cause may include the availability of the parties, the availability of witnesses, the timing of semester breaks, or any other extenuating circumstances. Hearings may be scheduled whenever the University is officially open (including Summer and Winter breaks).

4. **Pre-Hearing Review of Documents:** The Complainant and Respondent will each have the opportunity to review the final Investigation report, including any supplemental report, and any relevant documents that will be provided to the Adjudicator at least five business days in advance of the hearing. The Adjudicator also will be provided with the same set of materials at least five business days before the hearing.

5. **Witnesses:** The Adjudicator will identify any witnesses that he/she wishes to hear from at the hearing based on a review of the Investigation report. The Complainant and Respondent each have the right to request the presence of any additional witnesses at the hearing. However, the University cannot compel the attendance of any witness. Typically, only witnesses who were identified and interviewed as part of the Investigation may be called at the hearing. Under very limited circumstances, the Complainant, Respondent or Investigator may identify a witness with relevant information who has not previously been interviewed. In such case, the Adjudicator will determine if the new witness's participation at the hearing is relevant and appropriate under the circumstances, and if so, will refer the matter to the Investigator for additional investigation, and a supplemental report, which may delay the timing of the hearing.

6. **Request to Postpone Hearing:** Permission to postpone a hearing may be granted provided that the request to do so is based on a compelling emergency and where possible is provided to the OSC Administrator at least 48 hours prior to the time of the hearing.

B. **Hearing.**

1. **Timing:** Typically a hearing will be held within sixty days from the date of the initiation of the Investigation. This timeframe may be extended for Administrative Resolution and also may be extended for good cause as necessary to ensure the integrity and completeness of the Investigation, to comply with a request by external law enforcement, to accommodate the availability of witnesses, to account for NYU breaks or vacations, to account for complexities of a case, including the number of witnesses and volume of information provided by the parties, or to address other legitimate reasons. Any extension of the timeframes other than for Administrative Resolution, and the reason for the extension, will be shared with the parties in writing.

2. **Hearing Guidelines:** At any hearing under these Procedures, the following guidelines below will apply:

    a. **Advisors:** Each of the Complainant and Respondent has the right to be accompanied at the hearing and any meetings by an advisor of his/her choice who is not otherwise a party

or witness involved in the Investigation.  While the advisor may be present, the advisor may not speak or otherwise participate in the hearing or meetings, may not address the Adjudicator or question witnesses, and must comport him/herself in a manner that is not disruptive to the hearing or meetings.

b. **Presence at Hearing:**

   i. A Complainant or Respondent is not required to participate in person at the hearing in order for the hearing to proceed.
   ii. A Complainant or Respondent may request alternative testimony options that would not require physical proximity to the other party, including testifying via a remote electronic method.  This request should be made no less than five business days prior to the hearing.
   iii. If despite being notified of the date, time, and location of the hearing, the Respondent or Complainant is not in attendance, the hearing may proceed and sanctions may be imposed.  In doing so, the Adjudicator will consider the available testimony and evidence. In the absence of clear evidence that emergency circumstances beyond the control of the Complainant or Respondent prevented such person from being present, the decision of the Adjudicator will stand.

c. **Questioning:** The Complainant and Respondent will not be permitted to directly question one another, but will be allowed to propose questions to the Adjudicator who will screen the questions for appropriateness and relevance.

d. **Hearing Format:** The Adjudicator has the discretion to designate the hearing format.  The following hearing format is presented as a general example:

   i. The Adjudicator will explain the hearing process, provide an opportunity to all parties to ask questions about procedures, and read the charges.
   ii. The Investigator will provide a brief statement summarizing the Investigation.  The Adjudicator may then pose questions to the Investigator, including, in the discretion of the Adjudicator, questions suggested in writing by the Complainant and/or Respondent.
   iii. The Adjudicator may pose questions to the Complainant, including, in the discretion of the Adjudicator, questions suggested in writing by the Respondent.  The Complainant may then supplement the information provided to the Adjudicator with a brief statement.
   iv. The Adjudicator may pose questions to the Respondent, including, in the discretion of the Adjudicator, questions suggested in writing by the Complainant.  The Respondent may then supplement the information provided to the Adjudicator with a brief statement.
   v. The Adjudicator will then hear from witnesses determined by the Adjudicator to have information that is relevant to the matter, first on behalf of the Complainant and then on behalf of the Respondent.  Each witness will be questioned by the Adjudicator and, as appropriate, the Complainant and Respondent will be given an opportunity to pose questions to the witness through the Adjudicator (if one party is provided an opportunity to question a witness, the other party will be provided the same opportunity).
   vi. At the conclusion of the presentation of all witnesses, the Complainant, and the Respondent will each be given a brief final opportunity to address any outstanding issues of fact and to make an impact statement.

    e. **Audio Recording:** An audio recording will be made of the hearing. The recording will be maintained by NYU for at least five years from the date of the hearing. A written transcript of the hearing will not be prepared. Requests to listen to the audio recording of a hearing should be made to OSC.

These hearing guidelines may be supplemented as determined appropriate by the OSC Administrator or the Adjudicator.

**C. Determination of Violation and Sanctions; Notice of Outcome**. At the conclusion of the hearing, the Adjudicator will determine whether there is sufficient information, by a preponderance of the evidence, to support a finding of responsibility for a violation of the Policy. The Adjudicator will (1) determine if there is a violation and (2) if so, the Adjudicator will determine the appropriate sanction(s).

In determining the appropriate sanction(s), the Adjudicator will consider a number of factors, including:

- the nature of the conduct at issue, including whether it involved violence;
- the impact of the conduct on the Complainant;
- the impact or implications of the conduct on the NYU community;
- any previous conduct violations by the Respondent, both at NYU or elsewhere, as well as any criminal convictions;
- whether the Respondent has accepted responsibility for the conduct;
- maintenance of a safe and respectful environment conducive to learning; and
- any other mitigating, aggravating, or compelling circumstances to reach a just and appropriate resolution in each case.

The Adjudicator may also consider restorative outcomes that, taking into account the safety of the NYU community as a whole, allow a Respondent to develop insight about their responsibility for the behavior, learn about the impact of the behavior on the Complainant and the community, and identify how to prevent or change the behavior. Sanctions may be issued individually, or a combination of sanctions may be imposed.

The potential sanctions for a violation of the Policy, as set forth in the University Student Conduct Procedures, include: Warning, Censure, Disciplinary Probation, Restitution, Suspension of Privilege, Suspension from NYU, No Contact Directive, Dismissal from NYU, and Transcript Notation. Potential sanctions for a violation of the Policy also include requiring the Respondent to engage in a course of counseling, education or training.

Where the conduct found to have violated the Policy also constitutes a "crime of violence" as defined under New York State Education Law § 6444(6), and where the sanction(s) imposed included either a suspension or expulsion, the transcript of the Student Respondent shall include the applicable notation on his or her transcript: "Suspended after a finding of responsibility for a code of conduct violation" or "Expelled after a finding of responsibility for a code of conduct violation." If a Student Respondent withdraws from NYU with a charge of a violation of the Policy pending, a notation will be made on such student's transcript that he/she "Withdrew with conduct charges pending." If a withdrawing Respondent declines to complete the disciplinary process and the University elects, in its discretion, to defer scheduling a hearing until the Respondent returns to NYU, the notation of withdrawal will become permanent in the event that the Respondent does not return within eighteen (18) months.

Effective: August 25, 2017

**Transcript Notation Removals:** If the Adjudicator's decision provides for a transcript notation, a Respondent may request that such notation be removed, provided that he/she has met any applicable requirements listed in the Adjudicator's decision prior to making a request. However, a transcript notation reflecting a suspension cannot be removed until one year after the conclusion of the suspension. Transcript notations of an expulsion shall not be removed. In the event that a finding of responsibility is vacated for any reason, any such transcript notation shall be removed.

**Notification of Outcome:** The Complainant and Respondent will be notified simultaneously in writing (which may include email) of the outcome of a hearing, relevant findings of fact, the rationale for the outcome, including the sanction, and the options for appeal within five business days of date of the completion of the hearing, unless circumstances warrant extending that timeframe.

D. **Right to Appeal.** The Complainant or Respondent may appeal the determination to the NYU Sexual Misconduct Appeal Panel within five (5) business days. Grounds for an appeal are limited to (1) a material procedural error, (2) previously unavailable relevant evidence that could affect the outcome; and/or (3) the sanction being substantially disproportionate to the violation. Each party will be notified if the other party files an appeal, and will be provided the opportunity to submit a responsive appeal statement within five (5) business days of being notified. Appeal statements should be no more than three (3) pages and must be submitted by the Complainant or Respondent (not by an advisor). The parties, however, do not appear before the Appeal Panel. The appeal will be decided by the Appeal Panel within fifteen (15) business days of the date that the responsive statement is due, regardless of whether any responsive statement is submitted, unless the circumstances of the appeal warrant an extension. All persons serving on the Sexual Misconduct Appeal Panel must have training or experience with respect to the adjudication of Prohibited Conduct and must also be impartial and free from bias or conflict of interest. Following its review, the Appeal Panel may either (a) affirm the Adjudicator's determination, (b) alter the sanctions rendered, if raised as a ground for appeal, or (c) send the matter back to an Adjudicator for further proceedings consistent with its decision. Unless the Appeal Panel sends the matter back to the Adjudicator for further proceedings, the decision of the Appeal Panel is final and the matter is closed.