# Exhibit E

## APPEAL STATEMENT

Respondent: ▮▮▮▮▮

Re: ▮▮▮▮▮ (Complainant) against ▮▮▮▮▮

January 25, 2019

I have been found responsible and have been sanctioned with expulsion for sexual exploitation, sexual harassment and stalking. I appeal the Decision on the basis of procedural error and new evidence as will be discussed below. I also appeal the sanction as being disproportionate given the claims and evidence.[1]

**NEW EVIDENCE**

As NYU was aware, I was studying in Sydney, Australia during the investigation and hearing of this matter. As a result, I did not have access to my hard drives and certain apps until I arrived home in late December 2018. Further, as a result of my distance, I had limited access to my family and friends who could have provided comfort and most importantly support, evidence and counsel. The following evidence is new in that it was not accessible to me and therefore not in my possession during the investigation and hearing, and because my ability to fully account for my side of the story was thwarted by my distance from my family and the counsel they could have provided.

**Stalking:**

Stalking Messages: On May 2, 2018, Complainant saw me in Washington Square Park, a very crowded and public gathering spot and claimed that I was there to stalk her. To prove this, *she* (ironically, if not absurdly) *followed me* with her camera and made no effort to leave the area though she was as much under the NCO as I was. During this incident, I was in near constant contact with NYU student, ▮▮▮▮▮, with whom I discuss my anxiety about seeing Complainant in the park and my efforts to leave her sights. Our communications are attached.

▮▮▮▮▮ Statement: Ms. ▮▮▮ represents my anxiety about the predicament in the park and my efforts to leave the area once I was aware of Complainant's presence, and my emotional state in general in connection with the social isolation Complainant orchestrated.

Affidavit of ▮▮▮▮▮: In a sworn statement, Mr. ▮▮ represents that a friend of Complainant showed him the pictures Complainant took of me in the park allegedly in violation of the NCO. Complainant had sent the pictures to this friend. This chain of disclosures in violation of the confidentiality rules suggest that Complainant's motive to violate the NCO, stalk me, and take pictures of me was meant to further defame me. In doing so, she not only violated the NCO— she was under the same duty as I to leave the park once she was aware of my presence—but she also violated NYU's confidentiality rules surrounding Title IX investigations.

**Bullying (Social Isolation):**

---

[1] In light of NYU's page-length policy for appeals, I apologize for the length of my statement, and I ask for your indulgence in agreeing that the severity of my sanction and my inability to produce evidence as a result of being in Australia, warrants a lengthier statement.

1

End-of-Friendship Texts:  Despite the Complainant's and the Adjudicator's characterization of the events between me and Complainant from March through May 2018 (the relevant time period) as being my reaction to a romantic breakup, I consistently claimed that my actions were responsive to Complainant's efforts to bully me and socially isolate me from my social group, all of which constitutes violations of NYU's bullying policy. The texts, as well as a video of ▮▮▮▮▮ saying "motherfucker" to me in Hindi, attached disclose the product of her efforts.

**Bullying (Physical Abuse):**

Punching Statements:  I collected all of the communications that survived Complainant's destruction of my social media data that address Complainant's role in physically abusing me throughout our relationship. Her claim that she only punched me two times in self-defense (which in her estimation didn't hurt) is clearly false as the included exchange between us addresses after the April 21 Video shows. I never hit her and never would.

**Bullying (Exploitation/Emotional Abuse):**

NYU Application Essay:  While Complainant admitted at the hearing that she read my essay, she claimed that she did not know why I applied to NYU especially since I had nearly a full scholarship at UConn.  In stating this, she is both lying and laying the groundwork to imply that my motivation was to stalk her. My essay speaks for itself—I was moved to apply to NYU to help my friend overcome a brutal crime (the 2016 Crime, which will be discussed below). Note: "▮▮▮▮▮" is a pseudonym for an account Complainant and I shared so as to avoid detection from her parents.

Affidavit of ▮▮▮▮▮:  In a sworn statement, my Father testifies to my motives for applying to NYU.

Affidavit of ▮▮▮▮▮ and Texts with ▮▮▮▮▮:  In a sworn statement, my Mother addresses her communication with Ms. ▮▮▮ about Complainant's alleged 2016 Crime.

Emotional Need Messages:  I have collected communications from Complainant or on her behalf from ▮▮▮▮▮ indicating Complainant's emotional state since the 2016 Crime and her reliance on me to help her overcome these emotional issues. Complainant claims that Ms. ▮▮▮ is a friend who was a student at NYU in 2016 but transferred. Ms. ▮▮▮ is extremely knowledgeable of Complainant's daily events and inner life and interjects herself in very private situations and appears to speak for Complainant.  I never met Ms. ▮▮▮ nor spoke with her directly.  She only appears when I am not around and leaves before I can meet her.  For these reasons, I believe that Ms. ▮▮▮ is a fictional character and is Complainant's alter ego.  Also included is a message in which I express so much concern for and worry about Complainant, I indicate that I was going to call her Father.  This correlates to my statement at the hearing that I called her parents after the NCO because I was concerned for her safety (I also did not know that the NCO prohibited me from calling her parents).

2016 Crime Messages: In addition to the text exchange between Ms. ▮▮▮ and my Mother, I have attached further statements in which Complainant represents that the perpetrators of the 2016 Crime were expelled, and that one of the perpetrators pled guilty.

2

NYPD Records:  I have attached two statements from the NYPD showing that there are no records whatsoever in connection with Complainant in 2016 to 2017, which would include records in connection with the 2016 Crime. No records means that there are no records—records that are sealed or otherwise protected under rape shield laws would be identified as such. I also checked NYU's crime statistics and other public disclosures NYU makes of sexual assaults, and Title IX claims during the relevant period and found no mention of the events Complainant alleged in these records.

### Bullying (Mocking):

Intimacy Texts:  In Complainant's statement on page 319 of the investigative report, she admits that her friend, ███████, thought it would be "funny" to engage in a text exchange with me about my intimacy with Complainant, an exchange that Complainant was aware of and approved and probably conducted herself. I, however, was not in on the joke and took this exchange seriously and bared my heart about the intimacy issues Ms. ███ raised.  As represented in the investigative report and the hearing, Complainant also mocked me in front of my friends in March 2018 causing them to laugh at me and once she successfully isolated me from my social group, one of my former friends mocked me and referred to me as an annoying sound in a corner to his and Complainant's glee.

### Destruction of Property:

Access Code Statements:  I have collected messages that indicate that Complainant had access to my passwords and willingly and knowingly destroyed documents that would be damaging to her.

Phone Video:  I attached more footage of the April 21 encounter in which Complainant grabbed my cell phone from my hand.

### Credibility:

Six Flags Love Notes:  While the alleged Six Flags incident like the cleavage pictures for which I was sanctioned predate my matriculation at NYU and are therefore not under NYU's jurisdiction, Complainant has falsely accused me of sexual misconduct while at Six Flags, which is seemingly the basis for her acts of defamation, and which served her scheme to socially isolate me from my friends.   However, this exchange which occurred after our day at Six Flags speaks for itself and for Complainant's credibility.

███████ Statement:  My suitemate during the relevant period in his sworn statement, represents that Complainant presented herself as a partner to a relationship and that she slept in my suite more frequently than she wants to admit and did so well after February, which is when she says she "broke up" with me.

Shitty List:  Alleged by Complainant to have been written by her Mother, I addressed this document at the hearing arguing that an educated and mature parent would never write such a mean and ridiculous document to argue that Complainant's claims about her parents may not be true, and her efforts to keep our relationship secret from her parents (and friends) may have been a scheme to emotionally abuse and control me.  The document speaks for itself.

Miscellaneous Files:  Please review this folder as well as it supplements some of the previous folders, primarily showing emotional abuse and evidence that Ms. ███ a fake name.

While my new evidence supports my claims and defenses, this evidence, particularly in connection with the 2016 Crime, warrants more explanation:

**The 2016 Crime (Procedural Error, Complainant Credibility and Bullying)**

I attempted to discuss the 2016 Crime at the hearing but the Adjudicator didn't allow it because he mis-characterized the incident as a reference to Complainant's previous sexual activity. This constitutes a material procedural error. Not every mention of a complainant's past sexual history is an attempt to establish prior consent. The incident I attempted to disclose but was prohibited to discuss has to do with Complainant's previous allegation of sexual misconduct, which affected me personally, and is not in any way relevant to any sexual consent issues. The 2016 Crime is very relevant to this case, because Complainant's emotional turmoil and reliance on me left me in a constant state of attentiveness and vulnerability to her emotional needs. Such vulnerability became the foundation from which she could bully me emotionally and physically and isolate me from my social group.

Quite simply, I would not have applied to NYU and would not have matriculated but for this incident. Moreover, the 2016 Crime and its aftermath interfered with my emotional well-being once I matriculated at NYU and into the relevant period. To the extent that Complainant's claims that the 2016 Crime occurred as she described it to me and that the perpetrators were expelled from NYU, arrested and imprisoned may be false as there appears to be no record of this alleged crime at NYU or the NYPD, I consider Complainants actions exploitative and an abuse of my emotions.

The following are the details of the 2016 Crime as described to me by Complainant[2]: During the fall 2016 semester, Complainant had been in an NYU building with a group of NYU friends. She somehow got separated from her friends and found herself with some male NYU students, one of whom was someone who had asked her to take off her clothes a week earlier. They somehow pushed her into a car where they forced alcohol down her throat until she was drunk. They then took her to the back of a mall (in other tellings, they took her to a department store and/or to a bathroom in a store) and the four students began kissing her and masturbating on her; they forced her to give them oral sex. Then one of the students took her into a bathroom and pushed her into the sink and she hit her head. He then gagged her and raped her. When the assault was over, one of the students threatened her and told her, "If you tell anyone this, I will kill your friends." Complainant then walked back to her dorm.

I was horrified to learn that all of this happened. My first reaction was of concern and care for her well-being. I encouraged her to press charges and seek counseling, as did my Mother. I was very concerned about her condition because she was telling me that she was going to harm herself. When I first heard this story, I was still a student at UConn, but called NYU wellness center and told them about what Complainant had said. I vaguely remember speaking to someone named " ▆▆▆▆ ." The wellness center reached out to Complainant, and she got very angry at me. I was very puzzled by her reaction, but did not say anything to her because I did not want to cause her any more stress.

---

[2] Complainant disclosed the details of the incident to me in a number of conversations over time. The details sometimes changed. This account represents those details that remained more consistent than others.

4

Yet, both me and my Mother were deeply moved and became committedly supportive in response to the incident. I did not want to go to NYU, I didn't want to be in the same school or city as Complainant, but when the 2016 Crime occurred, I felt that she needed a friend. Complainant knows that to be true; she read my application as she admitted at the hearing. Yet, at the hearing, she feigned ignorance and even surprise by my interest to transfer to NYU suggesting that I had no reason other than to stalk her. As a result of the 2016 Crime, I became deeply involved in her emotional world to which I was vulnerable.

As my new evidence shows, the 2016 Crime left Complainant with what came to be known as her "condition"—a PTSD that caused her much distress and panic attacks. I was concerned about her and took care of her. She welcomed it. My life became very entangled with her post-crime recovery and well-being, and the basis of our interaction was me calming her down, acquiescing to her moods and even her accusations against me—I bent over backwards and even jeopardized my reputation to make sure she was emotionally well.

Complainant's "condition" had other components that also required my allegiance. She said that her parents would not approve of me and that we therefore had to keep our relationship secret. This requirement extended to her friends, and the truth of our relationship—that we were dating and that she stayed with me in my suite numerous nights a week—were also kept secret. In hindsight, this demand for secrecy was a weapon she used to manipulate me and control the narrative of our relationship: If no one knew of my role in her life, then whatever she represented about me to her friends could have an alternative narrative. Since I trusted her with my passwords, she could further destroy me by deleting communications between us that would be damaging to her.

The fallout of Complainant's insistence that we keep our relationship secret was fully realized when she defamed me to the people in our social group. While her defamatory claims were untrue, these friends could not have known that we had an ongoing intimate relationship and that I was a captive of and completely vulnerable to her "condition." Because of Complainant's "condition," caused by sexual trauma, I was conditioned to her sensitivities about sex and her fear of assault. Therefore, when she decided that I had assaulted her at Six Flags or elsewhere, I was faced with a moral quandary—defend my integrity and deny it thus triggering a panic attack, or play along so that her condition would be mitigated and the mood would pass. I was naïve to believe that her "condition" superseded my innocence or integrity and I acquiesced to her false claims about me.

## PROCEDURAL ISSUES

### Sexual Harassment Policy is Inapplicable

Complainant's complaint centers around the relevant period soon after she broke up with me and therefore characterizes my post-break-up behavior as an extension of our intimate relationship and therefore qualifies as sexual harassment. This is a theme that the Adjudicator adopted, and it is clear in the hearing that he identifies the "break up" as the triggering event to the actions for which I have been sanctioned. That is not true and I even testified that I did not

5

even know she had broken up with me.  Instead, my actions were in response to Complainant's bullying, particularly her manipulation of my friends to socially isolate me and emotionally abuse.

Regardless, NYU charged me with and sanctioned me for sexual harassment, which very clearly addresses actions that are *sexual* in nature as follows:

Sexual Harassment is any unwelcome ***sexual advance, request for sexual favors, or other unwanted conduct of a sexual nature***, whether verbal, non-verbal, graphic, physical, or otherwise.

However, I in no way made any sexual advance or request to Complainant during the relevant time period.   Instead, the actual event to which I was responding was her bullying of me in the form or socially isolating me from my friend group, defaming me and emotionally abusing me.  I made this allegation numerous times during the investigation and it is accounted for in the investigatory report:  See pages 144, 146, 147, 148, 149, 150, 168, and 195. I also emphatically addressed it at the hearing.  There is absolutely no basis whatsoever to the sexual harassment charge.

**Failure to Apply the Reasonableness Standard**

Instead, all of the allegations against me revolve around stalking. NYU defines stalking in relevant part as follows:

Stalking occurs when a person engages in a course of conduct toward another person under circumstances that would cause a ***reasonable*** person to fear bodily injury or experience substantial emotional distress.

I did not stalk Complainant. Instead, I was bullied by Complainant, and a reasonable person would understand that when a party has been physically and emotionally abused, defamed, and socially isolated from his social group, the injured party has a right to try to mitigate the problem and otherwise address his bully and to defend himself. That is not stalking; that is reasonable and justified; it is a form of self-defense.   Otherwise, being a party to a romantic or intimate relationship is a complete waiver of anyone's ability to right a wrong and the offending party can do whatever she desires with impunity. She can shut the door, complain of "stalking" if there is push back and hide behind NYU's policies. NYU should not aid and abet such actions. [3]

NYU's policies rely on the reasonableness standard.  Throughout the hearing, the Adjudicator stated, "I understand your anger." These utterances seemingly represent the reasonable point of view of what should be an objective person. Yet, he did not investigate my claims, and instead fell back on the biased point of view that my actions were in response to

---

[3] I am not asserting that the injured party should be entitled to free reign in such circumstances; I am merely saying that the injured party should have reasonable leeway to address the wrongdoing without being in violation of NYU policies, and that the violative circumstances Complainant caused and my responses, which the Adjudicator described as understandable, must at least be seen as mitigating in the same way Complainant's self-defense narrative was accepted reasonable and even necessary.

being "broken up with" rather than in response to being a victim of bullying, physical abuse and destruction of property.

### Failure to Apply the *Knew or Should have Known* Requirement

In addition to being bullied, my representations during the investigation and the hearing show that I was physically assaulted by Complainant; and my personal property was destroyed by her. As many of the issues were addressed in the investigation, NYU knew or should have known that I was a victim of various violations of NYU's student code of conduct by Complainant as follows:

NYU's Student Conduct Policy on Bullying, Threatening, And Abusive Behavior in relevant part is as follows:

> **Engaging in behaviors that, by virtue of their intensity and/or repetitiveness,** compromise the health, safety or well-being of an individual student or the general University community, or that disrupt the effective continuation of the academic/educational process for individual students or for the general University community. **Such behaviors include, but are not limited to**, threatening, tormenting, **mocking**, intimidating, and **exploiting known psychological** or physical **vulnerabilities** or impairment. . .
> 3. **Physical violence, actual or threatened,** against any individual or group of persons.
> 4. **Engaging in, or threatening to engage in, any other behavior that endangers the health or safety of another person or oneself.**

My evidence also shows that I was the victim of other Student Conduct Policy violations such as on Destruction of Property to the extent that she deleted texts and messages that would have been relevant to this case.

### Procedural Failure:  Breach of Duty to be Thorough, Fair and Impartial

### NYU was not Thorough:

Pursuant to New York State's *Enough is Enough* Law, NYU has the burden of proof to establish whether or not I was responsible for any of the claims against me.  Moreover, NYU is mandated by the OCR, the *Dear Colleague* Letter and *Enough and Enough* to be thorough, fair and impartial.  NYU failed to uphold these mandates.

In the first instance, NYU interviewed Complainant only one time before I was interviewed. To the extent I presented a counter-narrative to her assertions and mitigating circumstances, NYU made no effort to re-interview Complainant in light of these claims.  At the same time, I was not made aware of all of the evidence against me until after my interview.

At the hearing, this same double-blind approach played out again in that Complainant laid out her side of the story and I laid out mine, but there was little cross-fertilization.  This failure had its most glaring deficient in connection with the sexual exploitation/cleavage picture issue.  Complainant testified to finding these pictures on my phone, and (feigning) disbelief they existed, insisted on their removal.  Later in the hearing, I testified that these pictures were taken while I was a student at the UConn and were part of our shared practice of video calling each

7

other as we slept. Again, NYU has the burden of proof—not Complainant and not me—therefore, NYU, who is in control of the hearing has a duty to ask Complainant to respond to my claims of consent and issue of jurisdiction. Further, NYU did absolutely nothing to investigate my defenses and mitigating circumstances regarding the bullying (social isolation), physical abuse, and destruction of property which I addressed in the investigative report and at the hearing in detail.

### Arbitrary and Capricious: NYU Violated its Duty to be Fair and Impartial

Physical and emotional abuse are hard to detect when the victim is a male; harder yet when the perpetrator is female. Gender bias and stereotypes interpret female-on-male abuse as justified as self-defense or a balancing of perceived power differences between the man and the woman. Such apologetics for female-on-male abuse require blame-the-victim defenses that would otherwise be intolerable if the incidents in question involved male-on-female physical or emotional abuse, and such apologetics are blatantly sexist and discriminatory against men, which is clear in this case. For example, Complainant is a serial physical abuser and she punched me (and others) repeatedly when there was no threat to her safety. Yet, the Adjudicator did not question nor doubt her characterization of what occurred on the April 21 Video and her assault of me. In connection with the physical assault as well as my claims that constitute violations of NYU's Bullying policy—which caused me extreme emotional distress—NYU exhibited contradictory and inconsistent approaches to alleged claims of abuse and violations based on unfair (and antiquated) gender roles and bias. To illustrate, in the Decision, Complainant's posture and appearance in the video is cited in particular as the basis for my sanction of expulsion. However, pursuant to Complainant's own admission, I was the one who had been physically assaulted. Also, the new-evidence video shows that she also willfully manhandled my cell phone to cause it damage. My emotional response does not appear as heartbreaking as Complainant's even though I was emotionally devastated, but NYU identified Complainant as the victim based on her appearance of victimhood—not on the evidence. That's pure sexism.

Finally, NYU's determination that I somehow violated the NCO when I appeared in Washington Square Park, a public place where Complainant, also subject to an NCO appeared, was arbitrary and capricious. She photographed me *as I was leaving the park!* She followed me to continue photographing me *as I was leaving the park!* I documented my efforts to be out of her sights with a friend throughout this absurdist ordeal. Complainant was stalking me, or, to impose the reasonableness standard—perhaps no one was stalking anyone: Washington Square is a public space. As the pictures, seemingly using zoom lense, show, I was a safe distance from her at all times. The NCO while worthy of my attention and respect had to be adhered to with a certain sense of nuance as we continued to live in the same dorm and studied in the same campus. Under such circumstances, there were brushes and sightings that cannot possibly be seen as a violation of the NCO. Surely, an application of the reasonable parameters of an NCO in this context should accommodate a peaceful visit to Washington Square Park where she and I are separated by significant space and crowds of people. Regardless, I left the park as per the Stalking Messages. It is wrong to punish me for this, or to punish me alone.

### NYU Has No Jurisdiction Regarding the Cleavage Pictures

8

The pictures of Complainant's cleavage while she was sleeping were not presented because they were destroyed. However, all of them were taken while I was a student at UConn and were the product of videos we consensually took of each other while asleep in different states. During the hearing, the Adjudicator repeatedly stated that he was not investigating anything that occurred before both Complainant and myself were students at NYU. As such, I should not be sanctioned for these pictures.

**Violation of the 60-Day Rule**

The applicable state and federal guidelines require a 60-day period to investigate and finalize the complaint. This action took over seven months even though the investigation was ongoing through the summer months. This is an extraordinary violation of this rule and the delay has caused me further jeopardy than the expulsion alone to my ability to re-direct my life, education, and professional options.

**DISPROPORTIONATE PUNISHMENT**

Throughout the hearing and to the extent I was permitted, I provided testimony about the bullying, mocking, destruction of property, physical abuse and exploitation to which Complainant subjected me. I have produced new evidence that was not available to me while I was in Australia during the investigation and hearing that supports my claims, including a statement from my Mother and the NYPD that may point to a bizarre hoax but at least strongly challenges Complainant's credibility, plus strong evidence that Complainant may have violated a number of NYU's student conduct code including repeated acts of physical assault.

Throughout the hearing, the Adjudicator stated, "I understand your anger." These utterances should represent the reasonable point of view of what should be an objective person. Yet none of my claims seems to have had any mitigating value whatsoever, and I was expelled. This is an extreme and devastating sanction, equal to the sanction Complainant claimed the four NYU students endured for kidnapping and raping her. How is there any equivalency? To the extent Complainant and I were in a toxic relationship, the toxicity ran both ways. To the extent she may be a victim, she should not be blamed; but to the extent that I too am a victim, I should at least not be punished.

Sincerely,

███████