**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- X

JOHN DOE,                                                        Case No.: 1:20-cv-01343 (GHW)

                                  Plaintiff,                     ECF case electronically filed

            vs.                                                  **ORAL ARGUMENT REQUESTED**

NEW YORK UNIVERSITY,

                                  Defendant.

------------------------------------------------------------- X

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

---

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Jeffrey P. Metzler
31 West 52nd Street
New York, New York 10019
Telephone: (212) 858-1000
jeffrey.metzler@pillsburylaw.com

*Attorneys for Defendant*

Dated: New York, New York
            June 22, 2020

# TABLE OF CONTENTS

**Page(s)**

Preliminary Statement ....................................................................................1

Statement of Facts ...........................................................................................3

    A. Background ........................................................................................ 3

    B. Investigation Summary Report ........................................................ 4

    C. Sexual Misconduct Hearing ............................................................ 6

    D. Hearing Decision and Appeal ......................................................... 7

Materials to Be Considered ............................................................................8

Pleading Standard ........................................................................................10

Argument .....................................................................................................11

Point I — Plaintiff's Title IX Claim Should Be Dismissed............................11

    A. Plaintiff Fails to Plead Specific Facts that Support A Minimal Plausible Inference of Gender Bias........................................................ 12

    B. Plaintiff's Selective Enforcement Claim Fails Because Jane Roe is Not A "Similarly Situated Female Student"........................................ 16

    C. Plaintiff's Erroneous Outcome Claim Fails Because He Fails to Cast Articulable Doubt on The Accuracy of The Outcome of The Disciplinary Proceeding ................... 17

Point II — Plaintiff's State Law Claims Should be Dismissed ...................22

    A. The Court Should Decline to Exercise Supplemental Jurisdiction................ 22

    B. Plaintiff's Promissory Estoppel Claim Should be Dismissed........................ 23

    C. Plaintiff's NYCHRL Claim Fails for the Same Reasons as his Title IX Claims.............. 24

Conclusion ...................................................................................................25

i

TABLE OF AUTHORITIES

Page(s)

Cases

Ashcroft v. Iqbal,
556 U.S. 662 (2009).................................................................................................2, 11

B.B. v. The New Sch.,
No. 17 Civ. 8347 (AT), 2018 WL 2316342 (S.D.N.Y. Apr. 30, 2018)............................10, 11

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007).................................................................................................10

Cortec Indus., Inc. v. Sum Holding L.P.,
949 F.2d 42 (2d Cir. 1991).......................................................................................10

Doe v. Case W. Reserve Univ.,
No. 19-3520, 2020 WL 1672830 (6th Cir. Apr. 6, 2020) .........................................17

Doe v. Colgate Univ.,
No. 5:15-CV-1069, 2017 WL 4990629 (N.D.N.Y. Oct. 31, 2017) .........................18

Doe v. Columbia Coll. Chicago,
933 F.3d 849 (7th Cir. 2019) ..............................................................................15, 16

Doe v. Columbia Univ.,
831 F.3d 46 (2d Cir. 2016)..................................................................................... *passim*

Doe v. Haas,
No. 19-CV-0014 (DRH)(AKT), 2019 WL 6699910 (E.D.N.Y. Dec. 9, 2019) .......................12

Doe v. New York Univ.,
No. 1:19-cv-00744 (ALC), 2020 WL 564264 (S.D.N.Y. Feb. 5, 2020)...........................13, 16

Doe v. Princeton Univ.,
No. 17-cv-1614 (PGS), 2018 WL 2396685 (D.N.J. May 24, 2018).........................16

Doe v. Syracuse Univ.,
No. 5:19-cv-00190 (BKS/ATB), 2020 WL 871250 (N.D.N.Y. Feb. 21, 2020) ....................10

Doe v. Trs. of Princeton Univ.,
No. 3:19-cv-07853-BRM-TJB, 2020 WL 967860 (D.N.J. Feb 28, 2020).........................14, 16

Doe v. Univ. of Denver,
952 F.3d 1182 (10th Cir. 2020) ...........................................................................14

Doe v. Vassar Coll.,
    No. 19-CV-9601 (NSR), 2019 WL 6222918 (S.D.N.Y. Nov. 21, 2019) ...............................18

Feibleman v. Columbia Univ.,
    No. 19-CV-4327 (VEC), 2020 WL 882429 (S.D.N.Y. Feb. 24, 2020)...................................22

Gonzalez v. City of New York,
    377 F. Supp. 3d 273 (S.D.N.Y. 2019)................................................................................24, 25

Johnson v. New York Univ.,
    No. 17-CV-6184 (VEC), 2018 WL 4908108 (S.D.N.Y. Oct. 10, 2018), aff'd,
    800 F. App'x 18 (2d Cir. 2020) .........................................................................................16

Klein & Co. Futures, Inc. v. Bd. Of Trade of City of N.Y.,
    464 F.3d 255 (2d Cir. 2006)................................................................................................22

Kramer v. Time Warner Inc.,
    937 F.2d 767 (2d Cir. 1991)................................................................................................10

Lombroso v. JPMorgan Chase & Co.,
    40 A.D.3d 289 (1st Dep't 2007) .........................................................................................23

Lynch v. City of New York,
    952 F.3d 67 (2d Cir. 2020)...............................................................................................9, 10

National Retirement Fund v. Intercontinental Hotels Grp. Res., LLC,
    No. 1:19-cv-8018-GHW, 2020 WL 1922755 (S.D.N.Y. Apr. 21, 2020) ...........................9, 11

Nungesser v. Columbia Univ.,
    244 F. Supp. 3d 345 (S.D.N.Y. 2017)................................................................................11

PHL Variable Ins. Co. v. Mahler,
    321 F. Supp. 3d 392 (E.D.N.Y. 2018) ...............................................................................23

Prasad v. Cornell Univ.,
    No. 5:15-cv-322, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016)..........................................16

Reitman v. Ronell,
    Index No. 157658/2018 (Sup. Ct. N.Y. Cty. Aug. 16, 2018) ..................................................14

Rolph v. Hobart & William Smith Colls.,
    271 F. Supp. 3d 386 (W.D.N.Y. 2017)...........................................................................22, 24

Routh v. Univ. of Rochester,
    981 F. Supp. 2d 184 (W.D.N.Y. 2013)...........................................................................10, 16

Russell v. New York Univ.,
　　No. 1:15-cv-2185-GHW, 2017 WL 3049534 (S.D.N.Y. July 17, 2017), aff'd,
　　739 F. App'x 28 (2d Cir. 2018) ...................................................................14, 16, 21

Saravanan v. Drexel Univ.,
　　No. CV 17-3409, 2017 WL 5659821 (E.D. Pa. Nov. 24, 2017)............................................17

Soloviev v. Goldstein,
　　104 F. Supp. 3d 232 (E.D.N.Y. 2015) .......................................................................24

Tafuto v. N.J. Inst. of Tech.,
　　Civ. A. No. 10-4521 (PGS), 2011 WL 3163240 (D.N.J. July 26, 2011). 16Walker v. President
　　and Fellows of Harvard Coll.,
　　82 F. Supp. 3d 524 (D. Mass. 2014) .........................................................................21

Yu v. Vassar Coll.,
　　97 F. Supp. 3d 448 .............................................................................................18

Yusuf v. Vassar Coll.,
　　35 F.3d 709 (2d Cir. 1994).......................................................................... *passim*

Z.J. v. Vanderbilt Univ.,
　　355 F. Supp. 3d 646 (M.D. Tenn. 2018), appeal dismissed, No. 19-5061, 2019
　　WL 3202209 (6th Cir. Apr. 26, 2019) ....................................................................10, 11

## Statutes and Codes

United States Code
　　Title IX.................................................................................................. *passim*
　　Title 28 Section 1367(c)(3).......................................................................................21

## Rules and Regulations

Federal Rules of Civil Procedure
　　Rule 10(c)............................................................................................................9, 10
　　Rule 12(d) .............................................................................................................10

## Other Authorities

13D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
　　Section 3567.3 (3rd ed. 2019)..........................................................................21, 22

https://www.nytimes.com/2018/08/13/nyregion/sexual-harassment-nyu-female-
　　professor.html ....................................................................................................14

## PRELIMINARY STATEMENT

Plaintiff, John Doe, was expelled by Defendant, New York University ("NYU"), in December 2018 for sexual harassment, exploitation, stalking, and violating a no-contact directive. The evidence on which NYU based its decision included hundreds of pages of threatening and harassing text messages (e.g., "YOU ABSOLUTE BITCH[.]  I will call you Until you talk to me… I'm going to find your doorbalell[.] In five seconds I will tell [Person 1] [e]very fucking thing…. Press charges against me[;] I don't give a fuck[.]"),[1] along with witness testimony, photographs, and audio and video recordings of Plaintiff engaged in threatening and harassing behavior toward Jane Roe.  The evidence also included Plaintiff's own testimony that, among other things, he intended some of his messages to be perceived as threats and that even after NYU issued a no-contact directive, he repeatedly contacted Jane through text messages, voicemail, and in person. As Plaintiff admitted at his hearing, "I'm not gonna, going to try to deny it; I violated the no-contact directive."[2]

In light of this overwhelming evidence, the Amended Complaint fails to state a claim that NYU violated Title IX.  See Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994) ("We do not believe that Congress meant Title IX to impair the independence of universities in disciplining students against whom the evidence of an offense, after a fair hearing, is overwhelming.").  Rather, the 551-paragraph Amended Complaint attempts to distract from Plaintiff's admissions of misconduct by attempting to re-litigate his misconduct hearing and leveling charges against Jane. But to state a viable claim under Title IX, Plaintiff must allege facts that give rise to "a minimal

---

[1]  See Ex. B at 152 (emphasis and typos in original).
[2]  See Ex. C, Part 4 at 1:21:50-1:22:14.

plausible inference" that *NYU's* actions were motivated by gender bias.  See Doe v. Columbia Univ., 831 F.3d 46, 56 (2d Cir. 2016).

The three primary facts Plaintiff alleges to show gender bias – a single social media post that received comments, OCR investigations from more than four years ago that generated no adverse publicity, and a male graduate student's complaint against a tenured female faculty member – fail to "nudge[] his claims … across the line from conceivable to plausible." Ashcroft v. Iqbal, 556 U.S. 662, 678, 680 (2009) (internal quotation marks and citations omitted).

In addition, Plaintiff's "selective enforcement" claim fails because the Amended Complaint does not allege that similarly situated female students at NYU were treated differently than Plaintiff.  Jane Roe is not similarly situated because (a) Plaintiff does not allege that he attempted to file a complaint until after NYU was already investigating Jane's complaint and (b) Plaintiff's allegations against Jane are materially different from her allegations against him.

Plaintiff's "erroneous outcome" claim should be dismissed for the independent reason that the alleged "procedural flaws" cited in the Amended Complaint were not errors by NYU, but rather represent Plaintiff's misunderstanding of the Policy and procedures.  Moreover, assuming *arguendo* that the alleged "procedural flaws" were errors, they are so minimal that they would not create articulable doubt about the outcome of a disciplinary hearing that included hundreds of pages of direct evidence in the form of text messages, photos, and videos of Plaintiff, as well as Plaintiff's own admissions (both in writing and at the hearing), that he violated NYU's Sexual Misconduct, Relationship Violence, and Stalking Policy (the "Policy").

Finally, the Court should either decline to exercise supplemental jurisdiction over Plaintiff's state law claims or dismiss them on the merits.  Plaintiff's promissory estoppel claim fails because he cannot demonstrate reasonable reliance on an alleged promise about the outcome

of his misconduct hearing that was inconsistent with NYU's written Policy and procedures.  Nor can Plaintiff demonstrate injury based on an alleged promise by NYU's Title IX Coordinator that he would be permitted to file a Title IX complaint against Jane after her complaint against him was resolved.  Plaintiff's NYCHRL claim should be dismissed for the same reasons as his Title IX claims.

## STATEMENT OF FACTS[3]

### A.     Background

Plaintiff entered into a consensual relationship with Jane Roe in 2015, when both students were seniors in high school.  Am. Comp. ¶¶ 18, 20-21.  In 2016, Plaintiff enrolled as a freshman at a university in Connecticut while Jane matriculated at NYU.  Id. ¶ 32-34.  Plaintiff alleges that in October 2016, Jane told him that she had been raped by four NYU students.  Id. ¶ 38.  He claims that he visited her 4-5 times at NYU during the 2016-17 academic year to provide emotional support.  Id. ¶ 49.  Plaintiff describes his relationship with Jane during this period as "consensual [and] intimate."  Id. ¶ 72.

In 2017, Plaintiff applied to NYU and was admitted as a transfer student.  Id. ¶ 89.  In spring 2018, Jane began to tell Plaintiff's friends to stay away from him and accused him of "doing bad things to Jane."  Id. ¶¶ 101-102.  Jane's behavior made Plaintiff "confused and angry" and he sent her messages that he wanted to talk with her.  Id. ¶¶ 103, 107.  On April 22, 2018, NYU issued a no-contact directive between Plaintiff and Jane based on a report that Plaintiff allegedly "initiated multiple communications which have made the other person uncomfortable."  Id. ¶¶ 113-115.

---

[3]  Unless otherwise indicated, the allegations in the Amended Complaint are assumed to be true for purposes of this motion to dismiss.  NYU reserves the right to contest any and all of the allegations in the Amended Complaint if the motion to dismiss is denied.

In May 2018, NYU notified Plaintiff that Jane had filed four allegations of sexual harassment against him.  Am. Comp. ¶ 121.  NYU offered Plaintiff a facilitator, which he accepted, and Allen McFarlane was assigned to Plaintiff's case.  Id. ¶ 125.  Plaintiff alleges that in June 2018, McFarlane told Plaintiff, "Under no circumstances will you be expelled," and the "worst-case scenario would be a one-semester suspension," Id. ¶¶ 126, 128.  Plaintiff later met with NYU's Title IX investigator, Samuel Hodge, to discuss Jane's allegations and Plaintiff's response. Id. ¶ 130.  Plaintiff was provided the opportunity to submit his own evidence to the investigator. Id. ¶¶ 167-168.

Plaintiff went to Australia in August 2018 to study abroad for the Fall semester.  Id. ¶ 169. On October 23, 2018, NYU sent John an investigation summary report ("ISR"), which outlined the charges, interviews conducted, and evidence gathered.  Id. ¶ 170.  Plaintiff alleges he was "shocked by the sheer volume of cherry-picked text messages and WhatsApp messages provided by Jane."  Id.  The ISR included "nine separate allegations against John for sexual harassment, sexual assault, sexual exploitation, stalking and violation of a no-contact directive" and "hundreds of pages" of evidence.  Id. ¶ 176-177.  Plaintiff's written response to a draft of the ISR was attached to the final version.  Ex. B at 324-339.

## B.  Investigation Summary Report

The evidence in the ISR consisted of witness interviews, text messages, audio and video recordings, including the following messages from Plaintiff to Jane:

- **March 23, 2018:** "I'm sorry I said I didn't assault you[.] I did[.] I hurt you[.] I bullied you[.] And I assaulted you[.] And I'm sorry[.]" Id. at 140.

- **March 31:** "I'm sorry for hurting you time and time again. Lying to you assaulting you. Making you cry threatening you bullying you and everything. You're right I'm not a good person and I self pity myself for things that don't matter."  Id. at 145.

4

- **April 2:** "You bloody FUCKINF Bitch[.] I FUCKING HATE TOU[.] I WALKED HERE AND YOU WALKED BACK[.] NOGEY THE FUCK UP OR I WILL TEXT YOU THE NORMAL WAY YOU BITCH[,] YOU ABSOLUTE BITCH[.] I will call you Until you talk to me… I'm going to find your doorbalell[.] In five seconds I will tell [Person 1] [e]very fucking thing [i]f you don wake up [a]nd talk to me [i]n 10 minutes… I'm giving you 5 minutes [a]nd [Person 1] will kno everything[; y]our parents will know everything[.] Press charges against me[;] I don't give a fuck[.]" Id. at 152 (emphasis and typos in original).

Even after Plaintiff knew that Jane no longer wanted to be friends, see id. at 12; Ex. C, Part 4 at 50:05-50:53, he repeatedly insisted that she speak with him, alternately using threats and pleas. See e.g., Ex. B at 165-184 (hundreds of text messages sent between April 9 and April 21); id. at 160-61 & Att. B at April 8 Voicemail ("[I]f this is how it's going to go down, and you're not going to talk to me, then be warned I'm not going to be an easy person to deal with."); id., Att. B at April 8th Video A ("I'm not leaving you alone unless you promise to let me finish it. You have to choose; you're either going to talk to me or …."); id. at 209 ("[I]f you thought what I did earlier on would cause problems[, y]ou're in for a real hell of a ride[.] I'll give you till 1[.] After that [i]t'll go bad[.]").

In one video taken by Plaintiff on April 21, he records Jane crying on the floor as Plaintiff says into the camera "she laughed when you guys were there and I was hurt and now she's crying… where's the laughter? This is a high stress situation … why isn't she laughing? … she won't laugh now, she'll just cry." Id., Att. B at April 21 Video at 00:55-01:27.

The following day, Plaintiff called Jane repeatedly and sent her dozens of text messages apologizing for his conduct the night before. Id. at 213-221. However, when Jane told him to "[s]top trying to fix things … [a]nd don't talk to me," Plaintiff responded that he was "trying to remain calm yaar but if you act like this nothing will be solved … [I]f you procede to end off just like that don't you see how that can lead to anger?" Id. at 216.

On the evening of April 22, NYU issued a no-contact directive instructing Plaintiff and Jane

> not to initiate or facilitate any form of communication or interaction with [each other], including those made through virtual means (text messages, e-mail, Facebook, Twitter, other social networking websites, etc.) or by 3rd parties on your behalf. Any such attempts to do so may be construed as harassment and will subject you to disciplinary action.

Id. at 249; Am. Comp. ¶¶ 113-115.

Undeterred, Plaintiff violated the no-contact directive and contacted Jane immediately and repeatedly over the next several days. See Ex. B at 234 (posts by Plaintiff to Jane's Facebook account on April 22 and April 27); id., Att. B at April 29 Voicemail A ("I know I'm not supposed to contact you right now and I hope you won't use this against me, but I just had to apologize. … I shouldn't have ever done that to you."); id., Att. B at April 29 Voicemail B (telling Jane she needs to contact him because he "made a big mistake" but declining to elaborate "because I don't know if you're going to use this message against me or not."); id. at 295-301 (NYU Public Safety report of Plaintiff approaching Jane in NYU residence hall); id. at 235-238 (photographs taken by Jane of Plaintiff allegedly following her in Washington Square Park); see also id. at 230 (text message to Jane's mother that Jane "may be under the influence of drugs or alcohol" and that she has "had some self harmful tendencies.").

In his written response to the draft ISR, Plaintiff does not dispute the majority of Jane's allegations against him or the evidence presented. Ex. B at 324-326. Indeed, with respect to his violation of the no-contact directive on April 29, Plaintiff admits that he sent a message "before I made contact in person. I believed I could fix things with her as I had known her for so long. Emotions betrayed logic and I contacted her." Id. at 325.

## C.    Sexual Misconduct Hearing

On December 10, 2018, NYU conducted a nine-hour hearing before a single Adjudicator. Am. Compl. ¶ 220. During the hearing, the Adjudicator heard testimony from the Investigator,

Jane, Plaintiff, and two witnesses.  See Ex. C.  In accordance with NYU's procedures for sexual misconduct hearings, both Jane and Plaintiff were permitted to propose questions for the Adjudicator to ask.  Id.; Ex. A. at 9.

As with his written response to the allegations in the ISR, Plaintiff did not dispute the majority of the claims or evidence presented at the hearing and explicitly admits, among other things, that:

- He was so upset on April 21, 2018, that he could not control himself and was threatening to expose his past relationship with Jane to her parents.  Id., Part 4 at 1:02:45-1:04:37.

- He received the no-contact directive on April 22, 2018, and sent Jane a Facebook message less than 30 minutes later.  Id., Part 4 at 1:15:20-1:17:14.

- He left Jane five voicemail messages after receiving the no-contact directive.  Id., Part 4 at 1:17:27-1:17:42.

- He "lost it" on April 29, when he encountered Jane in a residence hall lounge, "I'm not gonna, going to try to deny it; I violated the no-contact directive."  Id., Part 4 at 1:21:50-1:22:14.

At the conclusion of his testimony, Plaintiff praised the Adjudicator for "ask[ing] all of the right questions" and "guid[ing] [Plaintiff] into giving what I believe to be the best story; the best perspective of his[self] as to what occurred."  Id., Part 5 at 19:12-19:24.  During his closing statement, Plaintiff similarly thanked the Office of Student Conduct for making accommodations for the time difference to Australia and "making this a fair … hearing."  Id., Part 5 at 1:04:38-1:05:02.

### D.    Hearing Decision and Appeal

In December 2018, the Adjudicator found

> overwhelming evidence that the Respondent has engaged in an extended pattern of conduct that would cause a reasonable person in the position of the Complainant to experience fear for their safety, substantial emotional distress, significant mental suffering, and anguish. This behavior has included sexual harassment, sexual exploitation and stalking as defined under the [Policy].

7

Am. Comp. ¶¶ 243-244; Ex. D at 6.

Based on "the threatening and excessive nature of the Respondent's conduct, the repeated and blatant disregard of the University's no-contact directive, and most notably, the unsettling and egregious pattern of stalking behaviors, which alone merit the sanctions described below," the Adjudicator expelled Plaintiff from NYU and ordered that a notation be placed on his transcript. Ex. D at 7.

Plaintiff appealed the Hearing Decision on the basis of new evidence, procedural error, and disproportionate punishment. Am. Comp. ¶ 315. On March 8, 2019, NYU's Appeal Panel found that (1) "[t]here is no basis to find that the Respondent was incapable of collecting and/or directing the investigators toward this evidence during the investigation;" (2) no material procedural errors occurred; and (3) "the sanction of expulsion is more than appropriate," and affirmed the Adjudicator's decision. Ex. F. at 1-2.

## MATERIALS TO BE CONSIDERED

As this Court recently explained,

> In determining the adequacy of a claim under Rule 12(b)(6), a court is generally limited to facts stated on the face of the complaint. However, extrinsic documents may be considered as part of the pleadings if they either are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint. To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents. For a document to be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint.

National Retirement Fund v. Intercontinental Hotels Grp. Res., LLC, No. 1:19-cv-8018-GHW, 2020 WL 1922755, at *3-4 (S.D.N.Y. Apr. 21, 2020) (citations omitted). Exhibits that "are the very documents that are alleged to contain the various misrepresentations or omissions" are integral to the complaint. See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) ("[A]

plaintiff whose complaint alleges that such documents are legally deficient can hardly show prejudice resulting from a court's studying of the documents. Were courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure.").

The exhibits attached to NYU's motion to dismiss meet this standard, see Miller Decl. at ¶¶ 3-11, and are the types of documents routinely considered by federal courts when evaluating motions to dismiss Title IX claims arising out of disciplinary proceedings.  See e.g., Doe v. Syracuse Univ., No. 5:19-cv-00190 (BKS/ATB), 2020 WL 871250, at *10 (N.D.N.Y. Feb. 21, 2020); B.B. v. The New Sch., No. 17 Civ. 8347 (AT), 2018 WL 2316342, at *2 (S.D.N.Y. Apr. 30, 2018); Routh v. Univ. of Rochester, 981 F. Supp. 2d 184, 191 (W.D.N.Y. 2013); see also Z.J. v. Vanderbilt Univ., 355 F. Supp. 3d 646, 660 n.2 (M.D. Tenn. 2018), appeal dismissed, No. 19-5061, 2019 WL 3202209 (6th Cir. Apr. 26, 2019).

The Second Circuit's recent decision interpreting Federal Rule of Civil Procedure 10(c) is consistent with these cases. See Lynch v. City of New York, 952 F.3d 67 (2d Cir. 2020).  In Lynch, the plaintiff argued that evidence produced in discovery on his original complaint – evidence which was neither referenced nor attached as an exhibit to his amended complaint –should have been deemed "integral" to his amended complaint for purposes of defeating defendants' motion to dismiss.  In rejecting this argument, the court held that the document "while perhaps providing a

lead to evidence that might support Lynch's claim … is not 'integral' to that claim, which does not depend on there being written evidence that a meeting occurred."  Id. at 79.[4]

In this case, by contrast, the crux of Plaintiff's erroneous outcome claim is that "[n]umerous evidentiary and procedural errors throughout NYU's investigation, hearing and appeal process resulted in an erroneous outcome based on a distorted conception of the facts."  Am. Comp. ¶ 470. The documents collected and considered by NYU during its investigation, hearing and appeal process are, therefore, "writings on which [plaintiff's] action … is based," and are properly considered on a motion to dismiss.  See Lynch, 952 F.3d at 79 (internal quotation marks and citation omitted).[5]

## PLEADING STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

While "[t]he plausibility standard is not akin to a 'probability requirement,' ... it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  "Determining whether a complaint states a plausible claim is a 'context-specific task that requires the reviewing court to

---

[4]  Furthermore, the text of Rule 10(c), which provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes" does not limit the materials that should be considered "integral" to a complaint, which typically are analyzed "[i]n addition" to Rule 10(c).  See, e.g., Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).

[5]  In the alternative, the Court may treat NYU's motion to dismiss as a motion for summary judgment and provide the parties a reasonable opportunity to present all material pertinent to the motion.  Fed. R. Civ. P. 12(d).

draw on its judicial experience and common sense.'" <u>Nungesser v. Columbia Univ.</u>, 244 F. Supp. 3d 345, 361 (S.D.N.Y. 2017) (quoting <u>Iqbal</u>, 556 U.S. at 679).

In evaluating a 12(b)(6) motion, a court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. <u>Id.</u> at 361. However, "when any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true." <u>National Retirement Fund</u>, 2020 WL 1922755, at *3-4. Where a plaintiff does not "cast doubt on the authenticity or veracity" of such materials, and cannot explain a "conflict between his allegations and the exhibits," the "contradicted allegations are implausible" and "will not defeat a motion to dismiss." <u>B.B.</u>, 2018 WL 2316342, at *6.

## ARGUMENT

## POINT I — PLAINTIFF'S TITLE IX CLAIM SHOULD BE DISMISSED

Title IX "bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." <u>Yusuf</u>, 35 F.3d at 715.

> Plaintiffs attacking a university disciplinary proceeding on grounds of gender bias can be expected to fall generally within two categories. In the first category, the claim is that the plaintiff was innocent and wrongly found to have committed an offense. In the second category, the plaintiff alleges selective enforcement. Such a claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.

<u>Id.</u>

"Most importantly, under either theory '[a] plaintiff must … allege particular circumstances suggesting that gender bias was a motivating factor....'" <u>Doe v. Haas</u>, No. 19-CV-0014 (DRH)(AKT), 2019 WL 6699910, at *13 (E.D.N.Y. Dec. 9, 2019) (quoting <u>Yusuf</u>, 35 F.3d at 715).

11

"[A] complaint under Title IX, alleging that the plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent … if it pleads specific facts that support a minimal plausible inference of such discrimination." Doe v. Columbia, 831 F.3d 46, 56 (2d Cir. 2016).[6]

Plaintiff attempts to use this action to relitigate his student conduct proceeding and level new accusations against Jane that he not only failed to raise with NYU during his disciplinary hearing or appeal, but did not even make in his initial Complaint in this Court. However, the question to which all consideration must return when analyzing Plaintiff's Amended Complaint is whether he has plausibly alleged that NYU acted with gender bias, and it can only be answered in the negative.

### A.   Plaintiff Fails to Plead Specific Facts that Support A Minimal Plausible Inference of Gender Bias

The Amended Complaint makes three primary allegations that purport to demonstrate NYU's "[g]ender [b]ias [a]gainst [m]ales." Am. Comp. ¶¶ 420-438. However, none include "specific facts that support a minimal plausible inference of [gender] discrimination." Columbia, 831 F.3d at 56.

First, Plaintiff alleges that "NYU was under pressure to exercise more vigilance against male respondents" because in August 2018, a female NYU student "issued a series of social media posts claiming that NYU had failed to sanction two male students for engaging in nonconsensual sex with her." Am. Comp. ¶¶ 420-21. However, in dismissing a recent Title IX claim against

---

[6]   Given that NYU has already provided its "justification for the adverse action," in the form of the hearing and appeal decisions, Plaintiff is arguably required under the McDonnell Douglas framework to plead facts that would "demonstrate that the proffered reason was not the true reason (or in any event not the sole reason) for the … decision." See Columbia, 831 F.3d at 54 (quoting Littlejohn v. City of New York, 795 F.3d 297 (2d Cir. 2015)).

NYU, this Court held that *the exact same social media post* was "insufficient to support even a minimal plausible inference of gender bias because Plaintiff does not allege that these posts were circulated to the press or that the Defendants' were aware these posts existed." <u>Doe v. New York Univ.</u>, No. 1:19-cv-00744 (ALC), 2020 WL 564264, at *10 (S.D.N.Y. Feb. 5, 2020).[7]

Second, Plaintiff alleges that the United States Department of Education's Office for Civil Rights ("OCR") has "opened several investigations related to Title IX violations committed by NYU," citing two investigations that are more than four years old. Am. Comp. ¶¶ 436-438. Unlike in <u>Columbia</u>, 831 F. 3d at 57, however, Plaintiff does not allege that the investigations resulted in any criticism of NYU, let alone "substantial criticism … both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students," that could raise a plausible inference of gender bias three years later.

Moreover, courts have repeatedly held that an allegation that the school faced "external pressure … to conform with [OCR] guidance … is insufficient in itself to support any inference that the school's actions in a particular case were motivated at least in part by gender bias." <u>Doe v. Univ. of Denver</u>, 952 F.3d 1182, 1192 (10th Cir. 2020) (collecting cases); <u>Doe v. Trs. of Princeton Univ.</u>, No. 3:19-cv-07853-BRM-TJB, 2020 WL 967860, at *3 (D.N.J. Feb 28, 2020).

Third, the Amended Complaint alleges that "similarly situated female respondents facing allegations of sexual harassment have received more lenient sanctions than male respondents," citing NYU's decision to suspend a female professor, Avital Ronell, for one academic year after

---

[7] Plaintiff's response to NYU's pre-motion conference letter asserts that NYU was aware of the social media post by January 27, 2019, because it was cited in another lawsuit filed on January 25. Pl.'s Pre-Motion Conf. Letter at 2 n.2 (Dkt. #17). However, the mere reference to the social media post in a lawsuit filed by another male Respondent (which was ultimately dismissed) hardly gives rise to a plausible inference of gender bias by NYU against male Respondents.

finding her responsible for sexual harassment. Am. Comp. ¶¶ 424-435. Plaintiff's reliance on the Ronell matter mixes apples and oranges. Ronell was a tenured faculty member who was disciplined by NYU for abusing her position as an academic advisor by forcing a graduate student to engage in unwanted sexual interactions. See Complaint, Reitman v. Ronell, Index No. 157658/2018 (Sup. Ct. N.Y. Cty. Aug. 16, 2018). As a tenured faculty member, Ronell was not "similarly situated" to Plaintiff, and her conduct was investigated and adjudicated by NYU under different procedures. Moreover, the publicity around Ronell centered around her status as "one of the very few philosopher-stars of this world," who some members of the academic community argued should be "accorded the dignity rightly deserved by someone of her international standing and reputation."[8] The inference Plaintiff attempts to draw – that NYU responded to this criticism by discriminating against him – simply does not logically follow and therefore falls well "short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).

Finally, the Amended Complaint adds a series of threadbare recitals of "actions during and after the Title IX process [that] are also indicative of gender bias." Am. Comp. ¶¶ 439-446. But none of these allegations mention gender or resemble the type of allegations that the Second Circuit has recognized as giving rise to a plausible inference of gender bias, such as "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." Yusuf, 35 F.3d at 715.

In sum, while the Amended Complaint clearly tries to mimic the allegations in Doe v. Columbia, 831 F.3d at 46, Plaintiff's claims ultimately fall short. Unlike the Plaintiff in Columbia,

---

[8] https://www.nytimes.com/2018/08/13/nyregion/sexual-harassment-nyu-female-professor.html.

14

John does not allege that NYU declined to seek out key student witnesses;[9] does not allege substantial or severe criticism of NYU in the student body or public media accusing NYU of not taking seriously complaints of female students; does not allege that NYU's administration was cognizant of, or sensitive to criticism concerning its handling of sexual misconduct complaints brought by female students; and does not make any allegations with respect to the Investigator or Adjudicator from which one could plausibly infer gender bias.  See Doe v. Univ. of Denver, 952 F.3d 1182 (10th Cir. 2020) ("Unlike in Columbia University, [831 F.3d at 57], there was evidence presented in favor of Jane's claim that the sexual encounter was not consensual, and it cannot be said that the investigators lacked an evidence-based reason for reaching their decision. Thus, it would not be plausible or reasonable to infer merely from the investigators' weighing of the evidence that they were biased."); Doe v. Columbia Coll. Chicago, 933 F.3d 849, 855-56 (7th Cir. 2019) (where plaintiff alleged heightened national attention on sexual misconduct but was "provided with the opportunity to review the investigative materials; was given multiple opportunities to submit evidence; presented affidavits signed by witnesses; and submitted questions to be asked of Roe on cross-examination" he failed to allege the "particularized 'something more,' that is required to survive a motion to dismiss."); see also Princeton, 2020 WL 967860, at *3 ("Absent from Doe's complaint is mention of any statements or conduct by administrators involved in Doe's discipline specifically suggesting any gender bias.") (citation omitted).

---

[9]  None of the witnesses cited by Plaintiff were claimed to have direct knowledge of Plaintiff's conduct at NYU. See Am. Comp. ¶ 149-57; 491.

**B.**    **Plaintiff's Selective Enforcement Claim Fails Because Jane Roe is Not A "Similarly Situated Female Student"**

To state a "selective enforcement" claim, a plaintiff "must show: 1) similarly situated female students at NYU were treated differently during investigations and disciplinary proceedings concerning sexual assault; and 2) the Defendant[] had the requisite discriminatory intent."  New York Univ., 2020 WL 564264, at *6; see also Russell v. New York Univ., No. 1:15-cv-2185-GHW, 2017 WL 3049534, at *32 (S.D.N.Y. July 17, 2017), aff'd, 739 F. App'x 28 (2d Cir. 2018) ("A plaintiff … must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.").

Plaintiff's citation to Jane Roe as a "similarly situated … female student" is inapposite because he does not allege that he attempted to file a Title IX complaint against Jane until after she had filed a complaint against him.  Am. Comp. ¶¶ 381-383, 455.  See Routh v. Univ. of Rochester, 981 F. Supp. 2d 184, 211-12 (W.D.N.Y. 2013) (holding that female complainant was not similarly situated to male respondent who attempted to file cross-complaint against her); Tafuto v. N.J. Inst. of Tech., Civ. A. No. 10-4521 (PGS), 2011 WL 3163240 at *3 (D.N.J. July 26, 2011) (holding that plaintiff's allegation that university failed to investigate his allegations of sexual harassment against his female accuser was insufficient to support "selective enforcement" claim because "unlike Plaintiff, the female student was not already under investigation by" the university); see also Johnson v. New York Univ., No. 17-CV-6184 (VEC), 2018 WL 4908108, at *2 (S.D.N.Y. Oct. 10, 2018), aff'd, 800 F. App'x 18 (2d Cir. 2020) (finding plaintiff "not similarly situated to the white males alleged to be comparators because none of them had previously been expelled by NYU").  Indeed, Plaintiff did not allege that Jane violated Title IX in his response to the ISR, Ex. B, during the hearing, Ex. C, or in his appeal, Ex. E, or even in his initial Complaint, Dkt. #1.  Allegations against Jane that are made for the first time in the Amended Complaint are

largely irrelevant to the issue presented by this lawsuit, which is whether *NYU* violated Title IX, not whether Jane did.

In addition, the substance of Plaintiff's allegations against Jane are materially different from Jane's allegations against Plaintiff.  Plaintiff alleges that Jane bullied John by calling him "gay" and spreading false statements about him to his friends, Am. Comp. ¶¶ 368-69, "physically assaulted John by punching him," id. ¶ 370; 375-81, "destroyed John's property by deleting messages from John's various social media accounts," id. ¶ 372, and pressured him to engage in a sexual relationship by sending him text messages through an alleged alias, id. ¶ 400-401. Regardless of the veracity or seriousness of these allegations, they are materially different from the allegations Jane made against Plaintiff, as summarized in the ISR.  See, e.g., Saravanan v. Drexel Univ., No. CV 17-3409, 2017 WL 5659821, at *6 (E.D. Pa. Nov. 24, 2017) ("Without alleging Drexel charged and disciplined J.K. or another female with the same conduct it charged him, Mr. Saravanan is unable to plead a Title IX selective enforcement claim.").

### C. Plaintiff's Erroneous Outcome Claim Fails Because He Fails to Cast Articulable Doubt on The Accuracy of The Outcome of The Disciplinary Proceeding

"Plaintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding. If no such doubt exists based on the record before the disciplinary tribunal, the claim must fail."  Yusuf, 35 F.3d at 715.  A complaint satisfies its burden in this regard, where it "allege[s] particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge." Id.

Here, the Amended Complaint fails to cast articulable doubt on the accuracy of the outcome of the disciplinary proceeding because there was overwhelming and undisputed evidence that Plaintiff violated the Policy, including Plaintiff's own admissions in his written response to the ISR and at the hearing.  See Doe v. Case W. Reserve Univ., No. 19-3520, 2020 WL 1672830, *3 (6th Cir. Apr. 6, 2020) (affirming dismissal of Title IX claim by respondent who admitted to misconduct notwithstanding "discrepancies in John's and Jane's stories"); Yusuf, 35 F.3d at 715 ("We do not believe that Congress meant Title IX to impair the independence of universities in disciplining students against whom the evidence of an offense, after a fair hearing, is overwhelming."); Doe v. Colgate Univ., No. 5:15-CV-1069 (LEK/DEP), 2017 WL 4990629, at *23 (N.D.N.Y. Oct. 31, 2017) ("The Court cannot engage in a granular examination of the record to find fault in the Panel's decision-making.");  Yu v. Vassar Coll., 97 F. Supp. 3d 448, 461 (S.D.N.Y. 2015 ("The Court's role ... is neither to advocate for best practices or policies nor to retry disciplinary proceedings."); accord Doe v. Vassar Coll., No. 19-cv-9601 (NSR), 2019 WL 6222918 (S.D.N.Y. Nov. 21, 2019).  The alleged "procedural errors" cited in the Amended Complaint, whether considered individually or collectively, are woefully insufficient to cast articulable doubt on the outcome of Plaintiff's disciplinary hearing.

Moreover, the alleged "procedural errors" Plaintiff cites are not errors at all.  See Am. Comp. ¶¶ 247-295.  For example, Plaintiff's claim that NYU failed to enforce its sanction policy, id. ¶¶ 286-295, simply misreads the Policy, which nowhere states that a sanction shall not be imposed until the appeal is concluded, see Exs. A & B, Att. A.[10]

---

[10] Even the Amended Complaint's misstatement of the Policy alleges only that "*unless otherwise indicated by the Adjudicator*, the sanction will not be imposed until after the appeal process has concluded." Am. Comp. ¶ 286 (emphasis added).  While the Adjudicator's decision, which was issued in December 2018, initially held the

Similarly, Plaintiff is wrong when he claims that the Adjudicator erred in finding him responsible for sexual exploitation based on exploitative pictures he admitted taking of Jane prior to his enrollment at NYU, Am. Comp. ¶¶ 257-264, because: (a) the Policy applies to conduct that "occurs outside the context of an NYU employment or education program or activity, but … has continuing adverse effects on … any NYU … educational program or activity," see Ex. B, Att. A at 2; (b) NYU "reserves the right to take action against a Covered Person who commits an act of Prohibited Conduct outside the scope of this policy," id., Att. A at 3; and (c) Plaintiff admitted during the hearing to taking pictures of Jane while she was sleeping on *two occasions*, once before he had enrolled at NYU and once after,  Ex. C, Part 4 at 27:05-28:30.

Plaintiff also alleges that NYU misapplied the Policy because "[t]here was nothing 'sexual' about John's messages to Jane."  Am. Comp. ¶ 254.  But by his own account, Plaintiff and Jane had been in an "intimate relationship" and "Jane continued to visit John in his room every night until late March/early April 2018."  Am. Comp. ¶¶ 72, 249.  The Policy defines Sexual Harassment to include "unwanted conduct of a sexual nature," that "has the purpose or effect of unreasonably interfering with an individual's learning, working, or living environment."  Ex. B, Att. A at 6-7.  The Adjudicator did not misconstrue this provision in concluding that the "the repeated unwelcome contact from the Respondent about their prior dating relationship," constituted Sexual Harassment.  Ex. D at 4.[11]

---

sanction in abeyance to allow Plaintiff to complete the Fall 2018 semester, NYU declined to extend the stay and allow Plaintiff to begin Spring classes after Plaintiff requested and was given an extension of time to submit his appeal.  Id. ¶¶ 287-290.  Plaintiff does not, and cannot, point to any policy that prohibits the Adjudicator from exercising such discretion.

[11] In addition, the Policy "and its related procedures may also, at NYU's discretion, apply to alleged violations by the Respondent of other NYU policies if, in NYU's judgment, those other allegations are directly related to the reported Prohibited Conduct."  Ex. B, Att. A at 2.

Plaintiff's allegation that NYU failed to apply the "Reasonableness" standard in the Policy's definition of "[s]talking." Am. Comp. ¶¶ 265-285, is simply a disagreement with the Adjudicator's conclusion that the hundreds of messages and voicemails he left for Jane – including his threats that she was "in for a real hell of a ride" and he was "not going to be an easy person to deal with" – would cause a "reasonable person to fear bodily injury or experience substantial emotional distress." Ex. B at 209, id., Att. B at April 8 Voicemail; Am. Comp. ¶ 265; 271-72; 279-80. Regardless whether Plaintiff agrees with the Adjudicator's judgment, there was no procedural error.

The allegations added to the Second Cause of Action are equally without merit. See Am. Comp. ¶¶ 469-507. Plaintiff's allegation that NYU refused to grant his request to delay the hearing (for weeks or potentially months) from November to "a time and date when he was back in New York," Am. Comp. ¶¶ 214, 493-94, does not demonstrate a procedural error. NYU's Procedures include a benchmark of sixty days from the initiation of the investigation to hold a hearing and state clearly that "[a] Complainant or Respondent is not required to participate in person at the hearing in order for the hearing to proceed." Ex. A at 10.

Plaintiff waived his claims regarding NYU's failure to provide him with a hard copy of the ISR and technical difficulties during the hearing by failing to raise those issues during the hearing, when the issues could have been addressed. See Ex. C. Indeed, even Plaintiff's appeal and initial Complaint did not allege that technological issues caused him to give incorrect answers during the hearing. See Dkt. #1. Moreover, many of Plaintiff's admissions during the hearing were not dependent on questions from the Adjudicator or references to the ISR, see, e.g., id., Part 4 at 1:21:50-1:22:14 ("I'm not gonna, going to try to deny it; I violated the no-contact directive.") and

20

Plaintiff did not contest – either in his response to the ISR or at the hearing – the threatening and harassing text messages and videos, which speak for themselves.

Nor did NYU err in declining to interview witnesses John allegedly identified during the investigation. Am. Comp. ¶ 491. According to the Amended Complaint, the witnesses are not alleged to have any first-hand knowledge relating to Jane's allegations against John. Rather, three of the witnesses were from John's former university and were proffered to testify about the impact that Jane's alleged gang rape had on Plaintiff; a subject that is tangential, at best, to Jane's allegations against John. Am. Comp. ¶¶ 149-154. The fourth witness – John's mother – is alleged only to have "helpful information," but no direct or specific knowledge. Id. ¶ 155. Under these circumstances, the decision not to interview these four witnesses was not an error under NYU's Procedures, which give investigators discretion "to determine the relevance of any proffered evidence." Ex. A at 6. It certainly is not evidence of bias, let alone gender bias. See Walker v. President & Fellows of Harvard Coll., 82 F. Supp. 3d 524, 531 (D. Mass. 2014) ("It is not the business of lawyers and judges to tell universities what statements they may consider and what statements they must reject." (citation omitted)).[12]

Finally, NYU's appeal panel also acted in accordance with the Procedures when it declined to interview witnesses, including John's mother and father, or investigate information that John identified in his appeal statement. Am. Comp. ¶ 499. Under NYU's Procedures, the appeal panel may only consider "previously unavailable relevant evidence that could affect the outcome," Ex.

---

[12] To be sure, in Doe v. Columbia, 831 F.3d 46, 57 (2d Cir. 2016), the court cited the university's failure to interview a respondent's "key witnesses," as evidence of potential bias. However, the witnesses in that case were fellow students who were alleged to have knowledge of the specific sexual encounter being investigated. By contrast, NYU's decision not to interview the witnesses proffered by John reflects nothing more than the exercise of sound judgment in limiting the scope of the investigation to the actual allegations at issue. Moreover, even in Columbia, the alleged bias, "did not necessarily relate to bias on account of sex." Id.

A at 11.  Plaintiff's appeal statement did not explain why he failed to present the evidence during

the investigation (which largely took place before he left for Australia) or why he could not contact

witnesses or find other evidence while he was in Australia.  See Ex. E.  Accordingly, NYU's

Appeal Panel determined that there was "no basis to find that the Respondent was incapable of

collecting and/or directing the investigators toward this evidence during the investigation," and

that, in any event, the evidence would not "have affected the outcome of the hearing in light of the

overwhelming evidence supporting the Adjudicator's decision."  Ex. F at 1.

### POINT II — PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED

Plaintiff's Third and Fourth Causes of Action, for Promissory Estoppel and Gender

Discrimination under the New York City Human Rights Law ("NYCHRL") respectively, should

also be dismissed for two reasons. First, if the Court dismisses Plaintiff's Title IX claims, it should

decline to exercise supplemental jurisdiction over the pendent claims. Second, Plaintiff's pendent

claims lack merit, and should be dismissed because they fail to state a claim.

### A.      The Court Should Decline to Exercise Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over a claim if "the

district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C.A. §

1367(c)(3).  Courts have broad discretion when deciding whether to exercise such jurisdiction but

are generally discouraged from doing so in the name of comity, respect for state tribunals, and to

avoid needless decisions of state law.  See e.g., Russell, 2017 WL 3049534, at *39-40; see also

13D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3567.3 (3rd ed.

2019).  Declining to exercise supplemental jurisdiction is even more appropriate where the claims

over which the Court had original jurisdiction are dismissed early in the proceedings.

### B.      Plaintiff's Promissory Estoppel Claim Should be Dismissed

To establish a claim for promissory estoppel, a plaintiff must establish "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of the reliance." Rolph v. Hobart & William Smith Colls., 271 F. Supp. 3d 386, 408 (W.D.N.Y. 2017); see also Feibleman v. Columbia Univ., No. 19-CV-4327 (VEC), 2020 WL 882429, at *17 (S.D.N.Y. Feb. 24, 2020).

Plaintiff alleges that his "reliance on Advisor McFarlane's promise [that the worst-case scenario would be a one-semester suspension] led to the preparation of an inadequate defense to the charges levied against him." Am. Comp. ¶¶ 520-522. Even assuming, *arguendo*, this allegation is true, Plaintiff's failure to prepare an adequate defense does not constitute *reasonable* reliance. The Policy expressly states that "A student or Employee determined by NYU to have committed an act of Prohibited Conduct in violation of this policy is subject to disciplinary action, up to and including separation from NYU," and that "[v]iolating the terms of a protective measure, including but not limited to no contact … directives, is a violation of this policy and will subject the person who violates the protective measure to additional charges and sanctions under this policy." Ex. B, Att. A at 3-4. In addition, the Procedures state that "The potential sanctions for a violation of the Policy … include: Warning, Censure, Disciplinary Probation, Restitution, Suspension of Privilege, Suspension from NYU, No Contact Directive, Dismissal from NYU, and Transcript Notation." Ex. A at 10. Reliance upon oral representations that are inconsistent with written terms is unreasonable as a matter of law. See e.g., PHL Variable Ins. Co. v. Mahler, 321 F. Supp. 3d 392, 403 (E.D.N.Y. 2018); Lombroso v. JPMorgan Chase & Co., 40 A.D.3d 289, 289-90 (1st Dep't 2007). Moreover, given the significant implications of even a one-semester

suspension, Plaintiff's "preparation of an inadequate defense to the charges levied against him," Am. Comp. ¶ 522, was unreasonable.

The second basis for Plaintiff's Prommisory Estoppel claim is his allegation that NYU's Title IX coordinator promised him he could file a Title IX complaint against Jane after the resolution of her Title IX complaint against him was resolved.  Am. Comp. ¶ 525-539.  However, Plaintiff does not and cannot allege "an injury … by reason of [his] reliance," on this promise, Rolph, 271 F. Supp. at 408.  Plaintiff's allegation that he was "denied the ability to meaningfully present evidence that would have exonerated him of the charges levied against him," Am. Comp. ¶ 531, is a conclusory statement that fails to explain *how* NYU's alleged refusal to investigate his complaint against Jane *after* the resolution of her complaint denied Plaintiff the ability to present evidence and is contradicted Plaintiff's earlier admission that he could and did submit his own evidence to the Investigator.  See Am. Comp. ¶¶ 167-168; see also Ex. C, Part 5 at 19:12-19:24 (Plaintiff's statement at the hearing that the Adjudicator "asked all of the right questions" and "guided me into giving what I believe the be the best story; the best perspective of [my side] as to what occurred.")

### C.    Plaintiff's NYCHRL Claim Fails for the Same Reasons as his Title IX Claims

To survive a motion to dismiss under the NYCHRL, a party must "allege facts on the basis of which a court can find differential treatment—*i.e.,* the plaintiff was 'treated less well–because of a discriminatory intent."  Soloviev v. Goldstein, 104 F. Supp. 3d 232, 250 (E.D.N.Y. 2015).  "The plaintiff still bears the burden of showing that the conduct is *caused by* a discriminatory motive."  Id.; see also Gonzalez v. City of New York, 377 F. Supp. 3d 273, 300 (S.D.N.Y. 2019) (dismissing disability discrimination claim under the NYCHRL because the plaintiff "fail[ed] to allege facts that lead to the inference that his disability was a motivating factor for the allegedly

discriminatory conduct").  Here, Plaintiff's NYCHRL claim fails for the same reasons as his Title

IX claims: he fails to include "specific facts that support a minimal plausible inference of [gender]

discrimination."  <u>Columbia</u>, 831 F.3d at 56.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice in

its entirety.

June 22, 2020                          P<small>ILLSBURY</small> W<small>INTHROP</small> S<small>HAW</small> P<small>ITTMAN</small> LLP
                                       <u>  /s/_ Jeffrey P. Metzler        </u>
                                              Jeffrey P. Metzler
                                              31 West 52nd Street
                                              New York, New York 10019
                                              jeffrey.metzler@pillsburylaw.com