**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**JOHN DOE,**

                    **Plaintiff,**

      **v.**

**NEW YORK UNIVERSITY,**

                    **Defendant.**

---

**Civil Action No.: 1:20-cv-01343(GHW)**

 

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE AMENDED COMPLAINT**

 

**WARSHAW BURSTEIN, LLP**
*Attorneys for Plaintiff*
575 Lexington Avenue
New York, New York 10022
(212) 984-7700

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES……………………………...………………………………….....iii

PRELIMINARY STATEMENT………………………...…………………………………...1

STATEMENT OF FACTS…....………………………...……….…………………….....2

LEGAL STANDARD…………………………………………...….………………….......8

ARGUMENT………………………………………….………………………...…………9

    I.    NYU Relies On Improper Extrinsic Documents To Support Its Motion ………...9

    II.    Plaintiff Has Met The Low Standard For Pleading Gender Bias…..……….…...12

    III.    Jane Doe Is An Adequate Comparator For The Purposes Of Pleading A
Selective Enforcement Claim……………………………………………….....15

    IV.    Plaintiff Has Met The Low Standard For Pleading Articulable Doubt And Has
Thus Adequately Alleged An Erroneous Outcome Claim …………..………...18

    V.    Plaintiff Has Stated A Claim For Promissory Estoppel ……………......……..23

    VI.    Plaintiff Has Stated A Claim For Violations Of The New York City Human
Rights Law………………………………………………………………………25

CONCLUSION……………………………………………………………………..25

## TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)…………………………………………………………………….8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)…………………………………………………...…………..8

*B.B. v. New Sch.*,
    2018 U.S. Dist. LEXIS 80068  (S.D.N.Y. Apr. 30, 2018 Civ. Action No. 17 Civ.
    8347 (AT))………………………………………………………………….…9,11

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)…………………………………………...……10

*Cosmas v. Hassett*,
    886 F.2d 8 (2d Cir. 1989)…………………………………...………….9,10

*Deluca v. AccessIT Group, Inc.*,
    695 F. Supp. 2d 54 (S.D.N.Y. 2010)…………………………….……………10

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)…………………………………………………...10

*Doe v. Case W. Reserve Univ.*,
    No. 19-3520, 2020 U.S. Dist. LEXIS 10963 (6th Cir. Apr. 6, 2020)……………....…22

*Doe v. Colgate Univ.*,
    No. 5:15-CV-1069 (LEK/DEP), 2017 U.S. Dist. LEXIS 180267 (N.D.N.Y. Oct. 31,
    2017)………………………………………………………………………..22

*Doe v. Columbia Coll. Chi.*,
    933 F.3d 849 (7th Cir. 2019)……………………………………………….14

*Doe v. Columbia Univ.*,
    831 F.3d 46 (2d Cir. 2016)……………………………………………*passim*

*Doe v. Syracuse Univ.*,
    Civ. Action No. 5:18-CV-377, 2019 U.S. Dist. LEXIS 77580 (N.D.N.Y. May 8,
    2019)…..………………………………………………………….…...23

*Doe v. Syracuse Univ.*,
    341 F. Supp. 3d 125 (N.D.N.Y. 2018)…………………………………...……13

*Doe v. Trs. of Princeton Univ.*,
  3:19-cv-07853-BRM-TJB, 2020 U.S. Dist. LEXIS 34174 (D.N.J. Feb. 28,
  2020)………………………………………………………………………………13,14

*Doe v. Univ. of Denver*,
  952 F.3d, 1182 (10th Cir. 2020)………………………………………………...13,14

*Doe v. Vassar Coll.*,
  No. 19-cv-9601 (NSR), 2019 U.S. Dist. LEXIS 203418 (S.D.N.Y. Nov. 21, 2019)……22

*Feibleman v. Trs. of Columbia Univ.*,
  19-CV-4327 (VEC), 2020 U.S. Dist. LEXIS 31499 (S.D.N.Y. Feb 24,
  2020)………………………………………………………………………12,13,14,18,19

*Goldman v. Belden*,
  754 F.2d 1059 (2d Cir. 1985)…………………………………………...……..10

*Helprin v. Harcourt, Inc.*,
  277 F. Supp. 2d 327 (S.D.N.Y. 2003)………………………………………...10

*Int'l Audiotext Network v. Am. Tel. & Tel. Co.*,
  62 F.3d 69 (2d Cir. 1995))……………………………………………………10,11

*Johnson v. New York Univ.*,
  17 Civ. 6184 (VEC) (GWG), 2018 U.S. Dist. LEXIS 140680 (S.D.N.Y. Aug. 20,
  2018)……………………………………………………………………………..18

*Lombroso v JPMorgan Chase & Co.*,
  40 A.D. 3d 289 (1st Dept 2007)……………………………………………......24

*Lynch v. City of N.Y.*,
   952 F.3d 67 (2d Cir. 2020)……………………………………………….11,12,15,22

*Menaker v. Hofstra Univ.*,
  935 F.3d 20 (2d Cir. 2019)……………………………………………………14

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013)………………………………………………......25

*Phl Variable Ins. Co. v. Mahler*,
  321 F. Supp. 3d 392 (E.D.N.Y. 2018)…………………………………...……24

*Playboy Enterprises, Inc. v. Dumas*,
  960 F. Supp. 710 (S.D.N.Y. 1997)………...…………………………………...16

*PrecisionIR Inc. v. Clepper*,
    693 F. Supp. 2d 286 (S.D.N.Y. 2010)……………..……...………………………..16

*Rolph v. Hobart & William Smith Colls.*,
    271 F. Supp. 3d 386 (W.D.N.Y. 2017),……………………………………....13,14

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007)……………………………………………………9,10

*Routh v. Univ. Rochester*,
    981 F. Supp. 2d 184 (W.D.N.Y. 2013)……………………………………………..17

*Russell v. New York Univ.*,
    1:15-cv-2185-GHW, 2017 U.S. Dist. LEXIS 111209 (S.D.N.Y. July 17, 2017)………..15

*Saravanan v. Drexel Univ.*,
    No. 17-3409, 2017 U.S. Dist. LEXIS 193925 (E.D. Pa. Nov. 24, 2017)………………..15

*Tafuto v. N.J. Inst. Of Tech.*,
    Civil Action No.: 10-4521 (PGS), 2011 U.S. Dist. LEXIS 81152 (D.N.J. July 26,
    2011). ……………………………………………………………..17, 18

*U.S. v. Yousef*,
    327 F.3d 56 (2d Cir. 2003)……………………………………………………16

*Walker v. President & Fellows of Harvard College*,
    82 F. Supp. 3d 524 (D. Mass. 2014)……………………………………………..22

*Yu v. Vassar Coll.*,
    97 F. Supp. 3d 448 (S.D.N.Y. 2015)………………………………….........15

*Yusuf v. Vassar College*,
    35 F.3d 709 (2d Cir. 1994). …………………………………..……….15,18,19,20,21

## STATUTES AND RULES

Fed. R. Civ. P.  10(c).………………………………………………………………11

## OTHER AUTHORITIES

Andrew O'Hehir, *When a woman is accused of sexual misconduct: The strange case of Avital
    Ronell*, Salon (Aug. 18, 2018) (available at https://www.salon.com/2018/08/18/when-a-
    woman-is-accused-of-sexual-misconduct-the-strange-case-of-avital-ronell/)………14

## PRELIMINARY STATEMENT

Ignoring the well-pled allegations in the Amended Complaint, Defendant New York University's ("NYU") Motion to Dismiss impermissibly relies on extrinsic documents not incorporated by reference or integral to the Amended Complaint. NYU misapplies Second Circuit caselaw and utilizes non-controlling, and often irrelevant, out-of-circuit authority to support its positions. Review of the Amended Complaint shows that Plaintiff John Doe ("Plaintiff" or "John") has adequately stated causes of action for Title IX erroneous outcome, Title IX selective enforcement, promissory estoppel, and violations of the New York City Human Rights Law.

During the disciplinary process that it brought against John, NYU committed a panoply of errors, including, but not limited to, impermissibly extending its jurisdiction beyond the confines of its Title IX policies, misapplying its own policies regarding Sexual Exploitation, Stalking, and Sexual Harassment; and conducting a flawed disciplinary proceeding, NYU also reached conclusions that were contrary to the evidence; relied on selective portions of text message conversations provided by Jane Doe, John's erstwhile girlfriend, without confirming their accuracy or completeness; and refused to interview witnesses identified by John whom NYU knew had information helpful to John's defense, including certain witnesses who possessed information that directly contradicted testimony and evidence that Jane provided. Multiple NYU administrators also materially misled John and made explicit promises to John that they did not keep. Perhaps worst of all, while NYU was ready, willing, and more than able to initiate the disciplinary process against John and enforce the mutual no-contact directive enacted against him, it repeatedly refused to investigate John's multiple complaints regarding Jane's violations of NYU's Title IX policy and the mutual no-contact directive. As explained in further detail below, NYU's Motion to Dismiss should be denied in its entirety.

## STATEMENT OF FACTS

John is a former student at NYU.  Amended Complaint ("AC") at ¶ 1.  He was involved in a long-term, consensual relationship with Jane, a fellow NYU student, for approximately 2.5 years. AC at ¶¶ 2, 21, 24.  The relationship started while John and Jane were high school students, but, at Jane's insistence, its existence was almost entirely secret.  AC at ¶¶ 18-19, 21-28, 30.  In the fall of 2016 Jane was admitted as student at NYU and John was admitted to a university in Connecticut ("CT University").  AC at ¶¶  33-34.  John was not interested in maintaining a long-distance relationship and communication between John and Jane waned.  In October of 2016, an individual named Sally Soe, who claimed to be one of Jane's friends at NYU, messaged John to inform him that Jane had been brutally gang raped.  AC at ¶ 38.  Sally urged John to visit Jane at NYU to support her, which he did several times during Jane's freshman year.  AC at ¶¶ 43-44, 49.  John never met or spoke with Sally despite making several attempts to do so.  AC at ¶¶ 65-67.  Sally, however, was actually Jane using a false identity to manipulate John, shape the course of her relationship with John, and negatively impact John's life.  AC at ¶¶ 39-42, 59-85.

During John's visits to NYU, Jane refused to acknowledge their relationship in front of her friends.  AC at ¶¶ 50-51.  Jane explained that her behavior was a result of her "condition" following the alleged gang rape.  AC at ¶ 52.  John made multiple attempts to encourage Jane to get counseling support for the alleged gang rape, but Jane continually rebuffed John's efforts. AC at ¶¶ 52, 54-56.  John continued to provide support for her even though it negatively impacted his academic life at CT University.  AC at ¶¶ 57-58.  During this time, John was repeatedly contacted by Sally, who often encouraged him to engage in a physical relationship with Jane to help her overcome her supposed rape.  AC at ¶¶ 59-75.

John eventually decided to transfer to NYU, which Jane supported.  AC at ¶ 86.  Following John's transfer, the couple were inseparable between September 2017 and March 2018.  AC at ¶ 90.  Jane became physically abusive.  AC at ¶ 97.  Jane extended her control over the relationship by demanding John's social media passwords, regularly accessing John's social media accounts, and deleting the messages that she and John exchanged.  AC at ¶¶ 98-99.  In the spring of 2018, Jane inexplicably told John's friends to stay away from him and began spreading lies about John.  AC at ¶¶ 101-102.  Jane's manipulation of John's friends was successful and his friends abandoned him, with one going so far as sending a menacing video.  AC at ¶¶ 105-106, 109-110, 112.  Jane's actions interfered with John's academic life and learning environment – after a strong start to the semester, his grades began to drop precipitously.  AC at ¶ 111.  John attempted to discuss these issues with Jane, but Jane never attended the meetings that she set up.  AC at ¶¶ 107-108.

On April 22, 2018, when NYU issued John a no-contact directive foreclosing all contact with Jane.  AC at ¶¶ 113-17.  John did not learn that Jane filed four allegations of sexual harassment against him with NYU until May 22, 2018.  AC at ¶ 121.  By Jane's admission, some of the alleged conduct that formed the basis for her false allegations occurred while John was a student at CT University.  AC at ¶ 124.  NYU assigned Allen McFarlane as John's student support facilitator.  AC at ¶ 125.  On June 25, 2018, McFarlane promised John, "Under no circumstances will you be expelled." AC at ¶ 126.  McFarlane explicitly informed John that, at worst, he would receive a one-semester suspension based on the allegations pending against him.  AC at ¶ 128.

On May 2, 2018, Jane followed John to multiple locations in Washington Square Park, taking photographs of him at each location.  AC at ¶¶ 180-81.  John attempted to file a report with NYU, but, even though Jane's behavior constituted Staling under NYU's Title IX policy, NYU refused to investigate.  AC at ¶ 354-354.  John also raised this issue during NYU's investigation

of Jane's claims against him.  AC at ¶¶ 180-81.  NYU excused Jane's behavior as "normal," ignored Jane's violation of the no-contact directive, and charged John with stalking Jane.  AC at ¶¶ 176, 179, 354-57, 360, 362, 364-65.

On July 10, 2018, John had a meeting with NYU's investigator Samuel Hodge, during which Hodge provided a simplistic summary of Jane's allegations focused on two pieces of evidence that Jane provided.  AC at ¶¶ 122-23, 130-31.  Hodge failed to inform John that Jane had submitted over 100 pages of evidence and did not show John this evidence.  AC at ¶ 131.  In July 2018, Jane violated the no-contact directive by texting John as Sally.  AC at ¶ 160, 405-406.  John relied on the representations from the two NYU administrators (McFarlane and Hodge) in deciding what evidence to provide in his defense.  AC at ¶ 165.  John believed that the messages Jane had deleted from his phone were not recoverable and could not offer these messages to Hodge.  AC at ¶ 166.  Following a discussion with McFarlane, John submitted the limited amount of evidence that was available to him while attending a study abroad program in Australia.  AC at ¶¶ 166-69.

On October 23, 2018, while he was studying abroad in Sydney, Australia, John received a copy of NYU's Investigation Summary Report ("ISR"), which outlined the charges, interviews conducted, and evidence gathered.  AC at ¶ 170.  The ISR was rife with cherry-picked text messages and WhatsApp messages provided by Jane.  AC at 170.  John realized that Jane's efforts to delete her messages from his phone during their relationship were aimed at preventing him from presenting evidence in his defense.  AC at ¶¶ 100, 174.  He also realized that he had been materially misled by Hodge and Jane as her *alter ego* Sally.  AC at ¶¶ 175, 194.  The ISR more than doubled the number of allegations that John was facing from four to nine.  AC at ¶ 176.  The scope of the charges against John had also widened, as he was now facing allegations of sexual harassment, sexual assault, sexual exploitation, stalking, and violation of the no-contact directive.  AC at ¶ 176.

Not only did Jane assert claims far in excess of what Hodge told John during the July 10, 2018 meeting, but she also presented an exponentially greater amount of evidence than previously indicated by Hodge.  AC at ¶ 177.

The ISR was also blighted by the unnecessary repetition of questionable evidence provided by Jane, including certain evidence that NYU had not verified for accuracy or completeness; blatantly false testimony favoring Jane provided by witnesses identified by Jane; and procedurally improper testimony provided by witnesses identified by Jane, all of which were highly prejudicial to John.  AC at ¶¶ 178-89, 192, 195-99.  The ISR included six copies of photographs that Jane took of John as she followed him around Washington Square Park on May 2, 2018, which were used to support Jane's unfounded claim that John was stalking her as she followed him and photographed him.  AC at ¶¶ 179-183.  The unwarranted repetition of the photographs took up nearly 70 pages of the ISR, creating the false impression that John engaged in a prolonged episode of stalking behavior when, in reality, Jane was stalking John.  AC at ¶ 184-85.  The ISR also included a needless repetition of text messages purporting to show that John violated NYU's Title IX policies.  AC at ¶ 186.  These messages were selectively edited by Jane to make John look bad, and NYU did nothing to verify their accuracy or completeness before including them as part of the ISR.  AC at ¶¶ 187-88.  John believed that the evidence necessary to refute Jane's text messages had previously been deleted by Jane.  AC at ¶ 193.  He was unable to confirm whether these deleted messages were recoverable on his hard drive in Connecticut because he was in Australia.  AC at ¶ 193.  As a result, John did not have access to evidence to refute the cherry-picked text messages included in the ISR.  AC at ¶ 193.  The ISR also included false testimony provided by Jane's witnesses that directly contradicted Jane's own claims.  AC at ¶ 190.  For example, one of Jane's witnesses falsely asserted that John "physically shook" Jane when no such event occurred and Jane

never made such a claim.  AC at ¶ 190.  The ISR also improperly contained negative character evidence against John, which was prohibited by NYU's policies.  AC at ¶¶ 195-99.  Following the release of the ISR and with full knowledge of the drastic departures from Hodge's prior representations regarding the scope of the allegations and evidence, McFarlane reiterated his promise to John that he would not be expelled even if he were found responsible for the alleged violations noted in the ISR and again stated that the worst-case scenario was a one-semester suspension.  AC at ¶¶ 171-72.

After reviewing the ISR, John informed Hodge of multiple witnesses who possessed relevant information in his defense of Jane's claims, including his mother who had information that directly contradicted Jane's claims.  AC at ¶ 201-202.  However, NYU did not interview or seek to interview any of these individuals or John's mother.  AC at ¶¶ 203-204.  During the course of NYU's investigation, John informed Hodge that Jane publicly belittled him as a result of his appearance and humiliated him by saying that he "looked gay" while they were hanging out with John's friends.  AC at ¶¶ 132-33.  Even though Jane's behavior, as reported to NYU, constituted Sexual Harassment and Gender Harassment under NYU's Title IX policy, Hodge did not investigate Jane's sexual harassment and gender-based harassment of John, nor did he mention it in his ISR.  AC at ¶¶ 132-48.  During the course of NYU's investigation of Jane's false allegations, John informed Hodge and NYU's Title IX Coordinator, Mary Signor, about Sally's involvement in his relationship with Jane, including the text message Sally sent him regarding Jane's alleged withholding of evidence.  AC at ¶¶ 158, 161.  Neither Hodge nor Signor investigated or followed up.  AC at ¶¶ 163-64.

NYU initially scheduled the Title IX hearing for a time and date that would cause substantial hardship to John and was reluctant to provide accommodations for him, a stark contrast

to NYU's willingness to accommodate Jane's schedule.  AC at ¶¶ 205-219.  The hearing was eventually held on December 10, 2018 before a single adjudicator, Craig Jolley.  AC at ¶ 220. NYU failed to provide John with a hard copy of the 336-page ISR despite providing Jane with a copy.  AC at ¶¶ 221-23.  Lacking a hard copy, John was unable to fully participate in the hearing, and responded incorrectly to multiple questions posed by Jolley.  AC at ¶¶ 224-30.  Audio and video difficulties that were noticed and acknowledged by NYU also prevented John's full participation in the hearing, but NYU made no effort to correct these issues.  AC at ¶¶ 231-239, 241.  Jolley found John "not responsible" for sexual assault but "responsible" for sexual harassment, sexual exploitation, stalking, and violation of the parties' no-contact directive.  AC at ¶ 243.  John's sanction was expulsion from NYU which shocked McFarlane and John's NYU Sydney advisor Lauren Stahl.  AC at ¶ 244-46.

Upon returning to the United States in December 2018, John was able to access backups of the messages that Jane had deleted from his cell phone.  AC at ¶ 296, 298.  These newly available text messages refuted several areas of contention raised during the hearing and undermined Jane's credibility regarding the nature of the couple's relationship, which was relied upon by Jane and NYU to support the charges against John.  AC at ¶¶ 300-306.  John also discovered that there was no evidence to support Jane's false gang rape claim.  AC at ¶¶ 306-309.  John raised Sally's authenticity with NYU, but NYU ignored John's reports that Jane committed violations of NYU's Title IX policy through her *alter ego* Sally.  AC at ¶¶ 310-14.  John submitted his appeal on January 25, 2019 on the grounds of new evidence, procedural issues, and disproportionate punishment. AC at ¶ 315.  John provided newly available voluminous text messages, witness affidavits, and proof of the lack of police records regarding Jane's alleged gang rape, casting doubt on Jane's credibility.  AC at ¶ 315.  John identified new witnesses who possessed information that directly

contradicted testimony that Jane provided at the hearing, but, despite knowledge that these witnesses possessed such information, NYU did not interview or seek to interview them.  AC at ¶¶ 315-48.  NYU ignored John's new evidence and confirmed Jolley's hearing decision.  AC at ¶¶ 349-53.

While NYU's adjudication of Jane's false allegations against John was ongoing, John once against attempted to file a Title IX complaint against Jane, advising NYU about Jane's violations of its Title IX polices on, *inter alia*, Sexual Harassment and Stalking.  AC at ¶¶ 366-67.  However, Signor advised John that his complaint would not be handled until the end of Jane's Title IX case, so he should wait to file his complaint one's Jane's Title IX complaint process concluded.  AC at ¶ 382.  Following the outcome of her Title IX complaint against him, John attempted to file a Title IX complaint against Jane asserting violations of NYU's polices regarding, *inter alia*, Sexual Harassment and Stalking.  AC at ¶¶ 383, 388-403.  However, NYU failed to investigate John's Title IX allegations against Jane, and Signor informed him that the "matter will not be reopened and is considered closed."  AC at ¶¶ 412-15.

## LEGAL STANDARD

In order to survive a Rule 12(b)(6) motion, the plaintiff's pleadings must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In deciding a Rule 12(b)(6) motion, "the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor, in deciding whether the complaint alleges sufficient facts to survive."  *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).  At the motion to dismiss stage,

a court "is not engaged in an effort to determine the true facts" and "must accept the facts alleged and construe ambiguities in the light most favorable to upholding the plaintiff's claim." *Id*.

## ARGUMENT

### I.       NYU Relies On Improper Extrinsic Documents To Support Its Motion

To the extent that a movant asserts that documents incorporated by reference contradict the allegations contained in a complaint, a plaintiff states a plausible allegation sufficient to overcome a motion to dismiss when he offers an "explanation in his complaint or opposition brief that reconciles the conflict between his allegations and the [documents]" or "cast[s] doubt on the authenticity or veracity of these documents." *Cf. B.B. v. New Sch.*, 2018 U.S. Dist. LEXIS 80068 at *16 (S.D.N.Y. Apr. 30, 2018 Civ. Action No. 17 Civ. 8347 (AT)) (finding allegations in complaint contradicted by exhibits to complaint insufficient to defeat a motion to dismiss where plaintiff failed to provide explanation or dispute the authenticity or veracity of the exhibits).  In *B.B.*, this Court indicated that a plaintiff who offers an "explanation in his complaint or opposition brief that reconciles the conflict between his allegations and the [documents incorporated by reference]" or "cast[s] doubt on the authenticity or veracity of these documents" will survive a motion to dismiss based on an alleged discrepancy. *B.B.*, 2018 U.S. Dist. LEXIS 80068 at *16.  A court's job does not end just because a movant asserts a document incorporated by reference contradicts the allegations contained in the complaint; instead, a court must review the complaint and opposition papers to determine whether an explanation for the contradiction exists or whether the plaintiff has cast doubt on the authenticity or veracity of the documents. *Id*.; *Roth v. Jennings*, 489 F.3d 499, 511 (2d Cir. 2007).

"On a motion to dismiss, the district court must limit itself to a consideration of the facts alleged on the face of the complaint and to any documents attached as exhibits or incorporated by reference."  *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989).  However, mere discussion of

documents in a complaint or even including short quotations from them does not constitute incorporation by reference. *Cosmas*, 886 F.2d at 13; *see also Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985). "To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.' *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003). "[M]ere notice or possession is not enough" for a court to treat an extraneous document as integral to a complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002. Rather, the complaint must "'rel[y] heavily upon [the document's] terms and effect'" for that document to be integral. *Id.* (quoting *Int'l Audiotext Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). A court cannot consider documents with disputed authenticity, accuracy, or relevance when determining a motion to dismiss. *Deluca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010).[1]

John asserts the text messages that appear in the ISR were selectively edited by Jane to make John look bad and that NYU failed to verify that Jane's text messages were complete and accurate. AC at ¶¶ 187-88. John maintains that the ISR was faulty and based on a subpar investigation. AC at ¶¶ 149-59, 178-89, 192. The Amended Complaint does not reference the audio recording of the hearing. In any event, Plaintiff asserts that certain responses that he provided were incorrect as a result of the technical issues he experienced during the hearing and NYU's improper failure to provide him with a hard copy of the ISR. AC at ¶¶ 221-39. The hearing was guided by the faulty ISR, and the hearing decision was based on the inaccurate ISR and defective disciplinary hearing. In drafting the appeal decision, NYU failed to consider all of the

---

[1] Even if documents are incorporated by reference, reliance on such documents cannot form the basis of the Court's ruling on a motion to dismiss. *Roth v. Jennings*, 489 F.3d 499, 511 (2d Cir. 2007) The court must simply assess the legal feasibility of the complaint, not weigh the evidence that might be offered to support the claims therein. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010). Thus, the Court cannot rely on the extrinsic evidence provided by NYU to grant or deny the instant Motion.

evidence and witnesses provided by Plaintiff.  AC at ¶¶ 299-353.  The Amended Complaint clearly "cast[s] doubt on the authenticity or veracity of" NYU's extrinsic documents, so the documents cannot be used to support NYU's Motion to Dismiss.  *B.B.*, 2018 U.S. Dist. LEXIS 80068 at *16.

The Court's recent decision in *Lynch v. City of N.Y.*, 952 F.3d 67 (2d Cir. 2020), has narrowed the scope of documents traditionally considered incorporated by reference or integral to the complaint and further supports Plaintiff's position.[2]  In *Lynch*, the court noted that "a pleading is deemed to include any 'written instrument' that is attached as 'an exhibit' or is incorporated by reference."  952 F.3d at 79 (quoting Fed. R. Civ. P.  10(c)).  The court went on to explain that "the court **may** take [a] document into consideration in deciding the defendant's motion to dismiss" if it is a document "'upon which' the plaintiff 'solely relies **and** which is integral to the complaint.'" 952 F.3d at 79 (quoting *Int'l Audiotext*, 62 F.3d at 72) (emphasis added).  The limited category of "written instruments" is defined as "a legal document that defines rights, duties, entitlements, or

---

[2] If the Court disagrees with Plaintiff's analysis of *Lynch*, there is still no basis for considering the documents appended to the Miller Declaration.  As an initial matter, the Miller Declaration contains impermissible argument provided by an attorney who has not appeared in this matter in an attempt to sidestep the 25-page limit for memoranda permitted by the Court.  Indeed, NYU's Memorandum of Law cites to arguments contained within the Miller Declaration to support its position that the exhibits meet the standard for being considered on a motion to dismiss.  NYU Memo at 9. This saved NYU one and a half pages of space.  *See* Miller Declaration ("Miller Dec.") at ¶¶ 3-11.  NYU should have provided a declaration listing the documents to be used as exhibits and attesting to their truth and correctness, the common practice in this District.  NYU's space-saving plan is clearly prejudicial, as Plaintiff is still required to meet the Court's requirements.  Plaintiff therefore maintains that the Court should not consider the content of the Miller Declaration in deciding this Motion.

If the Court considers the arguments in the Miller Declaration, Plaintiff notes that certain citations used to support NYU's position that the Amended Complaint refers to NYU's exhibits "repeatedly and substantially" are nonsensical and incredibly misleading.  Miller Dec. at ¶ 9.  For example, NYU asserts that Paragraphs 373-446 of the Amended Complaint refer to "the Hearing Audio and/or evidence contained therein (Ex. C)."  Miller Dec. at ¶ 9.  Such a claim is false, as Paragraphs 373-419 detail NYU's selective enforcement of its own policies and Paragraphs 420-446 detail NYU's its gender bias against males.  AC at ¶¶ 373-446.  NYU also asserts that Paragraph 351 simultaneously refers to the "Hearing Decision (Ex. D)" and the "Appeal Statement and/or evidence contained therein and/or Appeal Decision (Exs. E, F)."  Miller Dec. at ¶ 9.  This is not true.  *See* AC at ¶ 351 ("NYU issued its appeal decision on March 8, 2019, which confirmed Adjudicator Jolley's Hearing Decision.").  NYU's assertion that the Amended Complaint refers to the audio recording of the hearing (Miller Dec. at ¶ 9) is also fantasy – the Amended Complaint does not reference the audio recording of the hearing.  NYU's argument that Plaintiff's presence at the hearing, technical difficulties, including interrupted audio, prevented him from fully participating beggars belief.  Neither the caselaw nor the improper arguments contained within the Miller Declaration supports NYU's position.  The Court should, therefore, limit its consideration to the allegations contained within the Amended Complaint.

liabilities, such as a contract, will, promissory note, or share certificate." *Lynch*, 952 F.3d at 79 (internal quotations and citations omitted). As a result, exhibits incorporated by reference pursuant to Rule 10(c) are "largely . . . contracts, notes, and other writing[s] on which [a party's] action or defense is based." *Id*. (internal quotations and citations omitted) (brackets in original).[3] Utilizing this analysis, the court distinguished documents that are considered "integral" to a party's action – written instruments such as agreements that form the basis of a cause of action in an antitrust case – from those that are not that – statements contained within a police memo book that were referenced in a complaint. *Id*. at 78-79. The documents that NYU seeks to introduce are not "written instruments" and clearly fall into the latter category. Therefore, they are not integral to the Amended Complaint and cannot be considered by the Court.[4] *Id*.

## II.    Plaintiff Has Met The Low Standard For Pleading Gender Bias

As recently noted by this Court, "The Second Circuit has established what it describes as a 'low standard' for pleading the existence of gender bias in Title IX cases." *Feibleman v. Trs. of Columbia Univ.*, 19-CV-4327 (VEC), 2020 U.S. Dist. LEXIS 31499 at *24-*25 (S.D.N.Y. Feb 24, 2020) (quoting *Doe v. Columbia Univ.*, 831 F.3d at 48). "Procedural irregularities or preferential treatment during the disciplinary proceeding, combined with a concrete motive to discriminate on the basis of gender, is sufficient to create at least a 'minimal inference' that a student was subjected to gender bias." *Id*. at *25 (quoting *Doe v. Columbia Univ.*, 831 F.3d at 57).[5]

---

[3] NYU offers a truncated version of this quotation that distorts and expands the Court's holding. *See* NYU Memorandum of Law ("NYU Memo") at 10 ("The documents collected and considered by NYU during its investigation, hearing and appeal process are, therefore, 'writings on which [plaintiff's] action . . . is based.") (quoting *Lynch*, 952 F.3d at 79 (ellipses inserted by NYU).

[4] Even if the documents were considered "integral" to the Amended Complaint, Plaintiff does not "solely rely" on them, so they cannot be considered by the Court. *Lynch*, 952 F.3d at 79.

[5] NYU's proposal that contested university disciplinary decisions constitute "justification for the adverse action" and thus automatically apply the "second phase of the case" *McDonnell Douglass* framework to matters where plaintiffs are challenging the outcome of university disciplinary proceedings is not supported by *Doe v. Columbia* as NYU's misleading citation indicates. NYU Memo at 12 n.6. Moreover, such a position should be affirmatively rejected by the Court, as it would improperly insulate schools from judicial action and stymie the purpose of Title IX.

Like the plaintiff in *Doe v. Columbia*, John asserts that NYU "failed to act in accordance with [NYU] procedures designed to protect accused students." 831 F. 3d at 56-57. John asserts that NYU ignored evidence contradicting Jane's version of events, refused to investigate Jane's violations of NYU's Title IX policies, failed to confirm the completeness and accuracy of the evidence that Jane provided, and failed to enforce the no-contact order against Jane while affirmatively enforcing it against him. AC at ¶¶ 132-64, 186-89 354-419. NYU also gave Jane preferential treatment regarding the scheduling of the disciplinary hearing as well as during the hearing itself. AC at ¶¶ 206-41. Such allegations are sufficient to state a plausible allegation of bias. *See Feibleman* 2020 U.S. Dist. LEXIS 31499 at *25-*27 (holding that allegations that university refused to investigate offending behavior by complainant and ignoring evidence that contradicted the complainant's version of events are sufficient to support a plausible allegation of bias); *see also Doe v. Syracuse Univ.*, 341 F. Supp. 3d 125, 138 (N.D.N.Y. 2018) (finding plausible allegation of bias when university failed to, *inter alia*, investigate complainant's credibility and scrutinize contradictions in her statements).

Allegations related to OCR complaints can assist in meeting the "low burden" of pleading gender bias. [6] In *Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386 (W.D.N.Y. 2017), the court determined that the plaintiff had "met his low burden at the pleading stage" regarding his claim of gender bias, as set forth in *Doe v. Columbia*, when the complaint included allegations of deficiencies in the disciplinary proceedings in addition to allegations of "public pressure" that the university was facing, including contemporaneous OCR investigations "for possibly violating

---

[6] NYU misstates Plaintiff's position, relying on inapposite, out-of-Circuit cases regarding vague allegations of external pressure rather than specific examples of OCR complaint. NYU Memo at 14. The plaintiff in *Doe v. Univ. of Denver*, 952 F.3d, 1182, 1192 (10th Cir. 2020), relied solely on a Department of Education Dear Colleague Letter and undefined notions of pressure to comply with the Dear Colleague Letter's guidance, while the plaintiff in *Doe v. Trs. of Princeton Univ.*, Case No.: 3:19-cv-07853-BRM-TJB, 2020 U.S. Dist. LEXIS 34174 at *9 (D.N.J. Feb. 28, 2020) simply asserted "pressure to comply with Title IX" as the basis for the university's alleged gender bias.

rules aimed at preventing sexual harassment." *Rolph*, 271 F. Supp. 3d at 402; *see also*, *Feibleman*, 2020 U.S. Dist. LEXIS 31499 at *28 (noting that open OCR investigations can support a minimal inference of gender bias against male students).

Contrary to NYU's claim, John is not relying on the social media messages, Ronell controversy, or OCR complaints individually to assert gender bias. Rather, he is relying on these allegations *combined* to support his allegation of gender bias. AC at ¶¶ 420-38. Considering the August 2018 social media posts,[7] the media and academia backlash[8] surrounding the Ronell matter, and the specific OCR investigations dating back to 2015 as a whole, there is "nothing implausible or unreasonable about [Plaintiff's] suggested inference that" NYU subsequently "adopted a biased stance in favor of the accusing female and against the defending male . . . in order to avoid further fanning the criticisms" regarding NYU's handling of Title IX complaints. *Doe v. Columbia Univ.*, 831 F.3d at 58[9]; AC at ¶¶ 420-38. John further asserts that the procedural deficiencies clearly present during NYU's adjudication of Jane's Title IX complaint and its failure are indicative of gender bias. AC at ¶¶ 439-46.[10] He has thus met the "low bar" of pleading gender bias.

---

[7] NYU cannot reasonably claim that it was not aware of these posts prior to the final adjudication of Plaintiff's Title IX case, as the complaint in *Doe v. NYU* was filed on January 25, 2019 (19-cv-00744 at ECF 2), NYU first appeared in that matter on January 27, 2020 (*id.* at ECF 8), and NYU issued its appeal decision on March 8, 2019. AC at ¶ 207.

[8] NYU misleading asserts that Ronell's status as a philosopher was the cause of the backlash. NYU Memo at 19. This is  simply not true – her status as a woman was the driving factor. *See* Andrew O'Hehir, *When a woman is accused of sexual misconduct: The strange case of Avital Ronell*, Salon (Aug. 18, 2018) (noting "the Ronell case . . . has set the small but intensely combative world of academic feminism and critical theory aflame.") (available at https://www.salon.com/2018/08/18/when-a-woman-is-accused-of-sexual-misconduct-the-strange-case-of-avital-ronell/). One of Ronell's defenders even said, "It's not the same thing to accuse a male person in power versus accusing a woman." *Id.* Moreover, NYU held a then-65-year-old woman who used her position of power to force a gay man to have sex with her against his will of to a lesser standard than a teenage male undergraduate student who, even if all of the allegations in the ISR were true, engaged in far less serious behavior, indicating clear gender bias.

[9] *See also*, *Menaker v. Hofstra Univ.*, 935 F.3d 20, 33 (2d Cir. 2019) (minimal evidence of pressure enough to plead gender bias). NYU relies on inapposite out-of-Circuit standards to support its arguments regarding gender bias. NYU Memo at 15; *see Doe v. Univ. of Denver*, 952 F.3d at 1198 (applying standard that investigators did not lack an evidence-based reason for reaching decision); *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 856 (7th Cir. 2019) (requiring a "particularized 'something more'" to adequately plead gender bias to survive motion to  dismiss); *Doe v. Princeton*, 2020 U.S. Dist. LEXIS 34174 at *8 (applying more stringent Third Circuit standard for pleading gender bias).

[10] These are not threadbare recitals as claimed by NYU. The bases for these allegations are exhaustively detailed in the Amended Complaint and this Memorandum. *See* Statement of Facts, *supra*. Additionally, NYU's claim that John has not alleged a failure to seek out key student witnesses (NYU Memo at 15) is clearly false (*see* Statement of Facts,

### III.     Jane Doe Is An Adequate Comparator For The Purposes Of Pleading A Selective Enforcement Claim

To plead a selective enforcement claim, a plaintiff must allege that "regardless of [his] guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by [his] gender." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994).  The allegations must contain a showing that a female student in circumstances sufficiently similar to the plaintiff was treated more favorably than Plaintiff.  *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 480 (S.D.N.Y. 2015).[11]  Contrary to NYU's claim, John's claims against Jane were not materially different from Jane's claims against John.[12]  NYU's reliance on *Saravanan v. Drexel Univ.*, NO. 17-3409, 2017 U.S. Dist. LEXIS 193925 (E.D. Pa. Nov. 24, 2017), is misguided.  NYU Memo at 17; *see Saravanan*, 2017 U.S. Dist. LEXIS 193925 at *16-*17 (dismissing selective enforcement claim where plaintiff conceded he and female accuser "did not accuse each other of the same conduct.").

During NYU's faulty investigation of Jane's false claims, John attempted to file a complaint against Jane for Stalking as a result of her behavior in Washington Square Park on May 2, 2018.  AC at ¶¶ 354-57.  NYU refused to accept his complaint and did not initiate any proceeding against Jane for Stalking as defined by NYU's Title IX policy.  AC at ¶¶ 355-59.  When Jane filed a complaint based on the events of May 2, 2018, NYU charged John with Stalking under its Title IX Policy and offered to assist Jane in contacting the NYPD.  AC at ¶¶ 360-61.  NYU failed to offer John any support, instead classifying Jane's behavior – following John to different locations

---

*supra*).  NYU also asks the Court to make an impermissible credibility determination by attempting to categorize the witnesses that it failed to interview despite the information that John provided.  NYU Memo at 15 n.9; *see Lynch*, 952 F.3d at 75; *Doe v. Columbia Univ.*, 831 F.3d 46 at 48.

[11] NYU's reliance on *Russell v. New York Univ.*, 1:15-cv-2185-GHW, 2017 U.S. Dist. LEXIS 111209 (S.D.N.Y. July 17, 2017), is misplaced.  The analysis in *Russell*, an employment law case, was guided by the holding that employees with different supervisors/disciplinary decisionmakers could not be similarly situated to the point where discrimination could be inferred in an employment context.  2017 U.S. Dist. LEXIS 111209 at *93-*94.  This is not the same standard as determining adequate comparators in the Title IX context.

[12] NYU bizarrely asserts that the Amended Complaint contains allegations that Jane violated Title IX.  NYU Memo at 16-17.  No such allegations exist in the Amended Complaint.

and photographing him – as "normal." AC at ¶¶ 356, 362-63. NYU treated Jane more favorably than Plaintiff regarding each students' allegation that the other engaged in Stalking as defined by NYU's Title IX policy. Thus, John has adequately stated a claim for selective enforcement.[13]

During NYU's investigation, John informed Hodge that Jane had engaged in behavior that constituted Sexual Harassment, but Hodge failed to perform any investigation. ¶¶ 132-34, 136-42, 145-46. During the adjudication of Jane's Title IX claim against John, John informed NYU that Jane, through her *alter ego* Sally, had engaged in behavior that constituted Sexual Harassment, but NYU failed to take any action against Jane. AC at ¶¶ 39-42, 59-85, 310-14. During the investigation, John attempted to file a second complaint against Jane alleging behavior that violated NYU's Title IX Sexual Harassment policy. AC at ¶¶ 366-67. NYU again refused to accept John's Title IX complaint and told him that he would need to wait until after the disciplinary process against him had ended before filing a Title IX complaint against Jane. AC at ¶ 382. At the end of the Title IX case against him, John submitted a Title IX complaint against Jane alleging violations of NYU's Title IX policies on, *inter alia*, Sexual Harassment and Stalking. AC at ¶¶ 383, 388-403. NYU did not initiate a Title IX proceeding against Jane. AC at ¶¶ 412-15.

John and Jane were both undergraduate students at NYU. AC at ¶¶ 2, 90. John alleged that Jane engaged in Sexual Harassment and Stalking as defined by NYU's Title IX policy. AC at ¶¶ 39-42, 59-85, 132-34, 136-42, 310-13, 354-57, 366-67, 383, 388-403. Jane alleged that John engaged in Sexual Harassment and Stalking as defined by NYU's Title IX policy. AC at ¶¶ 121, 179. NYU declined to initiate a Title IX proceeding against Jane for Sexual Harassment and

---

[13] NYU does not present any argument for dismissing this portion of John's selective enforcement claim. *See* NYU Memo at 16-17. Any attempt by NYU to raise this issue in its reply memorandum of law should be rejected by the Court. *See PrecisionIR Inc. v. Clepper*, 693 F. Supp. 2d 286, 291 n.2 (S.D.N.Y. 2010) ("The Court will not consider Defendants' expanded, procedurally-improper arguments" raised for the first time in their reply brief); *U.S. v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised for the first time in a reply brief."); *Playboy Enterprises, Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court").

Stalking based on John's allegations.  AC at ¶¶ 145-46, 314, 355-59, 382, 412-15.  NYU initiated a Title IX proceeding against John for Sexual Harassment and Stalking based on Jane's allegations.[14]  AC at ¶¶ 121-22, 130, 170, 176.  Jane was clearly a similarly situated female student to John.  Accordingly, John has adequately stated a claim for selective enforcement.

NYU's claim that Jane cannot be a similarly situated female student because John "does not allege that he attempted to file a Title IX complaint" is patently false and not supported by any facts in the Amended Complaint or any of the cases NYU relies upon.  NYU completely misstates the holding in *Routh v. Univ. Rochester*, 981 F. Supp. 2d 184 (W.D.N.Y. 2013).  The court in *Routh* did not hold that the "female complainant was not similarly situated to [the] male respondent who attempted to file a cross complaint against her" because the male respondent attempted to file a complaint after the female complainant filed her complaint against him.  NYU Memo at 16.  Rather, the court noted "the record indicates that the University informed Routh that he could file a complaint against Hulbert, though it would not be handled as part of the same proceeding initiated by her complaint" before concluding, "There is no indication that Routh availed himself of that opportunity." *Routh*, 981 F. Supp. 2d at 211.  *Routh* is inapposite to the instant matter, as John certainly availed himself of the opportunity to file a Title IX complaint against Jane after NYU informed him that he would need to do so outside of the proceeding initiated by Jane's complaint.  AC at ¶¶ 383, 388-403.

NYU takes untoward liberties in its description of the court's holding in *Tafuto v. N.J. Inst. Of Tech.*, Civil Action No.: 10-4521 (PGS), 2011 U.S. Dist. LEXIS 81152 (D.N.J. July 26, 2011).  *See* NYU Memo. at 16 (describing the court in *Tafuto* as "holding that plaintiff's allegation that university failed to investigate his allegations of sexual harassment against his female accuser was

---

[14] NYU does not present any argument for dismissing these aspects of John's selective enforcement claim and should be barred from doing so on reply.  *See* Note 13, *supra*.

insufficient to support 'selective enforcement' claim because 'unlike Plaintiff, the female student was not already under investigation by' the university") (quoting *Tafuto*, 2011 U.S. Dist. LEXIS 81152 at *7).  NYU conveniently leaves out the fact that the female complainant did not assert a Title IX claim against the plaintiff and the defendant university did not initiate a Title IX proceeding against the plaintiff.  *Tafuto*, 2011 U.S. Dist. LEXIS 81152 at *7.  NYU relies on factually inapposite cases[15] in support of its position, and the Motion to Dismiss should be denied.

### IV.    Plaintiff Has Met The Low Standard For Pleading Articulable Doubt And Has Thus Adequately Alleged An Erroneous Outcome Claim

To plead an erroneous outcome claim, a plaintiff must "allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Yusuf*, 35 F.3d at 715.  Notably, "the pleading burden in this regard is not heavy." *Id*.  Articulable doubt can be created by "particular evidentiary weaknesses . . . such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge," such as "particular procedural flaws affecting the proof." *Id*. at 715. Allegations that "go well beyond the surmises of the plaintiff as to what was in the minds of others and involve provable events that in the aggregate would allow a trier of fact to find that gender affected the outcome of the disciplinary proceeding" are sufficient. *Id*. at 716.

This Court has recently reiterated that "the plaintiff's burden to plead error is not onerous." *Feibleman*, 2020 U.S. Dist. LEXIS 31499 at *30.  Allegations that a university's disciplinary process findings are not properly grounded in evidence are sufficient to meet this standard. *See e.g., id.* at *31 (allegation that photo, video, and witness evidence contradicted university

---

[15] NYU's reliance on *Johnson v. New York Univ.*, 17 Civ. 6184 (VEC) (GWG), 2018 U.S. Dist. LEXIS 140680 (S.D.N.Y. Aug. 20, 2018) is curious, as the case bears no resemblance to the instant matter.  The plaintiff in *Johnson* tried to reapply to NYU following an expulsion and *persona non grata* designation after being found responsible for grand larceny; he did not assert a Title IX selective enforcement claim.  2018 U.S. Dist. LEXIS 140680 at *2-*4, *6.

conclusion sufficient to overcome motion to dismiss on erroneous outcome claim).  Further, "because of the low pleading standard for gender bias and articulable doubt, many students who lose a 'he said-she said' case will likely be able to state a claim of erroneous outcome."  *Id*. at *43 n.22.  Because the allegations in the Amended Complaint clearly meet "the minimal plausibility threshold, dismissal of [Plaintiff's] erroneous outcome claim at this stage would amount to an improper credibility determination." *Id*. at *43.

The Amended Complaint clearly identifies reasons to doubt the veracity of NYU's charges against him as well as numerous procedural flaws during the investigation, hearing, and appeal stages that impacted the proof of NYU's disciplinary findings.  John asserts that NYU's disciplinary decision was based on selectively edited and cherry-picked text messages provided by Jane that NYU failed to properly authenticate.  AC at ¶¶ 186-89.[16]  NYU also failed to interview eight witnesses that it knew possessed information helpful to John, including three student witnesses who NYU knew possessed information that directly contradicted evidence and testimony that Jane provided to NYU.  AC at ¶¶ 149-58, 316-48.  Relying on falsified documents provided by Jane while refusing to interview witnesses that would disprove Jane's claims against John are "provable events" that provide reason to doubt the veracity of the charges NYU levied against John and impacted the proof of NYU's disciplinary findings.  *Yusuf*, 35 F.3d at 715-16.

NYU misapplied its policy on Sexual Exploitation when it found John responsible because the photographs that John took of Jane while she was sleeping did not include any nudity or sexuality – they depicted a funny face Jane was making.  AC at ¶¶ 263,482-83, 485.[17]  NYU improperly found John responsible despite the fact that Jane did not provide any evidence of

---

[16]  NYU does not present any argument for dismissing this aspect of John's erroneous outcome claim and should be barred from doing so on reply.  *See* Note 13, *supra*.
[17]  NYU does not present any argument for dismissing this aspect of John's erroneous outcome claim and should be barred from doing so on reply.  *See* Note 13, *supra*.

sexually exploitative photographs and that John was never in possession of any photographs of Jane that were sexual in nature.  AC at ¶¶ 260-61, 480-82, 485.[18]  NYU lacked jurisdiction over John, as the photographs in question were taken while John was a student at CT University.  AC at ¶¶ 257-59, 475-78.  NYU notably does not assert that John was a "Covered Person" under its Title IX policy when he took the non-sexual photographs of Jane and was a student at CT University. NYU Memo at 19.  There is a very good reason for this – John was not a "Covered Person" at that time and, as a result, the Title IX policy did not apply to him.  AC at ¶¶ 257.  Jolley even admitted this at the hearing.  AC at ¶¶ 258, 476.

NYU also misapplied its own  policy regarding Sexual Harassment, leading to an improper finding of responsibility.  AC at ¶¶ 247-256.  Jane was freely visiting John at his dorm room on a nightly basis when the alleged harassment occurred.  AC at ¶ 249.  Jane's behavior was inconsistent with the false claims she made to NYU.  AC at ¶¶ 247-49.  Jane provided no evidence to support her sexual harassment claim.  AC at ¶ 248.  The messages that John sent to Jane asking why she was making false statements about him to his friends were not "sexual."  AC at ¶ 252.  Despite a lack of evidence, NYU still found him responsible for Sexual Harassment.  AC at ¶¶ 248, 253-56.  NYU's assertion that the messages John sent to Jane regarding the lies she was spreading are *de facto* Sexual Harassment as a result of their prior dating relationship, thus the finding of responsibility was correct is conclusory and unfounded.  NYU Memo at 19; AC at ¶¶ 252-53.

NYU's Title IX policy states that an individual is responsible for Stalking when his  or her actions "would cause a *reasonable* person to fear bodily injury or experience substantial emotional distress.  AC at ¶ 34.  Jane's behavior after receiving allegedly unwelcome text messages and voicemails from John – repeatedly visiting John, consistently sleeping in John's room, and acting

---

[18] NYU does not present any argument for dismissing this aspect of John's erroneous outcome claim and should be barred from doing so on reply.  *See* Note 13, *supra*.

as if she was in a relationship with John – indicate that she did not fear bodily injury or experience substantial emotional distress as a result of the supposedly unwelcome communications.  AC at ¶¶ 266-70.   No reasonable person who engaged in such behavior would fear bodily injury or experience substantial emotional distress.  AC at ¶¶ 271-72.   Thus, NYU failed to apply the "reasonableness" standard when it found John responsible for stalking Jane as a result of the allegedly unwelcome text messages she received.  John's allegations are not a disagreement with Jolley, as incorrectly asserted by NYU.  Rather, the Amended Complaint sets forth "provable events" that provide reason to doubt the veracity of the Stalking charges NYU levied against John and impact the proof of NYU's finding of responsibility, allegations sufficient to state a claim for erroneous outcome.  *Yusuf*, 35 F.3d at 715-16.

The Amended Complaint also asserts that NYU failed to apply the reasonableness standard in its Stalking policy when it determined that John was stalking Jane in Washington Square Park on May 2, 2018.  AC at ¶¶ 273-80.  Jane's behavior – following John from location to location while photographing him – shows neither Jane nor any reasonable person in her position would fear bodily injury or experience emotional distress.  AC at ¶¶ 273-80.[19]  Similarly, neither Jane, nor any reasonable person in her position, would fear bodily harm or experience emotional distress if a former partner reached out to her parents to express concerns about her well-being when he had also done so during the course of their relationship.  AC at ¶¶ 281-84.[20]  Such "provable events" provide reason to doubt the veracity of the Stalking charges NYU levied against John and impact the proof of NYU's finding of responsibility and are sufficient to state a claim for erroneous outcome.  *Yusuf*, 35 F.3d at 715-16.  NYU's refusal to allow John to attend his disciplinary hearing

---

[19] NYU does not present any argument for dismissing this aspect of John's erroneous outcome claim and should be barred from doing so on reply.  *See* Note 13, *supra*.

[20] NYU does not present any argument for dismissing this aspect of John's erroneous outcome claim and should be barred from doing so on reply.  *See* Note 13, *supra*.

in person is one of many "particular procedural flaws affecting the proof" of NYU's disciplinary process.[21]  AC at ¶¶ 214, 490, 493-94.  The Amended Complaint specifically alleges that the audio and video technical difficulties, combined with NYU's failure to provide John with a hard copy of the ISR, prevented John from fully participating in the hearing and caused him to provide incorrect responses to questions asked during the hearing.  AC at ¶¶ 495-98.[22]

The cases relied upon by NYU are inapposite to the instant matter.[23]  Plaintiff has adequately stated a claim for erroneous outcome, and NYU's Motion to Dismiss should be denied.

---

[21] John never, as falsely asserted by NYU, sought a months-long delay of the disciplinary process.  *See* NYU Memo at 20.  AC at ¶¶ 214, 493-94.

[22] NYU offers conclusory assertions attempting to brush aside these procedural flaws, including an unsupported claim of waiver.  NYU Memo at 20-21.  Such arguments are unavailing, especially when confronted with well-pled allegations in a complaint at motion to dismiss stage.  NYU offers similarly conclusory arguments regarding the consideration of John's appeal.  NYU Memo at 21-22.  John did not have access to the text messages directly contradicting Jane's evidence and testimony until he returned to the United States from Australia.  AC at ¶¶ 193, 298-305.  Moreover, the text messages mainly addressed new issues raised by Jane at the hearing, so, even if John had access to the messages, there would have been no reason for him to provide them during NYU's investigation.  AC at ¶ 300.

[23] In *Doe v. Case W. Reserve Univ.*, No. 19-3520, 2020 U.S. Dist. LEXIS 10963 (6th Cir. Apr. 6, 2020), the plaintiff admitted that he had non-consensual sex with the complainant.  2020 U.S. Dist. LEXIS 10963 at *7-*8.  The Amended Complaint does not contain any admission that John violated NYU's policies.  NYU's quotation from *Doe v. Colgate Univ.*, No. 5:15-CV-1069 (LEK/DEP), 2017 U.S. Dist. LEXIS 180267 (N.D.N.Y. Oct. 31, 2017), was made in response to an argument by the plaintiff that the school failed to provide the correct evidentiary standard.  2017 U.S. Dist. LEXIS 180267 at *75-*77.  John does not assert that NYU failed to utilize the preponderance of the evidence standard in adjudicating his case.  In *Doe v. Vassar Coll.*, No. 19-cv-9601 (NSR), 2019 U.S. Dist. LEXIS 203418 (S.D.N.Y. Nov. 21, 2019), the plaintiff was seeking an order to show cause and preliminary injunction and was therefore held to a much higher pleading standard than a plaintiff faces at the motion to dismiss stage.  2019 U.S. Dist. LEXIS 203418 at 9*-*11.  The Amended Complaint clearly asserts that John was not afforded a "fair hearing" and maintains that the evidence relied upon by NYU was doctored and cherry-picked.  To the extent that John noted that the hearing itself was "fair" (NYU Memo at 7), he was referring to the fact that he did not have to attend the hearing in his dorm room at 2AM while his three roommates were present.  Thus, NYU's citation to *Yusuf* for the proposition that NYU's independence would be impaired because it gave John a fair hearing and reached a determination based on overwhelming evidence is inappropriate.  NYU's citation to *Yu* is similarly inappropriate, as John is not asking this Court advocate in any way or retry NYU's flawed disciplinary proceedings.  Likewise, NYU's reliance on *Walker v. President & Fellows of Harvard College*, 82 F. Supp. 3d 524 (D. Mass. 2014), is misplaced, as the quotation associated with the pin cite provided by NYU was related to the plaintiff's assertion that the university improperly curtailed cross-examination on relevancy grounds.  82 F. Supp. 3d at 531.  It appears that NYU actually meant to provide a citation to pages 531-32 of *Walker*.  Regardless, in evaluating a claim that the university relied on impermissible evidence, the court in *Walker* noted that there is no genuine dispute that the plaintiff engaged in behavior that fell within the relevant university handbook provision.  82 F. Supp. 3d at 531-32.  Here, the Amended Complaint clearly disputes that John engaged in any conduct worthy of discipline.  Moreover, the court in *Walker* was deciding a motion for summary judgement, not a motion to dismiss.  *Id*. at 528.  Accordingly, *Walker* cannot support NYU's position.  NYU even admits that this Court has determined that the failure to interview a respondent's key witnesses is evidence of potential bias.  NYU Memo at 21 n.12; *see also Doe v. Columbia*, 831 F.3d at 57.  NYU then asks the Court, once again, to make an impermissible credibility determination regarding the witnesses that John identified.  NYU Memo at 21 n.12; *see Lynch*, 952 F.3d at 75; *Doe v. Columbia Univ.*, 831 F.3d 46 at 48.

## V.        Plaintiff Has Stated A Claim For Promissory Estoppel

"In New York, promissory estoppel has three elements: (1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made; (3) and an injury sustained by the party asserting the estoppel by reason of the reliance." *Doe v. Syracuse Univ.*, 2019 Civ. Action No. 5:18-CV-377, 2019 U.S. Dist. LEXIS 77580 at *35 (N.D.N.Y. May 8,) (internal quotation and citation omitted).  Courts in this Circuit have permitted promissory estoppel claims similar to those put forth by Plaintiff to survive a motion to dismiss. *See Doe v. Syracuse*, 2019 U.S. Dist. LEXIS 77580 at *35-*36.  Similar to the plaintiff in *Doe v. Syracuse*, John states, *inter alia*, that NYU breached its express and implied promises to have any claims brought against him be heard by an impartial and objective adjudicator, to be free from discrimination, and to have complaints resolved impartially and promptly and that he reasonably relied these promises to his detriment.  *Compare* AC at ¶ 510-11 *with Doe v. Syracuse Univ.*, 2019 U.S. Dist. LEXIS 77580 at *35-*36.[24]  John also asserts that before and after the issuance of the ISR, McFarlane promised him that he would not be expelled under any circumstances and that he faced, at worst, a one-semester suspension.  AC at ¶¶ 126, 128, 171-72, 512-15.  John reasonably relied on these representations, as McFarlane was an NYU employee assigned to guide John through the Title IX process and who was experienced with NYU's Title IX process, including the adjudication of claims and the issuance of sanctions.  AC at ¶¶ 125, 516-18.  This reasonable reliance proved to be to John's detriment, as he was expelled from NYU after preparing an inadequate defense based on the explicit assurances provided by McFarlane.  AC at ¶¶ 519-24.[25]

---

[24] NYU does not present any argument for dismissing this aspect of John's promissory estoppel claim and should be barred from doing so on reply.  *See* Note 13, *supra*.

[25] NYU also asserts, in conclusory fashion, that preparing an inadequate defense in the face of a one-semester suspension is unreasonable.  NYU Memo at 21-22.  No caselaw is offered to support this position, which is simply NYU's opinion and constitutes a question of fact not suitable for resolution as part of a motion to dismiss.  John does not assert that he purposefully prepared an inadequate defense based on McFarlane's representations.  Instead,

The cases relied upon by NYU to assert that John's reliance on McFarlane's promises was unreasonable are distinguishable from the instant matter.  In *Phl Variable Ins. Co. v. Mahler*, 321 F. Supp. 3d 392 (E.D.N.Y. 2018), the court did not state, as alleged by NYU, that it is unreasonable as a matter of law to rely on oral statements inconsistent with written terms; rather, following a bench trial, the court rejected the defendant's promissory estoppel defense because he "fail[ed] to show reliance on any promise made by" the plaintiff.  321 F. Supp. 3d at 396, 403.  The court noted that the defenses in equity, including the promissory estoppel defense, were "unavailing" because "[a]s an experienced life insurance salesperson [defendant] knew the risk of loss of his commission and accepted this obligation with open eyes."  *Id.* at 397.  Unlike the defendant in *Phl Variable Ins. Co.*, John has alleged reliance on specific promises made by an NYU employee.  AC at 512-16.  Moreover, John was not a sophisticated actor when it came to NYU's Title IX process.  Rather, John was relying on the advice of an experienced NYU administrator with greater experience with and knowledge of NYU's Title IX process, including the adjudication of claims and the issuance of sanctions, who repeatedly informed John and his mother that there was no possibility that he would be expelled.  AC at ¶¶ 512-18.  In *Lombroso v JPMorgan Chase & Co.*, 40 A.D. 3d 289 (1st Dept 2007), the court rejected the plaintiff's promissory estoppel claim because the defendant issued a *subsequent* writing clarifying an incorrect oral representation made by one of its employees that differed from the terms of a stock grant.  40 A.D. 3d at 289-90.  NYU did not take any such corrective measures following McFarlane's representations to John.

NYU concedes that John has adequately asserted a promise by Signor – that John could file a Title IX complaint against Jane after the resolution of her claim against him – as well as

---

John maintains that he prepared his defense based on McFarlane's promises that he would not be expelled, and that, to John's detriment, that defense turned out to be inadequate.  AC at ¶¶ 519-22.

reasonable reliance on that promise.  NYU Memo at 24; *see* AC at ¶¶ 525-30.  NYU's assertion that John has failed to assert an injury based upon his reliance on Signor's promise is incorrect. NYU Memo at 24.[26]  NYU ignores the additional allegations of damages caused by John's reasonable reliance on Signor's promise, namely, denial of the ability to participate in a fair and impartial process; denial of the ability to fully participate in NYU's Title IX process; denial of a meaningful opportunity to be heard; denial of the ability to exercise his civil rights; and suffering unwarranted retaliation from Jane, NYU, and Jane's friends.[27]  AC at ¶¶ 532-38.  All of these damages that flow directly from John's reasonable reliance on Signor's promise.

### VI.   Plaintiff Has Stated A Claim For Violations Of The New York City Human Rights Law

In order to state a claim under the New York City Human Rights Law ("NYCHRL), a "plaintiff need only show differential treatment -- that [he] is treated 'less well' -- because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).  The Amended Complaint clearly asserts facts indicating that John was treated less well than Jane.  AC at ¶¶ 354-419, 540-44.  Moreover, as noted above, John has adequately alleged the existence of discriminatory intent as the reason for his inferior treatment when compared to Jane. *See* Section II, *supra*, AC at ¶¶ 420-46.  Accordingly, John has alleged a violation of the NYCHRL.

### <u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion to Dismiss should be denied in its entirety.

---

[26] In making this argument, NYU focuses solely on John's claim that he was denied the ability to meaningfully present evidence that would have exonerated him, asserting that John had the ability to and in fact did provide evidence to Hodge.  NYU Memo at 24.  If John were able to file a Title IX complaint against Jane when he wished, NYU would have scheduled the hearing after John returned home and had access to the hard drive messages Jane deleted from his phone.  John's reliance on Signor's promise prevented him from presenting this evidence.

[27] NYU does not present any argument for dismissing these aspects of John's promissory estoppel claim and should be barred from doing so on reply.  *See* Note 13, *supra*.

Dated: New York, New York
      July 13, 2020

                              **WARSHAW BURSTEIN, LLP**
                              *Attorneys for Plaintiff*

                              By: _____
                                      Kimberly C. Lau
                                      James E. Figliozzi
                              575 Lexington Avenue
                              New York, New York 10022
                              (212) 984-7700
                              klau@wbny.com
                              jfigliozzi@wbny.com