**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X

JOHN DOE,                                      Case No.: 1:20-cv-01343 (GHW)

              Plaintiff,          ECF case electronically filed

   vs.                                      **ORAL ARGUMENT REQUESTED**

NEW YORK UNIVERSITY,

              Defendant.

-------------------------------------------------------- X

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

---

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Jeffrey P. Metzler
31 West 52nd Street
New York, New York 10019
Telephone: (212) 858-1000
jeffrey.metzler@pillsburylaw.com

*Attorneys for Defendant*

Dated:  New York, New York
       July 20, 2020

## <u>TABLE OF CONTENTS</u>

**Page(s)**

Preliminary Statement ............................................................................................................1

Materials to be Considered ....................................................................................................2

Plaintiff Fails to Plead Specific Facts that Support A Minimal Plausible Inference
    of Gender Bias ...............................................................................................................6

Jane Roe is Not A "Similarly Situated Female Student" ......................................................8

Plaintiff Fails to Cast Articulable Doubt on the Accuracy of the Outcome of the
    Disciplinary Proceeding................................................................................................9

Plaintiff's Promissory Estoppel Claim Should Be Dismissed Because He Fails to
    Plead Reasonable Reliance or Damages ....................................................................13

Conclusion ...........................................................................................................................15

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

<u>Ashcroft v. Iqbal</u>,
  556 U.S. 662 (2009)........................................................................................2, 11, 12

<u>B.B. v. The New Sch.</u>,
  No. 17 Civ. 8347 (AT), 2018 WL 2316342 (S.D.N.Y. Apr. 30, 2018)................................2, 3

<u>Bell Atl. Corp. v. Twombly</u>,
  550 U.S. 544 (2007)................................................................................................2, 12

<u>Cosmas v. Hassett</u>,
  886 F.2d 8 (2d Cir. 1989) ...........................................................................................4

<u>Deluca v. AccessIT Grp, Inc.</u>,
  695 F. Supp. 2d 54 (S.D.N.Y. 2010)..............................................................................4

<u>Doe v. Colgate Univ.</u>,
  No. 5:15-CV-1069, 2017 WL 4990629 (N.D.N.Y. Oct. 31, 2017) ........................................9

<u>Doe v. Columbia Univ.</u>,
  831 F.3d 46 (2d Cir. 2016)......................................................................................1, 6, 7

<u>Doe v. Harvard Univ.</u>,
  No. 1:18-cv-12150-IT, 2020 WL 2769945 (D. Mass. May 28, 2020) ....................................2

<u>Doe v. Lynn Univ., Inc.</u>,
  224 F. Supp. 3d 1288 (S.D. Fla. 2016) ...........................................................................2

<u>Doe v. New York Univ.</u>,
  438 F. Supp. 3d 172 (S.D.N.Y. 2020)..........................................................................2, 8

<u>Doe v. Rider Univ.</u>,
  No. 3:16-cv-4882-BRM-DEA, 2018 WL 466225 (D.N.J. Jan. 17, 2018)................................2

<u>Doe v. Syracuse Univ.</u>,
  341 F. Supp. 3d 125 (N.D.N.Y. 2018)..............................................................................7

<u>Doe v. Syracuse Univ.</u>,
  Civ. A. No. 5:18-CV-377 (DNH/DEP) (N.D.N.Y. Mar. 27, 2018).........................................15

<u>Doe v. Univ. of Colo., Boulder through Bd. of Regents of Univ. of Colo.</u>,
  255 F. Supp. 3d 1064 (D. Colo. 2017).............................................................................2

Doe v. Vassar Coll.,
    No. 19-cv-9601 (NSR), 2019 WL 6222918 (S.D.N.Y. Nov. 21, 2019) ..................................10

Doe v. W. New England Univ.,
    228 F. Supp. 3d 154 (D. Mass. 2017) .........................................................................................2

Doe v. Wash. Univ.,
    434 F. Supp. 3d 735 (E.D. Mo. 2020), recons. denied, No. 4:19 CV 300
    (JMB), 2020 WL 1308209 (E.D. Mo. Mar. 19, 2020)................................................................2

Feibleman v. Columbia Univ.,
    No. 19-CV-4327 (VEC), 2020 WL 882429 (S.D.N.Y. Feb. 24, 2020).......................... passim

Goldman v. Belden,
    754 F.2d 1059 (2d Cir. 1985).....................................................................................................4

Haidak v. Univ. of Mass.-Amherst,
    933 F.3d 56 (1st Cir. 2019)....................................................................................................8, 9

Helprin v. Harcourt, Inc.,
    277 F. Supp. 2d 327 (S.D.N.Y. 2003).........................................................................................4

Kramer v. Time Warner Inc.,
    937 F.2d 767 (2d Cir. 1991)...............................................................................................2, 4, 6

Lynch v. City of New York,
    952 F.3d 67 (2d Cir. 2020)..........................................................................................................4

Reitman v. Ronell,
    Index No. 157658/2018 (Sup. Ct. N.Y. Cty. Aug. 16, 2018) .....................................................7

Rolph v. Hobart & William Smith Colleges,
    271 F. Supp. 3d 386 (W.D.N.Y. 2017).......................................................................................7

Roth v. Jennings,
    489 F.3d 499 (2d Cir. 2007)........................................................................................................4

Routh v. Univ. of Rochester,
    981 F. Supp. 2d 184 (W.D.N.Y. 2013) ...................................................................................8, 9

Ruff v. Bd. of Regents of Univ. of New Mexico,
    272 F. Supp. 3d 1289 (D.N.M. 2017) ........................................................................................2

Tafuto v. N.J. Inst. of Tech.,
    Civ. A. No. 10-4521 (PGS), 2011 WL 3163240 (D.N.J. July 26, 2011)...................................9

Webb v. Greater New York Auto. Dealers Ass'n, Inc.,
    144 A.D.3d 1136 (2d Dep't 2016) ...........................................................................................13

<u>Yalincak v. New York Univ.</u>,
    No. 3:08cv773 (PCD), 2009 WL 10714654 (D. Conn. Sept. 3, 2009)....................................13

<u>Yu v. Vassar Coll.</u>,
    97 F. Supp. 3d 448 (S.D.N.Y. 2015)...........................................................................................9

<u>Yusuf v. Vassar Coll.</u>,
    35 F.3d 709 (2d Cir. 1994).....................................................................................................9, 13

Statutes and Codes

Education Amendments Act (1972)
    Title IX ................................................................................................................... *passim*

Rules and Regulations

Federal Rules of Civil Procedure
    Rule 12(b)(6)........................................................................................................................2
    Rule 12(d) ...........................................................................................................................6

Other Authorities

Sarah Kaplan, <u>How a mattress became a symbol for student activists against
    sexual assault</u>, The Washington Post, Nov. 28, 2014,
    https://www.washingtonpost.com/lifestyle/style/how-a-mattress-became-a-
    symbol-for-student-activists-against-sexual-assault/2014/11/28/d637db1c-
    6040-11e4-91f7-5d89b5e8c251_story.html.................................................................7

<u>Dynamics of Abuse</u>, National Coalition Against Domestic Violence,
    https://ncadv.org/dynamics-of-abuse ......................................................................13

<u>Why Don't They Just Leave</u>, National Domestic Violence Hotline,
    https://www.thehotline.org/is-this-abuse/why-do-people-stay-in-abusive-
    relationships/ ..............................................................................................................13

## PRELIMINARY STATEMENT

Despite Plaintiff's best efforts to conform his Amended Complaint to the allegations in Doe v. Columbia Univ., 831 F.3d 46 (2d Cir. 2016), he simply cannot allege facts that give rise to a plausible inference of gender bias.  Whereas Columbia faced "substantial criticism … both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students," id. at 57, Plaintiff can point only to a single social media post, two four-year-old OCR complaints (that did not result in criticism of NYU even when they were filed), and a sexual harassment claim against a gay female tenured professor by a gay male graduate student that bears almost no resemblance to Jane Roe's charges against John Doe.  Whereas the investigator in Columbia Univ. was alleged to have been "hostile" and "suffered personal criticism in the student body for her role in prior cases in which the University was seen as not taking seriously the complaints of female students," id. at 58, Plaintiff alleges only that this was Sam Hodge's first investigation at NYU.  And whereas the plaintiff in Columbia Univ. alleged that "no evidence was presented" in support of the allegations against him, John admits (as he must) that NYU was presented with a mountain of documentary evidence, which included videos and photographs of Plaintiff, and hundreds of threatening and harassing text messages.  Am. Comp. ¶ 170.

Plaintiff seeks to overcome this deficit by arguing that the Court cannot consider the evidence that was presented to NYU, NYU's sexual harassment policy and procedures, or his appeal because they are not part of the pleadings.  But these documents are clearly integral to Plaintiff's erroneous outcome claim, the premise of which is that NYU committed procedural errors, misconstrued the Policy, and reached conclusions that were contrary to the evidence. Plaintiff's focus on a few alleged defects, while insisting that the Court ignore the overwhelming evidence presented to NYU – including Plaintiff's own admissions in writing and at the hearing –

1

is precisely the type of gamesmanship the Second Circuit rejected in <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991) ("Were courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure.").

Plaintiff's substantive arguments on gender bias, selective enforcement, and erroneous outcome are largely non-responsive to NYU's motion to dismiss and rely heavily on the "low burden" that applies to Title IX cases alleging gender bias by universities.  However, the Federal Rules of Civil Procedure do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678–79 (2009). "[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people … .'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557–58 (2007) (internal citations omitted).  This is why courts within and without this Circuit regularly dismiss Title IX claims by respondents like John Doe, who have no plausible basis for alleging discrimination based on gender, but are simply unhappy with the outcome of their disciplinary proceedings.[1]

## MATERIALS TO BE CONSIDERED

As discussed in NYU's initial Memorandum of Law, "extrinsic documents may be considered as part of the pleadings if they either are (1) attached to the complaint; (2) incorporated

---

[1] <u>See e.g.</u>, <u>Doe v. New York Univ.</u>, 438 F. Supp. 3d 172, 186 (S.D.N.Y. 2020); <u>Doe v. Harvard Univ.</u>, No. 1:18-cv-12150-IT, 2020 WL 2769945, at *7 (D. Mass. May 28, 2020); <u>Doe v. Wash. Univ.</u>, 434 F. Supp. 3d 735, 764 (E.D. Mo. 2020), <u>recons. denied</u>, No. 4:19 CV 300 (JMB), 2020 WL 1308209 (E.D. Mo. Mar. 19, 2020); <u>B.B. v. The New Sch.</u>, No. 17 Civ. 8347 (AT), 2018 WL 2316342, at *5 (S.D.N.Y. Apr. 30, 2018); <u>Doe v. Rider Univ.</u>, No. 3:16-cv-4882-BRM-DEA, 2018 WL 466225, at *12 (D.N.J. Jan. 17, 2018); <u>Doe v. W. New England Univ.</u>, 228 F. Supp. 3d 154, 190 (D. Mass. 2017); <u>Doe v. Univ. of Colo., Boulder through Bd. of Regents of Univ. of Colo.</u>, 255 F. Supp. 3d 1064, 1079 (D. Colo. 2017); <u>Ruff v. Bd. of Regents of Univ. of New Mexico</u>, 272 F. Supp. 3d 1289, 1302 (D.N.M. 2017); <u>Doe v. Lynn Univ., Inc.</u>, 224 F. Supp. 3d 1288, 1295 (S.D. Fla. 2016).

into the complaint by reference; or (3) integral to the complaint."  See NYU's MOL at 8-11 (quoting Nat'l Ret. Fund v. Intercontinental Hotels Grp. Res., LLC, No. 1:19-cv-8018-GHW, 2020 WL 1922755, at *3-4 (S.D.N.Y. Apr. 21, 2020)).  The exhibits to the Miller Declaration – which are (a) NYU's Procedures; (b) the Investigation Summary Report (which includes a copy of the Policy) ("ISR"); (c) an audio recording of Plaintiff's sexual misconduct hearing; (d) the hearing decision; (e) Plaintiff's appeal to NYU; and (f) the decision of NYU's Appeal Panel (collectively, the "Exhibits") – are part of the pleadings because they are both incorporated by reference and integral to the Amended Complaint.

Plaintiff does not and cannot dispute that the Amended Complaint refers to the Exhibits repeatedly and substantially.  See Am. Comp. ¶¶ 256, 264, 464, 465, 484, 509, 510 (referring to NYU's procedures (Ex. A)); id. ¶¶ 146, 148, 170, 176-192, 195, 197-19, 263, 470 (referring to the investigation and/or evidence collected (Ex. B)); id. ¶¶ 205, 220-242, 258, 301, 302, 470 (referring to the hearing and/or evidence presented (Ex. C)); id. ¶¶ 244, 255-256, 264, 285, 287, 289, 351, 470 (referring to the hearing decision (Ex. D)); id. ¶¶ 5, 315-353 (referring to Plaintiff's appeal and/or the decision of NYU's appeal panel (Exs. E, F)).[2]

Furthermore, the Exhibits are integral to the Amended Complaint and the cases cited by Plaintiff support this conclusion.  In B.B., 2018 WL 2316342, the court considers extrinsic documents analogous to the Exhibits because the Plaintiff relied on them to frame his complaint against The New School in connection with its finding that he was responsible for sexual misconduct.  Id. at *2 n.4 (considering a letter analogous to NYU's Investigation Summary Report and citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)); see also id. at *2

---

[2] Plaintiff correctly identifies "certain citations" to the Amended Complaint that do not correspond to the Exhibits.  See Pl. MOL at 11 n.2.  These are scrivener's errors caused by a miscommunication concerning references to the Exhibits in Plaintiff's original complaint rather than the Amended Complaint.

n.3 (considering The New School's Policy, which was not attached to the complaint); Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 331 (S.D.N.Y. 2003) (holding that where complaint is based mainly on interpreting specific terms of an agreement, the court will consider the agreement as a part of the complaint).

Roth v. Jennings, 489 F.3d 499 (2d Cir. 2007), similarly supports consideration of the Exhibits.  As the court explained:

> When a complaint alleges, for example, that a document filed with the SEC failed to disclose certain facts, it is appropriate for the court, in considering a Rule 12(b)(6) motion, to examine the document to see whether or not those facts were disclosed.  Or when the complaint alleges that such a document made a particular representation, the court may properly look at the document to see whether that representation was made. Consideration of such documents … is appropriate with respect to a nondisclosure or misrepresentation claim because "no serious question as to their authenticity can exist," and because the court is to consider them on a Rule 12(b)(6) motion "only to determine *what* the documents stated," and "*not to prove the truth of their contents.*"

Id. at 509 (quoting Kramer, 937 F.2d at 774).[3]  In this case, Plaintiff does not argue that the Exhibits are not true and correct copies of what they purport to be, or that he had no knowledge of the Exhibits in framing his Amended Complaint.[4]  Thus, "it is appropriate for the court … to examine" NYU's Procedures, Policy, and the evidence presented "to determine what the documents stated … not to prove the truth of their contents."  Roth, 489 F.3d at 509 (internal quotations omitted).

---

[3]  Cosmas v. Hassett, 886 F.2d 8 (2d Cir. 1989) and Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985), two other cases cited by Plaintiff, are explicitly abrogated in Kramer, 937 F.2d at 773-74.  Deluca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010), like Lynch v. City of New York, 952 F.3d 67 (2d Cir. 2020), is inapposite as it involved *a plaintiff's* attempt to defeat a motion to dismiss by introducing a document that was not attached to or relied upon in framing the complaint.

[4]  Plaintiff's Memorandum of Law seems to misconstrue the "authenticity or veracity" of the documents themselves with the truth of the document's contents.  See Pl. MOL at 10-11.  Plaintiff does not question the former and, as discussed below, NYU did not introduce the Exhibits to prove their contents.

NYU did not submit the Exhibits to prove the truth of Jane's allegations against Plaintiff, but to demonstrate what evidence was presented to NYU.  While this is obvious with respect to the Policy and Procedures, it is no less true with respect to the ISR and the Hearing Audio, which contain all of the evidence considered by NYU, including the evidence presented by Plaintiff.[5] Plaintiff's assertion that the text messages in the ISR were selectively edited by Jane, Pl. MOL at 10, misses the point.  Because he failed to make that claim in his written response to the ISR or at the hearing, see Exs. B & C, NYU's adjudicator had no way of knowing Plaintiff's position.  Thus, even if the text messages submitted by Jane were selectively edited, Plaintiff's allegation fails to raise a plausible inference of bias *by NYU*.[6]

Moreover, Plaintiff ignores his own admissions, in writing and during the hearing, that he sent Jane threatening text messages and violated the no-contact directive.  See Ex. B at 325 (Plaintiff's written admission that he sent messages and contacted Jane in person after receiving the no-contact directive); Ex. C, Part 4 at 1:02:45-1:04:37 (Plaintiff testifying that he was threatening to expose his past relationship with Jane to her parents); Ex. C, Part 4 at 1:21:50-1:22:14 ("I'm not gonna, going to try to deny it; I violated the no-contact directive").  As with the text messages in the ISR, regardless of whether these admissions were true or not when Plaintiff made them, they are integral to his claim that the outcome of his sexual misconduct hearing was based on NYU's gender bias rather than the overwhelming evidence presented at the Plaintiff's

---

[5]  NYU submitted only Plaintiff's appeal statement to show what arguments he presented, but omitted Jane Roe's response, which challenges the substance of Plaintiff's arguments and is therefore not integral to the Amended Complaint.

[6]  Plaintiff complains that "NYU did not verify that the text messages provided by Jane were complete and accurate messages," Am. Comp. ¶ 188, but does not allege that he told this to NYU and provides no explanation for how or why NYU would have verified text messages that Plaintiff did not question.

hearing, including videos, photographs, text messages that Plaintiff admitted sending, and Plaintiff's own admissions.

In effect, Plaintiff is like a defendant who takes the stand and admits to signing fraudulent documents, and then sues the court for discrimination when he is found liable.  The evidence presented at trial, including the fraudulent documents and defendant's testimony, can be considered by the court on a motion to dismiss "not to prove the truth of their contents but only to determine what the documents stated."  Kramer, 937 F.2d at 774.[7]

## PLAINTIFF FAILS TO PLEAD SPECIFIC FACTS THAT SUPPORT A MINIMAL PLAUSIBLE INFERENCE OF GENDER BIAS

Plaintiff's Memorandum of Law concedes that the social media post, four-year-old OCR complaints, and Ronell controversy do not give rise to a plausible inference of gender bias when considered individually, but argues that the allegations "*combined*" support his Amended Complaint.  See Pl. MOL at 14.  However, merely "combining" three unrelated allegations that span a period of four years does not create a plausible inference of gender bias.

Unlike in Columbia Univ., 831 F.3d at 57, Plaintiff does not allege that the allegations, individually or combined, resulted in "substantial criticism of the University, both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students."[8]  In fact, the social media post and OCR

---

[7]  If the Court determines that the Exhibits are not incorporated by reference or integral to the Amended Complaint, it can treat NYU's motion as one for summary judgment provided Plaintiff is "given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. Proc. 12(d).  This is unnecessary, however, because NYU's arguments concerning gender bias, selective enforcement, and Plaintiff's state law claims do not rely on the Exhibits.

[8]  The other cases Plaintiff relies on included similar allegations.  See Feibleman v. Columbia Univ., No. 19-CV-4327 (VEC), 2020 WL 882429 at *10 (S.D.N.Y. Feb. 24, 2020) ("[D]uring the pendency of Feibleman's appeal, Columbia allegedly received weeks of negative press coverage for settling a court case with a male student who

complaints cited by Plaintiff generated no criticism of NYU at all, and no inference regarding NYU's treatment of Plaintiff can be drawn from the "Ronell controversy." That matter involved an accusation by a gay male graduate student that a gay female tenured faculty member used her position to force him to engage in unwanted sexual interactions, see Complaint, Reitman v. Ronell, Index No. 157658/2018 (Sup. Ct. N.Y. Cty. Aug. 16, 2018). Unlike the media attention in Columbia Univ., 831 F.3d at 57, the attention around Professor Ronell had nothing to do with NYU's handling of "complaints of female students alleging sexual assault by male students." Similarly, Plaintiff does not and cannot allege that NYU "was cognizant of, and sensitive to, these criticisms to the point that the President called a University-wide open meeting … to discuss the issue." Id. [9]

In short, Plaintiff has not pled any facts that give rise to a plausible inference "that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault." Id.

---

had been accused of rape in a high-profile case."); Doe v. Syracuse Univ., 341 F. Supp. 3d 125, 129 (N.D.N.Y. 2018) ("[D]uring the period preceding the disciplinary action against John Doe, there was substantial criticism of Syracuse, both in the student body and in the public media, accusing Syracuse of not taking seriously complaints by female students alleging sexual assault by male students."); Rolph v. Hobart & William Smith Colleges, 271 F. Supp. 3d 386, 401 (W.D.N.Y. 2017) ("Plaintiff alleges that, before his disciplinary hearing, HWS was criticized in the media for failing to take seriously female students' complaints of sexual assault by male students.").

[9]  The context within which Columbia Univ., 831 F.3d 46, was decided flows from an incident where a female student alleged that she was raped, and the university failed to discipline the perpetrator. Sarah Kaplan, How a mattress became a symbol for student activists against sexual assault, The Washington Post, Nov. 28, 2014, https://www.washingtonpost.com/lifestyle/style/how-a-matress-became-a-symbol-for-student-activists-against-sexual-assault/2014/11/28/d637db1c-6040-11e4-91f7-5d89b5e8c251_story.html. That student then carried a mattress across campus in protest for months, which inspired a National Day of Action wherein hundreds of students across the country showed support, and the student was featured in Hillary Rodham Clinton's speech at the Democratic National Convention. Id. Following the incident, twenty-three students filed a federal complaint against Columbia claiming that it inadequately handled allegations of sexual misconduct. id. Clearly, this is a far cry from Plaintiff's anemic assertion that "NYU cannot reasonably claim that it was not aware of [the social media] posts." Pl. MOL at 14 n.7.

## JANE ROE IS NOT A "SIMILARLY SITUATED FEMALE STUDENT"

As NYU explained in its opening brief, to state a claim for selective enforcement, Plaintiff "must show: 1) similarly situated female students at NYU were treated differently during investigations and disciplinary proceedings concerning sexual assault; and 2) the Defendant[] had the requisite discriminatory intent."  NYU's MOL at 16 (quoting Doe v. New York Univ., No. 1:19-cv-00744 (ALC), 2020 WL 564264 (S.D.N.Y. Feb. 5, 2020)).  Plaintiff does not dispute this legal standard or seriously argue that he has met it.  Rather, John states without any argument, explanation, or citation that "John's claims against Jane were not materially different from Jane's claims against John." Pl. MOL at 15.[10]  But as NYU detailed in its opening brief, this bald assertion is demonstrably incorrect.  See NYU's MOL at 16-17.

Moreover, Plaintiff's argument ignores completely the most important difference between his allegations against Jane and her allegations against him: the timing.  John alleges that he attempted to file complaints against Jane *during NYU's investigation of Jane's claims*.  See Pl. MOL at 15-16.  Plaintiff does not allege that NYU, during its investigation of a Title IX claim by a male student against a female respondent, allowed the female respondent to file a Title IX complaint against the male complainant.  See Haidak v. Univ. of Mass.-Amherst, 933 F.3d 56, 74 (1st Cir. 2019) (rejecting selective enforcement claim in which Plaintiff alleged that the "university filed charges against him when [a female complainant] accused him of misconduct, yet filed no charges against her when he accused her of misconduct"); Routh v. Univ. of Rochester, 981 F.

---

[10] Plaintiff also "bizarrely" denies that "the Amended Complaint contains allegations that Jane violated Title IX." Id. at 15 n.12. Cf. Am. Comp. ¶ 381 ("John attempted to file a Title IX complaint against Jane…."); id. ¶ 383 ("Following the outcome of Jane's Title IX complaint, John attempted to file his Title IX complaint against Jane."); id. ¶¶ 384 & 385  ("In his Title IX Complaint against Jane …").

Supp. 2d 184, 211-12 (W.D.N.Y. 2013); <u>Tafuto v. N.J. Inst. of Tech.</u>, Civ. A. No. 10-4521 (PGS),

2011 WL 3163240 at *3 (D.N.J. July 26, 2011).[11]

## PLAINTIFF FAILS TO CAST ARTICULABLE DOUBT ON THE ACCURACY OF THE OUTCOME OF THE DISCIPLINARY PROCEEDING

Plaintiff's Opposition to NYU's Motion to Dismiss does not deny that there was

overwhelming and undisputed evidence that Plaintiff violated the Policy, including Plaintiff's own

admissions in his written response to the ISR and at the hearing.  Nor does he identify "particular

evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a

complainant or witnesses, particularized strengths of the defense, or other reason to doubt the

veracity of the charge."  <u>Yusuf</u>, 35 F.3d at 715.  Rather, he focuses on alleged "procedural errors"

(a) that are not errors at all and (b) many of which Plaintiff failed to raise with NYU, in the hopes

that this Court will accept an invitation that other courts have declined to "engage in a granular

examination of the record to find fault in the Panel's decision-making." <u>Doe v. Colgate Univ.</u>, No.

5:15-CV-1069 (LEK/DEP), 2017 WL 4990629, at *23 (N.D.N.Y. Oct. 31, 2017); <u>see</u> <u>Yusuf</u>, 35

F.3d at 715 ("We do not believe that Congress meant Title IX to impair the independence of

universities in disciplining students against whom the evidence of an offense, after a fair hearing,

is overwhelming."); <u>Yu v. Vassar Coll.</u>, 97 F. Supp. 3d 448, 461 (S.D.N.Y. 2015) ("The Court's

role ... is neither to advocate for best practices or policies nor to retry disciplinary proceedings.

…  [T]he sole questions before the Court are whether when [the university] expelled [the

---

[11] Plaintiff's attempt to distinguish <u>Tafuto</u> on the grounds that the allegations against Tafuto (and his cross-claim against a female student) were not for sexual misconduct betrays a misunderstanding of a selective enforcement claim, which is that "the severity of the penalty and/or the decision to initiate the [disciplinary] proceeding was affected by the student's gender."  <u>Yusuf v. Vassar Coll.</u>, 35 F.3d 709, 715 (2d Cir. 1994).  The nature of the underlying disciplinary proceeding need not relate to Title IX.  Further, the plaintiffs in <u>Haidak</u> and <u>Routh</u> declined their universities' offers to file complaints, but this was only one of several factors cited by the courts explaining why they were not similarly situated to their alleged comparators.

respondent] for sexually assaulting a fellow student, it discriminated against him based on his gender in violation of Title IX, or otherwise violated a provision of state law."); accord Doe v. Vassar Coll., No. 19-cv-9601 (NSR), 2019 WL 6222918 (S.D.N.Y. Nov. 21, 2019).

Plaintiff's reliance on Feibleman v. Columbia Univ., No. 19-CV-4327 (VEC), 2020 WL 882429 (S.D.N.Y. Feb. 24, 2020), is misplaced.  Feibleman involved what the district court described as a "he said-she said" case, id. at *15 n.22, in which Columbia made explicit credibility determinations in favor of a female complainant who admitted she had "very little memory of the [i]ncident," id. at *9.  In contrast, NYU was presented with direct evidence of John's misconduct in the form of videos, photographs, and hundreds of text-messages that *Plaintiff admitted sending*, as well as Plaintiff's own admissions that he violated the no-contact directive, Ex. C, Part 4 at 1:21:50-1:22:14, intended for some of his text messages to be perceived as threats, id. at 1:02:45-1:04:37, and took photographs of Jane sleeping while he was a student at NYU, Am. Comp. ¶¶ 257-264.[12]

Furthermore, Plaintiff's criticism of NYU for failing to properly authenticate the text-messages submitted by Jane, Pl. MOL at 19 (citing Am. Comp. ¶¶ 186-89), rings hollow given that he had the opportunity to review the evidence prior to his hearing and failed to question the authenticity of the text messages in either his written response to the ISR or during the hearing itself.  See Am. Comp. ¶ 170; Exs. B & C.  Similarly, while John alleges he had difficulty following the hearing because he had to view the ISR on his laptop and experienced technical difficulties, he

---

[12] Plaintiff's reliance on Feibleman is curious given his effort to prevent the Court from considering the same type of evidence his counsel (who also represented Mr. Feibleman) submitted to the court, and that the court considered in deciding that case.

failed to raise this during the hearing.[13]  Plaintiff fails to explain why or how NYU should have

done more to "properly authenticate" text messages that he failed to challenge or address technical

difficulties that he failed to raise.  In any event, these were not "procedural flaws" and are certainly

not evidence of bias by NYU.

John also claims "NYU also failed to interview eight witnesses that it knew possessed

information helpful to John, including three student witnesses who NYU knew possessed

information that directly contradicted evidence and testimony that Jane provided to NYU." Pl.

MOL at 19 (citing Am. Comp. ¶¶ 149-58, 316-48).  However, he omits the fact that he failed to

identify the "three student witnesses who NYU knew possessed information that directly

contradicted [Jane's] evidence and testimony" until his appeal, and that the Appeal Panel held

"[t]here is no basis to find that the Respondent was incapable of collecting and/or directing the

investigators toward this evidence during the investigation." id.; Ex. F.  In addition, the witnesses

Plaintiff identified prior to his appeal were (i) employees from John's prior university who were

proffered to testify only about the impact that Jane's alleged gang rape had on Plaintiff – a subject

that is tangential, at best, to Jane's allegations against John – and (ii) John's mother, who is not

alleged to have any direct or specific knowledge relating to Jane's allegations against him.  Am.

Comp. ¶¶ 149-155.

As discussed in NYU's initial Memorandum of Law, see NYU's MOL at 18-21, the other

"procedural flaws" cited by Plaintiff are similarly without merit.  Plaintiff's argument concerning

NYU's finding of Sexual Exploitation ignores the fact that he admitted at the hearing that he took

---

[13] Moreover, Plaintiff's assertion that this purported difficulty somehow led to him making clearly stated admissions
is inherently implausible.  See Iqbal, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim
… [is]  a context specific task … requir[ing] the reviewing court to draw on its judicial experience and common
sense.").

pictures of Jane while she was sleeping on *two occasions*, once before he had enrolled at NYU and once after,  Ex. C, Part 4 at 27:05-28:30.  Plaintiff also continues to misconstrue the Policy's definition of "Sexual Harassment" to narrowly mean only harassment that is explicitly sexual in nature when the actual definition is "unwanted conduct *of a sexual nature*,"  Ex. B, Att. A at 6-7, which the Adjudicator properly found to include "unwelcome contact … about [a] prior dating relationship." Ex. D at 4.[14]  Plaintiff's allegation of bias in NYU's "refusal to allow John to attend his disciplinary hearing in person," Pl. MOL at 21-22, ignores NYU's Procedures, which do not require in-person attendance, Ex. A at 9, and the "obvious alternative explanation" for NYU's decision, see Iqbal, 556 U.S. at 682 (quoting Twombly, 550 U.S. at 567) – *i.e.,* that John was in Australia and the complainant, investigator, witnesses, and adjudicator were all in New York.

Plaintiff's argument that no "reasonable person" in Jane's circumstances would "fear bodily injury or experience substantial emotional distress," Pl. MOL at 20-21, is outrageous given the nature of his text messages, see e.g. Ex. B at 132 ("You bloody FUCKINF Bitch[.] I FUCKING HATE TOU[.] I WALKED HERE AND YOU WALKED BACK[.] NOGEY THE FUCK UP OR I WILL TEXT YOU THE NORMAL WAY YOU BITCH[,] YOU ABSOLUTE BITCH[.] I will call you Until you talk to me… I'm going to find your doorbalell[.] In five seconds I will tell [Person 1] [e]very fucking thing [i]f you don wake up [a]nd talk to me [i]n 10 minutes… I'm giving you 5 minutes [a]nd [Person 1] will kno everything[; y]our parents will know everything[.] Press charges against me[;] I don't give a fuck[.]" (emphasis and typos in original)), and the video he took of himself with Jane crying on the floor as Plaintiff says into the camera "she laughed when you guys were there and I was hurt and now she's crying… where's the laughter?  This is a

---

[14] Plaintiff ignores the provision in the Policy stating that at NYU's discretion, the Policy may be applied "to alleged violations by the Respondent of other NYU policies [e.g. non-sexual harassment] if, in NYU's judgment, those other allegations are directly related to the reported Prohibited Conduct."  Ex. B, Att. A at 2.

high stress situation … why isn't she laughing?  … she won't laugh now, she'll just cry."  Id., Att. B at April 21 Video at 00:55-01:27.[15]

Finally, Plaintiff's argument that it was Jane who followed him in Washington Square Park on May 2 ignores the fact that he admitted to violating the no-contact directive on several occasions prior to that encounter.  See Ex. B at 325; Ex. C, Part 4 at 1:21:50-1:22:14.  Thus, the Adjudicator need not have even relied on that incident in finding that Plaintiff was responsible for violating the no-contact directive.  Moreover, to the extent that the Adjudicator found Jane's account of that incident more credible under the circumstances, Plaintiff's argument is nothing more than a disagreement with that judgment; he does not identify any "particular evidentiary weaknesses behind the finding."  Yusuf, 35 F.3d at 715.[16]

## PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM SHOULD BE DISMISSED BECAUSE HE FAILS TO PLEAD REASONABLE RELIANCE OR DAMAGES

Plaintiff frames the alleged promises underlying his promissory estoppel claim as arising from three sources – McFarlane, Signor, and the university, generally.  It is within this Court's authority on a motion to dismiss to decide, as a matter of law, whether such "reasonable reliance" has been plausibly alleged.  See e.g., Webb v. Greater New York Auto. Dealers Ass'n, Inc., 144 A.D.3d 1136, 1139 (2d Dep't 2016) (affirming dismissal of promissory estoppel claim on motion to dismiss for lack of reasonable reliance);  Yalincak v. New York Univ., No. 3:08cv773 (PCD), 2009 WL 10714654, at *12 (D. Conn. Sept. 3, 2009) (granting motion to dismiss promissory estoppel claim where it was unreasonable for plaintiff to have relied on contingent and conditional

---

[15] Plaintiff's claim also betrays a misunderstanding of intimate partner relationships.  See, e.g., National Domestic Violence Hotline, Why Don't They Just Leave, https://www.thehotline.org/is-this-abuse/why-do-people-stay-in-abusive-relationships/; The National Coalition Against Domestic Violence, Dynamics of Abuse, https://ncadv.org/dynamics-of-abuse.

[16] Plaintiff did not submit the evidence that allegedly corroborates his account of the May 2 incident until his appeal.

promises, especially to the extent they "contradicted the terms of the implied contract between the parties, as set forth in NYU's academic bulletin and other official publications").

With respect to the alleged assurances made by McFarlane, Plaintiff's claim that he relied on an assurance that he would not be expelled (although NYU's Policy and Procedures made the full scope of available sanctions clear), but that he could face a one-semester suspension (still a grave consequence), such that he did not prepare an adequate defense, Am. Comp. ¶¶ 520-22, fails to plead "reasonable reliance" as a matter of law.

With respect to the alleged assurances made by Signor, Plaintiff does not seriously attempt to defend the allegation that he was "denied the ability to meaningfully present evidence that would have exonerated him of the charges levied against him," Am. Comp. ¶ 531, given that he had the opportunity to present whatever evidence he wanted in response to the ISR and at his hearing.  See Am. Comp. ¶¶ 167-68, Ex. C, Part 5 at 19:12-19:24 (Plaintiff's statement at the hearing that the Adjudicator "asked all of the right questions" and "guided me into giving what I believe the be the best story; the best perspective of [my side] as to what occurred.").[17]  Rather, John argues that NYU ignored "additional allegations of damages caused by John's reasonable reliance on Signor's promise."  Pl. MOL at 25.  But these injuries are alleged only in conclusory fashion, and Plaintiff fails to explain in the Amended Complaint or Opposition brief *how* NYU's alleged refusal to open an independent investigation of his allegations against Jane after he was expelled from NYU resulted in any of the alleged injuries.

---

[17] Plaintiff offers no factual support for his speculation that "NYU would have scheduled the hearing after John returned home [from Australia]," Pl. MOL at 25, n.26. Nor is there a logical explanation for why the hearing concerning Jane's complaint against Plaintiff would have been postponed by an independent investigation of Plaintiff's Title IX complaint against Jane.

14

Plaintiff also claims that he relied on general assurances contained in NYU's Title IX policies and procedures. Pl. MOL at 23.  But as the Court held in Feibleman:

> A commitment to provide a "fair and impartial" process is too generic to be an enforceable promise—a proposition that Feibleman does not appear to dispute. See Pl. Opp. (Dkt. 65) at 22; see Noakes v. Syracuse Univ., 369 F. Supp. 3d 397, 405, 419–20 (N.D.N.Y. 2019) (holding that university's policy of providing a "fundamentally fair" and "impartial" process is a "non-actionable statement[ ] of general policy that ... cannot support a breach of contract claim"); Gally v. Columbia Univ., 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998) ("Plaintiff does not point to a specific promise to, say, provide certain hours of instruction, state-of-the art facilities, one-on-one mentors, or particular courses. Unlike these obligations, [Defendant's] alleged promises about ethical conduct are subject to neither quantification nor objective evaluation.").

Feibleman, 2020 WL 882429, at *18.  Further, in the case relied on by Plaintiff, the complaint alleged a specific injury flowing from the plaintiff's reasonable reliance on these promises.  See Complaint at ¶ 233, Doe v. Syracuse Univ., No. 5:18-CV-377 (DNH/DEP), 2019 WL 2021026 (N.D.N.Y. Mar. 27, 2018).  Plaintiff does not plausibly allege any injury here, and his allegations are each attributed to either his reliance on Advisor McFarlane or Signor's promises, and not to the general assurances raised. Am. Comp. ¶¶ 521-523; 531-39.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice in its entirety.

July 20, 2020

PILLSBURY WINTHROP SHAW PITTMAN LLP
  /s/   Jeffrey P. Metzler
        Jeffrey P. Metzler
        31 West 52nd Street
        New York, New York 10019
        jeffrey.metzler@pillsburylaw.com