**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X

JOHN DOE,                                        Case No.: 1:20-cv-01343 (GHW)

               Plaintiff,                 ECF case electronically filed

   vs.                                        **ORAL ARGUMENT REQUESTED**

NEW YORK UNIVERSITY,

               Defendant.

-------------------------------------------------------- X

---

### REPLY MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT'S MOTION TO DISMISS (CORRECTED)[*]

---

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Jeffrey P. Metzler
31 West 52nd Street
New York, New York 10019
Telephone: (212) 858-1000
jeffrey.metzler@pillsburylaw.com

*Attorneys for Defendant*

Dated: New York, New York
       July 21, 2020

---

[*] The previous version of this brief that was uploaded to the docket sheet (ECF Dkt. No. 38) was incorrect and should be disregarded.

## TABLE OF CONTENTS

**Page(s)**

Preliminary Statement.................................................................................................1

Materials to be Considered ..........................................................................................3

Plaintiff Fails to Plead Specific Facts that Support A Minimal Plausible Inference
    of Gender Bias ......................................................................................................6

Jane Roe is Not A "Similarly Situated Female Student"................................................7

Plaintiff Fails to Cast Articulable Doubt on The Accuracy of The Outcome of The
    Disciplinary Proceeding.......................................................................................8

Plaintiff's Promissory Estoppel Claim Should Be Dismissed Because He Fails to
    Plead Reasonable Reliance or Injury ..................................................................10

Conclusion ...............................................................................................................10

TABLE OF AUTHORITIES

Page(s)

Cases

Ashcroft v. Iqbal,
    556 U.S. 662 (2009).................................................................................................2

B.B. v. The New Sch.,
    No. 17 Civ. 8347 (AT), 2018 WL 2316342 (S.D.N.Y. Apr. 30, 2018)................................2, 3

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007).................................................................................................2

Cosmas v. Hassett,
    886 F.2d 8 (2d Cir. 1989) .........................................................................................4

Deluca v. AccessIT Grp, Inc.,
    695 F. Supp. 2d 54 (S.D.N.Y. 2010)............................................................................4

Doe v. Colgate Univ.,
    No. 5:15-CV-1069, 2017 WL 4990629 (N.D.N.Y. Oct. 31, 2017) .........................................9

Doe v. Columbia Univ.,
    831 F.3d 46 (2d Cir. 2016).....................................................................................1, 6

Doe v. Harvard Univ.,
    No. 1:18-cv-12150-IT, 2020 WL 2769945 (D. Mass. May 28, 2020) .....................................2

Doe v. Lynn Univ., Inc.,
    224 F. Supp. 3d 1288 (S.D. Fla. 2016) .........................................................................2

Doe v. New York Univ.,
    438 F. Supp. 3d 172 (S.D.N.Y. 2020)...........................................................................2

Doe v. Rider Univ.,
    No. 3:16-cv-4882-BRM-DEA, 2018 WL 466225 (D.N.J. Jan. 17, 2018)................................2

Doe v. Syracuse Univ.,
    341 F. Supp. 3d 125 (N.D.N.Y. 2018)...........................................................................6

Doe v. Univ. of Colo., Boulder through Bd. of Regents of Univ. of Colo.,
    255 F. Supp. 3d 1064 (D. Colo. 2017)..........................................................................2

Doe v. Vassar Coll.,
    No. 19-cv-9601 (NSR), 2019 WL 6222918 (S.D.N.Y. Nov. 21, 2019) .................................10

Doe v. W. New England Univ.,
      228 F. Supp. 3d 154 (D. Mass. 2017) ...................................................................2

Doe v. Wash. Univ.,
      434 F. Supp. 3d 735 (E.D. Mo. 2020), recons. denied, No. 4:19 CV 300
      (JMB), 2020 WL 1308209 (E.D. Mo. Mar. 19, 2020).............................................2

Feibleman v. Columbia Univ.,
      No. 19-CV-4327 (VEC), 2020 WL 882429 (S.D.N.Y. Feb. 24, 2020) ................................6, 8

Goldman v. Belden,
      754 F.2d 1059 (2d Cir. 1985)...............................................................................4

Helprin v. Harcourt, Inc.,
      277 F. Supp. 2d 327 (S.D.N.Y. 2003)....................................................................3

Kramer v. Time Warner Inc.,
      937 F.2d 767 (2d Cir. 1991)..............................................................................2, 4

Lynch v. City of New York,
      952 F.3d 67 (2d Cir. 2020)....................................................................................4

Reitman v. Ronell,
      Index No. 157658/2018 (Sup. Ct. N.Y. Cty. Aug. 16, 2018) ...................................6

Rolph v. Hobart & William Smith Colleges,
      271 F. Supp. 3d 386 (W.D.N.Y. 2017) ..................................................................6

Roth v. Jennings,
      489 F.3d 499 (2d Cir. 2007).................................................................................3

Ruff v. Bd. of Regents of Univ. of New Mexico,
      272 F. Supp. 3d 1289 (D.N.M. 2017) ....................................................................2

Webb v. Greater New York Auto. Dealers Ass'n, Inc.,
      144 A.D.3d 1136 (2d Dep't 2016) .......................................................................10

Yu v. Vassar Coll.,
      97 F. Supp. 3d 448 (S.D.N.Y. 2015)....................................................................10

Yusuf v. Vassar Coll.,
      35 F.3d 709 (2d Cir. 1994)................................................................................8, 9

Statutes and Codes

Education Amendments Act (1972)
      Title IX.................................................................................................... *passim*

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure
    Rule 12(b)(6)........................................................................................................................2

<u>Other Authorities</u>

Sarah Kaplan, <u>How a mattress became a symbol for student activists against
    sexual assault</u>, The Washington Post, Nov. 28, 2014,
    https://www.washingtonpost.com/lifestyle/style/how-a-matress-became-a-
    symbol-for-student-activists-against-sexual-assault/2014/11/28/d637db1c-
    6040-11e4-91f7-5d89b5e8c251_story.html...........................................................7

## PRELIMINARY STATEMENT

Despite Plaintiff's best efforts to conform his Amended Complaint to the allegations in Doe v. Columbia Univ., 831 F.3d 46 (2d Cir. 2016), he simply cannot allege facts that give rise to a plausible inference of gender bias.  Whereas Columbia faced "substantial criticism … both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students," id. at 57, Plaintiff can point only to a single social media post, two four-year-old OCR complaints (that did not result in criticism of NYU even when they were filed), and a sexual harassment claim against a gay female tenured professor by a gay male graduate student that bears no resemblance to Jane Roe's charges against John Doe.  Whereas the investigator in Columbia Univ. was alleged to have been "hostile" and "suffered personal criticism in the student body for her role in prior cases in which the University was seen as not taking seriously the complaints of female students," id. at 58, Plaintiff alleges only that this was Sam Hodge's first investigation at NYU.  And whereas the plaintiff in Columbia Univ. alleged that "no evidence was presented" in support of the allegations against him, John admits (as he must) that NYU was presented with a mountain of documentary evidence, which included videos and photographs of Plaintiff, and hundreds of threatening and harassing text messages.  Am. Comp. ¶ 170.

Plaintiff seeks to overcome this deficit by arguing that the Court cannot consider the evidence that was presented to NYU, NYU's sexual harassment policy and procedures, or his appeal because they are not part of the pleadings.  But these documents are clearly integral to Plaintiff's erroneous outcome claim, the premise of which is that NYU committed procedural errors, misconstrued the Policy, and reached conclusions that were contrary to the evidence. Plaintiff's focus on a few alleged defects, while insisting that the Court ignore the overwhelming evidence presented to NYU – including Plaintiff's own admissions in writing and at the hearing –

1

is precisely the type of gamesmanship the Second Circuit rejected in <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991) ("Were courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure.").[2]

Plaintiff's substantive arguments on gender bias, selective enforcement, and erroneous outcome are largely non-responsive to NYU's motion to dismiss and rely heavily on the "low burden" that applies to Title IX cases alleging gender bias by universities.  However, the Federal Rules of Civil Procedure do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678–79 (2009). "[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people….'"  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557–58 (2007) (internal citations omitted).  This is why courts within and without this Circuit regularly dismiss Title IX claims by respondents like John Doe, who have no plausible basis for alleging discrimination based on gender, but are simply unhappy with the outcome of their disciplinary proceedings.[3]

---

[2]  Even if the Court determines that the Exhibits are not incorporated by reference or integral to the Amended Complaint, it should dismiss the Amended Complaint because NYU's arguments concerning gender bias, selective enforcement, and Plaintiff's state law claims do not rely on the Exhibits.

[3]  <u>See e.g.</u>, <u>Doe v. New York Univ.</u>, 438 F. Supp. 3d 172, 186 (S.D.N.Y. 2020); <u>Doe v. Harvard Univ.</u>, No. 1:18-cv-12150-IT, 2020 WL 2769945, at *7 (D. Mass. May 28, 2020); <u>Doe v. Wash. Univ.</u>, 434 F. Supp. 3d 735, 764 (E.D. Mo. 2020), <u>recons. denied</u>, No. 4:19 CV 300 (JMB), 2020 WL 1308209 (E.D. Mo. Mar. 19, 2020); <u>B.B. v. The New Sch.</u>, No. 17 Civ. 8347 (AT), 2018 WL 2316342, at *5 (S.D.N.Y. Apr. 30, 2018); <u>Doe v. Rider Univ.</u>, No. 3:16-cv-4882-BRM-DEA, 2018 WL 466225, at *12 (D.N.J. Jan. 17, 2018); <u>Doe v. W. New England Univ.</u>, 228 F. Supp. 3d 154, 190 (D. Mass. 2017); <u>Doe v. Univ. of Colo., Boulder through Bd. of Regents of Univ. of Colo.</u>, 255 F. Supp. 3d 1064, 1079 (D. Colo. 2017); <u>Ruff v. Bd. of Regents of Univ. of New Mexico</u>, 272 F. Supp. 3d 1289, 1302 (D.N.M. 2017); <u>Doe v. Lynn Univ., Inc.</u>, 224 F. Supp. 3d 1288, 1295 (S.D. Fla. 2016).

## MATERIALS TO BE CONSIDERED

As discussed in NYU's initial Memorandum of Law, "extrinsic documents may be considered as part of the pleadings if they either are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint."  See NYU's MOL at 8-11 (quoting Nat'l Ret. Fund v. Intercontinental Hotels Grp. Res., LLC, No. 1:19-cv-8018-GHW, 2020 WL 1922755, at *3-4 (S.D.N.Y. Apr. 21, 2020)).  The exhibits to the Miller Declaration are part of the pleadings because they are both incorporated by reference and integral to the Amended Complaint.

Plaintiff does not and cannot dispute that the Amended Complaint refers to the Exhibits repeatedly and substantially.  See Am. Comp. ¶¶ 256, 264, 464, 465, 484, 509, 510 (referring to NYU's procedures (Ex. A)); id. ¶¶ 146, 148, 170, 176-192, 195, 197-19, 263, 470 (referring to the investigation and/or evidence collected (Ex. B)); id. ¶¶ 205, 220-242, 258, 301, 302, 470 (referring to the hearing and/or evidence presented (Ex. C)); id. ¶¶ 244, 255-256, 264, 285, 287, 289, 351, 470 (referring to the hearing decision (Ex. D)); id. ¶¶ 5, 315-353 (referring to Plaintiff's appeal and/or the decision of NYU's appeal panel (Exs. E, F)).[4]

Furthermore, the Exhibits are integral to the Amended Complaint and the cases cited by Plaintiff support this conclusion.  In B.B., 2018 WL 2316342, the court considers extrinsic documents like the Exhibits because the Plaintiff relied on them to frame his complaint.  Id. at *2 nn. 3 & 4 (considering a letter analogous to NYU's Investigation Summary Report and the school's sexual misconduct policy); Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 331 (S.D.N.Y. 2003)

---

[4]  Plaintiff correctly identifies "certain citations" to the Amended Complaint that do not correspond to the Exhibits.  See Pl. MOL at 11 n.2.  These are scrivener's errors caused by a miscommunication concerning references to the Exhibits in Plaintiff's original complaint rather than the Amended Complaint.

(holding that where complaint is based mainly on interpreting specific terms of an agreement, the court will consider the agreement as a part of the complaint).

Roth v. Jennings, 489 F.3d 499 (2d Cir. 2007), similarly supports consideration of the Exhibits.  As the court explained:

> [W]hen the complaint alleges that such a document made a particular representation, the court may properly look at the document to see whether that representation was made. Consideration of such documents … is appropriate with respect to a nondisclosure or misrepresentation claim because "no serious question as to their authenticity can exist," and because the court is to consider them on a Rule 12(b)(6) motion "only to determine *what* the documents stated," and "*not to prove the truth of their contents.*"

Id. at 509 (quoting Kramer, 937 F.2d at 774).[5]

In this case, Plaintiff does not argue that the Exhibits are not true and correct copies of what they purport to be, or that he had no knowledge of the Exhibits in framing his Amended Complaint.[6]  Thus, "it is appropriate for the court … to examine" NYU's Procedures, Policy, and the evidence presented "not to prove the truth of their contents but only to determine what the documents stated."  Kramer, 937 F.2d at 774.

NYU did not submit the Exhibits to prove the truth of Jane's allegations against Plaintiff, but to demonstrate the content of the evidence presented to NYU.  While this is obvious with respect to the Policy and Procedures, it is no less true with respect to the ISR and the Hearing

---

[5]  Cosmas v. Hassett, 886 F.2d 8 (2d Cir. 1989) and Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985), two other cases cited by Plaintiff, are explicitly abrogated in Kramer, 937 F.2d at 773-74.  Deluca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010), like Lynch v. City of New York, 952 F.3d 67 (2d Cir. 2020), is inapposite as it involved *a plaintiff's* attempt to defeat a motion to dismiss by introducing a document that was not attached to or relied upon in framing the complaint.

[6]  Plaintiff's Memorandum of Law seems to misconstrue the "authenticity or veracity" of the documents themselves with the truth of the document's contents.  See Pl. MOL at 10-11.  Plaintiff does not question the former and, as discussed below, NYU did not introduce the Exhibits to prove their contents.

4

Audio, which contain all of the evidence considered by NYU, including the evidence presented by Plaintiff.  Plaintiff's assertion that the text messages in the ISR were selectively edited by Jane, Pl. MOL at 10, misses the point.  Because he failed to make that claim in his written response to the ISR or at the hearing, see Exs. B & C, NYU's adjudicator had no way of knowing Plaintiff's position.  Thus, even if the text messages submitted by Jane were selectively edited, Plaintiff's allegation fails to raise a plausible inference of bias *by NYU*.

Moreover, Plaintiff ignores his own admissions, in writing and during the hearing, that he sent Jane threatening text messages and violated the no-contact directive.  See Ex. B at 325 (Plaintiff's written admission that he sent messages and contacted Jane in person after receiving the no-contact directive); Ex. C, Part 4 at 1:02:45-1:04:37 (Plaintiff testifying that he was threatening to expose his past relationship with Jane to her parents); Ex. C, Part 4 at 1:21:50-1:22:14 ("I'm not gonna, going to try to deny it; I violated the no-contact directive").  As with the text messages in the ISR, regardless of whether these admissions were true or not when Plaintiff made them, they are integral to his claim that the outcome of his sexual misconduct hearing was based on NYU's gender bias rather than the overwhelming evidence presented at the Plaintiff's hearing, which included videos, photographs, text messages that Plaintiff admitted sending, and Plaintiff's own admissions.

In effect, Plaintiff is like a defendant who takes the stand and admits to signing fraudulent documents, and then sues the court for discrimination when he is found liable.  The evidence presented at trial, including the fraudulent documents and defendant's testimony, can be considered by the court on a motion to dismiss not to prove the truth of documents or testimony, but to demonstrate the non-discriminatory basis for the court's decision.

**PLAINTIFF FAILS TO PLEAD SPECIFIC FACTS THAT SUPPORT A MINIMAL PLAUSIBLE INFERENCE OF GENDER BIAS**

Plaintiff's Memorandum of Law concedes that the social media post, four-year-old OCR complaints, and Ronell controversy do not give rise to a plausible inference of gender bias when considered individually, but argues that the allegations "*combined*" support his Amended Complaint.  See Pl. MOL at 14.  However, merely "combining" three unrelated allegations that span a period of four years does not create a plausible inference of gender bias.

Unlike in Columbia Univ., 831 F.3d at 57, Plaintiff does not allege that the allegations, individually or combined, resulted in "substantial criticism of the University, both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students."[7]  In fact, the social media post and OCR complaints cited by Plaintiff generated no criticism of NYU at all, and no inference regarding NYU's treatment of Plaintiff can be drawn from the "Ronell controversy."  That matter involved an accusation by a gay male graduate student that a gay female tenured faculty member used her position to force him to engage in unwanted sexual interactions, see Complaint, Reitman v. Ronell, Index No. 157658/2018 (Sup. Ct. N.Y. Cty. Aug. 16, 2018).  Unlike the media attention in Columbia Univ., 831 F.3d at 57, the attention around Professor Ronell had nothing to do with NYU's handling of "complaints of female students alleging sexual assault by male students." Similarly, Plaintiff does not and cannot allege that NYU "was cognizant of, and sensitive to, these

---

[7]   The other cases Plaintiff relies on included similar allegations.  See Feibleman v. Columbia Univ., No. 19-CV-4327 (VEC), 2020 WL 882429 at *10 (S.D.N.Y. Feb. 24, 2020) ("[D]uring the pendency of Feibleman's appeal, Columbia allegedly received weeks of negative press coverage for settling a court case with a male student who had been accused of rape in a high-profile case."); Doe v. Syracuse Univ., 341 F. Supp. 3d 125, 129 (N.D.N.Y. 2018) ("[D]uring the period preceding the disciplinary action against John Doe, there was substantial criticism of Syracuse, both in the student body and in the public media, accusing Syracuse of not taking seriously complaints by female students alleging sexual assault by male students."); Rolph v. Hobart & William Smith Colleges, 271 F. Supp. 3d 386, 401 (W.D.N.Y. 2017) ("Plaintiff alleges that, before his disciplinary hearing, HWS was criticized in the media for failing to take seriously female students' complaints of sexual assault by male students.").

criticisms to the point that the President called a University-wide open meeting … to discuss the issue." Id. [8]

In short, Plaintiff has not pled any facts that give rise to a plausible inference "that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault." Id.

## JANE ROE IS NOT A "SIMILARLY SITUATED FEMALE STUDENT"

As NYU explained in its opening brief, to state a claim for selective enforcement, Plaintiff "must show: 1) similarly situated female students at NYU were treated differently during investigations and disciplinary proceedings concerning sexual assault; and 2) the Defendant[] had the requisite discriminatory intent." NYU's MOL at 16 (quoting Doe v. New York Univ., No. 1:19-cv-00744 (ALC), 2020 WL 564264 (S.D.N.Y. Feb. 5, 2020)). Plaintiff does not dispute this legal standard or seriously argue that he has met it. Rather, John states without any argument, explanation, or citation that "John's claims against Jane were not materially different from Jane's

---

[8] The context within which Columbia Univ., 831 F.3d 46, was decided flows from an incident where a female student alleged that she was raped, and the university failed to discipline the perpetrator. Sarah Kaplan, How a mattress became a symbol for student activists against sexual assault, The Washington Post, Nov. 28, 2014, https://www.washingtonpost.com/lifestyle/style/how-a-mattress-became-a-symbol-for-student-activists-against-sexual-assault/2014/11/28/d637db1c-6040-11e4-91f7-5d89b5e8c251_story.html. That student then carried a mattress across campus in protest for months, which inspired a National Day of Action wherein hundreds of students across the country showed support, and the student was featured in Hillary Rodham Clinton's speech at the Democratic National Convention. Id. Following the incident, twenty-three students filed a federal complaint against Columbia claiming that it inadequately handled allegations of sexual misconduct. id. Clearly, this is a far cry from Plaintiff's anemic assertion that "NYU cannot reasonably claim that it was not aware of [the social media] posts." Pl. MOL at 14 n.7.

claims against John." Pl. MOL at 15.[9]  But as NYU detailed in its opening brief, this bald assertion is demonstrably incorrect.  See NYU's MOL at 16-17.

Moreover, Plaintiff's argument ignores completely the most important difference between his allegations against Jane and her allegations against him: the timing.  John alleges that he attempted to file complaints against Jane *during and after NYU's investigation of Jane's claims*. See Pl. MOL at 15-16.  Plaintiff does not allege that NYU, during or after its investigation of a Title IX claim by a male student against a female respondent, allowed the female respondent to file a Title IX complaint against the male complainant.

### PLAINTIFF FAILS TO CAST ARTICULABLE DOUBT ON THE ACCURACY OF THE OUTCOME OF THE DISCIPLINARY PROCEEDING

Plaintiff's Opposition to NYU's Motion to Dismiss does not deny that there was overwhelming and undisputed evidence that Plaintiff violated the Policy, including Plaintiff's own admissions in his written response to the ISR and at the hearing.  Nor does he identify "particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge."  Yusuf, 35 F.3d at 715.

Plaintiff's reliance on Feibleman v. Columbia Univ., No. 19-CV-4327 (VEC), 2020 WL 882429 (S.D.N.Y. Feb. 24, 2020), is misplaced.  Feibleman involved what the district court described as a "he said-she said" case, id. at *15 n.22, in which Columbia made explicit credibility determinations in favor of a female complainant who admitted she had "very little memory of the

---

[9]  Plaintiff also "bizarrely" denies that "the Amended Complaint contains allegations that Jane violated Title IX." Id. at 15 n.12. Cf. Am. Comp. ¶ 381 ("John attempted to file a Title IX complaint against Jane…."); id. ¶ 383 ("Following the outcome of Jane's Title IX complaint, John attempted to file his Title IX complaint against Jane."); id. ¶¶ 384 & 385  ("In his Title IX Complaint against Jane …").

[i]ncident," id. at *9.  In contrast, NYU was presented with direct evidence of John's misconduct in the form of videos, photographs, and hundreds of text-messages that *Plaintiff admitted sending*, as well as Plaintiff's own admissions that he violated the no-contact directive, Ex. C, Part 4 at 1:21:50-1:22:14, intended for some of his text messages to be perceived as threats, id. at 1:02:45-1:04:37, and took photographs of Jane sleeping while he was a student at NYU, Am. Comp. ¶¶ 257-264.

Moreover, as discussed in NYU's initial Memorandum of Law, see NYU's MOL at 18-21, the alleged "procedural flaws" cited by Plaintiff are not errors and, in many cases, were not raised by Plaintiff to NYU.  For example, Plaintiff criticizes NYU for failing to properly authenticate the text-messages submitted by Jane, Pl. MOL at 19 (citing Am. Comp. ¶¶ 186-89), but Plaintiff did not question the authenticity of the text messages in either his written response to the ISR or during the hearing itself.  See Am. Comp. ¶ 170; Exs. B & C.  John alleges he had difficulty following the hearing, but never raised this issue with the Adjudicator. Ex. C.  John complains that NYU failed to interview "three student witnesses who NYU knew possessed information that directly contradicted [Jane's] evidence and testimony," but he did not seek introduce these witnesses until his appeal, when new evidence will only be considered if it was not previously available.

Finally, Plaintiff's argument concerning the May 2 incident ignores the fact that he admitted to violating the no-contact directive on several occasions prior to that encounter.  See Ex. B at 325; Ex. C, Part 4 at 1:21:50-1:22:14.  Thus, the Adjudicator need not have relied on that incident to find Plaintiff was responsible for violating the no-contact directive.  Moreover, to the extent that the Adjudicator found Jane's account more credible, Plaintiff's argument is nothing more than a disagreement with that judgment; he does not identify any "particular evidentiary weaknesses behind the finding."  Yusuf, 35 F.3d at 715; see Doe v. Colgate Univ., No. 5:15-CV-

1069 (LEK/DEP), 2017 WL 4990629, at *23 (N.D.N.Y. Oct. 31, 2017) ("The Court cannot engage

in a granular examination of the record to find fault in the Panel's decision-making."); accord Yu

v. Vassar Coll., 97 F. Supp. 3d 448, 461 (S.D.N.Y. 2015); Doe v. Vassar Coll., No. 19-cv-9601

(NSR), 2019 WL 6222918 (S.D.N.Y. Nov. 21, 2019).

### PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM SHOULD BE DISMISSED BECAUSE HE FAILS TO PLEAD REASONABLE RELIANCE OR INJURY

As explained in NYU's initial Memorandum of Law, NYU MOL at 23-24, Plaintiff's

alleged failure to prepare an adequate defense based on his advisor's statement that he faced at

most a one-semester suspension was not "reasonable reliance" as a matter of law, both because it

conflicts with NYU's written Policy and Procedures, and because the possibility of a one-semester

suspension does not reasonably justify Plaintiff's alleged decision to mount an inadequate defense.

See Webb v. Greater New York Auto. Dealers Ass'n, Inc., 144 A.D.3d 1136, 1139 (2d Dep't 2016)

(affirming dismissal on motion to dismiss for lack of reasonable reliance).   Nor does John explain

how NYU's alleged refusal to open an independent investigation of his allegations against Jane

after he was expelled from NYU (as Signor allegedly promised) resulted in any injury to him,

given that he does not allege NYU prevented him from introducing evidence in his defense relating

to Jane's conduct.  See Am. Comp. ¶¶ 167-68, Ex. C, Part 5 at 19:12-19:24.

### CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice in

its entirety.

July 21, 2020                         **PILLSBURY WINTHROP SHAW PITTMAN LLP**
                                          /s/   Jeffrey P. Metzler
                                         Jeffrey P. Metzler
                                         31 West 52nd Street
                                         New York, New York 10019
                                         jeffrey.metzler@pillsburylaw.com

10