

Warshaw Burstein, LLP                                    Kimberly C. Lau
575 Lexington Avenue                                     Partner
New York, NY  10022                                      (212) 984-7709
(212) 984-7700                                           klau@wbny.com

March 4, 2022

Honorable Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street, Room 2260
New York, New York 10007

Re: ***Doe v. New York University***, **1:20-cv-01343-GHW**

Dear Judge Woods:

We represent Plaintiff John Doe ("Plaintiff") in the above-referenced action and request a pre-motion conference regarding a discovery dispute pursuant to Your Honor's Individual Rules of Practice in Civil Cases.  The dispute arises from NYU's refusal to produce certain documents related to eight (8) cases of sexual misconduct proceedings identified by Plaintiff involving other students.  The parties held a meet-and-confer video conference for approximately 30 minutes on February 28, 2022.  On March 2, 2022, NYU confirmed its refusal to produce the documents.

### ***Plaintiff's Position***

Plaintiff seeks a limited set of documents related to a small subset of Title IX cases previously adjudicated by NYU.  NYU has produced spreadsheets that include, *inter alia,* the date the allegation was reported, the legal sex of the complainant, complainant's gender identity, the legal sex of the respondent, respondent's gender identity, the general nature of the allegations (*i.e.*, "NC Intercourse," "Stalking"), and the results of the disciplinary proceedings.[1]  However, as stated in the February 25, 2022, email to Defendant's counsel attached hereto as Exhibit A, Plaintiff requires additional documents related to eight (8) matters that appear similar to Plaintiff's Title IX

---

[1] NYU only provided complete information related to the genders of respondents and complainants reflected in spreadsheets providing information related to Title IX matters at NYU on February 18, 2022 after demanding that Plaintiff serve a Second Set of Interrogatories on January 19, 2022.  Following a comprehensive review of the issues raised by NYU in response to Plaintiff's Second Set of Interrogatories, Plaintiff requested *via* email on February 25, 2022 that Defendant produce limited additional documents and information related to Title IX matters at NYU.

matter for the purposes of proving his Title IX selective enforcement claim.  Specifically, Plaintiff seeks production of the Investigation Summary Reports, Hearing Decisions, and Appeal Decisions (where applicable) from the case files associated with these eight (8) cases. *See* Exhibit A.  These documents are responsive to several requests contained within Plaintiff's First Request for the Production of Documents, a copy of which attached hereto as Exhibit B.

NYU improperly asserts that Plaintiff has made an untimely second request for production.  Plaintiff's First Request for the Production of Documents dated June 11, 2021 clearly seeks, *inter alia*, documents referring to the "nature" of Title IX violations reported to NYU (Exhibit B at ¶ 7), the "types of sanctions levied" against students found "responsible" in such cases (Exhibit B at ¶¶ 9, 11), and the "gender of the complainant and respondent" in such cases (Exhibit B at ¶ 10).  While these document requests were served at the outset of fact discovery in this matter, relevant caselaw cited below shows that a plaintiff in a Title IX matter must establish certain facts in discovery before a defendant is required to produce the underlying case files for Title IX matters to which the plaintiff was not a party.  These necessary facts were only established during the deposition of NYU employee Craig Jolley on February 18, 2022.  Mr. Jolley's deposition notably needed to be adjourned as a result of NYU's initial improper refusal to provide information regarding the genders of any complainants or respondents in other Title IX matters.

As stated in the February 25, 2022 email to Defendant's counsel, determining whether female NYU students were treated more favorably than Plaintiff in the Title IX process goes beyond the charges filed or the severity of the sanction issued following a finding of responsibility.  Exhibit A.  While the spreadsheets provided by NYU contain general information about the charges and sanctions levied against the students in these cases, they do not contain any information regarding the details of the cases.  NYU employee Craig Jolley testified during his deposition held on February 18, 2022 that the underlying facts of these cases cannot be determined by looking solely at the spreadsheets and that the facts would be contained in the case files.  Accordingly, based on the caselaw citied below, Plaintiff has established that he is entitled to certain additional documents related to other Title IX matters and has reasonably narrowed his requests to the cases that appear to be most relevant and necessary to prove his claim.

Under a theory of selective enforcement, Plaintiff must prove that "regardless of [his] guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by [his] gender." *Yusuf v. Vassar Coll*., 35 F.3d 709, 715 (2d Cir. 1994).  This requires a showing that a female student in circumstances sufficiently similar to Plaintiff's circumstances was treated more favorably (or less harshly) by Defendant.  *See Yu v. Vassar Coll*., 97 F. Supp. 3d 448, 480 (S.D.N.Y. 2015).  Plaintiff is not seeking PII from the student case files and is willing to accept documents where PII is redacted and replaced with a pseudonym indicating gender (i.e., "John Doe" for males and "Jane Roe" for females) where appropriate.  Exhibit A.  The underlying facts of the limited set of disciplinary proceedings identified by Plaintiff are relevant to his selective enforcement claim and are only found within documents that are solely within NYU's possession, custody, and control.  Accordingly, Plaintiff is entitled to the Investigation Summary Reports, Hearing Decisions, and Appeal Decisions (where applicable) from the case files noted in Exhibit A.  *See Doe v. Syracuse Univ*., Civil Action No. 17-CV-00787 (TJM)(ATB) (N.D.N.Y. Apr. 25,

2019), Docket Entry 55 (granting plaintiffs motion to compel the production of documents related to other gender-based misconduct proceedings after it was determined that a chart containing information was insufficient for the purposes of the selective enforcement claim); *see also Doe v. Loyola Univ. Chi.*, No. 18 CV 7335, 2020 U.S. Dist. LEXIS 12289 (N.D. Ill. Jan. 24, 2020) (granting motion to compel production of aggregate data as well as hearing board opinions and decisions of appellate officers because such documents went to the heart of the allegations in the complaint, production was proportional to the needs of the case, and defendant was in exclusive control of the documents).

The federal rules concerning discovery are given a "broad and liberal construction." *Ambac Assur. Corp. v. Adelanto Pub. Util. Auth.*, No. 09 Civ. 5087, 2012 U.S. Dist. LEXIS 64086, at *5 (S.D.N.Y. May 7, 2012).  Particularly in cases where there is a claim of discrimination, "direct evidence of discriminatory intent is rarely available and, therefore, civil rights plaintiffs are entitled to probe for circumstantial evidence of intent." *Torres v. City Univ. of New York*, S.D.N.Y. 90 Civ. 2278, 1992 U.S. Dist. LEXIS 18546, at *11 (Dec. 3, 1992).  In similar cases, courts have permitted discovery into other sexual misconduct case files maintained by a school to support allegations that the school treated students differently based on their gender.  *See, e.g., Doe v. Ohio State Univ.*, No. 2:16-cv-171, 2018 U.S. Dist. LEXIS 176752, at *11-12 (S.D. Ohio Oct. 15, 2018); *Syracuse*, Civil Action No. 17-CV-00787 (TJM)(ATB) at Docket Entry 55; *Loyola*, 2020 U.S. Dist. LEXIS 12289.

Although the discovery sought may contain material protected from disclosure by FERPA, courts have permitted discovery of disciplinary records in other cases despite FERPA concerns. *See, e.g., Doe v. Rensselaer Polytechnic Inst.,* No. 18-CV-1013 (MAD/DJS), 2018 U.S. Dist. LEXIS 147468, at *7 (N.D.N.Y. Aug. 29, 2018) ("the Court finds that Plaintiff's interests in obtaining the documents outweigh the privacy interests of those students mentioned in the documents"); *see also  MacNamara v. City of New York*, 249 F.R.D. 70, 79 (S.D.N.Y. 2008) ("the great weight of the policy in favor of discovery in civil rights actions and the normal presumption in favor of broad discovery"); *King v. Conde,* 121 F.R.D. 180, 191-93 (E.D.N.Y. 1988) (same). Given that the actual names of the students in other cases need not be provided, NYU can simply provide redacted records as proposed by Plaintiff, a method that courts have found to be consistent with FERPA.  *See, e.g., Ragusa v. Malverne Union Free School District*, 549 F. Supp. 2d 288, 292 (E.D.N.Y. 2008) ("[t]here is nothing in FERPA that would prohibit Defendants from releasing education records that had all 'personally identifiable information' redacted"); *Sagehorn v. Indep. School Dist. No. 728*, No. 14-1930, 2015 U.S. Dist. LEXIS 192518, at *13 n. 4 (D. Minn. Feb. 3, 2015) ("FERPA does not apply to the redacted educational records to be produced").  Should NYU disagree with this method, it could follow the notification requirements set forth in Paragraph 2 of the Stipulation And Order Governing The Production And Use Of Education Records (the "FERPA Stipulation") entered on September 9, 2021 (D.E. 54).  Plaintiff is also willing to agree to an "Attorneys' Eyes Only" designation for any documents produced.

NYU speculatively asserts that complying with its discovery obligations will delay the resolution of this matter in the even that any student seeks a protective order from this Court related to the release of records related to the Title IX matters at issue.  Even if a student were to do so,

which is speculative in and of itself, it is unclear why NYU believes this Court will not be able to resolve any such request prior to the current June 1, 2022 deadline for filing dispositive motions, the only potential deadline in this case that could conceivably be implicated by the notification process contemplated by the FERPA Stipulation.

### *Defendant's Position*

The facts here are simple:  With court-ordered exceptions for certain adjourned depositions,[2] fact discovery closed on March 1, 2022.  *See* ECF No. 59.  On Friday, February 25, four calendar days before the close of fact discovery, Plaintiff requested for the first time that NYU produce Investigation Summary Reports ("ISRs"), Hearing Decisions and (if applicable) Appeal Decisions (the "Case Files").  Because Plaintiff's request for documents was made less than 30 days before the end of fact discovery, it should be denied as untimely.  *See Dunkin Donuts Franchised Restaurants LLC v. 1700 Church Avenue Corp.*, No. CV 07-2446(CBA)(MDG), 2008 WL 1840760 at *1 (S.D.N.Y. Apr. 23, 2008) (holding that document demands served less than 30 days before end of fact discovery were untimely (citing Fed. R. Civ. P. 34(b))).  Notwithstanding Plaintiff's argument about the relevance of the Case Files, it is clear from the record that Plaintiff's belated request was not part of a well-designed discovery plan, but instead a reaction to his failure to-date to identify any evidence to support his claims against NYU.[3]

The Initial Pre-Trial Conference in this case was held on June 11, 2021, and the initial deadline for fact discovery was set for December 31, 2021.  On November 2, 2021, the Court extended the deadline for fact discovery to March 1, 2022.  *See* ECF No. 59.

Plaintiff's first argument is that his request for the Case Files is not untimely because it is encompassed in his First Request for the Production of Documents, which was served on June 11, 2021.  However, the request Plaintiff cites asked for "[a]ll documents and communications referring to the number *and* nature" of sexual misconduct violations at NYU during the relevant time period.  (Ex. B, Request No. 7) (emphasis added).[4]  Because the Case Files provide no information about the number of violations, they are not responsive to Request No. 7.

Furthermore, NYU's Responses and Objections, served on July 16, 2021, objected to Request No. 7, and agreed to produce only "reports *or similar summary documents* that show the number and nature" of violations.  (Ex. C, Request No. 7) (emphasis added).  NYU's production, which was completed on November 4, 2021, included dozens of responsive documents that listed the number and nature of sexual misconduct violations, but did *not* include ISRs, Hearing Decisions or Appeal Decisions from any case besides Plaintiff's.  Plaintiff did not raise any concerns about NYU's Responses and Objections or object to NYU's production as incomplete.

---

[2] *See* ECF Nos. 61, 63.
[3] Moreover, the cases Plaintiff's cites regarding relevance are inapposite.  *Loyola-Chicago* did not involve ISRs at all, only Hearing Decisions and Appeal Decisions.  *Syracuse*, a text-only order, specifically limited production to cases involving the intoxication and incapacitation of both complainants and respondents and permitted redactions for unrelated information; here, Plaintiff seeks completely unrelated cases involving charges not at issue in Plaintiff's Title IX proceeding.  Further, relevance was not at issue in *Ohio State*.
[4]  Requests Nos 8-11 refer only to documents "for the reports identified in response to [Request] No. 7."

Based on the text of the Request and the conduct of the parties, it is clear Request No. 7 did not encompass the discovery Plaintiff now seeks for the first time.  Indeed, in attempting to excuse his failure to request the Case Files before February 25, Plaintiff himself argues that he could not have requested them before deposing Craig Jolley.  *See supra* p. 2 (arguing that "a plaintiff in a Title IX matter must establish certain facts in discovery before a defendant is required to produce the underlying case files for Title IX matters to which the plaintiff was not a party").  In other words, Plaintiff not only *did not* request the Case Files before February 25, he *could not have* properly done so, according to his own argument.[5]

Moreover, even if Plaintiff could not have requested the Case Files until after Mr. Jolley's deposition, this would not excuse his belated document demand.  NYU completed its production of documents on November 4, 2021.  Plaintiff did not seek to depose any witnesses in 2021 and did not schedule the deposition of Mr. Jolley until January 19, 2022.  On January 14, 2022, Plaintiff adjourned Mr. Jolley's deposition until February 18, 2022, claiming that he needed the gender information for students from other Title IX adjudications.

Plaintiff's attempt to blame NYU for this adjournment ignores the facts.  Plaintiff did not raise the issue of gender information until January 7, 2022[6] – more than two months after NYU completed its production – and did not serve an interrogatory for such information until January 19, 2022.  In response, NYU served the only gender information upon which Plaintiff's February 25, 2022 request relied on February 11, 2022, and Plaintiff deposed Mr. Jolley on the 18th.  In other words, Plaintiff wasted months of discovery before reviewing NYU's production and scheduling depositions – a practice Your Honor specifically warned against at the June 11, 2021 conference.  *Cf. Tatintsian v. Vorotyntsev*, 1:16-cv-7203-GHW, 2021 WL 780139 at *2 (S.D.N.Y. Jan. 26, 2021) (declining to re-open fact discovery) ("[F]or example, if you were to take a deposition on the last day of fact discovery, which is permitted here, you will be left with no time to conduct follow-up discovery with respect to any information that you might learn from the deposition.").

Finally, Plaintiff's request to re-open fact discovery would likely delay resolution of this case on the merits.  Even if the Case Files – which contain highly sensitive and detailed information about sexual misconduct proceedings concerning students who have no connection to this litigation – were marked "Attorneys Eyes Only" and student names redacted, NYU would be required to notify the students and provide them with an opportunity to move for a Protective Order under the Stipulation and Order Governing the Production and Use of Education Records.  *See* 34 C.F.R. § 99.3.  The likelihood of delay here is far from "speculative" as Plaintiff claims, which is why NYU began the FERPA process for other students more than six months ago.

---

[5]  Plaintiff's reliance on Mr. Jolley's self-evident testimony that a summary report containing a single line for each case contains less information than the Case Files, which in Plaintiff's case was over 300 pages, is mere pretext and does not explain Plaintiff's failure even to mention the Case Files before February 25, 2022.

[6]  Plaintiff initially raised this issue by requesting that NYU guess a student's gender based on their name and replace redactions with gender-specific pseudonyms.  NYU responded that this proposal was not feasible because (a) the relevant documents for which Plaintiff was requesting pseudonyms included only students' last names, from which no gender could be discerned and (b) even in other documents that included first names, student gender could not always be discerned given the significant number of non-English and/or gender-neutral first names.

Respectfully submitted,

**Counsel for Plaintiff:**                          **Counsel for Defendant:**

 /s/*Kimberly C. Lau*                                 /s/ *Jeffrey P. Metzler*
Kimberly C. Lau                                     Jeffrey P. Metzler
James E. Figliozzi                                  Max A. Winograd
Warshaw Burstein, LLP                               Melissa Pettit
575 Lexington Avenue, 7th Floor                     Pillsbury Winthrop Shaw Pittman LLP
New York, NY 10022                                  31 West 52nd Street
klau@wbny.com                                       New York, NY 10019
                                                    jeffrey.metzler@pillsburylaw.com