

Warshaw Burstein, LLP
575 Lexington Avenue
New York, NY 10022
(212) 984-7700

Kimberly C. Lau
Partner
(212) 984-7709
klau@wbny.com

May 16, 2022

Honorable Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street, Room 2260
New York, New York 10007

Re: *Doe v. New York University*, 1:20-cv-01343-GHW

Dear Judge Woods:

Pursuant to Your Honor's Individual Rules of Practice, Plaintiff John Doe ("Plaintiff") submits this opposition to Defendant New York University's ("NYU") request for a pre-motion conference in connection with its proposed motion for summary judgment and its proposed motion to exclude Plaintiff's vocational expert.

I. **NYU's Proposed Motion for Summary Judgment Would Be Without Merit**

Any motion for summary judgment filed by NYU would be without merit. There are clear issues of material fact that preclude summary judgment on Plaintiff's Title IX and promissory estoppel claims, and this case should be permitted to proceed to a jury trial.

On a motion for summary judgment, NYU, as the moving party, must show that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Rodriguez*, 72 F.3d at 1061. In determining whether the moving party met its burden, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

During the course of discovery, Plaintiff sought and obtained records regarding NYU's investigation and adjudication of Title IX complaints between 2015 and 2020. (NYU_00037051). These records indicate the gender of the complainant and respondent for

each Title IX matter, the alleged policy violations, the hearing decision if any, and the applicable sanctions. This data serves as a useful comparator and reveals that during the relevant time period, female students received much more lenient sanctions than their male counterparts.

Contrary to NYU's assertion that the evidence overwhelmingly shows that Plaintiff violated NYU's Sexual Misconduct, Relationship Violence, and Stalking Policy (the "Policy"), there is ample evidence that NYU erroneously found Plaintiff responsible for stalking, sexual harassment, relationship violence, and sexual exploitation. Indeed, the evidence shows that investigators overlooked complainant's credibility issues raised by Plaintiff, and that the Title IX investigation and adjudication were plagued by procedural irregularities.

NYU selectively enforced its Policy by investigating and sanctioning Plaintiff for alleged violations of the Policy while refusing to investigate Plaintiff's allegations against Jane Roe. The record shows that without any prompting from Jane Roe, NYU *sua sponte* added additional charges against Plaintiff. On the other hand, NYU refused to investigate Jane Roe's violations even after Plaintiff filed a formal complaint against Jane Roe. This is despite the fact that NYU told Plaintiff that his complaint would be resolved after the proceedings against him. (John Tr. 87:20-25). Not only did NYU treat Jane Roe more favorably than him, but as stated above, the record shows that female students who violated the Policy received considerably more lenient sanctions than Plaintiff.

Finally, the evidence shows that there are triable issues of fact regarding Plaintiff's promissory estoppel claim. Allen McFarlane was the associate vice president for outreach and engagement, and had served as a respondent facilitator in many prior Title IX cases before becoming Plaintiff's respondent facilitator. (McFarlane EBT 25:4-19; 28:19-23). As the record shows, (i) Mr. McFarlane made an enforceable promise to Plaintiff that "under no circumstances would [Plaintiff] be expelled" (John Doe EBT 111:14-19); (ii) Plaintiff relied upon this promise in strategizing his defense to the allegations against him; (iii) because of Mr. McFarlane's extensive experience, and his role as Plaintiff's advisor, it was reasonable for Plaintiff to rely upon McFarlane's promise; and (iv) as a result of Mr. McFarlane's broken promise, Plaintiff sustained damages.

II.   **Plaintiff's Vocational Expert's Testimony Should Not Be Excluded**

Courts within the Second Circuit have liberally construed expert qualification requirements when determining if a witness can be considered an expert. *Cary Oil Co. v. MG Refin. & Mktg., Inc.*, 2003 WL 1878246, at *1 (S.D.N.Y. Apr. 11, 2003) (internal quotation omitted). An expert opinion is admissible if it "rests on well-established industry standards." *United States v. Romano,* 794 F.3d 317, 332 (2d Cir. 2015). Furthermore, "assertions that the witness lacks particular educational or other experiential background, go to the weight, not the admissibility, of [the] testimony" *In re Zyprexa Prods. Liab. Litig.*, 480 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) (internal quotation omitted).

Plaintiff's expert, Steven D. Shedlin, has worked in the field of rehabilitation counseling since 1978. As a rehabilitation counselor, Mr. Shedlin helps individuals find and/or maintain

employment, and is qualified to opine on earning loss, future employability, and future earning capacity. Mr. Shedlin's opinion is based on available economic data, evidence produced in discovery, and statements from Plaintiff, all of which show where Plaintiff is likely to be employed going forward and how his potential earning capacity as an attorney in Missouri differs from what Plaintiff could have been earning as a neurosurgeon if NYU's actions did not preclude Plaintiff from attending medical school. Ultimately, Mr. Shedlin's testimony will be helpful to educate a jury regarding Plaintiff's loss of earning capacity as it has been impacted by NYU's erroneous Title IX findings. Additionally, Mr. Shedlin's analysis is based on the well-established industry standards within the field of rehabilitation counseling.

While NYU takes issue with some of the data used by Mr. Shedlin to reach his conclusions, these issues should be addressed on cross-examination and do not serve as the basis for excluding Mr. Shedlin's testimony.

### III. NYU's Expert, Stephanie Plancich, Should Be Precluded From Testifying About The Likelihood of Plaintiff Becoming A Neurosurgeon

Dr. Stephanie Plancich was retained by NYU to serve as its economic damages rebuttal expert. Yet, Dr. Plancich's report goes beyond rebutting Steven Shedlin's economic analysis. Indeed, Dr. Plancich heavily criticizes Mr. Shedlin's opinion that Plaintiff would have gone to medical school and become a neurosurgeon but for NYU's wrongful conduct. However, Dr. Plancich is not qualified to testify about the likelihood that Plaintiff would have been admitted to medical school and become a neurosurgeon.

"The adequacy of an expert's qualifications 'can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education' with the actual 'subject matter of the witness's testimony.'" *Karavitis v. Makita U.S.A., Inc.*, 722 F. App'x 53, 55 (2d Cir. 2018) (quoting *United States v. Diallo*, 40 F.3d 32, 34 (2d Cir. 1994). While Dr. Plancich has offered evidence regarding her qualifications to calculate economic damages, she has provided no evidence that she is qualified to opine upon whether Plaintiff would have been admitted to medical school and become a neurosurgeon. Because Dr. Plancich is not qualified to testify on the likelihood of Plaintiff being admitted to medical school and becoming a neurosurgeon, Dr. Plancich should be precluded from testifying on this issue.

Respectfully submitted,

                                         **Counsel for Plaintiff:**

                                         /s/*Kimberly C. Lau*
                                         Kimberly C. Lau

cc:     All counsel of record