UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
JOHN DOE,                                          :          Case No. 1:20-CV-01343 (GHW)
                                                              :
                               Plaintiff,          :
                                                              :
             -against-                             :          Oral Argument Requested
                                                              :
NEW YORK UNIVERSITY,                               :
                                                              :
                                                              :
                               Defendant.          :
---------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**WARSHAW BURSTEIN, LLP**
*Attorneys for Plaintiff*
575 Lexington Avenue
New York, New York 10022
(212) 984-7700

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT……………………………………………………..…1

STATEMENT OF FACTS……………………………………………………………...…1

LEGAL STANDARD……………………………………………………………..4

ARGUMENT………………………………………………………………...5

I.   There Are Genuine Issues Of Material Fact With Regard To Plaintiff's Title IX Claims For Erroneous Outcome And Selective Enforcement……………………………………..5

    A.  Genuine Issues Of Material Fact Exist As To Whether The Outcome Of Plaintiff's Disciplinary Proceeding Was Accurate………………..………..…..5

    B.  Genuine Issues Of Material Fact Exist As To Whether Similarly Situated Female Students Were Treated More Favorably Than Plaintiff……………………..…….8

    C.  Genuine Issues Of Material Fact Exist As To Whether NYU's Actions Were Motivated By Plaintiff's Gender……………………………….....…….....…...12

II.   There Are Genuine Issues Of Material Fact With Regard To Plaintiff's Promissory Estoppel Claim ……………………………………..…………………..……...19

    A.  There Was A Clear And Unambiguous Promise………………..…..…19

    B.  Plaintiff Reasonably Relied On The Promise………………..…………...22

    C.  Plaintiff Sustained Injury As A Result Of His Reliance On The Promise……….24

III.  There Are Genuine Issues Of Material Fact With Regard To Plaintiff's New York City Human Rights Law (NYCRHL) Claim……………………….…………..……25

CONCLUSION……………………………………………………………..25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                           <u>Page Number</u>

*Aldrich v. Randolph Cent. Sch. Dist.*,
963 F.2d 520 (2d Cir. 1992) ................................................................................... 4, 13, 14

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................. 4, 20

*Binkowski v. Hartford Acc. & Indem. Co.*,
60 A.D.3d 1473 (4th Dept 2009) .................................................................................... 20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................................ 4

*Chem. Bank v. City of Jamestown*,
122 A.D.2d 530 (4th Dept 1986) .................................................................................... 21

*Doe v. Colgate Univ.*,
457 F. Supp. 3d 164 (N.D.N.Y. 2020) ................................................................. *passim*

*Doe v. Quinnipiac Univ.*,
404 F. Supp. 3d 643 (D. Conn. 2019) ................................................................. *passim*

*Doe v. Valencia College*,
903 F.3d 1220 (11th Cir. 2018) ........................................................................................ 6

*E.E.O.C. v. Bloomberg L.P.*,
778 F. Supp. 2d 458 (S.D.N.Y. 2011) ......................................................................... 16

*Fischl v. Armitage*,
128 F.3d 50 (2d Cir. 1997) ...................................................................... 5, 20, 21, 22

*Gallo v. Prudential Residential Servs., Ltd. P'ship*,
22 F.3d 1219 (2d Cir. 1994) .................................................................................. *passim*

*Haidak v. Univ. of Massachusetts-Amherst*,
933 F.3d 56 (1st Cir. 2019) ............................................................................................ 12

*Henneberry v. Sumitomo Corp. of Am.*,
415 F. Supp. 2d 423 (S.D.N.Y. 2006) ......................................................................... 23

*I.R.V. Merch. Corp. v. Jay Ward Prods., Inc.*,
856 F. Supp. 168 (S.D.N.Y. 1994) .............................................................................. 19

*In re Refco Inc. Sec. Litig.*,
826 F. Supp. 2d 478 (S.D.N.Y. 2011) ........................................................... 19, 24, 25

*LaMarch v. Tishman Speyer Properties, L.P.*,
No. 03 CV 5246 (CBA), 2006 WL 2265086 (E.D.N.Y. Aug. 8, 2006)...................................15

*Long v. Marubeni Am. Corp.*,
No. 05 CIV. 0639 (GEL), 2006 WL 1716878 (S.D.N.Y. June 20, 2006)...............................24

*MacKay v. Paesano*,
58 Misc.3d 1222(A) (Sup. Ct. Suffolk Cnty. 2018)..................................................23

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013)...............................................................................25

*Nelson v. Town of Johnsbury Selectboard*,
115 A.3d 423 (Vt. 2015) ...................................................................................21

*Nowak v. Ironworkers Loc. 6 Pension Fund*,
81 F.3d 1182 (2d Cir. 1996)...............................................................................25

*Ottaviani v. State Univ. of New York at New Paltz*,
875 F.2d 365 (2d Cir. 1989)...............................................................................15

*Packer v. Skid Roe, Inc.*,
938 F. Supp. 193 (S.D.N.Y. 1996)...........................................................19, 24, 25

*Playboy Enterprises, Inc. v. Dumas*,
960 F. Supp. 710 (S.D.N.Y. 1997).......................................................................23

*PrecisionIR Inc. v. Clepper*,
693 F. Supp. 2d 286 (S.D.N.Y. 2010)...................................................................23

*Reeves v. Sanderson Plumbing Prod., Inc.*,
530 U.S. 133 (2000).........................................................................................18

*Roberts v. Karimi*,
204 F. Supp. 2d 523 (E.D.N.Y. 2002)............................................................*passim*

*Rodriguez v. City of New York*,
72 F.3d 1051 (2d Cir. 1995).................................................................................4

*Russell v. New York Univ.*,
No. 1:15-CV-2185-GHW, 2017 WL 3049534 (S.D.N.Y. July 17, 2017) ...............................12

*Silver v. Mohasco Corp.*,
94 A.D.2d 820 (3d Dept 1983)............................................................................24

*Star Funding, Inc. v. Tire Centers, LLC*,
717 F. App'x 38 (2d Cir. 2017) ...........................................................................21

*Union Carbide Corp. v. Montell N.V.,*
   179 F.R.D. 425 (S.D.N.Y. 1998) ............................................................................ 1

*Vuona v. Merrill Lynch & Co.,*
   919 F. Supp. 2d 359 ............................................................................................ 16

*Weinstock v. Columbia Univ.,*
   224 F.3d 33 (2d Cir. 2000) ................................................................................. 16

*Woolley v. Stewart,*
   222 N.Y. 347 (1918) ........................................................................................... 23

*Yu v. Vassar Coll.,*
   97 F. Supp. 3d 448 (S.D.N.Y. 2015) .................................................................... 6

*Yusuf v. Vassar Coll.,*
   35 F.3d 709 (2d Cir. 1994) ................................................................................... 6

*Zahorik v. Cornell Univ.,*
   729 F.2d 85 (2d Cir. 1984) ................................................................................. 16

*Zenni v. Hard Rock Cafe Int'l, Inc. (N.Y.),*
   903 F. Supp. 644 (S.D.N.Y. 1995) ..................................................................... 16

*Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP,*
   869 F. Supp. 2d 378 (S.D.N.Y. 2012) ................................................................ 16

## STATUTES AND RULES

Fed. R. Civ. P. 56(c) ........................................................................................................ 4

Fed. R. Civ. P. 56(c)(2) ............................................................................................... 7, 9

Fed. R. Civ. P. 56(c)(4) ............................................................................................... 7, 9

Fed. R. Civ. P. 56(e) Advisory Committee Note (1963) .............................................. 20

Fed. R. Evid. 201 .......................................................................................................... 17

Fed. R. Evid. 401 .......................................................................................................... 10

Fed. R. Evid. 402 .......................................................................................................... 10

Local Civ. R. 56.1 ........................................................................................................... 1

## <u>OTHER AUTHORITIES</u>

Andrew O'Hehir, *When a woman is accused of sexual misconduct: The strange case of Avital Ronell*, Salon (Aug. 18, 2018)  (https://www.salon.com/2018/08/18/when-a-woman-is-accused-of-sexual-misconduct-the-strange-case-of-avital-ronell/)..........................................17

*Binkowski v. Hartford Acc. & Indem. Co*, Brief For Defendant-Respondent Hartford Accident and, Indemnity Company, 2008 WL 8948595 (4th Dept Nov. 5, 2008) ................................. 20

*Doe v. NYU*, 1:19-cv-00744-ALC, ECF 21……………………………………………………17

v

## PRELIMINARY STATEMENT

Defendant New York University ("NYU") relies upon irrelevant and extraneous documents in a misguided attempt to avoid liability for openly discriminating against Plaintiff. The simple fact is that NYU conducted an incomplete and biased investigation and adjudication of false Title IX allegations against Plaintiff, ignoring exculpatory evidence and resulting in Plaintiff's expulsion. This sanction contradicted a clear promise that Plaintiff's NYU-provided advisor made to him. The discrimination that Plaintiff faced is, unfortunately, a feature rather than a bug of NYU's Title IX regime as clearly shown by evidence produced by NYU in discovery, namely, its training materials and statistical compilation of other Title IX matters. During the investigation and adjudication of Plaintiff's Title IX matters, NYU was also facing outside pressure to favor women from the media, the Department of Education, and its own students. In filing the instant Motion, NYU has provided a warped view of the real facts in an apparent effort to mislead the Court. For the reasons stated below, summary judgment should be denied.

## STATEMENT OF FACTS[1]

Plaintiff, a former student at NYU, was involved in a long-term, consensual relationship with Jane Roe, a fellow NYU student. Def. Ex. 10 at 19:21-24. At Jane's insistence, the relationship existed almost entirely in secret. Def. Ex. 1 at NYU_00009758, 9808. The couple initially attended different universities and were drifting apart by October of 2016 until an individual claiming to be one of Jane's friends at NYU, Sally Soe, contacted Plaintiff, told him that Jane had been gang raped, and urged him to visit NYU to support her. *Id*. at NYU_00009758, 9762; Def. Ex. 14 at NYU_00011364. Sally also encouraged Plaintiff to engage in physical intimacy with Jane to assist her in overcoming the trauma of the rape. Pl. Ex. 16 at P003039-3049.

---

[1] NYU's Local Rule 56.1 Statement, which spans 51 pages, contains 271 paragraphs, and references 83 exhibits, is a "clear derogation of Local Rule 56.1's requirement of a 'short and concise' statement of material facts." *Union Carbide Corp. v. Montell N.V.*, 179 F.R.D. 425, 426 (S.D.N.Y. 1998), *as amended* (May 18, 1998); *see also* Local Civ. R. 56.1 (requiring a "**short and concise statement**, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried.") (emphasis added). Moreover, because it is "basically a compendium of the arguments" that NYU "plans to make at trial, rather than a short and concise statement of facts," it should be rejected by this Court, and only the "attached exhibits which are referenced in [NYU's] memorand[um] of law" should be considered in deciding the instant Motion. *Union Carbide Corp*., 179 F.R.D. at 428; *see also* Local Civ. R. 56.1 (noting Local Rule 56.1 statement should **only** contain "material facts").

Sally never existed, and the gang rape never happened – both were created by Jane.  Pl. Ex. 5 at ¶ 6; Pl. Ex. 10 at P003035; Def. Ex. 14 at NYU_00011364-11365.  Plaintiff eventually transferred to NYU with Jane's help and support.  Def. Ex. 1 at NYU_00009765.  Jane completely controlled the relationship when Plaintiff arrived at NYU – she accessed his social media accounts; deleted messages on his devices; physically abused him; humiliated him sexually; stood him up at odd hours; and made him a social pariah.  Pl. Ex. 3 at 176:10-15; 193:2-9; 331:13-16; 350:3-7; Def. Ex. 13 at 193:15-194:10, 194:16-195:8, 214:6-14; Def. Ex. 53 at NYU_00010138; Def. Ex. 79.  Jane's bad acts culminated with a false Title IX complaint.  Def. Ex. 27 at NYU_00002435.

NYU conducted its only interview with Jane on May 17, 2018.  Def. Ex. 1 at NYU_00009756.  Based on the information provided by Jane during this interview, NYU charged Plaintiff with four violations of its Title IX Policy ( "Policy") on May 22, 2018.  Def. Ex. 43 at NYU_00029166.  Plaintiff met with Mary Signor and Colleen Maeder on April 30, 2018.  Def. Ex. 29 at NYU_00002598.  During this meeting, Plaintiff informed NYU of conduct by Jane that constituted violations of NYU's Policy.  Def. Ex. 32 at NYU_00009570, 9572, 9574.  Signor told Plaintiff that NYU would not deal with his claims until after Jane's claims against him were investigated and adjudicated, so he should wait until that time to bring his claim against Jane.  Def. Ex. 10 at 87:20-25.  Plaintiff asked NYU for an advisor to assist him in navigating the Title IX process.  *Id*. at 122:3-11.  NYU assigned Allen McFarlane, a longtime NYU employee with six years of experience advising male respondents facing Title IX investigations.  Pl. Ex. 18 at 12:17-19; 20:12-17; 26:12-16; 28:19-29:11.  On June 25, 2018, McFarlane promised Plaintiff that he would not be expelled under any circumstances because there was no sexual intercourse or weapon involved and that at most he faced a one-semester suspension.  Def. Ex. 10 at 111:11-112:2.

NYU assigned Sam Hodge and Lauren Stabile as investigators.  Def. Ex. 1 at NYU_00009756.  Hodge and Stabile refused to interview witnesses that Plaintiff identified as having exculpatory evidence.  Def. Ex. 61 at NYU_00000071-72; Def. Ex. 1 at NYU_00010079.  Hodge and Stabile met with Plaintiff on July 10, 2018.  Def. Ex. 1 at NYU_00009762-68.  Based on McFarlane's promise, Plaintiff did not retain counsel and provided NYU with information

2

which corresponded with his understanding of the gravity of the charges he was facing.  Def. Ex. 10 at 127:2-21.  At the time of his interview, Plaintiff believed that certain messages proving his innocence were unavailable because Jane had deleted them.  Pl. Ex. 3 at 353:1-13.  At the interview, NYU only showed Plaintiff two photos Jane took of Plaintiff as she followed him in Washington Square Park and the surrounding environs.  *Id.* at 161:17-162:4.  This was the only evidence that NYU provided to Plaintiff until the draft Investigation Summary Report ("ISR") was issued on October 2, 2018 while Plaintiff was studying abroad in Australia.  *Id.* at 133:21-134:7; 136:12-13.  The ISR contained hundreds of pages of evidence provided by Jane.  *See generally* Def. Ex. 1.  The ISR also included five charges that were not included in the May 22, 2018 notice provided by NYU.  Def. Ex. 43 at NYU_00029166; Def. Ex. 1 at NYU_00009755-9756.  After reviewing the ISR, McFarlane repeated his promise to Plaintiff.  Pl. Ex. 3 at 136:5-137:8.

NYU conducted a hearing in New York on December 10, 2018 led by Craig Jolley.  Def. Ex. 13 at 2:14-17, 331:11-14.  All in-person attendees received a printed copy of the 300-plus page ISR; NYU refused to provide Plaintiff, who was still in Australia, with a paper copy.  Pl. Ex. 3 at 143:18-144:3; 240:13-25.  NYU refused to delay the hearing until Plaintiff return to New York a couple of weeks later, so Plaintiff was forced to participate virtually.  *Id.* at 240:13-25.  There were multiple audio and video issues that prevented Plaintiff from fully participating in the hearing.  Def. Ex. 13 at 18:2-10; 31:1-17; 33:20-34:4; 120:4-10; 137:19-138:15; 151:18-22; 200:3-5; 201:11-15; 225:25-226:6; 228:25-229:14; 270:12-16; 274:10-14; 319:13-22; 327:20-328:5; Def. Ex. 10 at 248:18-23.  Because NYU did not provide him with a hard copy of the final ISR issued on October 23, 2018, Plaintiff was forced to toggle between multiple windows and devices to follow along with witness testimony and Jolley's questions.  Def. Ex. 10 at 247:21-249:6.  These conditions prevented Plaintiff from accurately responding to all of Jolley's questions and fully rebutting Jane's false testimony.  Def. Ex. 13 at 71:20, 192:9, 237:3.  Jolley found Plaintiff responsible for multiple Policy violations and expelled him.  Def. Ex. 2 at NYU_00001808. Lauren Stahl, Plaintiff's therapist and support person in Australia, and McFarlane were shocked by the harshness of the sanction.  Pl. Ex. 12 at 43:6-45:21; Pl. Ex. 3 at 136:5-137:17.

Upon returning to New York, Plaintiff discovered that evidence that he believed had been destroyed was still intact.  Pl. Ex. 3 at 353:22-354:5.  He included this new evidence as part of his appeal.  Pl. Ex. 16.  Plaintiff also provided statements written by several witnesses, including multiple witnesses that NYU refused to interview as part of its investigation.  Pl. Ex. 16 at NYU_00011361-11364.  Ignoring the new evidence that Plaintiff provided, NYU rejected his appeal and upheld his expulsion.  Def. Ex. 76 at NYU_00007876.  On July 18, 2019, Plaintiff submitted a complaint against Jane, asserting that her behavior violated the Policy.  Def. Ex. 79. Signor refused to accept Plaintiff's claim and falsely asserted that NYU had already addressed the issues raised in his complaint.  Def. Ex. 10 at 87:20-25; Pl. Ex. 13 at NYU_00008324; Def. Ex. 4 at 140:15-17; Pl. Ex. 2 at 315:6-8; Def. Ex. 72 at 142:21-144:8.

## LEGAL STANDARD

A motion for summary judgment may be granted only if the Court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The movant has the burden of showing that there is no genuine issue of fact." *Anderson*, 477 U.S. at 256.  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Aldrich*, 963 F.2d at 523. (internal quotations and citation omitted).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995) (emphasis added).  In determining whether the moving party met its burden, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  "Credibility assessments, choices between conflicting versions of the

4

events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (citations omitted).

<u>**ARGUMENT**</u>

**I.      There Are Genuine Issues Of Material Fact With Regard To Plaintiff's Title IX Claims For Erroneous Outcome And Selective Enforcement**

NYU has failed to provide a complete statement of the relevant Title IX standards.  NYU Memo. at 12.  For an erroneous outcome claim to survive, "a plaintiff must demonstrate (1) articulable doubt [as to] the accuracy of the outcome of the disciplinary proceeding, and (2) that gender bias was a motivating factor behind the erroneous finding." *Doe v. Colgate Univ.*, 457 F. Supp. 3d 164, 170 (N.D.N.Y. 2020), *reconsideration denied*, No. 517CV1298FJSATB, 2020 WL 3432827 (N.D.N.Y. June 23, 2020)  (internal quotations and citations omitted) (bracketed text in original).  "To support a claim of selective enforcement, [a male plaintiff] must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University."  *Id*. at 172 (internal quotations and citation omitted) (bracketed text in original). "Additionally, [t]he male plaintiff must show that the University's actions against [the male plaintiff] were motivated by his gender and that a similarly situated woman would not have been subjected to the same disciplinary proceedings."  *Id*. (internal quotations and citation omitted) (bracketed text in original).  Further, "When analyzing the question of whether the severity of the penalty was affected by Plaintiff's gender, [c]ourts have interpreted that standard to require a plaintiff to allege particular circumstances suggesting a meaningful inconsistency in punishment and particular circumstances suggesting that gender bias was a motivating factor behind the inconsistency."  *Id*. (internal quotations and citation omitted) (bracketed text in original).  The charges faced by a female comparator need not be exact, but only comparable. *Id*. at 173.

**A.      Genuine Issues Of Material Fact Exist As To Whether The Outcome Of Plaintiff's Disciplinary Proceeding Was Accurate**

A plaintiff who disputes that he engaged in the conduct for which a university found him responsible raises a genuine issue of material fact regarding his Title IX erroneous outcome claim.

*Id*. at 170.  Here, Plaintiff maintains that he did not stalk, sexually exploit, or sexually harass Jane. Def. Ex. 14 at NYU_00011365-11369.  Additionally, there is evidence in the record calling into question whether NYU's findings were accurate and whether NYU properly applied its own Policy definitions, thus distinguishing this matter from *Doe v. Valencia College*, 903 F.3d 1220 (11th Cir. 2018), *Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir. 1994), or *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448 (S.D.N.Y. 2015).  Further, as detailed below there is evidence that would allow a reasonable jury to find that the actions NYU took against Plaintiff were the result of gender bias.

NYU's Policy defines "Sexual Harassment" as "any unwelcome *sexual* advance, request for *sexual* favors, or other unwanted conduct of a *sexual* nature, whether verbal, non-verbal, graphic, physical, or otherwise."  Def. Ex. 1 at NYU_00009793-9794 (emphasis added).  NYU asserts that **any** conduct that occurs in the context of an intimate relationship could potentially constitute Sexual Harassment.  NYU Memo. at 18-19.  This position is absurd and defies any reasonable understanding of the term Sexual Harassment.  The evidentiary support that NYU relies upon to support this outlandish claim is equally unavailing.  *Id*. at 17-18.  The messages that NYU relied upon to find Plaintiff responsible for "Sexual Harassment" do not contain any content of an unwanted sexual nature, nor do they seek sexual favors or put forth unwelcome sexual advances. *See*, *e.g.*, Def. Ex. 1 at NYU_00009888-9994.  Thus, NYU plainly misapplied its policy when it erroneously found Plaintiff responsible for Sexual Harassment.

NYU's Policy defines "Sexual Exploitation" as "specific forms of Sexual Misconduct that involve non-consensual use of another *individual's nudity or sexuality*, excluding behavior that constitutes one of the other Sexual Misconduct offenses."  Def. Ex. 1 at NYU_0009795 (emphasis added).  NYU's finding of responsibility against Plaintiff for Sexual Exploitation was based on photographs that did not exist at the time Jane made her complaint and which no investigator, adjudicator, or Appeal Panel member ever saw.  *See generally* Def. Ex. 1; *see also* Def. Ex. 72 at 132:10-12.  NYU asserts that its Sexual Exploitation finding is based on photos of Jane's partially exposed breasts and stomach that Plaintiff used for self-gratifying purposes.  NYU Memo. at 17. In support, NYU offers a citation to its Local Rule 56.1 Statement, which states, "Also on October

30, 2017, Jane discovered that Plaintiff had taken pictures of her sleeping without her consent. The pictures included Jane's exposed stomach and partially exposed breasts." Def. 56.1 Stmt. at ¶ 59. However, Jane told NYU that she discovered the photos that supposedly supported her Sexual Exploitation claim in early February of 2018. Def. Ex. 1 at NYU_00010072. Disregarding these relevant facts, NYU claims that the photographs from October 2017, which were undisputedly not the subject of Jane's Title IX complaint and which were never seen by NYU, are sufficient to support the finding of responsibility for Sexual Exploitation. NYU Memo. at 17. Thus, there was no basis for NYU's finding that Plaintiff was responsible for Sexual Exploitation.

The Policy notes that "Stalking occurs when a person engages in a course of conduct toward another person under circumstances that would cause a *reasonable* person to fear bodily injury or experience substantial emotional distress." Def. Ex. 1 at NYU_00009795 (emphasis added). No reasonable person fearing for her bodily integrity or mental wellbeing would (1) remain in the vicinity of her alleged stalker; (2) take more than a dozen photos of her alleged stalker; and (3) follow her alleged stalker to multiple additional locations while continuing to take photographs, yet this is exactly what Jane did during the May 2, 2018 incident in Washington Square Park. Def. Ex. 1 at NYU_00009810-9823. Certain photographs that Jane provided to NYU to support her stalking allegations show that Jane took them while standing behind Plaintiff in and out of Washington Square Park, indicating that she was stalking him. *Id*. at NYU_00009811; 9813; 9820; 9822-9823. Plaintiff has raised a genuine issue of material fact as to whether photographs are inconsistent with Jane's claims that Plaintiff stalked her and violated the NCO during the Washington Square Park incident.[2] NYU improperly ignored this inconsistency in reaching its decision, thereby precluding any grant of summary judgment.

In addition to the issues noted above, the record shows that NYU's investigation and

---

[2] Plaintiff does not contest that he violated the NCO on certain other occasions. However, during his meeting with Signor and Maeder on April 30, 2017, they downplayed the significance of the NCO violations and said that because Plaintiff was "up front and honest" about the violations, they should not be an issue. Def. Ex. 10 at 86:14-87:4. NYU relies on a declaration of dubious admissibility from Jolley to baselessly assert that NCO violations are "very rare and serious." Def. Ex. 8 at ¶¶ 4-5; Fed. R. Civ. P. 56(c)(4); Fed. R. Civ. P. 56(c)(2). This claim is controverted by other evidence in the record, creating a genuine issue of material fact. Def. Ex. 10 at 86:14-87:4.

adjudication of Jane's allegations against Plaintiff were rife with procedural flaws and irregularities such that there are genuine issues of material fact regarding the accuracy of the outcome of NYU's Title IX process. *See Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 658 (D. Conn. 2019) (noting that a failure to seek out relevant witnesses and university's non-compliance with own policy support denial of summary judgment on erroneous outcome claim). NYU's decision was based on cherry-picked messages provided by Jane. Def. Ex. 10 at 40:20-25. NYU refused to interview relevant witnesses that Plaintiff identified as being in possession of exculpatory evidence and information. Def. Ex. 61 at NYU_00000071-72; Def. Ex. 1 at NYU_00010079. Although it lacked jurisdiction to do so, NYU sanctioned Plaintiff for conduct alleged to have occurred while he was a student at another university. Def. Ex. 13 at 23:8-21; Def. Ex. 14 at NYU_00011368. Plaintiff's actions in the spring of 2018 were not sexual in nature. Def. Ex. 14 at NYU_00011365-11366; Def. Ex. 1 at NYU_00009918, 9920-9924, 9942, 9969; Def. Ex. 13 at 193:15-195:25. Save for two photos shown at his interview, Plaintiff did not have access to the evidence used against him until the draft ISR was issued. Def. Ex. 10 at 133:21-134:7; 136:12-13. Plaintiff's ability to review the draft ISR was hampered by a lack of complete access to the document. Pl. Ex. 3 at 33:10-34:21. Being in Australia, Plaintiff did not have access to all of the potentially relevant documents and information necessary to respond to the draft ISR prior to the hearing. Def. Ex. 35 at P058316. Significant audio and video problems prevented Plaintiff from fully and meaningfully participating in the hearing.[3] Def. Ex. 13 at 18:2-10; 31:1-17; 33:20-34:4; 120:4-10; 137:19-138:15; 151:18-22; 200:3-5; 201:11-15; 225:25-226:6; 228:25-229:14; 270:12-16; 274:10-14; 319:13-22; 327:20-328:5; Def. Ex. 10 at 248:18-23. Thus, there are triable issues of fact regarding the accuracy of the outcome NYU's Title IX process against Plaintiff.

## B.    Genuine Issues Of Material Fact Exist As To Whether Similarly Situated Female Students Were Treated More Favorably Than Plaintiff

NYU improperly limits the definition of "similarly situated" in the context of selective

---

[3] The cases relied upon by NYU to assert that this issue is unpreserved are irrelevant, as both involved interpretations of administrative law and administrative agency proceedings. NYU Memo. at 15-16. To Plaintiff's knowledge, NYU is not an administrative agency.

enforcement.  NYU Memo. at 18-19.  In reality, determining whether a member of the opposite sex is "similarly situated" simply requires the Court to compare Plaintiff to "members of the opposite sex facing comparable disciplinary charges."  *Colgate*, 457 F. Supp. 3d at 173 (internal quotations and citation omitted).  NYU's misguided analysis lacks a complete accounting of all of the relevant facts.  NYU conducted its only interview with Jane on May 17, 2018.  Def. Ex. 1 at NYU_00009756.  Based on the allegations made by Jane during this interview, NYU charged Plaintiff with four Policy violations on May 22, 2018.  Pl. Ex. 1 at NYU_00003049.  According to Signor, information utilized by NYU to generate additional charges in a Title IX process only comes from information obtained during NYU's interview process with a complainant.  Pl. Ex. 8 at 136:6-11.  However, in the ISR dated October 23, 2018, NYU increased the number of violations that Plaintiff was facing to nine without any further formal complaint or request from Jane.  Def. Ex. 1 at NYU_00009755-9756.  Notably, at least four of the additional five charges NYU added *sua sponte* are completely unrelated to any behavior detailed in the May 22, 2018 notice to Plaintiff based on Jane's formal complaint.  *Compare* Pl. Ex. 1 at NYU_00003049 (May 22, 2018 charge email based on the allegations made by Jane in her formal complaint as told to NYU in her May 17, 2018 interview) *with* Def. Ex. 1 at NYU_00009755-9756 (adding allegations non-consensual kissing "on and-off campus;" non-consensual touching of Jane's breasts; non-consensual touching of Jane's vagina; and relationship violence *via* verbal abuse and threats of self-harm).

NYU has the ability to investigate Policy violations and initiate disciplinary proceedings against a student in the absence of a formal complaint.  Nothing in the Policy states that a formal report is a condition precedent to a Title IX investigation, a fact admitted by Hodge. Def. Ex. 1 at NYU_00009788-NYU_00009799; Pl. Ex. 2 at 176:18-23.  Signor testified that NYU is able to investigate potential Policy violations even when a reporting student asks NYU not to do so.  Pl. Ex. 8 at 223:8-224:12.[4]  Yet, when Plaintiff made NYU aware of Jane's Policy-violating conduct

---

[4] NYU offers a Declaration from Stabile in a facile attempt to "correct" this testimony by Signor.  Def. Ex. 6.  The Court should disregard Paragraphs 9 and 10 of the Stabile Declaration.  At trial she would not be able to competently testify as to NYU's procedures for deciding whether to proceed with an investigation on July 10, 2018, so her testimony would not be admissible in evidence.  Def. Ex. 6 at ¶¶ 9-10; Fed. R. Civ. P. 56(c)(4); Fed. R. Civ. P. 56(c)(2); Pl. Ex. 2 at 57:6-15.  In the alternative, Plaintiff maintains these paragraphs create issues of fact that preclude summary

that endangered him and the greater NYU community, NYU did not conduct any investigation despite the undisputed ability to do so.  During his April 30, 2018 meeting with Signor, Plaintiff informed Signor that Jane had punched him, threatened him, and disparaged him to their mutual friends, but Signor told him that he could and should wait until Jane's allegations against him were adjudicated before making a claim against Jane because his claim would not be investigated until Jane's allegations were resolved. Def. Ex. 32 at NYU_00009570, 9572, and 9574; Pl. Ex. 8 at 191:2-12.  NYU never investigated these allegations.  Pl. Ex. 2 at 309:4-7.  During his July 10, 2018 meeting with Hodge and Stabile, Plaintiff reported that Jane had made homophobic comments about him to his friends, kissed him in his sleep without his consent, punched him, threatened him, isolated him from his friends, followed him in Washington Square Park[5], and took a picture of him naked without consent.  Def. Ex. 52 at NYU_00010106, 10113-10114; Def. Ex. 53 at NYU_00010135, 10138-10139.  NYU never investigated these allegations.  Pl. Ex. 2 at 309:4-7.  Signor admitted that Jane's actions constituted potential violations of the Policy.  Pl. Exhibit 8 at 216:21-217:5; 221:12-222:2.  Plaintiff raised Jane's misconduct during his appeal. Def. Ex. 14 at NYU_00011361-11365.   In his appeal, Plaintiff also informed NYU that Jane contacted him using alter ego, Sally, in violation of the NCO and that Jane (as Sally) mocked him regarding intimacy issues that led him to suffer a negative emotional reaction, thus engaging in unwanted conduct of a sexual nature.  Def. Ex. 14 at NYU_00011362.  His appeal also included statements from two other NYU students that supported his claim that Jane was actually following him  in  Washington  Square  Park.    Pl.  Ex.  16  at  NYU_00011361;  NYU_00011407-416; NYU_00032888.  Once again, NYU failed to address Plaintiff's allegations of Jane's misconduct.

---

judgment based on deposition testimony provided in this matter.  Pl. Ex. 8 at 223:8-224:12.  The Court should disregard Paragraph 11 of the Stabile Declaration, as it fails to indicate a time period for when cross-complaints made by male respondents were investigated and adjudicated contemporaneously with a complaint made by a female student. Def. Ex. 6 at ¶ 11.  It is entirely possible that each instance referenced in Paragraph 11 of Stabile's Declaration occurred after Plaintiff was expelled.  Absent dates for when the alleged contemporaneous investigation occurred, Stabile's testimony is irrelevant and therefore would be inadmissible at trial.  Fed. R. Evid. 401; Fed. R. Evid. 402.
[5] The Court should summarily reject NYU's claim that it treated Jane similarly with regard to the Washington Square Park incident.  NYU asserts that the Department of Public Safety's decision not to follow up on both Plaintiff and Jane's reports of what occurred on May 2, 2018 means that "Jane was treated similarly with regard to her own report of an incident."  NYU Memo. at 19, n.8.  This is simply not true, as NYU **did** investigate Jane's claim that Plaintiff was stalking her in Washington Square Park in violation of the NCO.  Def. Ex. 1 at NYU_00009756.

Def. Ex. 76 at NYU_00007876-7877.

Plaintiff and Jane were both NYU students when he reported Jane's misconduct.  Plaintiff alleged that Jane engaged in behaviors that constituted violations of the same Policy provisions that he had been charged with violating.  Plaintiff's allegation that Jane followed him in the park was Stalking.  Def. Ex. 1 at NYU_00009795; Def. Ex. 13 at 249:25-251:6.  Jane also engaged in Sexual Exploitation when she took a photo of Plaintiff while he was naked without his consent. Def. Ex. 1 at NYU_00009795; Def. Ex. 53 at NYU_00010138.  Jane's belittlement of Plaintiff regarding the intimate aspects of their relationship constituted Sexual Harassment.  Def. Ex. 1 at NYU_00009793-794; Def. Ex. 14 at NYU_00011362.  Jane's physical and verbal assaults of Plaintiff constituted Relationship Violence.  Def. Ex. 79, P000577-580; *see* Def. Ex. 1 at NYU_00009795 (defining Relationship Violence).  NYU's unilateral expansion of Jane's allegations against Plaintiff without requiring her to make an additional formal complaint/request and refusal to investigate Plaintiff's allegations against Jane because he did not make a formal complaint/request serves to further "demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by" NYU.  *Colgate*, 457 F. Supp. 3d at 172 (internal quotations and citation omitted).  NYU's actions create a genuine issue of material fact as to whether Jane, a female, was treated more favorably than Plaintiff, a male, thus precluding summary judgment.  *Quinnipiac*, 404 F. Supp. 3d at 662.

While this Court previously dismissed Plaintiff's Title IX selective enforcement claim based on NYU's failure to accept the formal complaint submitted after his expulsion (ECF 40 at Page 42), deposition testimony from NYU administrators has created a triable issue of fact as to whether Plaintiff and Jane were similarly situated following his expulsion.  Signor was unable to contradict Plaintiff's testimony that she told him that he could and should wait until the end of any proceedings against him before making a claim against Jane because such a claim would not be determined until after the proceedings against him concluded.  Pl. Ex. 8 at 191:2-12; Def. Ex. 10 at 87:20-25.  Signor admitted that Plaintiff's descriptions of Jane's behavior possibly constituted violations of the Policy.  Pl. Ex. 8 at 216:21-217:5; 221:12-222:2.  She stated that the Policy does

not prohibit NYU from accepting a Title IX complaint by a former student against a current student and that NYU could accept such a complaint. *Id.* at 187:18-25; 190:15-25. Jolley confirmed that a former NYU student can report a current student to NYU's Title IX office for Policy violations. Pl. Ex. 6 at 85:4-9. Thus, Plaintiff and Jane remained in materially similar positions even after Plaintiff was expelled from NYU.[6] It is undisputed that NYU refused to investigate the formal complaint that Plaintiff submitted on July 18, 2019. On July 30, 2019, Signor informed Plaintiff that she was refusing to accept his formal complaint against Jane and explained, "The matters you raised were addressed previously by the University. As such, this matter will not be reopened and is considered closed." Pl. Ex. 13 at NYU_00008324. Signor's explanation was patently false. Hodge testified that Plaintiff's complaint against Jane was "separate and apart from Jane's allegations." Def. Ex. 4 at 140:15-17; *see also* Pl. Ex. 2 at 315:6-8 (Hodge explaining that Plaintiff's allegations against Jane constituted "a completely separate topic than my investigation" of Jane's allegations against Plaintiff). Jolley testified that he did not consider whether Jane had engaged in Policy violations at the December 10, 2018 hearing. Def. Ex. 72 at 142:21-144:8. Plaintiff should be permitted to move forward with the portion of his Title IX selective enforcement claim related to NYU's refusal to investigate his formal complaint.

## C. Genuine Issues Of Material Fact Exist As To Whether NYU's Actions Were Motivated By Plaintiff's Gender

NYU's decision to *sua sponte* increase the number of charges against Plaintiff while failing to pursue any action against Jane for her Policy-violating behavior in the absence of a formal complaint by Plaintiff is indicative of gender bias. Def. Ex. 43 at NYU_00029166; Def. Ex. 1 at NYU_00009755-9756; Pl. Ex. 7 at NYU_00002984; *see Quinnipiac*, 404 F. Supp. 3d at 661, 662 (requiring a male student to file a formal complaint while failing to impose same requirement on a female student is sufficient to establish a genuine issue of material fact as to gender bias that

---

[6] The cases relied on by NYU to assert the contrary are inapposite. *See Russell v. New York Univ.*, No. 1:15-CV-2185-GHW, 2017 WL 3049534 at *32 (S.D.N.Y. July 17, 2017), *aff'd*, 739 F. App'x 28 (2d Cir. 2018) (male professor would not act as comparator because he was no longer under NYU control when disciplinary action became possible); *Haidak v. Univ. of Massachusetts-Amherst*, 933 F.3d 56 (1st Cir. 2019) (plaintiff could not use female complainant as comparator because he never filed complaint against her and failed to provide any evidence of gender bias).

precludes summary judgment). Such facts assist a plaintiff in "meet[ing] his minimal burden of establishing his prima facie case that gender was a motivating factor in the decision to discipline him, for both his claims of erroneous outcome and selective enforcement." *Quinnipiac Univ.*, 404 F. Supp. 3d at 663. NYU's female-biased double standard also precludes summary judgment. *Id*.

NYU relies on two assertions belied by the record and case law in a misguided attempt to obscure its gender bias – (1) Plaintiff's identification of behavior by Jane that may have constituted a Policy violation failed to place him in a similarly situated position as Jane because he did not make a formal complaint or request an investigation; and (2) NYU "will not conduct an investigation unless requested." NYU Memo. at 19. On May 17, 2018, Jane informed NYU that she wanted the investigation of any alleged misconduct by Plaintiff to be "focused on the current situation from the past 2-3 months" and explicitly told NYU, "I don't really want to get into the past situation when we were friends/dating." Pl. Ex. 1 at NYU_00002984. Despite Jane's clear requests, NYU investigated conduct that Plaintiff allegedly engaged in as far back as 2016. Def. Ex. 1 at NYU_00009755-9756. NYU's false claim is further eviscerated by the uncontroverted fact that NYU *sua sponte* supplemented Jane's allegations against Plaintiff between the issuance of the initial charge email on May 22, 2018 and the issuance of the ISR on October 23, 2018 without an intervening interview with Jane. Pl. Ex. 1 at NYU_00003049; Def. Ex. 1 at NYU_00009755-9756. Thus, NYU will indeed investigate alleged violations of the Policy without a formal complaint or request and even if explicitly asked not to do so. Based on the above and the other relevant facts detailed below, Plaintiff has undoubtedly succeeded in meeting "his minimal burden of establishing his prima facie case that gender was a motivating factor in the decision to discipline him." *Quinnipiac*, 404 F. Supp. 3d at 663.

The information contained within the spreadsheets created by NYU is sufficient to show discrimination on the basis of sex. *Cf. Aldrich*, 963 F.2d at 528 (noting that statistical data such as "how many people took [a civil service] exam, how many were women, how many women passed, how many women were in the top three and how many women were hired" can be used to show discriminatory impact). The NYU spreadsheets indicate, *inter alia*, how many instances of

gender-based misconduct under the Policy were investigated by NYU; genders of complainants and respondents; findings of responsibility; outcomes of appeals; and sanctions issued, the exact types of information deemed sufficient to support a claim of discrimination on the basis of sex. Pl. Ex. 4; *Aldrich*, 963 F.2d at 528. A plaintiff offering a single example of a similarly situated female student receiving a lesser penalty can be sufficient to defeat a defendant university's motion for summary judgment on the male plaintiff's Title IX selective enforcement claim. *Colgate*, 457 F. Supp. 3d at 173-74. NYU's own statistical evidence reveals multiple such examples.

From 2015 to 2020, only four NYU students were expelled for Policy violations, and all of them were male. Pl. Ex. 4, Complete List at Lines 45, 57, 64, 73. Female respondents found responsible for allegations of gender-based misconduct similar to those that Plaintiff faced were given more lenient sanctions. Pl. Ex. 4, Complete List. On March 2, 2016, a female student was found responsible for Dating Violence, but NYU sanctioned her with probation. *Id*. at Line 4. On June 15, 2016, a female student was found responsible for Sexual Harassment; her sanction was probation. *Id*. at Line 14. On October 3, 2017, NYU found a female student responsible for Relationship Violence, for which the sanction was probation. *Id*. at Line 33. Jolley notably asserted during Plaintiff's Title IX process that a finding of responsibility for Stalking alone was sufficient to warrant expulsion. Def. Ex. 2 at NYU_00001808. However, on September 7, 2017, Jolley found a female student responsible for Stalking **and** Sexual Harassment but only issued a suspension. Pl. Ex. 4, Complete List at Line 32. It is clear that there is evidence in the record that creates a genuine issue of material fact as to whether NYU's decision to expel Plaintiff was motivated by his gender. *See Colgate*, 457 F. Supp. 3d at 173 (charges faced by a female comparator in a selective enforcement action need not be exact, only comparable).

NYU mischaracterizes its own spreadsheets, asserting that they simply "list[s] the outcomes of NYU's sexual misconduct hearings. NYU Memo. at 13. In fact, the spreadsheets represent a gathering and analysis of raw data exclusively within NYU's possession, custody, and control in a format that is easily understood. Pl. Ex. 4. NYU fails to explain why the document it created could not be utilized by a jury to determine whether female respondents received lesser

sanctions than male respondents facing similar charges.  NYU Memo. at 13.  The cases relied upon by NYU to support its position are distinguishable or require the denial of the instant Motion.

*Ottaviani v. State Univ. of New York at New Paltz*, 875 F.2d 365 (2d Cir. 1989), involves an appeal from a bench trial in a class action suit, not a summary judgment motion involving an individual plaintiff.  *Ottaviani*, 875 F.2d at 366.  Moreover, the statistical evidence at issue was generated **by the plaintiffs' expert** using a multiple regression analysis that was missing key variables.  *Id.* at 367-368.  Here, the statistical evidence at issue was irrefutably created by NYU based on its own review, collection, and analysis of the internal raw data that NYU deemed relevant and can be understood on a simple reading.  Pl. Ex. 4.  NYU has failed to attack the validity of the spreadsheets or provide any competing statistical evidence.  This is a marked departure from the typical *McDonnell Douglas* analysis that the *Ottaviani* court undertook. *Ottaviani*, 875 F.3d at 370  (noting that in response to a plaintiff's use of statistical evidence to establish a *prima facie* case of discrimination, "defendants may also attempt to undermine the plaintiffs' prima facie case by attacking the validity of that statistical evidence, or by introducing statistical evidence of their own showing that the challenged practice did not result in disparate treatment.").  Thus, to the extent that *Ottaviani* is applicable, it supports the denial of NYU Motion.

NYU overstates the holding of *LaMarch v. Tishman Speyer Properties, L.P.*, No. 03 CV 5246 (CBA), 2006 WL 2265086 (E.D.N.Y. Aug. 8, 2006), which does not stand for the proposition that statistical evidence regarding discrimination requires expert analysis to constitute admissible evidence.  NYU Memo. at 13.  Rather, the court held that the plaintiff's "testimony regarding his own perception of a 'pattern' of terminating older employees is mere conclusory speculation" and noted that the purported statistical information proffered was "inadmissible and meaningless" as it lacked "contextual information such as the number of TSP employees over forty during that period and the termination rate of employees under forty," which would preclude a reasonable jury from drawing "any inference regarding age discrimination."  *LaMarch*, 2006 WL 2265086 at *6. The NYU spreadsheets are detailed and provide everything necessary for a reasonable jury to determine that the actions that NYU took against Plaintiff were tainted by gender bias.  Pl. Ex. 4.

Similarly, the Court in *Zenni v. Hard Rock Cafe Int'l, Inc. (N.Y.)*, 903 F. Supp. 644 (S.D.N.Y. 1995), did not, as claimed by NYU, find that the absence of expert testimony was the sole reason why the plaintiff was unable to establish a *prima facie* case of gender discrimination. NYU Memo. at 13-14.  Rather, the Court held that the biggest flaw in the statistical evidence was that it only showed the employer's general hiring practices, which "is insufficient to prove that a particular plaintiff was discriminated against."[7]  *Zenni*, 903 F. Supp. at 654.  Additionally, the only non-statistical evidence that the plaintiff relied upon was a single affidavit from another African-American employee that only included speculative assertions.  *Id*.  The remaining cases relied upon by NYU are similarly unavailing.  *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 46 (2d Cir. 2000) (rejecting statistical evidence pulled from an *amicus curiae* brief that did not appear in the record); *E.E.O.C. v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 470 (S.D.N.Y. 2011) (finding statistical evidence consisting "of only anecdotal evidence of alleged discriminatory incidents" insufficient); *Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d 359. 371-81 (S.D.N.Y. 2013) (finding plaintiffs' reliance on statistical evidence from computer-generated layoff lists appropriate to establish a *prima facie* case of discrimination but insufficient to support a finding of pretextual firing where other evidence indicative of gender bias was not presented).[8]

In addition to the statistical evidence generated by NYU based on investigations and adjudications performed by subjective human decision-makers, Plaintiff relies on non-statistical evidence particular to his case to assert that NYU engaged in gender-based discrimination.  Section I.B., *supra*.; Pl. Exhibit 8 at 216:21-217:5; 221:12-222:2.   NYU also ignored multiple inconsistencies in Jane's account of the Washington Square Park incident and simply concluded that Plaintiff must have been following her despite photo evidence to the contrary.  Section I.A., *supra*.  This failure to investigate inconsistencies in Jane's account and question her about the

---

[7] The court in *Zenni* relied *Zahorik v. Cornell Univ.*, 729 F.2d 85 (2d Cir. 1984), another inapposite case, for this finding.  *See Zahorik*, 729 F.2d at 95 (rejecting statistical evidence deliberately manipulated by plaintiff in matter involving the "highly decentralized" process of granting tenure and noting record lacked "particularized evidence relating to the individual plaintiffs" which was "necessary to show discriminatory treatment.").

[8] *Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP*, 869 F. Supp. 2d 378 (S.D.N.Y. 2012), a case relied upon by *Vuona*, is also distinguishable.  *See Zito*, 869 F. Supp. 2d at 395 (noting **generalized statistical evidence standing alone** was insufficient to rebut a legitimate business rationale for an adverse employment decision).

Plaintiff's "potentially accurate account of the incident" is sufficient to raise a genuine issue of material fact as to the existence of gender bias related to Plaintiff's Title IX erroneous outcome claim at the summary judgment stage. *Colgate*, 457 F. Supp. 3d at 172.

NYU's reliance on *Russell*, to assert that Plaintiff has failed to create a plausible inference of gender bias is misplaced. Because the social media posts and suspension of Avital Ronell noted in the Amended Complaint are indisputable matters of public knowledge, the Court will be able to take judicial notice of these facts at trial. Fed. R. Evid. 201. The August 2018 social media posts constitute substantial public student criticism of NYU's handling of Title IX complaints made by female students against male respondents and are referenced and quoted in a public filing in this Court. *Doe v. NYU*, 1:19-cv-00744-ALC at ECF 21, ¶ 135. National publications reported on the Ronell saga, including a letter sent to NYU by female academics urging NYU to provide Ronell with special treatment. *See*, *e.g.*, Andrew O'Hehir, *When a woman is accused of sexual misconduct: The strange case of Avital Ronell*, Salon (Aug. 18, 2018) (detailing reaction to Ronell matter) (available at https://www.salon.com/2018/08/18/when-a-woman-is-accused-of-sexual-misconduct-the-strange-case-of-avital-ronell/). Given the nature of Ronell's misconduct, it is reasonable to infer that NYU bowed to public pressure and issued a lenient sanction to an unrepentant sex predator simply because she is a woman.[9] This factual background is sufficient to support a plausible inference that NYU was motivated to favor Jane over Plaintiff to avoid further accusations of poor treatment of women. *Quinnipiac*, 404 F. Supp. 3d at 658.

Plaintiff has far exceeded "his minimal burden of establishing his prima facie case that gender was a motivating factor in the decision to discipline him." *Id*. at 663. Assuming, *arguendo*, that NYU can "offer some legitimate, non-discriminatory reason for the apparently disparate treatment," the evidence in the record, as detailed above, would certainly permit a reasonable jury to determine that NYU's actions were unlawfully discriminatory, thus precluding summary judgment. *Id*. Plaintiff has detailed numerous disparities in NYU's investigation and adjudication

---

[9] NYU was also facing multiple investigations by the United States Department of Education Office for Civil Rights, which NYU fails to address in its moving papers. NYU Memo. at 12-13.

process that all favored Jane.  NYU investigated and adjudicated claims against Plaintiff lacking any formal complaint from Jane.  Pl. Ex. 1 at NYU_00003049; Def. Ex. 1 at NYU_00009755-9756; Pl. Ex. 7 at NYU_00002984.  NYU had actual knowledge of alleged behavior by Jane that constituted Policy violations similar to Plaintiff's but never investigated them.  Def. Ex. 32 at NYU_00009570, NYU_00009572, NYU_00009574; Def. Ex. 52 at NYU_00010106, NYU_00010113-114, NYU_00010118; Def. Ex. 53 at NYU_00010135, NYU_00010138-139, NYU_00010142; Pl. Ex. 2 at 309:4-7; Def. Ex. 14 at NYU_00011361-365.  NYU ignored inconsistencies in Jane's claims against Plaintiff that were directly controverted by photographic evidence and relied on that photographic evidence to find Plaintiff responsible.  Def. Ex. 1 at NYU_00009811; 9813; 9820; 9822-9823.  NYU also has a documented history of preferential treatment towards female students responding to charges similar to those Plaintiff was facing.  Pl. Ex. 4.  NYU's Title IX training material also exhibit an anti-male bias.  Pl. Ex. 17, NYU_00002321-NYU_00002415.  Such evidence is sufficient to survive summary judgment on Title IX erroneous outcome and selective enforcement claims.  *Colgate*, 457 F. Supp. 3d at 170-174; *Quinnipiac*, 404 F. Supp. 3d. at 657-663.[10]

Regardless, NYU has failed to offer any non-discriminatory reason for its treatment of Plaintiff, thus requiring the denial of the instant Motion.  *Quinnipiac*, 404 F. Supp. 3d at 663.  NYU's identification of the alleged non-discriminatory reasons for its treatment of Plaintiff is simple – Plaintiff's defenses to Jane's claims lacked merit (as did his claims against Jane), while Jane's claims against him had merit.  NYU Memo. at 14-20.  This is insufficient for the purposes of overcoming the *McDonnell Douglas* burden-shifting paradigm once a plaintiff has met the "minimal burden" of establishing gender as a motivating factor for a university's disciplinary decision.  *See Quinnipiac*, 404 F. Supp. 3d at 662, 663 (rejecting university argument that "the reason Plaintiff was treated differently than Jane was simply that his complaints and defense lacked

---

[10] Any argument by NYU that Plaintiff cannot rely on evidence used to support his *prima facie* burden of proving gender discrimination to rebut NYU's claimed non-discriminatory explanation for its actions has already been rejected by the Supreme Court.  *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000)  (noting that "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual) (quotations and citation omitted).

merit, while her complaints and defense had merit" and noting such argument "fails to address the apparent procedural disparities claimed and substantiated by Plaintiff as part of his erroneous outcome and selective enforcement claims."). Summary judgment should be denied. *Id*. at 663.

## II.   There Are Genuine Issues Of Material Fact With Regard To Plaintiff's Promissory Estoppel Claim

"Under New York law, a claim of promissory estoppel requires plaintiff to demonstrate a clear and unambiguous promise, reasonable and foreseeable reliance upon that promise, and injuries sustained as a result of that reliance." *I.R.V. Merch. Corp. v. Jay Ward Prods., Inc.*, 856 F. Supp. 168, 175 (S.D.N.Y. 1994). The issue of whether statements underlying a claim for promissory estoppel "constitute a clear and unambiguous promise is for a jury to decide, not this Court." *Roberts v. Karimi*, 204 F. Supp. 2d 523, 527 (E.D.N.Y. 2002); *see also Gallo*, 22 F.3d at 1224 (noting that "the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."). Whether reliance on that promise was reasonable is also an issue of fact that must be decided by a jury. *Roberts*, 204 F. Supp. 2d at 528. Similarly, the determination as to whether the alleged damages were sustained as a result of a plaintiff's reliance on a defendant's promise is a jury question. *Packer v. Skid Roe, Inc.*, 938 F. Supp. 193, 196 (S.D.N.Y. 1996); *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 515 (S.D.N.Y. 2011).

## A.   There Was A Clear And Unambiguous Promise

Plaintiff testified that on June 25, 2018, McFarlane explicitly told him that under no circumstances would he be expelled and, at worst, the sanction would be a one-semester suspension. Pl. Ex. 3 at 111:14-25-112:2. Plaintiff further stated that McFarlane repeated this promise after the ISR was issued. Pl. Ex. 3 at 136:6-23. Plaintiff's mother confirmed that McFarlane repeated the promise to her. Pl. Ex. 11 at 253:18-256:13. Stahl provided circumstantial evidence of the promise. Pl. Ex. 12 at 43:6-45:21. Because a reasonable jury could find that McFarlane's statements constituted a clear and unambiguous promise, summary judgment is

inappropriate.  *Roberts*, 204 F. Supp. 2d at 527; *Gallo*, 22 F.3d at 1224.

NYU relies on a case from the Fourth Department to assert the fantastic claim that NYU's denial of McFarlane's alleged promise in its Answer to Plaintiff's Amended Complaint is, in and of itself, sufficient to award summary judgment.  NYU Memo. at 20.  Review of the appellate papers in *Binkowski v. Hartford Acc. & Indem. Co.*, 60 A.D.3d 1473 (4th Dept 2009), *abrogated by Am. Tower Asset Sub, LLC v. Buffalo-Lake Erie Wireless Sys. Co., LLC*, 104 A.D.3d 1212 (4th Dept 2013), shows that NYU offers a selective quotation from that case in a superficial and misleading fashion.  In support of its motion to dismiss, the defendant insurance company offered multiple documents that showed that its representative did not make an oral promise to resume the payment of benefits sooner than mandated by the Workers' Compensation Board.  *Binkowski v. Hartford Acc. & Indem. Co*, Brief For Defendant-Respondent Hartford Accident and Indemnity Company, 2008 WL 8948595 at *2, *5 (4th Dept Nov. 5, 2008) (identifying documentary evidence that contradicted the plaintiff's assertion that an oral promise had been made).  Further, NYU's contention cannot withstand a logical or legal analysis, especially at the summary judgment stage in federal court.  If it were true that the moving party's mere denial of an alleged promise could defeat a promissory estoppel claim on summary judgment, then the moving party would be awarded summary judgment by creating an issue of disputed fact, which is the opposite of the standard for awarding summary judgment.  *Anderson*, 477 U.S. at 256.  Accordingly, NYU's mere denial of McFarlane's alleged statements cannot support a grant of summary judgment.

NYU's reference to certain testimony that Plaintiff offered at his deposition regarding McFarlane's role in the adjudication and sanctioning process (NYU Memo. at 20-21, 21, n.10) impermissibly invites the Court to invade the province of the jury by making a credibility determination as to Plaintiff's state of mind, choose between competing testimony, and weigh evidence obtained from multiple witnesses' deposition testimony (Fed. R. Civ. P. 56(e) Advisory Committee Note (1963); *Fischl*, 128 F.3d at 55).[11]   Plaintiff noted multiple instances where

---

[11] In particular, the testimony highlighted in Footnote 10 of the NYU Memo. improperly asks the Court to assign evidentiary weight to and make a credibility determination regarding a semantic analysis of Plaintiff's responses to

McFarlane made an explicit promise.  Pl. Ex. 3 at 111:14-112:2; 136:6-23.  Plaintiff's mother confirmed that McFarlane's promise that even if Plaintiff he was found responsible, he would not be expelled.  Pl. Ex. 11 at 253:18-256:13.  Likewise, Stahl testified that she was surprised that Plaintiff was expelled and provided circumstantial evidence supporting Plaintiff's position.  Pl. Ex. 12 at 43:6-45:21.  When examined against relevant deposition testimony from Plaintiff, his mother, and Stahl, McFarlane's deposition testimony that he did not make any promise to Plaintiff undoubtedly creates an issue of fact for the jury to decide.  *Roberts*, 204 F. Supp. 2d at 527; *Gallo*, 22 F.3d at 1224.  The cases relied upon by NYU to support its position are inapposite.  *See Chem. Bank v. City of Jamestown*, 122 A.D.2d 530, 530-32 (4th Dept 1986) (promissory estoppel inapplicable where correspondence relied upon by plaintiff to support its claim contained conditions precedent that were the sole responsibility of a third party that remained unmet at the time the defendant made statements regarding the third party's supposed substantial compliance); *Nelson v. Town of Johnsbury Selectboard*, 115 A.3d 423, 439 (Vt. 2015) (finding no promise existed where statements at issue were made by attorney who did not speak on behalf of defendant and never made any assurances as to how the defendant would interpret the statute at issue); *Star Funding, Inc. v. Tire Centers, LLC*, 717 F. App'x 38, 42-43 (2d Cir. 2017) (no viable promissory estoppel claim where plaintiff admitted lack of evidence indicating that defendant's employee had any authority to enter into a multi-million dollar purchase order agreement but still continued with the order despite suspicions that, as a sophisticated business entity, it could have easily resolved).

Here, McFarlane's promise to Plaintiff was unequivocable.  He promised Plaintiff that "under no circumstance, would [Plaintiff] be expelled and the worst-case scenario is a one-semester suspension."  Pl. Ex. 3 at 126:9-12.  This is no mere prediction; it is a promise sated with certainty and confidence based on experience.  When he made this statement, McFarlane, a decades-long employee of NYU, was acting in his capacity as an NYU employee with six years of experience advising male Title IX respondents.  Pl. Ex. 18 at 12:17-19; 20:12-17; 26:12-16;

---

deposition questions that NYU believes differ from Plaintiff's testimony regarding McFarlane's specific promise that he would not be expelled and would be facing, at most, a one-semester suspension.  *Fischl*, 128 F.3d at 55.

28:19-29:11; Pl. Ex. 3 126:9-12; 136:6-23.  Plaintiff was a 20-year-old college student with no Title IX experience relying on what an advisor assigned by NYU told him.  Pl. Ex. 3 at 332:25-333:10.  Plaintiff has identified an enforceable promise, precluding summary judgment.

**B.     Plaintiff Reasonably Relied On The Promise**

McFarlane testified that he has worked at NYU for thirty eight years and had been advising students in Title IX matters for six years prior to being assigned as Plaintiff's advisor.  Pl Ex. 18 at 12:17-19; 20:12-17.  This confirms that Plaintiff's reliance on McFarlane's promise was eminently reasonable, as previously noted by this Court.  ECF 40 at Page 45.  Plaintiff explicitly testified, "I trusted Allen McFarlane and what he said to me regarding the fact that there would be under no circumstance any expulsion, I trusted his expertise, his position, and his previous experience."  Pl. Ex. 3 at 221:16-22.  By identifying evidence that it believes contradicts this testimony, NYU is asking this Court to make multiple credibility assessments, choose between competing versions of events, and weigh the evidence in the record.  NYU Memo. at 21-23.  Doing so at the summary judgment stage is improper, as these are matters to be decided by a jury. *Fischl*, 128 F.3d at 55; *Roberts*, 204 F. Supp. 2d at 528.  Contrary to NYU's assertions, the language in the Policy indicating a wide range of punishments for alleged misconduct, statements made by other NYU employees regarding the range of punishments, and Plaintiff's acknowledgment of the range of punishments noted by the Policy (NYU Memo. at 21-22) have no impact on whether McFarlane's statements to Plaintiff constituted a promise.  NYU's faulty logic on this issue has previously been addressed by this Court.  ECF 40 at Page 44. NYU falsely asserts that McFarlane's statements were made based solely upon Plaintiff's description of the facts.  NYU Memo. at 22. This claim ignores Plaintiff's deposition testimony that McFarlane repeated his promise after the ISR was issued and he had reviewed it.  Pl. Ex. 3 at 136:6-23.

NYU misrepresents Plaintiff's testimony regarding his decision to hire an attorney.  NYU Memo. at 22-23.  While Plaintiff did say that he "probably" would have hired an attorney if McFarlane had said he would have been expelled, he immediately clarified this testimony by stating, "If [McFarlane] had said that you can be expelled, I would have -- my next steps would

22

have been to look for an attorney." Pl. Ex. 3 at 232:7-20. Plaintiff also testified, "My decision to not hire an attorney was because I met with Allen McFarlane and he promised to me in his own words that, under no circumstance, would you be expelled and the worst-case scenario is a one-semester suspension." *Id*. at 126:7-12. It is clear that Plaintiff's decision not to hire an attorney was unequivocally referrable to McFarlane's promise; it was also abnormal and extraordinary given the sanction he was actually facing. The cases relied upon by NYU do not support summary judgment. *See Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 444 (S.D.N.Y. 2006) (denying motion to dismiss on promissory estoppel claim and noting actions are not unequivocally referable to a promise when linked to normal business operations.); *Woolley v. Stewart*, 222 N.Y. 347, 350-51 (1918) (equity case from 1918 not involving promissory estoppel); *MacKay v. Paesano*, 58 Misc.3d 1222(A) at *4-5 (Sup. Ct. Suffolk Cnty. 2018), *aff'd*, 185 A.D.3d 915 (2d Dept 2020) (analyzing "unequivocally referrable" issue in breach of contract, unjust enrichment, and *quantum meriut* claims, not in promissory estoppel context). NYU's arguments regarding Plaintiff's desire to attend medical school fail to provide the full scope of his testimony. NYU Memo. at 23. Plaintiff's testified that he did not believe a one-semester suspension would seriously impact his chances of getting into medical school; rather, he testified that "with a suspension, provided good standing, [a transcript notation] could be removed" allowing him to pursue medical school. Def. Ex. 10 at 168:18-169:9. This directly contests NYU's claim that Plaintiff's decision to prepare a defense proportionate to the sanctions he believe he was facing was unreasonable.[12] Plaintiff has provided evidence that creates a genuine issue of material fact as to whether his reliance on McFarlane's promise was reasonable.[13] Accordingly, summary judgment should be denied. *Roberts*, 204 F. Supp. 2d at 528;  *Gallo*, 22 F.3d at 1224.

---

[12] NYU also misrepresents Plaintiff's testimony. NYU Memo. at 23. Just prior to noting he was preparing to defend himself to the best of his abilities, he explained, "I was not worried about an expulsion because of Allen McFarlane's promise, nor was I worried about anything beyond the one-semester suspension." Def. Ex. 10 at 215:3-15.

[13] Because NYU does not argue that Plaintiff's reliance on McFarlane's promise was not foreseeable (NYU Memo. at 21-23), NYU is barred from raising this argument in its reply. *PrecisionIR Inc. v. Clepper*, 693 F. Supp. 2d 286, 291 n.2 (S.D.N.Y. 2010); *Playboy Enterprises, Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997).

**C.      Plaintiff Sustained Injury As A Result Of His Reliance On The Promise**

Plaintiff testified that the promise at issue was the reason why he prepared an inadequate defense and why he did not hire an attorney.  Pl. Ex. 3 at 122:3-11; 126:7-12; 232:7-20; Def. Ex. 10 at 215:3-15.  A reasonable jury could conclude that, had Plaintiff been advised by an attorney throughout the Title IX process, he would have been able to offer a much stronger defense against the allegations he was facing that would have helped him avoid expulsion and the financial losses associated with that sanction.  A reasonable jury could also conclude that, because he believed he was facing, at worst, a one-semester suspension, Plaintiff prepared a defense that was disproportionate to the actual maximum sanction he faced.  Summary judgment should be denied. *Packer*, 938 F. Supp. at 196;  *Refco*, 826 F. Supp. 2d at 515; *Gallo*, 22 F.3d at 1224.

The cases cited by NYU are distinguishable.  *See Silver v. Mohasco Corp.*, 94 A.D.2d 820, 822 (3d Dept 1983), *aff'd*, 62 N.Y.2d 741 (1984)(plaintiff failed to plead **any** injury caused by the defendant's failure to keep its promise); *Long v. Marubeni Am. Corp.*, No. 05 CIV. 0639 (GEL), 2006 WL 1716878 at *2 (S.D.N.Y. June 20, 2006) (holding that plaintiffs' allegation that **defendant** engaged in illegal conduct barred assertion that damages flowed from reliance on alleged promise of lifetime employment).[14]  NYU also falsely asserts[15] that Plaintiff stated at his deposition that his appeal contained "what Plaintiff would have submitted during the Investigation, but for" McFarlane's promise.[16] NYU Memo. at 23. Plaintiff actually said, "My appeal provided evidence that exonerated me and provided evidence of Jane's misdoing, wrongdoing in violation of NYU policy and yes, in further context of the relationship and the nature of these claims."  Def. Ex. 10 at 39:13-18.  By the time Plaintiff reached the appeal stage, irreparable harm had already been done.  The evidence included in Plaintiff's appeal was not previously provided to NYU

---

[14] NYU incorrectly asserts that *Long* requires dismissal of Plaintiff's promissory estoppel claim based on NYU's characterization of Plaintiff's conduct.  NYU Memo. at 23.  Such a result is not required by *Long*.  Regardless, Plaintiff has identified evidence that would permit a reasonable jury to find that his NYU's findings of responsibility against him were incorrect.  Section I.A., supra.

[15] NYU also falsely stated that Plaintiff's mother is an attorney when, in fact, she went to law school but is not a practicing attorney.  Pl. Ex. 11 at 24:19-21, 237:11-14.

[16] The fact that an attorney assisted Plaintiff in drafting his appeal (NYU Memo. at 23) is irrelevant for the reasons stated in this paragraph.

because of McFarlane's promise, leading to an imbalance of evidence favoring Jane upon which Jolley's decision was based.  The appeal panel determined that the documents and information Plaintiff provided would not have affected the outcome of the hearing **because Jolley's decision was supported by overwhelming evidence**.  Def. Ex. 76 at NYU_00007876.  A reasonable jury could conclude that Plaintiff's decision to offer less evidence than was actually necessary at the investigation and hearing stages without help from a lawyer in reliance on McFarlane's promise[17] caused the damages he suffered as a result of his expulsion, thus precluding summary judgment.  *Packer*, 938 F. Supp. at 196; *Refco*, 826 F. Supp. 2d at 515; *Gallo*, 22 F.3d at 1224.

## III.   There Are Genuine Issues Of Material Fact With Regard To Plaintiff's New York City Human Rights Law (NYCRHL) Claim

"To prevail on liability [when asserting a NYCHRL claim], the plaintiff need only show differential treatment – that [he] is treated 'less well' – because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).  Federal courts are required to "analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  *Id.* at 109 (internal quotations and citations omitted).  Accordingly, "even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." *Id.*  Plaintiff has identified evidence that he was treated less well than Jane as a result of NYU's discriminatory conduct.  Section I.B., Section I.C., *supra*.  Accordingly, there is no basis for entering summary judgment on Plaintiff's NYCHRL claim.[18]

## CONCLUSION

For the reasons stated above, Plaintiff respectfully asserts that this Court should deny NYU's Motion for Summary Judgment in its entirety.

---

[17] Plaintiff is not making any claim based on a breach of contract theory.  NYU Memo. at 24.

[18] Considering the late stage of this litigation, the Court should retain jurisdiction over Plaintiff's promissory estoppel and NYCHRL claims in the interests of judicial economy, convenience, and fairness should they be the sole surviving claims.  *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1191-1192 (2d Cir. 1996).

Dated: New York, New York
July 27, 2022

**WARSHAW BURSTEIN, LLP**
*Attorneys for Plaintiff*

By: _/s/ Kimberly C. Lau_

Kimberly C. Lau
James E. Figliozzi
575 Lexington Avenue
New York, New York 10022
(212) 984-7700
klau@wbny.com
jfigliozzi@wbny.com

26