UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

JOHN DOE,                                                     Case No.: 1:20-cv-01343 (GHW)

                Plaintiff,

vs.

NEW YORK UNIVERSITY,

                Defendant.

------------------------------------------------------------ X

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Jeffrey P. Metzler
Max A. Winograd
Melissa S. Pettit
jeffrey.metzler@pillsburylaw.com
max.winograd@pillsburylaw.com
melissa.pettit@pillsburylaw.com
31 W. 52nd St.
New York, NY 10019
(212) 858-1000

*Counsel for Defendant New York University*

Dated: New York, NY
         August 11, 2022

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1
ARGUMENT .................................................................................................................................. 3
Point I— Plaintiff Fails to Raise a Genuine Dispute of Material Fact Regarding Gender Bias ..................................................................................................................................... 3
    A.    NYU Did Not "*Sua Sponte* Increase the Number of Charges Against Plaintiff" ......... 3
    B.    The Spreadsheet Plaintiff Relies on Is Not Evidence of Gender Bias ......................... 4
    C.    Plaintiff's Non-Statistical Evidence Does Not Raise Genuine Dispute of Gender Bias ................................................................................................................................ 6
    D.    Plaintiff Cannot Demonstrate that NYU's Non-Discriminatory Explanations Are Pretextual ................................................................................................................ 7
Point II— Plaintiff Fails to Raise a Genuine Dispute of Material Fact With Respect to His Erroneous Outcome Claim ................................................................................................ 8
Point III— Plaintiff Fails to Raise a Genuine Dispute of Material Fact with Respect to His Selective Enforcement Claim .......................................................................................... 10
Point IV— Plaintiff Fails to Raise a Genuine Dispute of Material Fact with Respect to Plaintiff's State Law Claims ............................................................................................ 12
CONCLUSION ............................................................................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Aldrich v. Randolph Cent. Sch. Dist.*,
  963 F.2d 520 (2d Cir. 1992)......................................................................................4, 5

*Bickerstaff v. Vassar Coll.*,
  196 F.3d 435 (2d. Cir. 1999), *as amended on denial of reh'g*...................................6

*In re Crude Oil Commodity Litig.*,
  No. 06 Civ. 6677(NRB), 2007 WL 2589482 (S.D.N.Y. Sept. 7, 2007) ....................9

*Doe v. Brown Univ.*,
  No. 20-2023, 2022 WL 3095288 (1st Cir. Aug. 4, 2022).........................................11

*Doe v. Colgate Univ.*,
  760 Fed.Appx 22 (2d. Cir. 2019)..........................................................................6, 10

*Doe v. Cummins*,
  662 Fed.Appx. 437 (6th Cir. 2016)..............................................................................6

*Doe v. Quinnipiac*,
  404 F. Supp. 3d 643 (D. Conn. 2019).........................................................................8

*Doe v. Univ. of Denver*,
  952 F.3d 1182 (10th Cir. 2020) ..................................................................................5

*Gilman v. McCarthy*,
  2015 WL 2152799 (S.D.N.Y. May 7, 2015) .............................................................7

*Haidak v. Univ. of Mass.-Amherst*,
  933 F.3d 56 (1st Cir. 2019)...........................................................................5, 6, 11

*Rossley v. Drake Univ.*,
  979 F.3d 1184 (8th Cir. 2020) ....................................................................................6

*Russell v. N.Y. Univ.*
  No. 1:15-cv-2185-GHW, 2017 WL 3049534 (S.D.N.Y. July 17, 2017), *aff'd*, 739 F. App'x
  28 (2d Cir. 2018).......................................................................................1, 7, 8, 10

*Scott v. City of New York Dep't of Corrs.*,
  641 F. Supp. 2d 211 (S.D.N.Y. 2009), *aff'd*, 445 Fed.Appx. 389 (2d Cir. 2011) .....9

*Union Carbide Corp. v. Montell N.V.*,
  179 F.R.D. 425 (S.D.N.Y. 1998), *as amended* (May 18, 1998) ...............................1

*Villetti v. Guidepoint Glob. LLC*,
 No. 21-2059-cv, 2022 WL 2525662 (2d Cir. July 7, 2022)......................................................12

*Yu v. Vassar Coll.*,
 97 F.Supp.3d. 448 (S.D.N.Y. 2015)...........................................................................................6

*Yusuf v. Vassar Coll.*,
 35 F.3d 709 (2d Cir. 1994).........................................................................................................6

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure
 Rule 8 ........................................................................................................................................1
 Rule 56(c)(2) ...........................................................................................................................11


Federal Rules of Evidence
 Rule 201 ....................................................................................................................................7

## PRELIMINARY STATEMENT

As he did during NYU's investigation and hearing, Plaintiff admits in his Rule 56.1 Counter-Statement (Dkt. 96) ("SOF Res." or "56.1 Response") to virtually all of the underlying facts and evidence on which NYU based its decision to expel him, including his own statements during the Investigation and Hearing, hundreds of messages, video recordings, and audio recordings. (*See generally, e.g.*, SOF Res. ¶¶ 63-124).[1]

This undisputed evidence shows that for months after Jane tried to break up with him, Plaintiff refused to leave Jane alone, even after NYU issued a No Contact Directive ("NCO"):

- "I will call you / Until you talk to me…Press charges against me / I don't give a fuck." (SOF ¶ 77).

- "I'm not leaving you alone unless you promise to talk to me." (SOF ¶ 83).

- "So again I'm telling you, if this is how it's going to go down, and you're not going to talk to me, then be warned I'm not going to be an easy person to deal with." (SOF ¶ 85).

- "There's a lot more you have to hear from me…Won't go ballistic. Or maybe I already am." (SOF ¶ 88).

- "I'm giving you one last opportunity so please [contact me]. Yeah, you really need to respond. You really need to respond." (SOF ¶ 94).

---

[1] Plaintiff states in a footnote that NYU's Rule 56.1 Statement is a "clear derogation of Local Rule 56.1 [because it] spans 51 pages, contains 271 paragraphs, and references 83 exhibits." (Opp at. n.1 (internal quotations omitted)). This assertion is fatally undermined by the fact that NYU's motion is in response to Plaintiff's *551-paragraph* Amended Complaint (which Plaintiff presumably believes is a "short and plain statement" as required by Fed. R. Civ. P. 8). (*See* ECF No. 27). The only case Plaintiff cites, *Union Carbide Corp. v. Montell N.V.*, 179 F.R.D. 425, 426 (S.D.N.Y. 1998), *as amended* (May 18, 1998), is inapposite as it addressed a *supplemental* Statement of Material Facts in which plaintiff filed an *additional* 86 pages and 459 supporting exhibits, bringing the total number of exhibits before the court on summary judgment to *over 1,000*. Indeed, this Court regularly considers Rule 56.1 Statements that are as long or longer than NYU's statement in this case. *See, e.g., Russell v. N.Y. Univ.* No. 1:15-cv-2185-GHW, 2017 WL 3049534 (S.D.N.Y. July 17, 2017), *aff'd*, 739 F. App'x 28 (2d Cir. 2018) (granting summary judgment for NYU in case where the Rule 56.1 Statement contained was 57 pages, 358 paragraphs, and referenced 161 exhibits).

- "[I]f you thought what I did earlier on would cause problems / You're in for a real hell of a ride / I'll give you till 1 [AM] / After that / It'll go bad." (SOF ¶ 97).

Plaintiff's 56.1 Response admits (as it must) to all of these facts and many more that were the basis for Plaintiff's expulsion[2] – not Plaintiff's gender. In fact, Plaintiff's Opposition to NYU's Motion for Summary Judgment ("Opp.") fails to cite any evidence that NYU's investigation or the outcome of Plaintiff's disciplinary proceeding were motivated by gender bias, and his conclusory assertions are insufficient to defeat summary judgment. Additionally, Plaintiff's attempt to rationalize his admitted misconduct on the grounds he was "confused and angry" (*see, e.g.*, SOF ¶¶ 105-08, 110, 112), among other self-serving justifications, does not create articulable doubt as to the accuracy of NYU's finding that Plaintiff violated the Policy. Indeed, the evidence produced in discovery only confirmed the correctness of NYU's decision. (*See, e.g.*, SOF ¶¶ 59, 93, 111-12, 134).

Moreover, Plaintiff fails to identify any female student who was similarly situated to him but treated differently. To whatever limited extent Jane is an appropriate comparator, Plaintiff offers no evidence that NYU's explanation for its differential treatment – namely that Jane filed a complaint against Plaintiff, but he did not file a complaint against her until months after his expulsion – is a pretext for gender discrimination. Finally, Plaintiff cannot demonstrate that he *reasonably* relied on the alleged statement by McFarlane, who Plaintiff knew had no authority to make an enforceable promise about the outcome of his disciplinary proceeding, particularly given statements in NYU's Policy and from NYU's Title IX Office and Office of Student Conduct that Plaintiff could be expelled, and Plaintiff's knowledge that even a one-semester suspension would

---

[2] Plaintiff also does not dispute the authenticity of an "unsettling and disturbing" video, created by Plaintiff, that clearly depicts "[Jane's] state of distress" in response to "[Plaintiff's] words and actions." (Def. Ex. 2, NYU_00001803, -01807 (NYU's Hearing Decision); Def. Ex. 25, NYU_00004012 (the video)).

2

"kinda ruin[ his] career." (SOF ¶ 178).

# ARGUMENT

**Point I—Plaintiff Fails to Raise a Genuine Dispute of Material Fact Regarding Gender Bias**

### A. NYU Did Not "*Sua Sponte* Increase the Number of Charges Against Plaintiff"

Plaintiff's argument that NYU had "*sua sponte* increase[d] the number of charges against Plaintiff while failing to pursue any action against Jane" (Opp. at 12) conflates the first element of a selective enforcement claim – that a similarly situated female student was treated differently – with the second element – that the differential treatment was motivated by gender bias. Even if NYU had treated similar allegations by Plaintiff and Jane differently (which it did not), Plaintiff fails to present any evidence that the alleged "*sua sponte* increase" was motivated by Plaintiff's gender rather than NYU's investigatory process.

In addition, Plaintiff's argument that he and Jane were similarly situated fails because it is premised on mischaracterizations of the record. First, NYU did not send Plaintiff a "charge email" on May 22, 2018. (*Id*. at 9).[3] Rather, NYU's May 22 email was a synopsis of Jane's allegations against Plaintiff as NYU understood them at that early stage of the investigation. (SOF ¶ 145). NYU subsequently interviewed Plaintiff and other witnesses and received hundreds of pages of documents. (SOF ¶¶ 157, 165, 170, 174). Pursuant to the Procedures, NYU then prepared a Draft Report providing a complete account of the investigation and sent it to Plaintiff and Jane for review and comment in advance of the Hearing. In short, NYU did not "*sua sponte* increase the number of charges against Plaintiff" between May and October; it simply completed its investigation and

---

[3] Plaintiff appears to be importing concepts from criminal law that are not applicable under NYU's Policy.

3

provided the parties with a final account of what would be adjudicated during the Hearing.[4]

Plaintiff also falsely claims that Jane sent an email "explicitly telling the investigators that she only wanted the investigation to focus on events that occurred in the spring of 2018." (SOF ¶ 285). But the email cited by Plaintiff was sent to Jane's advisor Christine Janick, a social worker at NYU, not to NYU's investigators or Title IX office. (SOF ¶ 144; Def. Ex. 2, NYU_00001803 at -1803). In fact, Jane discussed at length incidents that occurred prior to Spring 2018 with NYU's investigators, submitted extensive documentary evidence months after emailing Janick (SOF ¶ 165), confirmed to investigators that she "wanted to proceed [with] all allegations," (SOF ¶ 167), and even requested that NYU *add* a charge relating to earlier conduct. (SOF Res. ¶ 284).[5]

In sum, it is hardly surprising – let alone indicative of gender bias – that an email sent at the early stages of an investigation would be less comprehensive in its description of the allegations against Plaintiff than the Draft Report sent months later, after NYU's investigation was complete.

### B. The Spreadsheet Plaintiff Relies on Is Not Evidence of Gender Bias

Plaintiff next argues the "information contained within the spreadsheets created by NYU is sufficient to show discrimination." (Opp. at 13). However, Plaintiff does not meaningfully distinguish the cases cited by NYU which demonstrate the opposite, and he fails to cite any cases of his own in which a Title VII or Title IX claim was upheld based on a compilation of raw data like the NYU spreadsheets Plaintiff relies on. Indeed, the one case Plaintiff does cite, *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 527-28 (2d Cir. 1992), affirmed the *dismissal* of a Title

---

[4] Plaintiff mischaracterizes Signor's testimony to assert that NYU "only generates additional charges" due to information obtained during NYU's interview process. (Opp. at 9). First, Signor did not use the word "only." (SOF Res. ¶ 282). Moreover, Jane's submission of documents and call with investigators in July (*see* SOF ¶¶ 165, 167) constitute "[a]dditional information during the interview process."

[5] Additionally, the email itself is not an explicit direction to limit the scope of the investigation, which Jane understood might not be possible. (*See* Pl. Ex. 1). Where Jane was clear – that she did not want NYU to investigate her 2016 sexual assault – NYU honored her request in accordance with NYU's Procedures. (SOF ¶¶ 9-10, 127).

VII claim because plaintiff *failed* "to provide[] any statistical data that could be used to determine whether the examination was discriminatory." Plaintiff's citation of *Aldrich* for the inverse proposition is a basic error in logic.

In addition, Plaintiff's attempt to contrive disparate treatment based on the raw data in the spreadsheet fails to account for the "array of alternative nondiscriminatory possibilities, potentially reflecting, for example, that male students on average committed more serious assaults, that sexual-assault victims are likelier to be women, or that female victims are likelier than male victims to report sexual assaults." *Univ. of Denver*, 952 F.3d 1182, 1193-94 (10th Cir. 2020) (cleaned up). Plaintiff is a good example: no other student has been found responsible for multiple violations of an NCO, in addition to three or more violations of the Policy. (*See* SOF Res. ¶ 275).[6] Additionally, "sexual assault" under the Policy could encompass conduct ranging from an unwanted touch of the breast over a person's clothes to forcible rape, which would clearly warrant different sanctions, notwithstanding a finding of responsibility for the same Policy violation.[7] Plaintiff cites no evidence to account for these nondiscriminatory differences.

Thus, even if Plaintiff's observations from the spreadsheet did constitute competent statistical evidence (which they do not, *see* NYU's Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Dkt. 87) ("MOL") at 13-14), courts have consistently held that "[w]hen the statistical evidence does nothing to eliminate these obvious, alternative explanations for the disparity, an inference that the disparity arises from gender bias on the part of the school is not reasonable." *Univ. of Denver*, 952 F.3d at 1194 (citing *inter alia Haidak v. Univ.*

---

[6] It is worth noting that NYU found a *higher* percentage of female respondents (80%) responsible for violations than male respondents (58%). (SOF Res. ¶ 275).

[7] There are multiple factors listed in the Procedures relevant to a determination of sanctions. (*See* SOF ¶ 26). Plaintiff does not and cannot cite any information whatsoever regarding the application, or lack thereof, of those factors in the cases that he cites from the spreadsheet.

5

*of Mass.-Amherst*, 933 F.3d 56, 75 (1st Cir. 2019)); *Doe v. Cummins*, 662 Fed.Appx. 437, 453-54 (6th Cir. 2016); *accord Rossley v. Drake Univ.*, 979 F.3d 1184, 1195 (8th Cir. 2020); *see Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d. Cir. 1999), *as amended on denial of reh'g* (holding that statistical evidence purporting to show discrimination is not probative of intent where no effort is made to account for other possible causes of disparity); *Yu v. Vassar Coll.*, 97 F.Supp.3d. 448, 475 (S.D.N.Y. 2015) (finding no gender bias where Plaintiff "failed to provide any statistical evidence that 'males invariably lose' when charged with sexual misconduct" (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 716 (2d Cir. 1994)).

In *Haidak*, 933 F.3d at 74-75, for example, the court rejected *expert* analysis of a similar data set that "included the sex of the complaining and charged students, the charges, whether there was a finding of responsibility, and what sanction followed" and found that data set insufficient to raise a material dispute. Here, Plaintiff failed even to submit an expert opinion.

### C. Plaintiff's Non-Statistical Evidence Does Not Raise Genuine Dispute of Gender Bias

Plaintiff's other attempts to show gender bias also fail. *See Doe v. Colgate Univ.*, 760 Fed.Appx 22, 33-34 (2d. Cir. 2019) (affirming summary judgment for university in case and rejecting argument that allegations of a similar nature demonstrated gender bias) (summary order). NYU did not "simply conclude[] that Plaintiff must have been following" Jane on May 2 (Opp. at 16); it considered both accounts of the incident during the investigation (Def. Ex. 1, NYU_00009755, -09990, -10007) and the Hearing (Def. Ex. 13, Hearing Tr. 115:6-119:5, 247:18-251:22), and concluded it was more likely that Plaintiff was following Jane based on his prior conduct, which included Plaintiff's undisputed prior violations of the NCO. (SOF ¶ 238). That conclusion is further bolstered by Plaintiff's admission he did follow Jane that day. (SOF ¶ 134).

Plaintiff also cites the three gender bias allegations from his Amended Complaint, despite

6

admitting at the pre-motion conference that he failed in discovery to seek or produce any supporting evidence. (MOL at 12-13). Plaintiff's reliance on allegations from another complaint do not even approach the standard necessary for judicial notice, let alone to defeat summary judgment. *Gilman v. McCarthy*, 2015 WL 2152799, at *4 (S.D.N.Y. May 7, 2015) (denying request for judicial notice where the research paper requested to be noticed was not provided, nor was the title, date of publication, or any other information from which the paper could be identified); *see also* Fed. R. Evid. 201 (facts may be judicially noticed if they are "generally known within the trial court's territorial jurisdiction" or if they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). And even if the Court could take judicial notice that a Salon.com article was written about an NYU professor, that fact alone is not evidence of Plaintiff's claim that NYU faced public pressure, let alone "bowed to public pressure" in any way. (Opp. at 17). *See Russell*, 2017 WL 3049534, at *27 ("The mere existence of a scintilla of evidence…will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant.") (citation omitted)).[8]

Finally, Plaintiff claims that "NYU's Title IX training material[s] also exhibit an anti-male bias," citing a single slide from a presentation. (Opp. at 18). However, the presentation is from an industry conference on best practices for working with respondents, and the presenter testified that the slide cited by Plaintiff provides examples of stereotypes about respondents that she had heard in the media or elsewhere, *not* at NYU. (SOF Res. ¶¶ 341-43).

### D. Plaintiff Cannot Demonstrate that NYU's Non-Discriminatory Explanations Are Pretextual

Even if, *arguendo*, Plaintiff could establish a *prima facie* claim of gender bias, Plaintiff

---

[8] Plaintiff's reference to OCR complaints is even more baffling as this Court already held this allegation insufficient to demonstrate gender bias because Plaintiff failed to identify the gender of the students involved in those complaints (ECF No. 40 at 1, 15), a deficiency Plaintiff has done nothing to correct.

7

fails to "point to evidence from which a reasonable jury could conclude that [defendant's] stated reasons are merely a pretext." *Russell*, 2017 WL 3049534, at *31. Indeed, Plaintiff does not even attempt to demonstrate that NYU's non-discriminatory reasons are pretextual, falsely claiming that "NYU has failed to offer any non-discriminatory reason for its treatment of Plaintiff." (Opp. at 18.). But unlike the university in *Doe v. Quinnipiac*, 404 F. Supp. 3d 643, 663 (D. Conn. 2019), NYU does not claim that the reason it did not investigate Plaintiff's complaint was that it lacked merit. Rather, NYU did not investigate Plaintiff's allegations against Jane because he declined to file a complaint, whereas Jane *did* file a complaint.[9] (*See infra* 10-11).

**Point II—Plaintiff Fails to Raise a Genuine Dispute of Material Fact with Respect to His Erroneous Outcome Claim**

NYU had a mountain of undisputed evidence that Plaintiff violated the Policy. (MOL at 14-15). Plaintiff largely admits the underlying facts (*see generally* SOF Res.) but raises selective objections that collectively do not raise a genuine dispute as to the accuracy of NYU's decision.

First, Plaintiff argues that some of the messages he sent to Jane were not "sexual" in nature, so he did not commit "sexual harassment." (Opp. at 6). First, NYU is entitled to deference in interpreting its own Policy and the Adjudicator reasonably concluded that the messages were sent in the context of Plaintiff's attempt to maintain an intimate relationship and were therefore "sexual in nature."[10] But even if Plaintiff's harassment were not "Sexual Harassment" it clearly

---

[9] To be sure, *Quinnipiac* found there was a disputed issue of fact whether the university discriminated against plaintiff by requiring him to file a "formal complaint." However, the policy at issue in that case was very different from NYU's. *Compare Quinnipiac*, 404 F.Supp. 3d at 660 n.4 ("QU's Title IX policy provides that 'Title IX requires the University to investigate all incidents about which the University knows…The Title IX policy provides for both a formal 'complaint and grievance procedure' as well as allowing for…'informal complaints.'") *with* SOF ¶ 10 (When "possible…NYU will seek action consistent with the Complainant's request…not [to] conduct further Investigation."); *see also* SOF ¶ 8 (describing process for reporting a complaint). Here, both Jane and Plaintiff had the opportunity to file a complaint but Plaintiff did not do so until after he was expelled. (SOF ¶¶ 262-64).

[10] At least some of Plaintiff's conduct clearly was about the intimate relationship. (SOF Res. ¶ 334; *see also* SOF ¶ 76 (Plaintiff stating in the Hearing that Jane was "avoiding to meet with me, the person who you're directly involved in.")).

8

constituted "Stalking" (*see*, *e.g.*, SOF ¶¶ 64-113, 115-16, 120-124, 134 (examples of "conduct that would cause a reasonable person to fear bodily injury or experience substantial emotional distress")).[11] As the Adjudicator explained, Plaintiff's "unsettling and egregious pattern of stalking behaviors" alone merited expulsion (Def. Ex. 2, NYU_00001803, -1808), to say nothing of the NCO violations.[12]

Second, Plaintiff's Stalking argument focuses solely on the May 2 incident (Opp. at 7),[13] ignoring all of Plaintiff's prior conduct, which not only sustains NYU's finding on its own, but also properly informed the Adjudicator's assessment of what took place on May 2. (SOF ¶ 238).

Third, Plaintiff argues that the evidence demonstrating he committed Sexual Exploitation is from October 2017, not February 2018. (Opp. at 6-7). This alleged discrepancy is irrelevant. Plaintiff admitted during the Hearing that he took photos of Jane partially undressed without her consent and still had possession of them while he was a student at NYU, and he admitted to Jane that he used the photos for a sexual purpose. (SOF ¶¶ 59, 218). Whether Jane confused dates or discovered evidence of Plaintiff's sexual exploitation on more than one occasion is immaterial.

Finally, Plaintiff does not cite any evidence that the alleged "procedural flaws" (Opp. at 7-8) meaningfully impacted NYU's conclusion that he committed multiple, serious Policy violations. For example, while Plaintiff asserts that the evidence considered by NYU was "cherry-picked" (*id.*

---

[11] It is worth noting that the Hearing decision discusses the allegations of sexual harassment, stalking and violations of the NCO together, whereas sexual assault and sexual exploitation are each treated separately. (*See* Def. Ex. 2).

[12] To the extent Plaintiff's allegation that Signor and Maeder told him his NCO violations before April 30, 2018 "should" not be an issue (Opp. 7 n.2) is an attempt to excuse his NCO violations on some sort of promissory estoppel theory, this fails for three reasons. First, facts and theories raised for the first time in opposition papers should not be considered in resolving a summary judgment motion, *see, e.g.*, *Scott v. City of New York Dep't of Corrs.*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009), *aff'd*, 445 Fed.Appx. 389 (2d Cir. 2011). Second, "arguments which appear in footnotes are generally deemed to have been waived." *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677(NRB), 2007 WL 2589482, at *3 (S.D.N.Y. Sept. 7, 2007). Third – and unsurprisingly given Plaintiff's failure to raise the theory until now – there is no evidence that would raise a triable issue of fact as to all of the elements necessary to establish a promissory estoppel claim on this issue.

[13] Puzzlingly, Plaintiff attempts to rely on what photographs "show" without providing them to the Court (Opp. at 7) after insisting that NYU redact them in its motion papers.

9

at 8), he not only fails to include other messages for context but complains that messages submitted by NYU (and not "picked" by Jane) are "inapplicable" if they were not part of the investigation. (*E.g.*, SOF Res. ¶ 55).  Plaintiff's other complaints are similarly unsupported by anything other than the complaints themselves.  (*See* SOF ¶¶ 59, 237 (NYU has "jurisdiction" over photographs he admits to using at NYU); SOF ¶¶ 17, 184-88 (NYU decided not to interview Plaintiff's mother or officials at another university); SOF ¶¶ 19, 175 (Plaintiff was able to review all of the evidence upon receipt of the Draft Report); SOF ¶¶ 176-83, 204, SOF Res. ¶¶ 326-27 (after receipt of the Draft Report, Plaintiff received extensions to allow him the time necessary to submit all "pertinent" evidence); SOF ¶¶ 23, 212 (NYU ensured technical difficulties from remote proceeding did not have substantive impact)); *see also Colgate Univ.*, 760 Fed.Appx at 33 (university panel's framing decision to say that "it found the complainants more credible than" the respondent "rather than finding that the charges were proven by a preponderance of the evidence" does not demonstrate gender bias).  None of this violated NYU's policies.

These allegations do not constitute "triable issues of fact regarding the accuracy of the outcome [of] NYU's Title IX process against Plaintiff." (Opp. at 8); *see Russell*, 2017 WL3049534, at *35 ("Despite mentioning it in her deposition, Dr. Russell has provided no legal basis" for her assertions).

**Point III—Plaintiff Fails to Raise a Genuine Dispute of Material Fact with Respect to His Selective Enforcement Claim**

In addition to his baseless assertion that NYU *sua sponte* increased the number of charges against Plaintiff while failing to investigate Jane, *see supra* Point I, Plaintiff claims selective enforcement because NYU can conduct an investigation without "a formal complaint." (Opp. at 9).  While Plaintiff's premise is correct – NYU has never disputed that in limited circumstances the Policy allows for an investigation when a student declines to file a complaint (*see* SOF ¶¶ 8-

10

12)[14] – his conclusion is wrong.  That the Policy does not categorically prohibit NYU from investigating claims without a complaint does not make Jane similarly situated to Plaintiff.

It is undisputed that Jane filed a complaint and Plaintiff declined to file one until after his expulsion.  (*Compare* SOF ¶¶ 114, 136, 167 *with* SOF ¶¶ 131, 133, 262-265).  NYU's default under the Policy was therefore to investigate Jane's allegations and to not investigate Plaintiff's, absent the specific circumstances as outlined in the Procedures.  This makes them differently situated.  Similarly, even if Plaintiff's claim that NYU *sua sponte* increased the charges against him were true, there is a clear difference between adding allegations to an existing investigation and opening a *new* investigation without a student's explicit request.  Indeed, in *Haidak*, 933 F.3d. at 74, the court dismissed plaintiff's selective enforcement claim notwithstanding rules allowing the university to "file appropriate charges…independently" because plaintiff's "accusations came second in time and arose only defensively….At most, Haidak has alleged that the university pursued [complainant's] case instead of his because [complainant] made the allegation first -- <u>not</u> because Haidak's sex influenced the university."

Finally, as this Court has noted, Plaintiff was not similarly situated to Jane when he attempted to file a Title IX complaint months after his expulsion.  (SOF ¶ 11; ECF No. 40 at 42); *see Doe v. Brown Univ.*, No. 20-2023, 2022 WL 3095288, at *8 (1st Cir. Aug. 4, 2022) ("It is rational for an administrator, upon receiving a…complaint, to treat someone who had already been

---

[14] The assertion that NYU "offers a Declaration from [Lauren] Stabile" to "correct" testimony (Opp. at 9 n.4) is wrong as there is nothing to correct.  Neither Stabile's Declaration nor Signor's testimony contradict NYU's Procedures, which state, "Where possible based on the facts and circumstances NYU will seek action consistent with the Complainant's request to maintain his/her privacy and/or not conduct further Investigation," but provide for a very limited set of circumstances when NYU may conduct an investigation even when a student declines to file a complaint, for example, when "somebody is a grave risk to the University community." (SOF ¶¶ 8-12).  Plaintiff's evidentiary objection to Stabile's declaration is also frivolous; the Declaration establishes her personal knowledge as to NYU's Title IX Policy and Procedures during the time of her employment. *See* Fed. R. Civ. P. 56(c)(2); (Def. Ex. 6 ¶¶ 1-4).  Moreover, Plaintiff does not provide any basis to disregard Stabile's Declaration as to her and Hodge's interview with Plaintiff on July 10, 2018 and admits to the relevant facts.  (*See* SOF Res. ¶ 161; *see also* SOF ¶ 263 ("the investigator…said I could file a cross complaint.  I did not because I believed Jane…")).

11

found responsible for sexual misconduct differently than someone who had not."). Indeed, NYU has "never accepted a complaint from an expelled student against a current student" so, irrespective of gender, there is no student similarly situated to Plaintiff in this regard. (SOF ¶ 266).[15]

**Point IV—Plaintiff Fails to Raise a Genuine Dispute of Material Fact with Respect to Plaintiff's State Law Claims**

Plaintiff's argument that NYU is asking the Court to make a credibility determination on his promissory estoppel claim is incorrect. Even crediting Plaintiff's account of McFarlane's words, Plaintiff admitted he knew McFarlane did not have the power to promise any outcome and Plaintiff fails to meaningfully distinguish NYU's cases demonstrating that Plaintiff therefore knew or should have known the statement was an opinion. (NYU's MOL at 20-21). Moreover, while Plaintiff asserts reliance (citing only his own testimony), he fails to refute the arguments that reliance was not *reasonable*, that Plaintiff's decision not to hire an attorney was not unequivocally referable to the alleged statement, and that there is no evidence the alleged statement – rather than Plaintiff's misconduct – was the proximate cause of his expulsion. Plaintiff cannot defeat summary judgment simply by regurgitating the elements of promissory estoppel during his deposition and citing that testimony as "evidence." *Villetti v. Guidepoint Glob. LLC*, No. 21-2059-cv, 2022 WL 2525662 at *3 (2d Cir. July 7, 2022) ("summary judgment [is] proper" when only "plaintiff's own contradictory and incomplete testimony" supports allegations) (internal quotations marks and citations omitted)).[16]

---

[15] Signor's response to Plaintiff's complaint that "the matters [he] raised were addressed previously" is not "patently false" as Plaintiff asserts, (Opp. at 12), but refers to Plaintiff's appeal, in which he raised similar allegations in the context of his defense. (*See generally* Def. Ex. 4, NYU_00011361).

[16] Plaintiff's invocation of the Court's denial of NYU's motion to dismiss is also misplaced. (Opp. at 22). There, the Court relied in part on the finding that the alleged promise "was at least arguably consistent" with the Procedures' terms, which are general by their nature. (ECF No. 40 at 44). The evidence has shown, however, that Plaintiff (including through his mother) was told both verbally and in writing by NYU's Office of Equal Opportunity and Office of Student Conduct that he could be expelled. (SOF ¶¶ 132, 147, 192; *see also* SOF ¶¶ 197-98 (Plaintiff's mother stating Plaintiff could be expelled)).

12

Finally, Plaintiff's New York City Human Rights Law claim fails for the same reasons his Title IX claims do. (MOL at 24-25).

## CONCLUSION

For the foregoing reasons, NYU respectfully requests that its motion for summary judgment be granted in full and that Plaintiff's complaint be dismissed with prejudice.

Dated: August 11, 2022                              Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

_/s/ *Jeffrey P. Metzler*_
Jeffrey P. Metzler
Max A. Winograd
Melissa S. Pettit
jeffrey.metzler@pillsburylaw.com
max.winograd@pillsburylaw.com
melissa.pettit@pillsburylaw.com
31 W. 52nd St.
New York, NY 10019
(212) 858-1000

*Counsel for Defendant New York University*