USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/22/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN DOE,

                Plaintiff,

-against-

NEW YORK UNIVERSITY,

                Defendant.

1:20-cv-1343 (MKV)

**ORDER**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff brought this case against New York University ("NYU"), asserting various claims stemming from the decision by NYU to expel him following a disciplinary proceeding, which found Plaintiff "responsible" for stalking, sexual harassment, and sexual exploitation.

On June 23, 2022, Defendant NYU filed a letter motion requesting that Judge Woods, then presiding over this case, seal portions of certain of its evidentiary submissions in connection with its summary judgment motion.[1]  ECF No. 90.  On July 27, 2022, Plaintiff John Doe filed a similar motion seeking to seal certain portions of his evidentiary submissions.  ECF No. 97.  For the reasons explained below, both motions are GRANTED.

Although "[t]he common law right of public access to judicial documents is firmly rooted in our nation's history," this right is not absolute, and courts "must balance competing considerations against" the presumption of access.  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).  In *Mirlis v. Greer*, 952 F.3d 51 (2d Cir. 2020), the Second Circuit summarized the three steps that the Court must follow to determine whether the presumption of public access has been rebutted with respect to a particular document.  First, the

---

[1] This case was reassigned to me on March 8, 2023.

Court determines whether the document is a "judicial document," namely, "one that has been placed before the court by the parties and that is relevant to the performance of the judicial function and useful in the judicial process." *Id.* (quotation omitted).  Second, if the materials are "judicial documents," the Court "proceeds to 'determine the weight of the presumption of access to that document.'" *Id.* (quoting *United States v. Erie Cnty.*, 763 F.3d 235, 239, 241 (2d Cir. 2014)). "The weight to be accorded is 'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)). "Finally, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Id.*  Applications to seal documents must therefore be "carefully and skeptically review[ed] . . . to [e]nsure that there really is an extraordinary circumstance or compelling need" to seal the documents from public inspection. *Video Software Dealers Ass'n v. Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994).

All of the documents at issue in both motions are judicial documents, because they have been put before the Court by the parties in connection with the pending summary judgment motions and are relevant and useful to this Court's deliberative process. *Merlis*, 952 F.3d at 59. However, the presumption has modest weight for most of the information that the parties seek to seal.  With the exception of two videos filed as Defendant's exhibits 22 and 25—which will be discussed below—both Plaintiff and Defendant seek only to seal the names (or other identifying information) of Plaintiff, Jane, Plaintiff's mother, and certain third-party witnesses. *See* ECF No. 91 Exs. 1–2, 4–5, 7, 10–21, 23–24, 26–69, 71–84; ECF No. 100 Exs. 1–6, 8–11, 13–16, 19.[2]

---

[2] For pictures with sensitive information beyond a person's name or identifying information, the parties have put already redacted images before the Court for its review. *See, e.g.*, ECF No. 91 Ex. 4 at 13. As a result, it is these

Moreover, where the actual names of those individuals have been redacted, the parties have replaced Plaintiff's name with "John Doe" and Jane's name with "Jane Roe." *See id.* As a result, the public will be able to read and fully understand each document, and the Court's summary judgment opinion, even with identifying information redacted. *See United States v. UCB, Inc.*, No. 14-cv-2218, 2017 WL 838198, at *5 (S.D.N.Y. 2017) (noting that while "the public . . . has an interest in monitoring the judicial process," and that "the public's ability to monitor the judicial process 'is not possible without access to testimony and documents that are used in the performance of Article III functions,'" where only names are sought to be redacted, the presumption of public access is relatively low because "the public can still glean from" the Court's use of those redacted documents "the substance of [the] arguments and the manner in which the Court handled them" (quoting *Lugosch*, 435 F.3d at 119); *see also* ECF No. 41 (finding that the weight of the documents sought to be sealed, at the motion to dismiss stage, was modest "because the names and images of the individuals whose information was redacted did not play a role in the Court's evaluation of the motion to dismiss").

There are, moreover, significant and weighty "factors that legitimately counsel against disclosure of" the names redacted by the parties. *Mirlis*, 952 F.3d at 59. As the parties agree, and as Judge Woods previously recognized, "[t]his case undoubtedly involves highly sensitive and personal matters." ECF No. 5 (Plaintiff's motion to proceed pseudonymously); *see* ECF No. 19 (order granting that motion). Judge Woods granted Plaintiff's motion to proceed pseudonymously because of Plaintiff's and Jane's inherently strong privacy interests given the subject matter of this case. The same rationale supports the redactions of names and identifying

---

pre-redacted images that are the "judicial documents" that the Court has reviewed, and the parties do not seek any additional "sealing" of these documents.

3

information for Plaintiff, Jane, and Plaintiff's mother. Clearly, taking the case's sensitive subject matter into account, the non-parties whose names are redacted in the relevant submissions also have substantial privacy interests here. *See SEC v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001) ("[T]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation."). In short, the Court concludes that the privacy interests of Plaintiff, Jane, Plaintiff's mother, and other third parties significantly outweigh the presumption of public access to their names and identifying information.

That conclusion leaves only Defendant's exhibits 22 and 25 to evaluate. Both exhibits are videos that, as a practical matter, cannot be partially redacted. *See* ECF No. 90 at 2. As a result, Defendant requests that the videos be sealed in full. *Id.* As with the other documents sought to be redacted, these videos are judicial documents because they have been put before the Court by the parties and are relevant and useful to this Court's judicial function. *Merlis*, 952 F.3d at 59. The weight of the presumption, moreover, is stronger as to these videos than as to the other documents. Unlike the other documents, where only names and identifying information have been redacted, Defendant asks the Court to prevent the public from seeing these videos at all. The information sought to be sealed, in other words, has more "value" to "those monitoring the federal courts" than does the names and identifying information for Plaintiff, Jane, Plaintiff's mother, and other third parties, making the presumption of judicial access stronger as to the videos. *Id.*

Nonetheless, the Court will grant Defendant's motion to seal as to these exhibits also at this stage of the litigation. Important to the Court's calculus is that Defendant has publicly filed transcripts of the videos which identify what is said in each video and by whom. *See* ECF No. 88 Exs. 22, 25. And in *Merlis*, the Second Circuit described at length why filing a public

transcript makes sealing a video more appropriate, particularly where the video contains sensitive subject matter:

> [T]he availability of a transcript of the deposition does not in our view necessarily eliminate or even diminish a party's privacy interest in the publication or copying of a video of those proceedings. To the contrary: That the substance of the desired content is publicly available in some format (i.e., a transcript) tends in the circumstances presented here to cut against the public interest in the release of the content in a different form (i.e., video), since the primary public interest—general availability of the relevant information—has already been served. . . .
>
> We have not set an absolute rule that the public availability of a [transcript] guarantees the court's protection of a . . . video, nor do we do so now. As we observed in *CBS* [*v. Salerno*], "[videos]. . . convey the meaning of [statements] more accurately and preserve demeanor evidence as well." 828 F.2d at 960. These undoubtedly are valuable components of the truth-finding process. The general rule of production that we applied in 1987 in *CBS* thus remains vital today. . . .
>
> But we must also acknowledge what has changed since we decided *CBS* in 1987: The astonishing and pervasive rise of the Internet; the attendant ease with which videos may be shared worldwide by individuals; and the eternal digital life with which those videos are likely endowed by even a single display online. These are all factors that multiply and intensify the privacy costs to the individual of releasing sensitive videos; those costs are undeniably greater than what they might have been 30 years ago. Whereas the subject of a video deposition made public in 1987 may have suffered brief notoriety and embarrassment as the subject of an evening's newscast, today, [an individual] could reasonably fear that, for the rest of his life, this video would be the first result of an internet search for his name.

952 F.3d at 65–66. This explanation directly maps onto the sensitive facts of this case: The use of a transcript allows the public to obtain the relevant information in some form, while avoiding the very real threat to the privacy of Plaintiff, Jane, or both that making the actual videos public could cause. As a result, the Court finds that as to Defendant's

Exhibits 22 and 25, the privacy interests of Plaintiff and Jane outweigh presumption of public access to the videos at this stage of the litigation.

In sum, the Court finds that the factors legitimately counseling against disclosure of submissions or portions of submissions that both Defendant and Plaintiff seek to seal outweighs the presumption of public interest to those documents or portions of documents.  *Id.* at 59.  As a result, both Defendant and Plaintiff's motions to seal are granted.

Two final points are worth emphasizing.  First, in granting the parties' motions to seal, the Court relies on Second Circuit precedent as applied to these specific requests at this stage of the litigation.  It does *not* rely on prior confidentiality orders, which expressly "placed on notice" all parties that "the Court is unlikely to seal or otherwise afford confidential treatment to any Discovery Material introduced into evidence at trial, even if such material has been sealed or designated as Confidential." ECF No. 55 ¶ 9.  Second, and relatedly, the Court emphasizes that its sealing determinations are made only with respect to the information at issue at this stage of the case and on this record.  The Court anticipates that, at trial, the factors governing sealing (and pseudonymity) determinations may very well weigh differently than they have to this point, and the parties should not take this order as any indication to the contrary.

The Clerk of Court respectfully is requested to close the Motions at ECF Nos. 90 and 97.

**SO ORDERED.**

**Date:  March 22, 2023**
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**