```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOHN DOE,                                                    :
                                                             :
                                    Plaintiff,               :
                                                             :           1:20-cv-1343-MKV
               -v-                                           :
                                                             :         OPINION AND ORDER
NEW YORK UNIVERSITY,                                         :       GRANTING DEFENDANT'S
                                                             :       MOTION FOR SUMMARY
                                    Defendant.               :            JUDGMENT
-------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/17/2023

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff John Doe brought this action against New York University ("NYU"), alleging that NYU discriminated against him based on his gender when, after an investigation, hearing, and appeal precipitated by a complaint by a female student, NYU expelled Plaintiff for sexual misconduct and stalking. Plaintiff asserts discrimination claims for the alleged violation of both federal and state law, and also sues for promissory estoppel based on the alleged promise by his NYU-appointed advisor that he would not be expelled, which Plaintiff claims to have relied upon in deciding how vigorously (or not) to defend himself against the charges. Presently before the Court is NYU's motion for summary judgment on all claims.[1] For the reasons discussed below, that motion is granted.

---

[1] In support of its Motion for Summary Judgment, NYU filed a Memorandum of Law [ECF No. 87] ("Def. Br."), a Declaration of Jeffrey P. Metzler [ECF No. 88] ("Metzler Decl."), and a Rule 56.1 Statement [ECF No. 86] ("Def. Facts"). In opposition, Plaintiff filed a Memorandum of Law [ECF No. 99] ("Opp."), a Rule 56.1 Counterstatement [ECF No. 96] ("Pl. Facts"), and a Declaration of Kimberly C. Lau [ECF No. 98] ("Lau Decl."). In reply, NYU filed a Memorandum of Law [ECF No. 112] ("Reply"), a Declaration of Jeffrey P. Metzler [ECF No. 113] ("Metzler Decl. II"), and a Response to Plaintiff's 56.1 Counterstatement [ECF No. 111] ("Def. Facts Reply").

## BACKGROUND[2]

Plaintiff John Doe was an NYU student who had a long and sordid relationship (if it could be called that) with another NYU student, referred to as Jane Roe.[3] The details of this relationship are discussed at length in the materials submitted by the parties in connection with the pending motion, but they need not be fully recounted in this Opinion. It largely suffices to say that the relationship was toxic and that, as a result, Jane filed a complaint against Plaintiff with NYU's Department of Public Safety on April 21, 2018. Def. Facts ¶ 114; Pl. Facts ¶ 114. The events that followed Jane's complaint are what is most relevant for purposes of the pending motion. However, to give context to the school's decision, a brief summary is helpful.

Plaintiff and Jane met when they were both in high school, and they stayed in close contact during freshmen year at their respective colleges. Def. Facts ¶¶ 35–47; Pl. Facts ¶¶ 35–47. After their freshmen year, Plaintiff transferred schools to join Jane at NYU and specifically requested (without Jane's knowledge) to be housed in her dormitory. Def. Facts ¶¶ 48–52; Pl. Facts ¶¶ 48–52. When Jane decided that she needed some space, and told Plaintiff as much, Plaintiff threatened to harm himself and sent Jane over 100 unanswered messages. Def. Facts ¶¶ 53–58; Pl. Facts ¶¶ 53–58. Plaintiff continued this tactic over time, refusing to leave Jane alone while making threats of self-harm and threatening to give compromising information to Jane's parents and friends as well. Def. Facts ¶¶ 60–61, 77; Pl. Facts ¶¶ 60–61, 77. At some point during their relationship, Plaintiff took photos of Jane without her consent while her shirt was off or partially off, which Plaintiff supposedly used for his own sexual pleasure. Def. Facts ¶ 59; Pl. Facts ¶ 59.

---

[2] The following facts are taken from the parties' Local Civil Rule 56.1 Statements, the affidavits and declarations submitted in connection with the instant motion, and the exhibits attached thereto. The facts are undisputed unless otherwise indicated.

[3] Judge Woods previously granted Plaintiff's motion to proceed pseudonymously because of the strong privacy interests that he and Jane had in the subject matter of this case. [ECF No. 19].

Things got so tense that in a heated argument in a stairwell, Jane punched Plaintiff when he leaned in towards her, which she claimed to have done in self-defense.  Def. Facts ¶¶ 99–101; Pl. Facts ¶¶ 99–101.

The list of inappropriate and unusual behavior by no means stopped there.  However, for the sake of brevity, there is one final act (or series of acts) worth noting.  The day that Jane initially reported Plaintiff's misconduct, NYU issued a no-contact directive to both Plaintiff and Jane.  Def. Facts ¶ 117; Pl. Facts ¶ 117.  Plaintiff violated that directive within minutes of it being implemented, and violated it repeatedly throughout the course of the investigation into his conduct.  Def. Facts ¶¶ 117–23; Pl. Facts ¶¶ 117–23.  Jane described this behavior, along with the other alleged misconduct, when she met with the Executive Director of NYU's Office of Equal Opportunity, Mary Signor, and confirmed her desire to file a formal complaint.  Def. Facts ¶¶ 30, 126–27; Pl. Facts ¶¶ 30, 126–27.

The same day that Jane confirmed her intent to go forward with a formal complaint, Plaintiff also met with Signor and another faculty member.  Def. Facts ¶¶ 126–28; Pl. Facts ¶¶ 126–28.  At that time, Plaintiff described his relationship with Jane, including instances in which Jane had allegedly abused him verbally and physically.  Def. Facts ¶¶ 33, 126–30; Pl. Facts ¶¶ 33, 126–30.  Plaintiff testified that Signor informed him that he could file a cross-complaint against Jane, which would be handled at the end of any proceedings against him, but Plaintiff declined to do so.  Def. Facts ¶ 131; Pl. Facts ¶ 131; Def. Reply ¶ 309.  Signor also advised Plaintiff that the misconduct alleged by Jane could result in his expulsion.  Def. Facts ¶ 132; Pl. Facts ¶ 132.

Thereafter, NYU Investigator Sam Hodge and another investigator interviewed Jane.  Def. Facts ¶ 144; Pl. Facts ¶ 144.  After speaking with Jane, Hodge emailed Plaintiff to schedule an interview, attaching to that email NYU's Sexual Misconduct, Relationship Violence, and Stalking

Policy (the "Misconduct Policy"), which stated, among other things, that activities in violation of the Misconduct Policy can include "disciplinary action, up to and including separation from NYU." Metzler Decl. Ex. 1, Part A at PDF 37; *see also* Def. Facts ¶¶ 1, 27, 148; Pl. Facts ¶¶ 1, 27, 148. Hodge then informed Plaintiff that he could select an "advisor of choice" to accompany him to the interview, but also offered to have NYU connect Plaintiff with a "Respondent Facilitator" who could serve as his advisor.[4]  Def. Facts ¶¶ 149–150; Pl. Facts ¶¶ 149–150. Plaintiff selected the latter option. Def. Facts ¶ 153; Pl. Facts ¶ 153.

Plaintiff's Respondent Facilitator was Allen McFarlane. Def. Facts ¶ 154; Pl. Facts ¶ 154. Plaintiff testified at his deposition that McFarlane assured him after first hearing the charges that "under no circumstances would [Plaintiff] be expelled" for his alleged misconduct. Pl. Facts ¶ 319; Def. Facts Reply ¶ 319. Shortly after this (supposed) promise was made, Plaintiff and McFarlane met with Hodge and another Investigator for an interview. Def. Facts ¶¶ 31, 157; Pl. Facts ¶¶ 31, 157. During the interview, Plaintiff told the investigators, among other things, that Jane had physically and verbally abused him. Pl. Facts ¶ 304; Def. Reply Facts ¶ 304. At the end of the interview, Hodge informed Plaintiff of his right to file a cross-complaint, but Plaintiff (again) elected not to do so. Pl. Facts ¶¶ 161–62; Def. Reply Facts ¶ 161.

After interviewing both parties and several third-party witnesses, and after reviewing the submitted evidence, Hodge sent a draft of the investigative report to Plaintiff and to Jane. Def. Facts ¶¶ 172–75; Pl. Facts ¶¶ 172–75. Plaintiff testified in his deposition that McFarlane, after reviewing the evidence in the draft report, repeated his statement that Plaintiff would not be expelled for the alleged misconduct. Lau Decl., Ex. 3 ("Pl. Dep.") at 136:5–137:8. The investigative report was finalized a few weeks later, after Plaintiff submitted additional responses

---

[4] Hodge's email also included a list of attorney referrals, but Plaintiff opted to not hire a lawyer at that time. Def. Facts ¶ 152; Pl. Facts ¶ 152.

and evidence. Def. Facts ¶¶ 176, 183, 189; Pl. Facts ¶¶ 176, 183, 189. Thereafter, NYU held a hearing on Jane's complaint, which was adjudicated by the Director of the Office of Student Conduct, Craig Jolley. Def. Facts ¶¶ 189, 191, 206–08; Pl. Facts ¶¶ 189, 191, 206–08.

The hearing did not go well for Plaintiff. Jolley ultimately found "overwhelming evidence that the [Plaintiff] has engaged in an extended pattern of conduct that would cause a reasonable person in the position of the Complainant to experience fear for their safety, substantial emotional distress, significant mental suffering, and anguish. This behavior has included sexual harassment, sexual exploitation and stalking as defined under the [Misconduct Policy]."[5] Metzler Decl., Ex. 2 ("Hearing Decision") at 7; *see also* Def. Facts ¶ 235; Pl. Facts ¶ 235. Based on "the totality of circumstances, the threatening and excessive nature of the Respondent's conduct, the repeated and blatant disregard of the University's no-contact directive, and most notably, the unsettling and egregious pattern of stalking behaviors," Jolley sanctioned Plaintiff with expulsion and a transcript notation. Hearing Decision at 7.

Plaintiff hired a lawyer and asked for several extensions of his time to file an appeal, which NYU granted. Def. Facts ¶¶ 244–248; Pl. Facts ¶¶ 244–248. His appeal invoked all three grounds on which such an appeal could be based under the Misconduct Policy. Def. Facts ¶¶ 28, 249–252; Pl. Facts ¶¶ 28, 249–252. Specifically, Plaintiff argued that there were numerous procedural errors (such as the fact that the hearing did not investigate Plaintiff's allegations against Jane), that previously unavailable relevant evidence could affect the outcome (such as *even more* text messages between Plaintiff and Jane), and that the sanction was substantially disproportionate to

---

[5] Jolley also found that there was *not* sufficient evidence to support a finding of sexual assault. Def. Facts ¶ 236; Pl. Facts ¶ 236. Because there was no complaint against Jane, Jolley did not consider it to be his role to adjudicate whether Jane, as opposed to Plaintiff, engaged in any violation of university policy, and so made no findings about whether Jane had done so. Def. Facts ¶ 240; Pl. Facts ¶ 240.

5

the violation. Def. Facts ¶¶ 249–252; Pl. Facts ¶¶ 249–252.[6] Plaintiff's appeal was considered by a three-person panel, which reviewed all of the evidence submitted by the parties, including Plaintiff's "new evidence." Def. Facts ¶¶ 254–255; Pl. Facts ¶¶ 254–255. The panel denied Plaintiff's appeal on February 26, 2019. Def. Facts ¶¶ 256; Pl. Facts ¶¶ 256; *see* Metzler Decl. Ex. 76 (appeal decision).

Months after his expulsion went into effect, Plaintiff filed a formal complaint against Jane. Def. Facts ¶ 265; Pl. Facts ¶ 264. While the Misconduct Policy does not expressly prohibit NYU from accepting complaints from former students, NYU declined to accept Plaintiff's complaint because, according to Signor, NYU has "never accepted a complaint from an expelled student against a current student." Metzler Decl. Ex. 5, ("Signor Dep.") at 188:20-189:9; *see also* Def. Facts ¶ 266; Pl. ¶ 266.

**PROCEDURAL HISTORY**

Plaintiff initiated this suit by filing a complaint against NYU, alleging four causes of action: (1) violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681 *et seq.*, through selective enforcement of NYU's disciplinary process against Plaintiff; (2) violation of Title IX based on the erroneous outcome of NYU's disciplinary proceedings; (3) violation of the New York City Human Rights Law (the "NYCHRL"), N.Y. Admin Code § 8-107 *et seq.*; and (4) a common law promissory estoppel claim based on (i) McFarlane's statement that Plaintiff would not be expelled and (ii) Signor's alleged statement that Plaintiff could file a Title IX complaint against Jane once her complaint against him was resolved. [ECF No. 1] ("Compl.") ¶¶ 243–318. Each cause of action other than the one for promissory estoppel was rooted in a claim of gender discrimination. Compl. ¶¶ 243–318. Plaintiff later filed an amended complaint, the

---

[6] Although appeal statements are not supposed to be longer than three pages, NYU accepted the submission by Plaintiff which greatly exceeded the limit. Def. Facts ¶¶ 28, 255; Pl. Facts ¶¶ 28, 255.

operative complaint in this case, which contained the same causes of action. [ECF No. 27] ("AC"). Judge Woods dismissed at the pleadings stage the promissory estoppel claim that Plaintiff had raised based on comments by Signor, but otherwise allowed Plaintiff's claims (including the promissory estoppel claim based on McFarlane's statement) to proceed. [ECF No. 40].

Pending before the Court is a motion by NYU for summary judgment on all remaining claims. [ECF No. 85]. NYU argues that no reasonable jury could find that NYU's actions were motivated by gender, as necessary to support Plaintiff's Title IX and NYCHRL claims. *See* Def. Br. at 12–25. NYU further argues that Plaintiff's promissory estoppel claim fails because McFarlane's statement was not a promise, Plaintiff's reliance on the statement was unreasonable, and Plaintiff had not been injured by the statement. Plaintiff opposed the motion [ECF No. 99] and NYU replied [ECF No. 112].

After the summary judgment motion was fully briefed, this case was reassigned from Judge Woods to this Court.

## **LEGAL STANDARD**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court "may not make credibility determinations or weigh the evidence." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). The court "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Id.* If there is evidence in the record that supports a reasonable inference in favor of the opposing party, summary judgment is

7

improper. *See Brooklyn Ctr. For Indep. of the Disabled v. Metro. Transportation Auth.*, 11 F.4th 55, 64 (2d Cir. 2021).

## DISCUSSION

### I. TITLE IX CLAIMS

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In the context of university discipline, the Second Circuit has recognized two categories of Title IX claims: (1) claims of an erroneous outcome from a flawed proceeding, and (2) claims of selective enforcement. *See Yusuf v. Vassar Coll.*, 35 F.3d 709, 714–16 (2d Cir. 1994); *see also Scott v. WorldstarHipHop, Inc.*, No. 10-cv-9538, 2011 WL 5082410, at *4 (S.D.N.Y. Oc. 25, 2011). "In the former case, a party asserts that he or she was innocent and wrongly found to have committed the offense; in the latter case, a party asserts that, regardless of guilt, the severity of the penalty was affected by the student's gender." *Scott*, No. 10-cv-9538, 2011 WL 5082410, at *4. Plaintiff brings claims of both selective enforcement and an erroneous outcome.

The Court analyzes these Title IX claims using the same *McDonnell Douglas* burden-shifting framework that generally guides its analysis of discrimination claims brought under Title VII. *See Radwan v. Manuel*, 55 F.4th 101, 130 (2d Cir. 2022). The Plaintiff must first establish a *prima facie* case by showing that he "is a member of a protected class, [he] was qualified for [his] position, [he] suffered an adverse action, and the facts imply a discriminatory intent." *Id*. If Plaintiff makes out his *prima facie* case, the burden shifts to the defendant "to proffer a legitimate

8

non-discriminatory reason for the adverse action, and then finally, the plaintiff may rebut this reason by demonstrating pretext." *Id*.

Here, it is not disputed that Plaintiff has established the first three elements, and as such Plaintiff can make out a *prima facie* case of discrimination if he can show that the facts imply a discriminatory intent. The Second Circuit has explained that "discriminatory intent can be shown by either direct evidence of discriminatory animus or circumstantial evidence of such animus, including by showing disparate treatment among similarly situated" individuals.[7] *Radwan*, 55 F.4th at 132. To establish circumstantial evidence of gender-based discrimination through an analysis of similarly situated persons, Plaintiff must show that NYU treated more favorably a female student who was "similarly situated to the plaintiff in all material respects."[8] *Id.* (quoting *Ruiz v. County of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010)).

Plaintiff begins by comparing himself to Jane. Plaintiff contends that he and Jane are similarly situated because they were both NYU students who reported being in an abusive relationship. Plaintiff claims that, despite these similarities, NYU treated Jane more favorably than it treated him by investigating her claims while his claims were ignored. Plaintiff is mistaken. He and Jane were not similarly situated while they were students at NYU because, although they

---

[7] In *Radwan*, the Second Circuit noted that it has not yet decided whether, for liability to attach, gender bias under Title IX must be a mere "motivating factor in the decision to discipline," or whether the statute instead dictates that liability exists only if an improper disciplinary decision would not have been made "but-for" the gender bias. 55 F.4th at 131–32 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). The Court need not decide that issue, however, because Plaintiff has not proffered any evidence tending to show that gender bias was either a motivating factor *or* a but-for factor of Defendant's decision to discipline Plaintiff.

[8] The parties seem to assume that a selective enforcement claim cannot succeed unless Plaintiff can demonstrate that NYU treated a similarly situated female student more favorably. *See* Def. Br. at 12; Opp. at 4. This is understandable, given that "courts in this circuit have consistently dismissed selective enforcement claims absent allegations that a school treated similarly situated members of the opposite sex—that is, members of the opposite sex facing comparable disciplinary charges—differently." *Doe v. New York Univ.*, 438 F. Supp. 3d 172, 182 (S.D.N.Y. 2020) (internal quotation marks omitted). However, the Second Circuit's recent decision in *Radwan* (which was decided after briefing in this case had completed) makes clear that disparate treatment of similarly situated members of the opposite sex is one way, but not the only way, to demonstrate discriminatory intent. *See* 55 F.4th at 132.

both complained (in the colloquial sense) of abuse by the other, Jane was the only one to file a formal complaint. Plaintiff was repeatedly told he could file a complaint (*see* Def. Reply ¶¶ 131, 161–62), but he opted not to do so throughout the investigation, hearing, determination and appeal of Jane's complaint. It is true, of course, that Plaintiff did eventually file a formal complaint as well. But Plaintiff did not file a complaint until seven months after he had been expelled. Plaintiff and Jane were not similarly situated at that time either because he already had been expelled and thus was no longer a student at the university when he decided to file a formal complaint. So while NYU did treat Plaintiff and Jane differently, the two individuals *were*, at all relevant times, different in material ways.

In an attempt to avoid this manifest disparity, Plaintiff argues that he would have filed a formal complaint while a student (and thus would have been similarly situated to Jane) if he had not been told that his complaint would be considered only after Jane's complaint had been resolved. Pl. Facts ¶ 131; Metzler Decl., Ex. 10 ("Pl. Dep.") at 87:20–25. But this explanation, even assuming it true, does not change the analysis.[9] Simply "showing that the university had an unwritten, race-to-the-dean's-office policy . . . is not enough to support an inference of discrimination on the basis of sex." *Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 74 (1st Cir. 2019). In fact, Plaintiff's allegation on this score cuts against his bias argument, as it tends to show

---

[9] NYU points out that Plaintiff had previously explained in an email that he chose not to file a cross-complaint because he "did not want to distress Jane." Def. Facts ¶ 131; *see also* Metzler Decl., Ex. 33. At this stage of the proceedings, the Court draws every reasonable inference in Plaintiff's favor and thus credits his testimony with respect to his motivation for not filing a timely complaint. *See M.A. ex rel. H.R. v. Rockland Cnty. Dep't of Health*, 53 F.4th 29, 35 (2d Cir. 2022).

"that the university pursued [Jane's] case instead of his because [she] made the allegation first—not because [Plaintiff's gender] influenced the university."[10] *Id.*

In a search for other evidence of supposed gender-based animus, Plaintiff next pivots to other students charged with misconduct. He points to a spreadsheet compiled by NYU that appears to show that *some* females students at the university received more lenient sanctions than *some* males for engaging in the same general categories of misconduct (*e.g.*, Relationship Violence or Sexual Harassment). Lau Decl., Ex. 4. But categories of misconduct can encompass a broad range of conduct with varying degrees of seriousness. And it is easy to cherry-pick out of a single broad category one female student and one male student who received different sanctions. The real problem is that Plaintiff "makes *no effort* to account for nondiscriminatory explanations of the disparity" in sanctions, such as the different facts of specific cases. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999). Without even "attempting to control for such other causes," Plaintiff's assumption that gender bias affected the sanctions is "untenable." *Id.*; *see also Doe v. Univ. of Denver*, 952 F.3d 1182, 1193–94 (10th Cir. 2020) ("When the statistical evidence does nothing to eliminate these obvious, alternative explanations for the disparity, an inference that the disparity arises from gender bias on the part of the school is not reasonable").[11]

---

[10] Plaintiff suggests that bias is demonstrated by "NYU's decision to *sua sponte* increase the number of charges against Plaintiff while failing to pursue any action against Jane." Opp. at 12. It appears that what Plaintiff refers to as *sua sponte* adding claims means simply accounting for misconduct uncovered during the investigation. But in any event, Plaintiff fails to present any evidence that the alleged *sua sponte* increase was motivated by Plaintiff's gender rather than by his conduct uncovered during NYU's investigatory process. While Jane may not have filed a formal complaint with respect to the added charges, a formal complaint *had been filed* and the additional charges followed from the investigation into that complaint.

[11] Plaintiff also highlights the "lenient sanction" NYU imposed on a high-profile female professor accused of sexual harassment to suggest that NYU bowed to public pressure to treat a female more favorably than it would have treated a similarly situated hypothetical male. Opp. at 17. This is purely speculation. Plaintiff does not identify a similarly situated male professor who was subject to different or worse treatment. Nor does Plaintiff identify any evidence to suggest that NYU considered public pressure in determining the relevant sanction in that case. And, of course, that case is not the same as Jane's complaint against Plaintiff, which was resolved based on its unique facts. Plaintiff has thus failed to present facts that imply that NYU acted with gender bias in other cases—let alone facts that suggest it did so in this case.

11

Finally, Plaintiff points to a presentation titled "The Art of working with Sexual Misconduct Respondents," delivered by the Assistant Director of the Office of Student Conduct at NYU, Colleen Maeder. Lau Decl., Ex. 17. In the notes section of this presentation there is a header for "[t]hings I've heard from colleagues: Negative Stereotypes." Lau Decl., Ex. 17 at PDF 31. Under this header, there are certain statements—such as "[k]ick him out" and "[i]f he has an attorney, it's a sign of guilt"—that Plaintiff suggests could be evidence of gender animus against him. Lau Decl., Ex. 17 at PDF 31; *see also* Def. Reply Facts ¶¶ 341–43. But these statements do not move the needle in Plaintiff's favor. For one thing, the header of this slide referred to "*Negative* Stereotypes," which suggests that these are stereotypes that one should avoid. Moreover, Maeder testified at her deposition that she did *not* hear these comments from colleagues at NYU, but rather that these were general "stories" from "people across the country who work in the profession." Metzler Decl., Ex. 85 ("Maeder Dep.") at 96:8–20. Plaintiff has offered no evidence to rebut that testimony. As such, this presentation does not suggest that anyone at NYU (let alone anyone involved in Plaintiff's proceedings) had discriminatory intent.

At bottom, Plaintiff has pointed to no evidence that plausibly would support his claim that gender played a role, much less a discriminatory role, in the treatment of Jane's complaint and Plaintiff's post-expulsion complaint. As such, he fails to make out a *prima facie* gender discrimination case of either selective enforcement or erroneous outcome, and NYU is entitled to summary judgment on the Title IX claims.

## II. STATE AND CITY LAW CLAIMS

Although Plaintiff has no federal claim that survives summary judgment, his state and city law claims arise from the same facts and rely on the same evidence as his federal claims, and as a result, this Court retains discretion to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(a); *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)

(noting that supplemental jurisdiction exists where pendent claims share a "common nucleus of operative fact" with federal claims) (internal quotation marks omitted)).  Given the substantial resources already expended by the parties in developing, and the Court in reviewing, the voluminous factual record and the numerous legal arguments in this case, the Court's exercise of supplemental jurisdiction over Plaintiff's pendent claims is warranted.  *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004).

### A.  NYCHRL CLAIM

To plead a discrimination claim under the NYCHRL, a plaintiff must allege only that he was "treated less well . . . because of a discriminatory intent."[12]  *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021).  While courts have considered the NYCHRL standard to be more "liberal than the corresponding federal and state law standards," *id.*, "it still requires a showing of *some* evidence from which discrimination can be inferred," *Ben-Levy v. Bloomberg, L.P.*, 518 F. App'x 17, 20 (2d Cir. 2013) (emphasis added).  Here, Plaintiff's NYCHRL claim is "indistinguishable from" his Title IX claims because, for the reasons stated above, he "fails to point to *any* evidence from which a reasonable jury could conclude that [NYU] was motivated by discrimination." *Id.* (emphasis added).  Accordingly, Plaintiff's city law claim must fail too.

### B.  Promissory Estoppel Claim

Plaintiff brings a common law claim of promissory estoppel based on the alleged promise by his Respondent Facilitator, Allen McFarlane, that Plaintiff would not be expelled based on the misconduct alleged in Jane's complaint.[13]  Plaintiff claims that he relied on this promise in

---

[12] While the NYCHRL has traditionally been applied in the employment context, the parties do not dispute that it properly applies in the educational context as well.  The Court need not resolve this question, however, given that Plaintiff cannot prevail on his NYCHRL claim even assuming NYCHRL applies in the context of education discipline.

[13] Plaintiff's complaint also contains allegations, within his promissory estoppel claim, that NYU breached express and implied promises to him.  AC ¶¶ 509–11.  But this argument is waived because Plaintiff entirely failed to respond in its briefing to NYU's argument that it did not break any express or implied promises.  *See* Def. Br. at 24; *Arista*

deciding not to hire counsel to defend him, and that his expulsion was a direct consequence of this decision to not vigorously defend himself.

A promissory estoppel claim brought under New York law has three elements: "[1] a clear and unambiguous promise; [2] a reasonable and foreseeable reliance by the party to whom the promise is made, and [3] an injury sustained by the party asserting the estoppel by reason of the reliance." *Cacchillo v. Insmed, Inc.*, 551 F. App'x 592, 594 (2d Cir. 2014) (quoting *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995)).

Plaintiff's claim has no merit. Even assuming McFarlane made a clear and unambiguous promise, and that Plaintiff was injured because of his reliance on that promise (both dubious propositions), Plaintiff's claim must fail because he cannot demonstrate that his reliance was reasonable. The potential consequences were clear. On multiple occasions, NYU provided Plaintiff with a copy of the Misconduct Policy, which clearly stated that violations of that policy could result in "disciplinary action, up to and including separation from NYU." Metzler Decl. Ex. 1, Part A at PDF 37. Plaintiff testified that he had reviewed the Misconduct Policy, and that he was aware that expulsion was a possible sanction. Lau Decl. Ex. 3 ("Pl. Dep.") at 110:15–11:14.

In addition, the Misconduct Policy stated that Mary Signor was "charged with monitoring compliance with Title IX; providing education training and notifications; overseeing complaints; and coordinating NYU's investigation, response, and resolution of all reports under this policy." Metzler Decl. Ex. 1, Part A at PDF 37. It is undisputed that Plaintiff was told during his initial meeting with Signor that he could be expelled based on the allegations in Jane's complaint. Def. Facts ¶ 132; Pl. Facts ¶ 132. Signor later expressed the same potential outcome in a phone call

---

*Recs., LLC v. Tkach*, 122 F. Supp. 3d 32, 39 (S.D.N.Y. 2015) (a plaintiff "waives" a claim where he fails to "oppose specific arguments" about that issue "in a motion to dismiss" (internal quotation marks omitted)).

with Plaintiff's mother, when Signor explained that Plaintiff being expelled would be the worst-case scenario. Def. Facts ¶ 147; Pl. Facts ¶ 147.

It simply was not reasonable for Plaintiff to rely on statements made by McFarlane that were in direct conflict with what Signor had told Plaintiff as early as their very first meeting. McFarlane was Plaintiff's appointed advisor, who had no role in adjudicating the facts of the case or in determining a sanction. Plaintiff, according to his own deposition testimony, understood McFarlane's limited role from the beginning. Metzler Decl., Ex. 10 ("Pl. Dep.") at 119:22–120:18 ("I did not think my advisor would make a determination on the sanctions . . . ."). McFarlane's only role was to give advice.

Plaintiff now claims that the advice given, or the prediction made, was bad or misleading. But to the extent that any prediction made with respect to possible sanctions could be interpreted as a promise, it was not a promise upon which it was reasonable to rely. Given the respective roles of Signor and McFarlane (and Plaintiff's knowledge of these roles), any supposed reliance on statements by McFarlane was, as a matter of law, not reasonable. A person cannot reasonably rely on a promise made by someone who has no authority to make the promise or any ability to keep it. *See Oppman v. IRMC Holdings, Inc.*, 14 Misc.3d 1219(A), 836 N.Y.S.2d 494 (N.Y. Sup. Ct. 2007) ("The First Department has found it neither reasonable, nor foreseeable, for plaintiff to rely on a promise, where the individuals purportedly making the promise lacked sufficient control over whether such promises would be honored." (citation omitted)). In light of the undisputed fact that McFarlane's purported promise conflicted with the information provided by the written Misconduct Policy and by Signor herself, Plaintiff should have known better than to rely on it.

Accordingly, Plaintiff's remaining promissory estoppel claim fails, and NYU is entitled to summary judgment.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED in its entirety. The Clerk of Court respectfully is requested to terminate the motion pending at ECF No. 85, enter judgment for NYU, and close the case.

SO ORDERED.

Dated:  August 17, 2023
New York, New York

_____
MARY KAY VYSKOCIL
United States District Judge